BENJAMIN B. WAGNER
United States Attorney
KELLI L. TAYLOR
GLEN F. DORGAN
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, California 93721
(559) 497-4080 (telephone)
(559) 497-4099 (facsimile)

Attorneys for the Plaintiff UNITED STATES

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ARIA KOZAK and DONNA KOZAK,<br><br>                    Plaintiff,<br><br>v.<br><br>CHABAD-LUBAVITCH INC.; CHABAD OF CALIFORNIA; CHABAD RUNNING SPRINGS RESIDENTIAL CAMP; CHABAD CHEDER MENACHEM; YESHIVA OHR ELCHONON CHABAD; BAIS CHANA HIGH SCHOOL; CHABAD OF MARINA; and BAIS CHAYA MUSHKA,<br><br>                    Defendants. | CASE NO. 2:10-cv-01056-MCE-EFB<br><br>**UNITED STATES' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT CHABAD OF MARINA**<br><br>[Fed. R. Civ. P. 56; Local Rule 260]<br><br>Date:  August 21, 2014<br>Time:  2:00 p.m.<br>Courtroom:  7<br>Judge:  Hon. Morrison C. England, Jr.<br>Trial:  January 5, 2015 |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260(a), the UNITED STATES submits the following Statement of Undisputed Material Facts in support of the Motion for Summary Judgment, or, Alternatively, Partial Summary Judgment against Defendant CHABAD OF MARINA.

///

///

A. **Marina's NSG Program Grant**.

| Material Facts | Evidence |
|---|---|
| 1. For the purpose of applying for an NSG Program Grant, the Board of Directors for Chabad of Marina ("Marina") passed and adopted a Resolution naming Dr. David Sternlight ("Dr. Sternlight") and Rabbi Danny Yiftach-Hashem ("Rabbi Yiftach-Hashem") as authorized representatives of Marina in all matters pertaining to the grant application. | 2. Resolution [US002140-41], Ex. "23" to to the Declaration of Amber Lane ("Lane Decl."); and<br><br>Declaration of Amber Lane ("Lane Decl."), para. 4 (authenticating Ex. "23"). |
| 2. For the purpose of applying for an NSG Program Grant, Marina's authorized representative, Rabbi Yiftach-Hashem, executed a document entitled Grant Assurances, a true and correct copy of which is attached as Exhibit "31" to the Notice of Lodgment. | 2. Marina Grant Assurances [US000113-18], Ex. "31" to the Lane Decl.;<br><br>Lane Decl., para. 4 (authenticating Ex. "31");<br><br>Transcript of Deposition of Jan Yeftadonay, aka Rabbi Danny Yiftach-Hashem ("Yiftach Depo."), Ex. "12" to the Declaration of Glen F. Dorgan ("Dorgan Decl."), 7:16-8:18, 29:25-30:22 (confirming that Jan Yeftadonay is also known as Rabbi Danny Yiftach-Hashem, authenticating Ex. "31," and confirming it was signed on behalf of Marina). |
| 3. On or about October 10, 2008, the California Governor's Office of Homeland Security, which was later merged into the California Emergency Management Agency and is referred to herein as "Cal EMA," notified Marina that it was awarded NSG Program Grant No. 2008-0005/037-90842 ("the Marina Grant"), in the amount of $72,750, and Cal EMA established a performance period of October 9, 2008, through May 31, 2010. | 3. Notification of Subgrantee Award [US002165], Ex. "24" to Lane Decl.;<br><br>Lane Decl., para. 4 (authenticating Ex. "24"); and<br><br>Declaration of Catherine Lewis ("Lewis Decl."), para. 2 (explaining OHS' merger into Cal EMA). |

B.  **The NSG Program Terms and Conditions**.

| Material Facts | Evidence |
|---|---|
| 4.  As a condition to participating in the NSG Program, Marina agreed to be bound by and comply with the Uniform Administrative Requirements for Grants and Cooperative Agreements (including sub-awards) with Institutions of Higher Learning, Hospitals and other Non-Profit Organizations, commonly referred to as "OMB Circular A-110" and codified at 28 CFR Part 70. | 4.  Marina Grant Assurances [US000113-18], Ex. "31" to the Lane Decl., p. US000116, para. 16.o. |
| 5.  As a condition to participating in the NSG Program, Marina agreed to be bound by and comply with the Urban Areas Security Initiative Nonprofit Security Grant Program Guidance and Application Kit dated February 2008 ("Federal Guidance"), a true and correct copy of which is attached as Exhibit "33" to the Notice of Lodgment. | 5.  Marina Grant Assurances [US000113-18], Ex. "31" to the Lane Decl., p. US000117, para. 20; Federal Guidance [US000001-36], Ex. "33" to the Lane Decl. (Ex. "A" to FAC); and Lane Decl., para. 6 (authenticating Ex. "33"). |
| 6.  As a condition to participating in the NSG Program, Marina agreed to be bound by and comply with the Governor's Office of Homeland Security Fiscal Year 2008 Urban Area Security Initiative Nonprofit Security Grant Program, California Supplement ("California Supplement"), a true and correct copy of which is attached as Exhibit "34" to the Notice of Lodgment. | 6.  Marina Grant Assurances [US000113-18], Ex. "31" to the Lane Decl., p. US000117, para. 20; California Supplement [US000037-48], Ex. "34" to the Lane Decl. (Ex. "B" to FAC); Lane Decl., para. 6 (authenticating Ex. "34"); and Marina's Responses to United States' Requests for Admissions, Set No. 1 ("Marina RFA Responses"), Ex. "8" to the Dorgan Decl., Request No. 11 (authenticating Ex. "34"). |
| 7.  As a condition to participating in the NSG Program, Marina agreed to be bound by and comply with the Office of Justice Program's Financial Guide dated 2006 ("OJP Guide"), a true and correct copy of which is attached as Exhibit "35" to the Notice of Lodgment. | 7.  Marina Grant Assurances [US000113-18], Ex. "31" to the Lane Decl., p. US000117, para. 19; OJP Guide [US000049-79], Ex. "35" to the Dorgan Decl. (Ex. "C" to FAC); and Marina RFA Responses, Ex. "8" to the Dorgan Decl., Request No. 13 (authenticating Ex. "35"). |

C.     **Marina's Grant Drawdown**.

| Material Facts | Evidence |
|---|---|
| 8.  On or about October 29, 2009, Marina submitted a claim to Cal EMA seeking a drawdown of $72,750 from the Marina Grant, a true and correct copy of which is attached as Exhibit "39" to the Notice of Lodgment, based on representations that the Marina Grant Project would generate costs of $58,675 for video surveillance equipment installed by Elite Interactive Solutions ("Elite") and $14,075 for a security fence extension by a separate vendor during the expenditure period of September 1, 2009, through March 1, 2010. | 8.  Marina Project Ledger [US000926-928], Ex. "39" to the Dorgan Decl., pp. US000926 (identifying "Amount This Request," "Expenditure Period," and scope of work), US000928 (identifying date of request and certifications), and US000927 (identifying vendors); and<br><br>Yiftach Depo., Ex. "16" to the Dorgan Decl., 54:17-56:22 (authenticating Ex. "39") |
| 9.  On or about December 1, 2009, in reliance on Marina's certifications in its Grant Assurances that it was in compliance with the financial management standards required by the NSG Program terms and conditions, and in further reliance on Marina's re-certification in the drawdown request, Cal EMA approved the drawdown request and the State of California paid $72,750 in federal grant funds to Marina. | 9.  Marina's Responses to United States' Interrogatories, Set No. 1 ("Marina Interrogatory Responses"), Ex. "9" to the Dorgan Decl., Interrogatory No. 3, p. 4 (Admission No. 18) (confirming a "check in the sum of $72,750 was paid to "Chabad Jewish Community Center" on December 1, 2009 and mailed to "Chabad Jewish Community Center Attn: David Sternlight");<br><br>Marina Initial Disclosures, Ex. "10" to the Dorgan Decl., p. 0001 (producing copy of check issued to Chabad Jewish Community Center and deposit slip);<br><br>Yiftach Depo., Ex. "16" to the Dorgan Decl., 115:10-117:12 (authenticating documents attached to Initial Disclosures, Ex. "10," and confirming Marina received the $72,750 through a check dated December 1, 2009, and deposited the check in Marina's Chase account on December 8, 2009); and<br><br>Declaration of Peter Town ("Town Decl."), paras. 2-5 (confirming Cal EMA's reliance on the Grant Assurances and drawdown). |

Separate Statement of Undisputed Material Facts in Support of Partial MSJ Against Chabad of Marina

4

D.     **Marina Pays Wolf Bros., Transfers $50,000 to Chabad, and Retains $8,675**.

| Material Facts | Evidence |
| --- | --- |
| 10. As of October 29, 2009, the date of its drawdown claim, Marina entered into an agreement with Defendant CHABAD OF CALIFORNIA ("Chabad") that included the following terms: (1) Chabad would have sole responsibility for selecting, supervising and paying vendors hired to perform the security improvements; (2) Chabad would direct the timing of all drawdown requests against the grants; and (3) all funds received by the Marina through its drawdown requests would be transferred to, and held and managed by, Chabad. | 10. Marina RFA Responses, Ex. "8" to Dorgan Decl., Request No. 17; Transcript of Deposition of Boruch Shlomo Cunin, Volume 1 (Cunin Depo. 1), Ex. "11" to Dorgan Decl., 10:24-11:1 (confirming Rabbi Cunin's employment as President of Chabad), 103:9-17, 108:13-109:4 (funds were to be transferred to Chabad); Transcript of Deposition of Rabbi Boruch Shlomo Cunin, Volume 2 ("Cunin Depo. 2"), Ex. "12" to the Dorgan Decl., 144:18-145:18, 146:13-147:12, 149:2-23, 150:22-151:13, 211:12-212:6, 212:12-213:5; and Yiftach-Hashem Depo., Ex. "16" to the Dorgan Decl., 25:20-27:23. |
| 11. On or about September 9, 2009, Marina paid vendor Wolf Bros. the amount of $7,000 for fence extensions installed within the scope of the Marina Grant Project. | 11. Marina RFA Responses, Ex. "8" to the Dorgan Decl., Request No. 23; Marina Initial Disclosures, Ex. "10" to the Dorgan Decl., pp. H-6 [0003] through H-9 [0006] (producing copies of checks to Wolf Bros.); and Yiftach-Hashem Depo., Ex. "16" to the Dorgan Decl., 59:10-15, 96:12-97:7, 118:6-119:5. |
| 12. On or about December 15, 2009, Marina paid vendor Wolf Bros. the amount of $7,075 for fence extensions installed within the scope of the Marina Grant Project. | 12. Marina RFA Responses, Ex. "8" to the Dorgan Decl., Request No. 24; Marina Initial Disclosures, Ex. "10" to Dorgan Decl., pp. H-6 [0003] through H-9 [0006] (producing copies of checks to Wolf Bros.); and Yiftach-Hashem Depo., Ex. "16" to Dorgan Decl., 59:10-15, 96:12-97:7, 118:6-119:5. |

| | |
|---|---|
| 13. On or about December 17, 2009, Marina transferred $50,000 of its receipts from the Marina Grant to Chabad. | 13. Marina RFA Responses, Ex. "8" to Dorgan Decl., Request No. 20; <br><br> Marina Initial Disclosures, Ex. "10" to Dorgan Decl., p. H-10 [0007] (producing proof of wire transfer from Marina to Chabad); and <br><br> Yiftach Depo., Ex. "16" to Dorgan Decl., 98:14-99:23, 119:8-15. |
| 14. On the same day the transfer was made, Chabad deposited the $50,000 grant fund transfer into a checking account with Comerica Bank bearing an account number ending in 4361 ("Account 4361"). | 14. Marina Initial Disclosures, Ex. "10" to Dorgan Decl., p. H-10 [0007] (producing proof of wire transfer from Marina to Chabad and identifying Account *4361 as the receiving account); <br><br> Bank Statement for Acct. *4361 [CH000531-33], Ex. "43" to Dorgan Decl., pp. CH000532; <br><br> United States' Request for Production, Set No. 1, to Chabad ("Chabad RFP"), Ex. "4" to Dorgan Decl., Request No. 21; <br><br> Chabad's Responses to Chabad RFP ("Chabad RFP Response"), Ex. "5" to Dorgan Decl., Request No. 21; and <br><br> Dorgan Decl., para. 6 (confirming documents produced by Chabad). |
| 15. As of December 17, 2009, following the payments to Wolf Bros. and the transfer of $50,000 to Chabad, Marina held $8,675 in federal grant funds issued under the Marina Grant. | 15. Marina RFA Responses, Ex. "8" to Dorgan Decl., Request No. 26. |
| 16. Marina retained the $8,675 in federal grant funds as an offset to satisfy a non-grant debt owed by Chabad to Marina, and, in exchange, it was Marina's expectation that Chabad would be responsible for paying $58,675 to vendors for the remaining work on the Marina Grant Project. | 16. Yiftach Depo., Ex. "16" to Dorgan Decl., 99:19-101:2, 120:5-122:13. |

### E. Marina and Chabad Failed to Comply with Financial Management Standards.

| Material Facts | Evidence |
|---|---|
| 17. Marina's Director, Rabbi Danny Yiftach-Hashem deferred to Chabad and Dr. Sternlight to ensure compliance with the NSG Program terms and conditions. | 17. Yiftach Depo., Ex. "16" to Dorgan Decl., 32:20-34:25, 35:9-21, 37:3-38:8, 40:1-11. |
| 18. During the period of May 2008 through December 2012, Chabad did not have written procedures to provide for control over and accountability for all funds received under the NSG Program in order to adequately safeguard all such funds and assure they were used solely for authorized purposes as required by 28 CFR 70.21(b)(3) and 70.22(b). | 18. United States' Requests for Admissions, Set No. 2, to Chabad ("Chabad RFA 2"), Ex. "6" to Dorgan Decl., Request No. 16; Dorgan Decl., para. 4 (RFA responses are deemed admitted); Cunin Depo. 1, Ex. "11" to Dorgan Decl., 57:20-58:18, 63:1-66:4, 68:2-15, 69:5-18, 72:16-19, 112:8-25, 115:4-117:12, 118:3-16; and Cunin Depo. 2, Ex. "12" to Dorgan Decl., 227:17-228:5, 263:18-264:12. |

### F. Compliance with Financial Management Standards was Material to Cal EMA.

| Material Facts | Evidence |
|---|---|
| 19. On the date Cal EMA approved Marina's drawdown request for $72,750 from the Marina Grant, Cal EMA was unaware that Marina had entered into an agreement with Chabad whereby Marina agreed to transfer grant advances to Chabad and Chabad agreed to manage the Marina Grant project by selecting, supervising and paying the vendors hired to perform the work within the scope of the Marina Grant project. | 19. Town Decl., paras. 2-5; and Lewis Decl., para. 5. |

| Material Facts | Evidence |
|---|---|
| 20. On the date Cal EMA approved Marina's drawdown request for $72,750 from the Marina Grant, Cal EMA was unaware that neither Marina nor Chabad had written procedures to provide for control over and accountability for all funds received under the NSG Program in order to adequately safeguard all such funds and assure they were used solely for authorized purposes as required by 28 CFR 70.21(b)(3) and 70.22(b). | 20. Town Decl., paras. 2-5. |
| 21. Had Cal EMA known that (1) Marina had entered into an agreement with Chabad whereby Marina agreed to transfer grant advances to Chabad and Chabad agreed to manage the Marina Grant project by selecting, supervising and paying the vendors hired to perform the work within the scope of the Marina Grant project; and (2) the parties in receipt of the Marina Grant funds did not have written procedures to provide for control over and accountability for all funds received under the NSG Program in order to adequately safeguard all such funds and assure they were used solely for authorized purposes as required by 28 CFR 70.21(b)(3) and 70.22(b), Cal EMA would not have approved the transfer of the grant funds. | 21. Town Decl., paras. 2-5. |

**G.    Marina and Chabad Failed to Timely Pay Elite in Full**.

| Material Facts | Evidence |
|---|---|
| 22. Other than the payments to vendor Wolf Bros., no other payments have been made to vendors, including Elite, for work performed on the Marina Grant Project, because no additional work has been performed. | 22. Yiftach Depo., Ex. "16" to Dorgan Decl., 59:10-18, 61:22-62:4; Cunin Depo. 2, Ex. "12" to Dorgan Decl., 232:7-233:5; United States' Requests for Admissions, Set No. 1, to Chabad ("Chabad RFA 1"), Ex. "1" to Dorgan Decl., Request No. 63; and Dorgan Decl., para. 3 (RFA responses are deemed admitted). |

H.     **Chabad Misappropriated $50,000**.

| Material Facts | Evidence |
|---|---|
| 23.  The only two accounts used by Chabad to hold NSG Program grant funds were Account 4361 and a checking account with Comerica Bank bearing an account number ending in 3744 ("Account 3744") (collectively the "Comerica Accounts"). | 23. United States' Interrogatories to Chabad of California, ("Chabad Interrogatories"), Ex. "2" to Dorgan Decl., Request No. 1; <br><br>Response to Chabad Interrogatories, Ex. "3" to Dorgan Decl., Request No. 1; and <br><br>Transcript of Deposition of Yoel Edelson, Volume 2 ("Edelson Depo. 2"), Ex. "14" to Dorgan Decl., pp. 146:13-156:3. |
| 24.  The Comerica Accounts were used by Chabad to hold money received from non-grant sources and to pay Chabad's non-grant related operating expenses, including employee payroll, building repairs, mortgages, and utility expenses. | 24.  Cunin Depo. 1, Ex. "11" to Dorgan Decl., 118:3-16; and <br><br>Transcript of Deposition of Yoel Edelson, Volume 1 ("Edelson Depo. 1"), Ex. "13" to Dorgan Decl., pp. 24:22-27:20, 32:8-33:9, 34:5-18. |
| 25.  Between December 17, 2009, and December 21, 2009, Chabad withdrew $50,000 in Marina Grant advances from the Comerica Accounts for non-grant purposes. | 25.  Declaration of Karl Erik Volk ("Volk Decl."), paras. 4-11, 12.D.-E.; <br><br>Volk Expert Report, Ex. "47" to Volk Decl., p. US002611-12; <br><br>Comerica Account Summary Detail, Ex. "48" to Volk Decl., p. 5; <br><br>Bank Statements for Acct. *3744 [US002569-2605], Ex. "45" to Dorgan Decl.; <br><br>Bank Statements for Acct. *4361 [US002501-2568], Ex. "46" to Dorgan Decl.,; and <br><br>Comerica Letter in Response to Subpoena and Declaration of Custodian, Ex. "44" to Dorgan Decl. |

I. **Marina and Chabad Acted Recklessly and/or with Deliberate Ignorance**.

| Material Facts | Evidence |
|---|---|
| 26. Rabbi Boruch Shlomo Cunin ("Rabbi Cunin"), Chabad's President, was the individual at Chabad solely responsible for determining when to seek a grant drawdown, when to pay vendors, and how to manage advances. | 26. Cunin Depo. 1, Ex. "11" to Dorgan Decl., 10:24-11:1, 65:7-13, 94:12-20, 103:9-17, 104:23-106:20, 118:20-119:4, 120:22-24, 122:2-4; Cunin Depo. 2, Ex. "12" to Dorgan Decl., 211:12-212:6, 212:12-213:5; and Transcript of Deposition of David Sternlight, PhD ("Sternlight Depo."), Ex. "15" to Dorgan Decl., 69:2-70:13, 83:13-18. |
| 27. Between 2008 and 2010, Dr. Sternlight was a consultant who assisted Rabbi Cunin with the NSG Program grants. | 27. Sternlight Depo., Ex. "15" to Dorgan Decl., 20:13-22, 23:20-25:4, 131:16-133:6. |
| 28. Dr. Sternlight was the only individual associated with Chabad and Marina who underwent training concerning the NSG Program. | 28. Sternlight Depo., Ex. "15" to Dorgan Decl., 25:21-26:8; Cunin Depo. 1, Ex. "11" to Dorgan Decl., 36:3-40:2, 103:16-24; and Yiftach Depo., Ex. "16" to Dorgan Decl., 31:23-32:19. |
| 29. On or about October 7, 2009, Dr. Sternlight sent an email to Rabbi Cunin and Rabbi Yiftach-Hashem that stated, "Under Homeland Security rules Chabad of California will have 120 calendar days from the date on the California Treasurer's advance check (not the date it is received) to perform and complete the project installation and submit the final invoice information offsetting the cash advance. PLEASE DO NOT FORGET THIS." | 29. Chabad Emails, Ex. "49" to Dorgan Decl. (Ex. "D" to Cunin Depo. 2), pp. CH000549-550; Chabad RFP, Ex. "4" to Dorgan Decl., Request Nos. 6-18; Chabad RFP Response, Ex. "5" to Dorgan Decl., Request Nos. 6-18; Dorgan Decl., para. 6 (confirming documents produced by Chabad); and Cunin Depo. 2, Ex. "12" to Dorgan Decl., 188:9-189:14, 191:10-194:4 (confirming documents produced by Chabad). |

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 | 30.  On or about October 20, 2009, Dr. Sternlight sent an email to Rabbi Cunin and Rabbi Yiftach-Hashem that stated, "For those who are curious, according to the Office of Homeland Security the 120 days after the issuance of the check, for the project to be completed and fully reported, is because they do not charge interest on the cash advance, and 120 days is the longest a State agency can do this under California law.  Thus this is a firm period and they can't give extensions." | 30.  Chabad Emails, Ex. "49" to Dorgan Decl., pp. CH000548-549; <br><br>Chabad RFP, Ex. "4" to Dorgan Decl., Request Nos. 6-18; <br><br>Chabad RFP Response, Ex. "5" to Dorgan Decl., Request Nos. 6-18; <br><br>Dorgan Decl., para. 6 (confirming documents produced by Chabad); and <br><br>Cunin Depo. 2, Ex. "12" to Dorgan Decl., 188:9-189:14, 191:10-194:4 (confirming documents produced by Chabad). |
| 11 12 13 14 | 31.  Dr. Sternlight had no involvement with the management of the grant funds received by Chabad. | 31.  Sternlight Depo., Ex. "15" to Dorgan Decl., 25:5-26:1, 39:19-25, 56:9-23, 83:10-18; and <br><br>Cunin Depo. 1, Ex. "11" to Dorgan Decl., 36:3-39:9. |
| 15 16 17 18 19 | 32.  Dr. Sternlight was never informed by Chabad that it had failed to pay any vendors for work performed on the grants at issue after drawdown funds were received and throughout most of 2010.  Had Dr. Sternlight known, he would have "reminded them in strong—very strong terms that you don't mess with Uncle Sam." | 32.  Sternlight Depo., Ex. "15" to Dorgan Decl., 69:15-70:13, 74:19-75:4. |
| 20 21 22 23 24 25 26 27 28 | 33.  Dr. Sternlight was never informed by Chabad that the grant funds at issue herein were misappropriated and used to pay for Chabad's non-grant expenses.  Had Dr. Sternlight known, he "would have objective vehemently." | 33.  Sternlight Depo., Ex. "15" to Dorgan Decl., 134:11-15. |

Separate Statement of Undisputed Material Facts in Support of Partial MSJ Against Chabad of Marina

11

**J.      Marina Failed to Repay $58,675.**

| Material Facts | Evidence |
|---|---|
| 34.  When Marina applied for the Marina Grant, it identified Dr. Sternlight as its agent and point of contact. | 34.  Resolution [US002140-41], Ex. "23" to Lane Decl.;<br><br>Marina Application Cover Sheet [US002148], Ex. "22" to Lane Decl.; and<br><br>Lane Decl., para. 4 (authenticating Exs. "22" and "23"). |
| 35.  By letter dated April 23, 2010, a true and correct copy of which is attached as Exhibit "52" to the Notice of Lodgment, Cal EMA advised Dr. Sternlight that it was conducting a review of the Marina Grant, and Cal EMA demanded that Marina produce all records of its management of the grant advances as well as copies of Marina's written policies "ensur[ing] control over and accountability for grant funds." | 35.  Letter of April 23, 2010 [US000974-76], Ex. "52" to Lewis Decl., p. US000976 (identifying grants subject to review and records requested); and<br><br>Lewis Decl., para. 5 (authenticating Ex. "52"). |
| 36.  On June 1, 2010, Marina presented its written response to Cal EMA's April 23, 2010, document request, a true and correct copy of which is attached as Exhibit "41" to the Notice of Lodgment. | 36.  June 1 Accounting Letter [CH000053-227], Ex. "41" to Lewis Decl.; and<br><br>Lewis Decl., para. 6 (authenticating Ex. "41"). |
| 37.  On November 1, 2010, Cal EMA issued a demand to Marina by letter to Dr. Sternlight seeking Defendants' repayment of $612,066 in grant funds, which included the $58,675 in grant funds that Marina and Chabad failed to timely pay to Elite. | 37.  November 1 Letter [US001245-47], Ex. "53" to Lewis Decl.; and<br><br>Lewis Decl., para. 8 (authenticating Ex. "53" and confirming demand sought the repayment of grant funds at issue herein). |
| 38.  On May 2, 2011, Cal EMA issued a demand to Marina by letter to Dr. Sternlight seeking Defendants' repayment of $598,118.17 in grant funds, which included the $58,675 in grant funds that Marina and Chabad failed to timely pay to Elite. | 38.  May 2 Letter [US001218], Ex. "54" to Lewis Decl.; and<br><br>Lewis Decl., para. 10 (authenticating Ex. "54" and confirming demand sought the repayment of grant funds at issue herein). |

| | |
|---|---|
| 39. At no time has Marina or Chabad made any payment to Cal EMA to reimburse grant funds. | 39. Cunin Depo. 2, Ex. "12" to Dorgan Decl., 256:3-257:17; and<br><br>Lewis Decl., para. 11 (confirming no payments received in response to Exs. "53" and "54"). |

Date: June 26, 2014

Respectfully submitted,

    BENJAMIN B. WAGNER
    United States Attorney

By /s/ Glen F. Dorgan
    GLEN F. DORGAN
    Assistant United States Attorney