BENJAMIN B. WAGNER
United States Attorney
KELLI L. TAYLOR
GLEN F. DORGAN
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, California  93721
(559) 497-4080 (telephone)
(559) 497-4099 (facsimile)

Attorneys for the Plaintiff UNITED STATES

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ARIA KOZAK and DONNA KOZAK,<br><br>                    Plaintiff,<br><br>v.<br><br>CHABAD-LUBAVITCH INC.; CHABAD OF CALIFORNIA; CHABAD RUNNING SPRINGS RESIDENTIAL CAMP; CHABAD CHEDER MENACHEM; YESHIVA OHR ELCHONON CHABAD; BAIS CHANA HIGH SCHOOL; CHABAD OF MARINA; and BAIS CHAYA MUSHKA,<br><br>                    Defendants. | CASE NO. 2:10-cv-01056-MCE-EFB<br><br>**DECLARATION OF KARL ERIK VOLK, M.A., IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56; Local Rule 260]<br><br>Date:  August 21, 2014<br>Time:  2:00 p.m.<br>Courtroom:  7<br>Judge:  Hon. Morrison C. England, Jr.<br>Trial:  January 5, 2015 |

I, Karl Erik Volk, declare as follows:

1.      I am a financial and statistical economist, and I am employed as Senior Managing Economist with Cohen | Volk Economic Consulting Group.  I have personal knowledge of the following facts and, if called as a witness, could and would competently testify thereto.

2.      I have been retained by the United States in this case to offer expert opinions regarding my financial analysis of Chabad of California's management of federal grant funds issued under the Nonprofit Security Grant Program ("NSG Program").  On May 5, 2014, I issued a report of my expert

1   opinions pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, and a true and correct copy

2   of my report is attached hereto as Exhibit 47.

3          3.      I received my Bachelors of Science in Business Administration in 1986 from the

4   University of California at Berkeley.  In 2007, I earned a Masters of Arts in Economics from the

5   University of San Francisco.  Since 2005, I have been employed as an economist with Cohen | Volk

6   Economic Consulting Group, where I specialize in the valuation of economic losses in business, personal

7   injury, wrongful death and labor litigation.  A true and correct copy of my Curriculum Vitae is attached as

8   Exhibit 4 to my expert report, Exhibit 47 hereto.

9          4.      In preparing my expert report, and as a basis for the opinions expressed in my expert report

10  and in this declaration, I reviewed a substantial amount of material that included deposition transcripts,

11  bank records, grant records and correspondence between Chabad of California ("Chabad") and Cal EMA.

12  A complete list of the records I have reviewed is set out at pages 1 and 2 of my expert report, Exhibit 47

13  hereto.  Based on these records, I undertook to trace the "net grant advances" received by Chabad to

14  ascertain whether and to what extent Chabad retained each advance as of April 12, 2010.

15         5.      I use the terms "net grant advance" to describe the sum calculated by taking the total grant

16  drawdown received by Chabad for a specific grant project, either directly from Cal EMA or as a transfer

17  from another grantee, and subtracting the aggregate of all payments made to the vendors on that project

18  prior to Chabad's receipt of the drawdown.  For example, on the Running Springs Grant Project, Chabad

19  received a drawdown of $66,725 in or about June 2009 for the purpose of paying $1,050 to vendor Larry

20  Clayton and $65,675 to vendor Elite Interactive Solutions ("Elite").  Before the request was made,

21  Chabad paid Larry Clayton in full.  After the request was made, but before Chabad received the grant

22  funds, Chabad paid $2,000 to Elite.  Accordingly, on July 16, 2009, when Chabad received the grant

23  funds from Cal EMA, the amount of the funds that represented a "net grant advance" was $63,675

24  ($66,725 - $1,050 - $2,000 = $63,675).

25         6.      As detailed in my report, at pages 2 through 4 of Exhibit 47 hereto, I previously calculated

26  that Chabad of California received the following net grant advances for each project:  (a) $63,675 for

27  Running Springs as of July 16, 2009; (b) $64,070 for Gayley as of September 9, 2009; (c) $22,000 for

28  ///

Yeshiva Ohr as of December 15, 2009; (d) $50,000 for Marina as of December 17, 2009; and (e) $72,750 for Bais Chana as of December 21, 2009.

7.      I am informed and believe that Chabad made no additional payments to authorized vendors following the receipt of the net grant advances and prior to April 12, 2010.  I am also informed and believe that the Comerica accounts ending in 3744 and 4361 ("the Comerica Accounts") were the only two accounts used by Chabad to hold NSG Program funds, and that Chabad commingled the grant funds with funds it received from other sources.  Based on this information, I applied the "lowest intermediate balance rule" to trace the net grant advances to determine whether and when Chabad withdrew the net grant advances from the combined accounts for non-grant activities.

8.      To trace the retention of net grant advances using the lowest intermediate balance rule, I reviewed the bank statements for the Comerica Account ending in 3744 and the bank statements for the Comerica Account ending in 4361 (Exhibits 45 and 46 to the Declaration of Glen F. Dorgan).  From these documents, I created an Excel spreadsheet that re-creates the daily balances in the Comerica Accounts for the period of June 1, 2009 through May 31, 2010.  A true and correct copy of the spreadsheet is attached as Exhibit 3 to my report, Exhibit 47, and a true and correct copy of the spreadsheet is reproduced for ease of reference as Exhibit 48 to this declaration.

9.      The Comerica Account records reflect a number of transfers between the Comerica account ending in 3744 and the account ending in 4361.  To evaluate whether net grant advances were retained by Chabad notwithstanding a deposit into, for example, the Comerica account ending in 3744 and a later transfer of funds to the Comerica account ending in 4361, the Excel spreadsheet includes a column that calculates the combined end-of-day balance for both accounts.

10.     After calculating the combined end-of-day balances for both the Comerica account ending in 3744 and the Comerica account ending in 4361, I noted when the deposits of net grant advances were made into the combined accounts.  My tracing process for each net grant advance begins on the date that the net grant advances were made into the accounts where the funds were deposited.

11.     The lowest intermediate balance rule addresses the treatment of commingled funds based on certain assumptions.  With respect to the withdrawal of account funds (in this case, combined account funds), a primary assumption of the "lowest intermediate balance rule" is that non-grant funds are

assumed to have been withdrawn first and grant funds are withdrawn second.  If the combined account balances on deposit at all times after the deposits of the grant funds equaled or exceeded the amount of grant funds deposited, the rule applies to confirm that Chabad retained, and never withdrew, the grant funds.  If, on the other hand, combined account balances on deposit are exhausted by withdrawals before subsequent increases in combined account balances resulting from deposits of funds from non-grant sources, the rule applies to confirm that grant funds were withdrawn for non-grant purposes and were no longer retained by Chabad.

12.     Based on the foregoing, I have reached the following conclusions:

A.     Chabad deposited $63,675 in net grant advances on the Running Springs project on July 16, 2009.  The combined closing balance for the Comerica Accounts as of July 16, 2009, was -$5,408.94.  The $63,675 in net grant advances, therefore, was withdrawn for non-grant purposes no later than July 16, 2009.  *See* Ex. 48 hereto, p. 2.

B.     Chabad deposited $64,070 in net grant advances on the Chabad Gayley project on September 9, 2009.  The combined closing balance for the Comerica accounts as of September 9, 2009, was $355,688.96.  *See* Ex. 48 hereto, p. 3.  This combined balance dropped to $21,768.79 by September 11, 2009.  *Id.*  $42,301.21 in net grant advances, therefore, was withdrawn for non-grant purposes no later than September 11, 2009.  By October 6, 2009, the combined balance was -$2,122.67.  *See* Ex. 48 hereto, p. 4.  The remaining $21,768.79 in net grant advances, therefore, was withdrawn for non-grant purposes no later than October 6, 2009.

C.     Chabad deposited $22,000 in net grant advances on the Yeshiva Ohr project on December 15, 2009.  The combined closing balance for the Comerica accounts as of December 15, 2009, was $72,362.84.  *See* Ex. 48 hereto, p. 5.  This combined balance dropped to $976.10 on December 16, 2009.  *Id.*  $21,023.90 in net grant advances, therefore, was withdrawn for non-grant purposes no later than December 16, 2009.

D.     Chabad deposited $50,000 in net grant advances on the Marina project on December 17, 2009, and these funds were commingled with the $976.10 in remaining net grant advances on the Yeshiva Ohr grant project.  The combined closing balance for the Comerica accounts as of December 17, 2009, was $36,894.57.  *See* Ex. 48 hereto, p. 5.  The remaining $976.10 in net grant

1   advances for the Yeshiva Ohr project, and $13,105.43 in net grant advances for the Marina project,

2   therefore, was withdrawn for non-grant purposes no later than December 17, 2009.  The combined

3   balance dropped to $23,252.50 on December 18, 2009.  *Id.*  An additional $13,642.07 in net grant

4   advances for the Marina project, therefore, were withdrawn for non-grant purposes no later than

5   December 18, 2009.

6         E.    Chabad deposited $72,750 in net grant advances on the Bais Chana project on

7   December 21, 2009, and these funds were commingled with the $23,252.50 in remaining net grant

8   advances on the Marina grant project.  The combined closing balance for the Comerica accounts as of

9   December 21, 2009, was $47,453.18.  *See* Ex. 48 hereto, p. 5.  The remaining $23,252.50 in net grant

10  advances for the Marina grant project, and $25,296.82 in net grant advances for the Bais Chana project,

11  therefore, was withdrawn for non-grant purposes no later than December 21, 2009.  The combined

12  balance dropped to $18,199.05 on January 12, 2010, $1,671.47 on February 24, 2010, $14.28 on March 4,

13  2010, and -$290.50 on April 9, 2010.  *See* Ex. 48 hereto, pp. 6-8.  The remaining $47,453.18 in net grant

14  advances for the Bais Chana project, therefore, was withdrawn for non-grant purposes no later than April

15  9, 2010.

16        F.    Chabad did not retain any of the net grant advances as of April 12, 2010.

17      I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

18  Executed at Walnut Creek, California.

19  Date:  June 26, 2014

20

21                              KARL ERIK VOLK

22

23

24

25

26

27

28