# EXHIBIT 41



CHABAD

בס״ד

June 1, 2010

CalEMA
Grants Monitoring Division
3650 Schriever Avenue
Mather, CA 95655

Re:    <u>Notice of Documentation Request Dated Apr 23, 2010</u>

To Whom It May Concern:

I was asked by Chabad of California to assist them in compiling their response to the above referenced Document Request.  It is my pleasure to accomplish this and I am doing so on an unpaid volunteer basis.  They understand your obligation under certain sections of the *Single Audit Act* and *Office of Management and Budget (OMB) Circular A-133, Audits of State, Local Governments, and Non-Profit Organizations* to monitor subrecipients as necessary to ensure that Federal awards are properly expended.  It is their desire to completely fulfill their obligations and responsibilities in assisting your office in these monitoring activities.  I believe that the content of the enclosed binder provides a complete answer to your Document Request.

Before reading and absorbing the information in this response the following points are noteworthy as an introduction.

<u>Different Entities</u>    You have requested information on ten different contracts that were awarded to seven distinct legal entities, 1) Chabad of California (The Chabad National Residential Treatment Center is a division of Chabad of California) 2) Bais Chana High School, 3) Bais Chaya Mushka School, 4) Chabad of Marina Del Rey, 5) Chabad of Beverlywood, 6) Cheder Menachem School, 7) Yeshiva Ohr Elchonon Chabad.
Though Chabad of California and the other entities share common elements in their mission, Chabad of California is a distinct legal entity, different and separate, from the other subrecipients.  Chabad of California does not control the other entities and therefore the other entities are not included in Chabad of California's consolidated financial statements.

CH000053

Method of Accounting for Grant   None of these other entities will necessarily have common accounting systems or financial controllers.  Thus, for example, you will see that some entities may use a double entry system of accounting while others may use a single entry system.  For the purpose of recording these grants however, all of the entities utilize accrual based accounting.

Joining in Procurement Effort   Notwithstanding the above, several of the entities relied on the expertise and experience of the procurement personnel employed by Chabad of California to select and manage the vendors and supervise the installation of the security systems paid for by the CalEMA grants.  The Chabad of California personnel have broad expertise in construction management;  examples include remodeling a 22,500 sq. ft. school building, designing and building a 59,000 sq. ft school building, and remodeling, including new construction, of over 80,000 sq. ft of buildings in Chabad of California's campus in Running Springs, California.
　　　　To build up the purchasing power of all the entities, the other entities paid or transferred the grant proceeds to Chabad of California.  This gave Chabad of California the ability to leverage the grant funds to purchase, for the entities, more than the individual entity could purchase on their own with only the funds from one grant.  Chabad of California also is able to ensure that the jobs are completed to the satisfaction of its procurement personnel before payments are passed on to the vendors.  Thus you may see that an outside vendor may consider that there is an open balance to their account with one of the entities even though the entity paid Chabad of California completely.  Thus, because Chabad of California is in-between the other subrecipients and some of the vendors, there may be the temporary situation of the vendor showing a balance due even though the subrecipient shows the charges under the contract as expended in full.  The payments from these entities to Chabad of California are not subawards.  Chabad of California is providing technical services for the other subrecipients.

Some Work Remains   The attached copies of emails from different vendors show there still was work to do when these vendors identified specific problems that prevent the referenced security systems' from properly functioning.  These issues still remain and these jobs are not yet considered complete to the satisfaction of Chabad of California; thus some funds still remain with Chabad of California.

CH000054

<u>Contracts: Services/Consultants</u>   In regard to requested item #5 (Contracts), this was addressed during the site visit on April 12, 2010 and I refer you to that.

<u>Fiscal/Administrative Policies</u>   All entities have adopted *OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations*, as their respective policies on fiscal/administrative and procurement procedures. We have included only one complete copy of this Circular (in deference to the cost of paper and the cost to the environment of including multiple copies). It is included with #2005-015/037-90820.

We respect your duty to request this information and to fulfill your oversight obligations to the Federal authorities who regulate these grants. It is our desire to completely fulfill our obligations and responsibilities undertaken when these entities accepted these grants. This includes providing this information in response to your documentation request. It also includes carrying out the end purpose of these grants by seeing the project installations through to completion in an effective manner.

If you need clarification of any of the information contained in this letter or the contents herein, please do not hesitate to contact Yoel Edelson at 310-208-7511 or by emailing him at yoel@chabad.com.

Sincerely,

Chaim Aaron Levin
Certified Public Accountant

CHABAD OF CALIFORNIA   741 GAYLEY AVENUE, LOS ANGELES, CA 90024-2410
310-208-7511    FAX 310 208-5811

CH000055

Attachment #1

**Yanky Baitelman**

| | |
|---|---|
| **From:** | jkozak@eliteinteractivesolutions.com |
| **Sent:** | Wednesday, December 30, 2009 2:42 PM |
| **To:** | Rabbi Yanky |
| **Cc:** | Arie Kozak |
| **Subject:** | Exterior DVR |

I have identified a "Hard-disk" error on the DVR that is not recording; not only is it not recording now, but it also will not show any past recordings.
The cause is that it likely hasn't been Formatted correctly in the first place.
The fix is to Format the drive, using telnet.

Sent from my Verizon Wireless BlackBerry

1

CH000056

**Yanky Baitelman**                                                     *Attachment #2*

| | |
|---|---|
| **From:** | Bill Bochman [bbochman@jmfiberoptics.com] |
| **Sent:** | Wednesday, December 02, 2009 11:21 AM |
| **To:** | yanky@chabad.com |
| **Cc:** | krivera@jmfiberoptics.com; 'Dr George R Rivera Jr'; akozak@eliteinteractivesolutions.com |
| **Subject:** | FW: Chabad Retreat Job |
| **Importance:** | High |
| **Attachments:** | CRC Fiber Map.pdf; Account Statement 12-01-09.pdf |

Dear Mr. Baleman:

Attached is the fiber map George Rivera submitted to Aria. Below is the job status report from George to Aria. Also attached is the account statement as of 12-01-09. The only person authorized to negotiate on account balances is Ken Rivera, President of JM Fiber Optics. We expect to be paid in full for worked performed in good faith. I believe the confusion regarding $9,800 came from Arias' question to George regarding completing the job for $9,800. George took this to mean finishing the portion not completed , not the portion already finished. I have asked George to provide an estimate for completion. It won't be $9800 but will be more than $500. If Alex or others at the Retreat can do some potholing to determine the conduit pathway, I'm sure an accurate estimate can be arrived at assuming there are no unanticipated snags. Please review the attached and below and let me know where we can go from here.

Sincerely,

Bill Bochman
Business Development Manager

JM Fiber Optics, Inc.
13941 Ramona Avenue, Suite A
Chino CA 91710-5428
Ph; 909-628-3445 - Ext. 17
Fax: 909-628-1990

E-Mail: bbochman@jmfiberoptics.com
Web: www.jmfiberoptics.com

JM Fiber Optics, Inc. is a certified SBA SMBE/SDBE
GSA Schedule #GS-35F-0328S; CMAS Schedule #3-07-70-1459A

---

**From:** Dr George R Rivera Jr [mailto:grriverajr@hotmail.com]
**Sent:** Friday, October 09, 2009 1:17 PM
**To:** Aria Kozak
**Cc:** Bill Bochman; Ken Rivera
**Subject:** FW: Chabad Retreat Job
**Importance:** High

5/28/2010

CH000057

Aria,

At the retreat center I have placed nine wall mount cabinets in different buildings, and have fuse spliced pigtail terminations at each of these locations. I reused the cabinet to fuse splice the cable directly through in the lodge and I fuse spliced the cable directly through at the outside enclosure by the art barn. This totals 72 fusion splices. I potholed and indentifed the art barn cable that required fusion splicing in the field. I back pulled and re-routed existing cut cable and ran conduit outside of the lodge splice point, hand trenching the conduit in place. I test connectivity in all cables, and excluding the connecting cable from the upper buildings I was able to establish that the cables passed light. I also reterminated the cables in Wasserman that went to the lodge. I also re-established the phone service that was interrupted during our inspections of the cable plant.

I did not rehabilitate any of the existing terminations in the hub building or the computer room.

The remaining section of the fiber plant involves the upper buildings at the retreat center (see diagram), which until completed wil leave those buildings without connectivity.

As you can see, the upper buildings are already fiber terminated, as well as all other sections of the retreat center. The final link is the connective fiber from the upper section to the administrative building (Wasserman). From the Wasserman building the upper section of the retreat center can then access the main fiber backbone to the rest of the campus infrastructure.

I have investigated the connective fiber by "potholing" along the suspected fiber route. This method, while labor intensive, is the best way to identify the conduit and fiber cable. Through potholing (where an exploratory hole is dug along the probable pathway every ten to twenty feet unearthing the conduit and thus tracing the fiber cable) the connectivity is established and the upper buildings can be "lit up". The Suspected and Desired Pathways (in red) is the remaining portion to be established.

I have determined the cable location to a fair degree; however, due to my hourly cost, it was deemed that others should complete the pathway investigation. On determining the end point of the connectivity cable I would return to complete the termination and bring the upper buildings on line. As of this point I do not know if anyone has continued to investigate the pathway via potholing any further than my last visit and cable identifications pothole. I had spoken to Alex a month ago concerning this, and had physically shown him where I left off in the process.

At the point of my departure the fiber plant was approximately 95% completed. On the eventual termination of the connectivity cable, the infrastructure will be 100% available to the retreat center for configuration using the appropriate switch fabric and jumper utilization at building termination points.

**Dr. George R. Rivera, Jr.**
PhD, MSTM, BSME, AA
BICSI RCDD
1(951) 491-1157



5/28/2010

CH000058

**im** EMAILING FOR THE GREATER GOOD
Join me

From: bbochman@jmfiberoptics.com
To: grriverajr@hotmail.com
Subject: FW: Chabad Retreat Job
Date: Fri, 9 Oct 2009 09:35:52 -0700

George:

Please get back with Aria about where you left off and what needs to done to complete the project.

Thanks,

Bill

**From:** Aria Kozak [mailto:akozak@eliteinteractivesolutions.com]
**Sent:** Wednesday, August 12, 2009 7:54 PM
**To:** Bill Bochman
**Subject:** Re: Chabad Retreat Job

All billing, Invoices and other related correspondance should go through me. I am still waiting to get a list of problems, repairs, a map of repairs from George.

----- Original Message -----
**From:** Bill Bochman
**To:** akozak@eliteinteractivesolutions.com
**Cc:** 'Dr George R Rivera Jr'
**Sent:** Wednesday, August 12, 2009 4:28 PM
**Subject:** Chabad Retreat Job

Aria:

Can you provide me with a contact name, phone number and complete address for the Retreat Camp in Running Springs?

Thanks,

Bill Bochman
Business Development Manager

JM Fiber Optics, Inc.
13941 Ramona Avenue, Suite A
Chino CA 91710-9065
Ph: (909) 628-3445 – Ext 17
Fax: (909) 628-1990

E-Mail: bbochman@jmfiberoptics.com

5/28/2010

CH000059

Web: www.jmfiberoptics.com

JM fiber Optics is a Certified SBA SMBE/SDBE
GSA Schedule #GS-35F-0328S; CMAS Schedule #3-07-70-2459A

*This e-mail transmission (and/or documents attached) may contain confidential information, which is protected by legal or work privilege.  This information is intended solely for the use of the named addressee(s), please notify the sender immediately if you are not the intended addressee(s) and do not disclose, copy or distribute the contents to any other person.*

5/28/2010

CH000060

# Documentation Request Check List

| Applicant | Chabad of California |
|---|---|
| Grant Award Number/FIPS# | 2005-0015 / 037-90820 |

Description of Accounting System: Double entry, computerized using Sage Pro software.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-001-000)

Expenditures for this Grant are recorded as Running Springs Improvements (GL account #15000-118-000)

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | | n/a |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000061

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-001-000 Through 40200-001-000**

| ccount Number | Description | Status |
|---|---|---|
| ccount Type: S01 Donations & revenues: | | |
| 0200-001-000 | Homeland Security Grant | A |

CH000062

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-118-000 Through 15000-118-000**

| Account Number | Description | Status |
|---|---|---|
| **Account Type:** A02 Fixed Assets, property: | | |
| 15000-118-000 | Running Springs, improvements | A |

CH000063

| Date | Payor | Amount | GL account |
|------|-------|--------|------------|
| 04/15/08 | State Of California | -4040.00 | 40200-001-000 |
| 04/22/08 | State Of California | -43950.00 | 40200-001-000 |

CH000064

2 (2b)

Chabad of California Grant 2005-0015
Cash disbursement ledger/invoice/proof of payment cover sheet
Vendor: Larry Clayton
Contractual expense: $47,990

| Invoice number | Invoice date | Invoice amount | paid by ck# | check amount | comments |
|---|---|---|---|---|---|
| 339664 | 07/27/05 | $1,125 | 1011 | $4,000 | |
| 339665 | 07/27/05 | $1,690 | | | |
| 339666 | 07/27/05 | $5,590 | 1050 | $4,405 | |
| 520801 | 05/03/06 | $18,204 | 1308 | $9,100 | |
| | | | 1338 | $4,500 | |
| | | | 1374 | $4,604 | |
| 520450 | 06/18/06 | $2,485 | 1459 | $2,485 | |
| 5080 | 06/19/06 | $4,135 | 1467 | $2,068 | |
| | | | 5360 | $2,005 | (part of ck#5360 for $5,570) |
| | | | 1789 | $63 | (part of ck#1789 for $9,002.50) |
| 5082 | 06/21/06 | $2,530 | 1468 | $1,265 | |
| | | | 5360 | $1,265 | (part of ck#5360 for $5,570) |
| 5084 | 06/21/06 | $3,571 | 1469 | $3,571 | |
| 5088 | 07/31/06 | $3,560 | 1594 | $1,780 | |
| | | | 1650 | $1,500 | |
| | | | 1842 | $280 | |
| 145853 | 08/10/06 | $1,925 | 1703 | $1,000 | #5308050 duplicate invoice |
| | | | 1789 | $925 | (part of ck#1789 for $9,002.50) |
| 145851 | 09/14/06 | $5,750 | 1789 | $3,450 | |
| | | | 5360 | $2,300 | (part of ck#5360 for $5,570) |
| 7401 | 09/05/06 | $225 | 1738 | $225 | |
| | | $50,790 | | $50,790 | |

CH000065

**Kiryas Schneerson**
**Computer & Manual Check Register**
**History File, 01/01/05 to 12/31/06**
**All Accounts, Sessions 000000 to 000787**
**Vendor = CLAYTO**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-031 | | | | | | |
| CLAYTO / Larry Clayton | 1011 | 10/11/05 | M | 10/11/05 | 000003 | | 4000.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 4000.00 |
| | 1049 | 12/06/05 | M | 12/06/05 | 000003 | | 276.12 |
| | | | | | | CLAYTO Subtotal : | 276.12 |
| | 1050 | 12/06/05 | M | 12-06-05 | 000003 | | 4405.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 4405.00 |
| | 1056 | 12/13/05 | M | 12/13/05 | 000004 | | 199.44 |
| | | | | | | CLAYTO Subtotal : | 199.44 |
| | 1080 | 12/22/05 | M | 12/22/05 | 000006 | | 100.00 |
| | | | | | | CLAYTO Subtotal : | 100.00 |
| | 1178 | 03/09/06 | M | 03/09/06 | 000017 | | 2591.00 |
| | | | | | | CLAYTO Subtotal : | 2591.00 |
| | 1243 | 04/17/06 | M | 04/17/06 | 000023 | | 31.05 |
| | | | | | | CLAYTO Subtotal : | 31.05 |
| | 1305 | 05/02/06 | M | 05/02/06 | 000024 | | 46.00 |
| | | | | | | CLAYTO Subtotal : | 46.00 |
| | 1308 | 05/03/06 | M | 05/03/06 | 000024 | | 9100.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 9100.00 |
| | 1338 | 05/16/06 | M | 05/16/06 | 000024 | | 4500.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 4500.00 |
| | 1373 | 05/24/06 | M | 05/24/06 | 000026 | | 255.71 |
| | | | | | | CLAYTO Subtotal : | 255.71 |
| | 1374 | 05/25/06 | M | 05/25/06 | 000026 | | 4604.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 4604.00 |
| | 1376 | 05/26/06 | M | 05/26/06 | 000026 | | 90.66 |
| | | | | | | CLAYTO Subtotal : | 90.66 |
| | 1431 | 06/12/06 | M | 06/12/06 | 000036 | | 50.00 |
| | | | | | | CLAYTO Subtotal : | 50.00 |
| | 1437 | 06/13/06 | M | 06/13/06 | 000043 | | 1500.00 |
| | | | | | | CLAYTO Subtotal : | 1500.00 |
| | 1459 | 06/21/06 | M | 06/21/06 | 000044 | | 2485.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 2485.00 |
| | 1467 | 06/21/06 | M | 6/21/06 | 000044 | | 2067.50 ✓ |

**Kiryas Schneerson**
**Computer & Manual Check Register**
**History File, 01/01/05 to 12/31/06**
**All Accounts, Sessions 000000 to 000787**
**Vendor = CLAYTO**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | CLAYTO Subtotal : | 2067.50 |
| | 1468 | 06/21/06 | M | 06*21*06 | 000044 | | 1265.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 1265.00 |
| | 1469 | 06/21/06 | M | 06/21*06 | 000044 | | 3571.26 ✓ |
| | | | | | | CLAYTO Subtotal : | 3571.26 |
| | 1470 | 06/21/06 | M | 06*21/06 | 000044 | | 769.74 |
| | | | | | | CLAYTO Subtotal : | 769.74 |
| | 1471 | 06/21/06 | M | 6/21*06 | 000044 | | 1013.60 |
| | | | | | | CLAYTO Subtotal : | 1013.60 |
| | 1593 | 08/01/06 | M | 08/01/06 | 000076 | | 325.00 |
| | | | | | | CLAYTO Subtotal : | 325.00 |
| | 1594 | 08/01/06 | M | 8/01/06 | 000076 | | 1780.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 1780.00 |
| | 1650 | 08/23/06 | M | 08/23/06 | 000091 | | 1500.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 1500.00 |
| | 1703 | 08/30/06 | M | 08/30/06 | 000092 | | 1000.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 1000.00 |
| | 1738 | 09/08/06 | M | 09/08/06 | 000112 | | 225.00 ✓ |
| | | | | | | CLAYTO Subtotal : | 225.00 |
| | 1772 | 09/14/06 | M | 09/14/06 | 000116 | | 31.16 |
| | | | | | | CLAYTO Subtotal : | 31.16 |
| | 1789 | 09/15/06 | M | 09/15/06 | 000116 | | 9002.50 ✓ |
| | | | | | | CLAYTO Subtotal : | 9002.50 |
| | 1842 | 10/05/06 | M | 10/05/06 | 000145 | | 280.00 |
| | | | | | | CLAYTO Subtotal : | 280.00 |
| | 1976 | 12/20/06 | M | 12/20/06 | 000231 | | 100.00 |
| | | | | | | CLAYTO Subtotal : | 100.00 |
| | 1996 | 12/27/06 | M | 12/27/06 | 000231 | REIMBURSE | 23.35 |
| | | | | | | CLAYTO Subtotal : | 23.35 |
| | 5052 | 12/22/05 | 1 | 12/19/05 | 000006 | MILEAGE | 116.80 |
| | | | | | | CLAYTO Subtotal : | 116.80 |
| | 5360 | 12/12/06 | 2 | 145851 | 000224 | | 2300.00 ✓ |
| | 5360 | 12/12/06 | 2 | 5080 | 000224 | | 2005.00 ✓ |
| | 5360 | 12/12/06 | 2 | 5082 | 000224 | | 1265.00 ✓ |

CH000067

**Kiryas Schneerson**
**Computer & Manual Check Register**
**History File, 01/01/05 to 12/31/06**
**All Accounts, Sessions 000000 to 000787**
**Vendor = CLAYTO**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| | | | | CLAYTO Subtotal : | | | 5570.00 |
| | Total For Check Account: | 10000-031 | | | | | 62874.89 |
| | | | | Check Register Total : | | | 62874.89 |

CH000068

# 1

LARRY CLAYTON
P.O. Box 92
RUNNING SPRINGS CA

#3 (3a)

## INVOICE

339664

SOLD TO CHABAD OF CALIF.

ADDRESS

SHIP TO

ADDRESS

CITY, STATE, ZIP RUNNING SPRINGS CA

CUSTOMER ORDER NO.

SOLD BY LARRY

CITY, STATE, ZIP Completion

TERMS DOWN BAL ON

F.O.B.

DATE 7 27 05

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| 86 | | 6' 11 GA CLL 2 3/8 DIA END POSTS SET 24" IN CONCRETE 1 7/8 LINE POSTS SET 18" IN CONCRETE. (NO TOP RAIL) | (PAID DELA) | | |
| | | | | | 1015 00 |
| 10' | | (2) REPAIR TO DAMAGED FENCE | | | |
| | | | | | 125 00 |
| 80' | | SAME AS ABOVE W/TOP RAIL 1 3/8 DIA (EMERSON BUILDING) | | | 1,140 00 |
| | | | | | 1125 00 |

# 2

LARRY CLAYTON   909-867-2010
P.O. Box 92,
RUNNING SPRINGS CA 92382

## INVOICE

339665

SOLD TO CHABAD OF CALIF.

ADDRESS

SHIP TO

ADDRESS

CITY, STATE, ZIP RUNNING SPRINGS CA

CUSTOMER ORDER NO.

SOLD BY LARRY

CITY, STATE, ZIP Completion

TERMS DOWN BAL ON

F.O.B.

DATE 7 27 05

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| 129 | | 6' 11 GA. CLL W/ TOP RAIL (IN FRONT OF LODGE) | | | |
| 10' | | 4' CL 11 GA. W/ TOP RAIL (UNDER DECK) | | | |
| | | | | | 670 00 |

5840

CH000069

③

#3
(3b)

LARRY CLAYTON
P.O. BOX 92,
RUNNING SPRINGS CA

339666

# INVOICE

| SOLD TO | | | SHIP TO | | | |
|---|---|---|---|---|---|---|
| CHABAD OF COUF | | | ADDRESS | | | |
| ADDRESS | | | | | | |
| CITY, STATE, ZIP RUNNING SPRINGS CA | | | CITY, STATE, ZIP | Computation | | |
| CUSTOMER ORDER NO. | SOLD BY LARRY | | TERMS DOWN ON BAL | F.O.B. | DATE 7/27/05 | |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| 229 | | 6' 11 GA. C/L WITH 3 STRANDS | | | |
| | | OF BARB WIRE ON 45° BARB | | | |
| | | ARMS - 2 3/8 DIA CORNER + GATE | | | |
| | | POSTS - 5520 1 7/8 DIA LINE POST | | | |
| | | 5520 1 3/8 DIA TOP RAIL | | | |
| | | .069 | | | |
| 40' | | 6' 11 GA. C/L W/ 1 3/8 TOP RAIL | | | |
| 2 | | 6' X 3' WALK GATES OF 1 5/8 | | $5590 00 | |
| | | TUBING | | | |

E. adams 5640

Pg 1 Inv 339664
Pg 2 Inv 339665
Pg 3 Inv 339666

Balance due on these invoices paid 12/5/05
on 339669 (attached) ck# 1050 for $4405.00

CH000070

**INVOICE**   P O BOX 92   #3

SOLD TO: CHABAD OF CALIF

ADDRESS: 3500 Seymour

CITY, STATE, ZIP: RUNNING SPRINGS CA 92382

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | DEPOSIT OF 4000 | | | |
| | | DOWN PAYMENT OF CHAIN-LINK | | | |
| | | FENCING — | | | |
| | | PA! | | | |
| | | see Invoices: | | | |
| | | 339664 | | | |
| | | 339665 | | | |
| | | 339666 | | | |

---

LARRY CLAYTON   909-867-2010
P.O. BOX 92
RUNNING SPRINGS CA 92382            339669

**INVOICE**

SOLD TO: CHABAD OF CALIF

ADDRESS:

CITY, STATE, ZIP: RUNNING SPRINGS CALIF 92382

SOLD BY: LARRY

TERMS: DOWN Bal on completion

DATE: 11/25/05

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | BALANCE OF INV # 339666 | 5090 | | |
| | | 339665 | 1690 | | |
| | | 339664 | 1125 | | |
| | | | 8405 | | |
| | | Deposit | 4000 pd on | ck #1011 |
| | | Balance | 4405 | | 4405 |

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE: / /

Received ck# 1000 on 12/ /05   P A !
by: S___

Soc #  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

CH000071

# INVOICE

Running Springs CA 92382 (909) 867-2010 #3 (31)

| SOLD TO | SHIP TO |
|---|---|
| Clubhouse of Calif | # 5208 |

**ADDRESS** 3500 Seymour Rd.

**ADDRESS**

**CITY, STATE, ZIP** Running Springs CA 92382

**CITY, STATE, ZIP**

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE |
|---|---|---|---|---|
| 909 867-7020 | Carey | 1/2 Down on Completion | | 5 03 06 |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| 628 | | 6' 9L Heavy-wt. | | | |
| | #1 | For Emerson | | | |
| | #2 | For Lodge / Fire Rd | | | |
| | #3 | Back Fence / Fire Rd | | 9' | 704 00 |
| | | 1/2 Down Bal on Completion ck 1308 — | | | 9' 04 |
| | | $91.00 ck 1338 | | | 45 00 |
| | | For Materials Rec'd 1374 | | | 46.04 00 |

PAY THIS INVOICE
DORIAN SHEEHAN
AM THERE
DON BRAHAM
DATE: 5 25 06

PAID

Final ck# 1374 Bal. @

28:clause 5840

LARRY CLAYTON
RUNNING SPRINGS CA 92382 (909) 867-2010

520801

# INVOICE

| SOLD TO | CWABAD OF CALIF |
|---|---|
| ADDRESS | 3500 SEYMOUR RD. |
| CITY, STATE, ZIP | RUNNING SPRINGS CA 92382 |
| CUSTOMER ORDER NO. | 909-867-7020 |
| SOLD BY | LARRY |

SHIP TO
ADDRESS
CITY, STATE, ZIP

TERMS  F.O.B.  DATE 5-02-06

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| 625 | | 6' 9L Heavy - wf | | | |
| | # 1 | For Emerson | | | |
| | # 2 | For Lodge / Fire RD | | | |
| | # 3 | Back Fence / Fire RD | | 9' | 200 00 |
| | | | 06-13-08 — | 9' | 100 |
| | | 1/2 Down Bal on Computer | Bal | 9 | 104 |
| | | $9,100 - 1338 — | | 4 | 500 |
| | | For Materials  Recvd  1374 | | 4 | 604 00 |

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE: 3-1-2-06

P A I D

Final ck# 1374 Bal. 0

2. adams 5840

---

PAID

O•  C
18,204•00  +
9,100•00  −
4,500•00  −
4,604•00  −
Bal. ──→ 0•00  *

Balance due on
Inv S20801 fencing
Paid 5/25/06
Cn# 1374
recvd by:

Installment on
fencing ck# 1338
5/16/06 for $4,500

$9,104 owed
− 4,500 installment
$4,604 balance
owed as
of 5/16/06  $4,500
Recvd by:

CH000073

#3
(3e)

LARRY CLAYTON 909 867-2010
P.O. BOX 92
RUNNING SPRINGS CA 92382    ob# 1459

520450

# INVOICE

**SOLD TO** CHABAD OF CALIF

**ADDRESS** 3600 Seymour

**CITY, STATE, ZIP** RUNNING SPRINGS CA

**SHIP TO**

**ADDRESS**

**CITY, STATE, ZIP** 11 DOWN ON Completion!

**CUSTOMER ORDER NO.**   **SOLD BY** LARRY   **TERMS** BALANCE   **F.O.B.**   **DATE** 6 18 06

PAY THIS INVOICE
DORIAN SHEFF
JAN TERRY
DON BRAHAM
DATE: 6/21/06
ob# 1459

| ORDERED | SHIPPED | DESCRIPTION | PRICE UNIT | AMOUNT |
|---------|---------|-------------|-----------|--------|
| | | " POOL HEATER ENCLOSURE " | | |
| 1 | | 7' HIGH, 1¾ SIZE DIAMOND 11 GA | | |
| | | WIRE, 9 GA FINISH " BLACK " | | |
| | | 2⅜ DIA x 9' CORNER AND GATE POSTS | IN FULL | |
| | | SET 24" IN CONCRETE 1⅝ DIA FL WT | | |
| | | TOP, MIDDLE AND BOTTOM RAILS | | 2485 00 |
| | | BLACK. | | |
| | | 1⅝ DIA LID COVERED IN SAME AS | | |
| | | ABOVE BLACK WIRE WITH 3 CROSS | | |
| | | BRACES 1⅝ DIA FL WT | | |

2 adams 5840

CH000074

P.O. Box 92
Running Springs CA 92382

#3
(3F)

| SOLD TO | | SHIPPED TO | | |
|---|---|---|---|---|
| CHABAD OF CALIF | | Volleyball fence | | ? |
| STREET & NO. 3500 Seymour | | STREET & NO. | | |
| CITY Running Springs Co | STATE   ZIP 92382 | CITY | STATE | ZIP |

**INVOICE**

REDIFORM
7L721/
01723

| CUSTOMER'S ORDER | SALESMAN LARRY | TERMS 1/2 Down Bal w compl | F.O.B. | | DATE 6/19/06 |
|---|---|---|---|---|---|

118' (A)  6'  11 GA  C/L  2 3/8 DIA FL WT X 8'
Corner Posts Set 24" in Concrete  1 7/8
Dia Line Posts Set 24" in Concrete  1 5/8 Dia
Top Rail                                         830 ½

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE: 6/21/06

70' (B)  Same  As  Above       1000 00

77' C  Same  As  Above         1215 00

Pd 1/2 down on 6/22/06  $2,067.50  ck# 1467   4135.00
                                              - 2067.50
                      Balance      2067.50

$62.50 overpaid on Inv 145853 →  — 62.50

Balance due  $ 2,005.00

( see page two )

FAXED
10/20/06
CHABAD/YANIKY

CH000075

INVOICE NO.
5080

LARRY CLAYTON
P.O. BOX 92
RUNNING SPRINGS CA 92382

**SOLD TO**
CHABAD OF CALIF
**STREET & NO.** 3500 SEYMOUR
**CITY** RUNNING SPRINGS **STATE** CA **ZIP** 92382

**SHIPPED TO**
Volley ball fence
**STREET & NO.**
**CITY** **STATE** **ZIP**

**CUSTOMER'S ORDER** **SALESMAN** LARRY **TERMS** 1/2 DOWN BAL ON COMPLETION **DATE** 6/19/06

**INVOICE**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 118 | (A) | 6' | 11 GA | CL | 2 3/8 DIA FL WT x 8' | | |
| | | CORNER POSTS SET 24" IN CONCRETE | 1 7/8 | | | | |
| | | DIA LINE POSTS SET 24" IN CONCRETE | 1 5/8 DIA | | | | |
| | | TOP RAIL | | | | 830 | 00 |
| 70 | (B) | Same as | Above | | | 1090 | 00 |
| 99 | C | Same as | above | | | 1215 | 00 |

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE: 6-12-06

Pd 1/2 down on 6/22/06 $2,067.50 ck# 1467

4135.00
-2067.50

REDIFORM
7L72 /
01723

CH000076

#3(25)

**INVOICE**

LARRY CLAYTON
P.O. BOX 92
RUNNING SPRINGS        909 - 867-2010

INVOICE NO.
5082
Pg 1

SOLD TO: CHABAD OF COUF
STREET & NO. P.O. BOX 92
CITY RUNNING SPRINGS  STATE CA  ZIP 92382

SHIPPED TO:
STREET & NO. ALAMO
CITY

CUSTOMER'S ORDER 58'
SALESMAN LARRY
TERMS 1/2 DOWN BAL WK
F.O.B.
DATE 6/21/06

| | |
|---|---|
| 10 | HEAVY STEEL PANELS 5 X 8' |
| | PRE-GALV, BLACK |
| | 2" X 5' POSTS W/ 6" SQ FLAT |
| | PLATES WELDED TO BOTTOM. |
| | INSTALLED ON TOP OF ALAMO |

Pd 1/2 ch# 1468 6/21/06   $ 1265.00

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE: 6/21/06

2530
1265

Bal due

7L
01723

CH000077

LARRY CLAYTON
PO BOX 92
RUNNING SPRINGS CA 92382

INVOICE NO.
**5084**

| | |
|---|---|
| SOLD TO CHABAD OF CALIF | SHIPPED TO FOR "ERUV" |
| STREET & NO. 3580 SEAMOUR | STREET & NO. |
| CITY RUNNING SPRINGS STATE CA ZIP 92382 | CITY    STATE   ZIP |

INVOICE

| CUSTOMER'S ORDER | SALESMAN LARRY | TERMS 42 DAYS | F.O.B. | DATE 6/21/06 |
|---|---|---|---|---|

6 LIFTS (220 PCS) 1⅞ × 8' FL WT POSTS

1 LIFT (26 PCS) 2⅜ × 8' FL WT POSTS

3 ROLLS 3000' 9 GA. TENSION WIRE

9 Do ROLL CAPS —    OD# 1469  6/21/06

E-6    EYES  3" W/ NUTS + BOLT — materials only

**PAID IN FULL**

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON BRAHAM
DATE 6/21/06

REDIFORM
7L721/
01723

CH000078

LARRY CLAYTON
PO - BOX 92
RUNNING SPRINGS  CA 92382

**INVOICE NO.**
**5088**

**INVOICE**

| SO _D.TO | | SHIPPED TO | | | | | |
|---|---|---|---|---|---|---|---|
| CHABAD OF CALIF | | W. F92   ARRIV | | | | | 11 |
| STREET & NO. 3500  SEAMOUR | | STREET & NO. | | | | | |
| CITY RUNNING SPRGS | STATE CA  ZIP 92382 | CITY  on completion  pak | | STATE | ZIP | | |
| CUSTOMER'S ORDER | SALESMAN LARRY | TERMS 1/2 DOWN | | F.O.B. | | DATE 7/31/06 | |
| 2.45 | DOSITS  5 ft  24" IN  CONCRETE | | | | | | |
| | 10'  ON  CENTERS  WITH STEEL BALL | | | | | | |
| | CAP  AND  EYE BOLT  ATTACHED | | | | | | |
| | STEEL WIRE  TO  RUN  CONTINUALLY | | | | | 3560 | |
| 8/1/06  ck# 1594  1/2 DOWN | | | PAY THIS INVOICE  DORIAN SHEEHAN | | | 1780 | 00 |
| | | | JAN TERRY | | | | |
| PAID IN FULL | | | DON BRAHAM  DATE: 8/1/06 | | | 1780 | 00 |
| 8/23/06  pd  ck  1650 | | | | | | 1500 | 00 |
| 10/5/06 pd in full  1842 Bal Pd | | | | | | $280 | 00 |

DIFORM
7L721/
01723

See invoice 520805

#3
(37)
145853

LARRY CLAXTON
P.O. BOX 93
RUNNING SPRINGS CA
92382 (909) 867-201

| NAME | | | SHIP TO | | | | |
|---|---|---|---|---|---|---|---|
| CHABAD OF CALIF | | | | | | | |
| ADDRESS 3500 SEAMOUR RD. | | | ADDRESS | | | | |
| CITY, STATE, ZIP RUNNING SPRINGS CALIF | | | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 50% DOWN Balance on completion | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | LARRY | | | | 9/14/0 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | " SIERRA HOME " | | |
| 60 | 6' "LINK GREEN IN COLOR WITH 278"X 8' | | 1925 |
| | CORNER AND GATE POSTS SET 24" IN | | |
| | CONCRETE. 15/8 DIA. TOP RAIL AND | 50% down dc#1989 | — 962 |
| | GATE FRAMES | | |
| (1) | 6' X 15' SLIDE GATE WITH LATCH | Bal. due | 962 |
| (1) | 6' X 42" WALK GATE | | |
| | ALL ABOUT MATERIALS ARE | | |
| | GREEN IN COLOR | | |
| | MATERIALS — — — — — — | | 1125 |
| | LABOR · | | 800 |
| | | | 1925 |
| | | Bal due | 962 |

BUILDING INSPECTOR
DORIAN SHEEHAN
IAN TERRY
DON BRAHAM

BUYER:

FOR REFERENCE

DUPLICATE OF INVOICE 520805 8/10/06

CH000080

# INVOICE

| SOLD TO | | | | SHIP TO | | | | |
|---|---|---|---|---|---|---|---|---|
| CHABAD OF CALIF | | | | | | | | |

**ADDRESS** 3550 SEAMOUR LN.  **ADDRESS**

**CITY, STATE, ZIP** RUNNING SPRINGS CALIF  **CITY, STATE, ZIP**

| CUSTOMER ORDER NO. SIERRA | | SOLD BY LARRY | TERMS DAWN PAID ON EMPORIAL | F.O.B. | DATE 8 | 10 06 |
|---|---|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| (1) | | 6' X 15' SLIDE GATE 5/8 FRAME | | | |
| | | AND BRACING 6" DIA ROLL WHEELS | | | |
| | | (ALL) IN GREEN | | | |
| 1 | | 6' X 3' WALK GATE 15/8 DIA | | | |
| | | FRAME ALL IN GREEN | | | |
| | | | | | |
| 251 | | 6' 2/9 CHAIN LINK FENCING | | | |
| | | AND SLIDE RAILS | | TOTAL | 900 00 |
| | | ob# 1703 8/30 | | down | -1000 00 |
| | | | | Bal due | $ 900 00 |

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
DON IRAHAM
DATE: 8/30/06

adams 5840

---

DUPLICATE INVOICES

PAID  $962.50  145853 (9/15/06)
PAID  1000.00  520805 (8/30/06)

TOTAL PAID $1962.50
TOTAL OWED  1900.00

OVERPAID   62.50

see attached

QUOTE  1,900.00  +

0.  C

0.  C

0.  C

ob# 1703  1,000.00  +
ob# 1789  962.50  +
TOTAL P.D  1,962.50  *

0.  C

0.  C

TOTAL PAID  1,962.50  +
TOTAL OWED  1,900.00  —
OWED US  $ 62.50  *

0.  C

See INVOICE 145853

Pg 5

CH000081

7401

Pd ck# 1738
9/8/06

**PURCHASE ORDER**

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKAGES, ETC.

TO CHABAD OF COUF

DATE 9 / 05 / 06

REQ. NO. OR DEPT.

ADDRESS 3500 SEAMOUR LN

FOR FENCE DAMAGE

SHIP TO RUNNING SPRINGS CA 92382

ADDRESS

PLEASE NOTIFY US IMMEDIATELY IF YOU ARE UNABLE TO SHIP COMPLETE ORDER BY DATE SPECIFIED

PLEASE SUPPLY ITEMS LISTED BELOW

| QUANTITY | | PRICE |
|---|---|---|
| 1 | REPAIR OF FENCE DAMAGE | |
| 2 | SOUTH END OF PROPERTY - BY MACIAS " CEMENT | |
| 3 | CURRENTLY WORKING ON | |
| 4 | PROPERTY ( STRAIGHTEN GATE 1/8 X 8 FULL w/ | |
| 5 | REMOVE AND REPLACE | |
| 6 | PIPE | |
| 7 | STRAIGHTEN APPROX 15' OF 1 5/8 DIA TOP RAIL | 225 00 |
| 8 | REPLACE 1 EYE TOP | |
| 9 | REMOVE & REPLACE 12' OF 6" H GA C/L | |

PAY THIS INVOICE
DORIAN SHEEHAN
JAN TERRY
BEN ABRAHAM
DATE:

10 15' DATE REQUIRED   HOW SHIP

PLEASE SEND COPIES OF YOUR INVOICE IN FULL

**PAID** ck# 1738

PURCHASING AGENT

TERMS ____ ON COMPLETION

DENIFORM

CH000082

145851

LARRY CLAYTON  909 86- 2010
P.O. Box 92
RUNNING SPRINGS CA 92382    #3 (3L)

| NAME CHABAD OF CALIF. | SHIP TO | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ADDRESS 3500 SEAMOUR RD. | ADDRESS | | | | | | | | |
| CITY, STATE, ZIP RUNNING SPRINGS CA 92382 | CITY, STATE, ZIP | | | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | | DATE |
|---|---|---|---|---|---|---|---|
| | | LARRY | | 60% DOWN / BAL ON COMPLETE | O/T | 9 /14 /06 | |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | PATIO        AREA | | |
| 71' | 42" WROUGHT IRON  / PRE GALVED / POWER COATED | | E 750 00 |
| 60' | 42" WROUGHT IRON  ( PRE-GALVED / POWER COATED | 60% | 3450 00 |
| | BARS    FOR HAND   RAIL  ON  RAMP | DOWN | |
| | | cb #1789 | |
| 22 pcs | 4x4 SQ STEEL PLATES    WELDED WITH | | |
| | 2" x2"   SQ POSTS  AND   STEEL  CAPS | Bal due | 2300 00 |
| | ALL  MATERIAL  TO BE INSTALLED  ON  WALL | | |
| | AND  RAMP   AREA   AT   LODGE  PATIO | | |
| | AND  STAIR WELL  INTO   LODGE | | |
| | MATERIALS | | 3450 00 |
| | | | |
| | LABOR | | 2300 00 |
| | | | |
| | | Total $ | 5750 00 |
| | | Bal due | $5.300 00 |

BUYER:

Adams
8100

KEEP THIS SLIP FOR REFERENCE

PAGE 03        CHABAD        9098679770        14:49    05/14/2010

CH000083

#3 M-1

*Commercial Checking* statement
October 1, 2005 to October 31, 2005

## *Commercial Checking* account details: ▓▓▓7672

### Electronic deposits this statement period

| | | | | Reference numbers | |
| | | | | Customer | Bank |
| Date | Amount ($) | Activity | | | |
|---|---|---|---|---|---|
| Oct 11 | 4,000.00 | Cash Management Bktransfe | 2916 | | 9488954803 |
| Oct 17 | 710.00 | Cash Management Bktransfe | 0211 | | 9488543479 |
| Oct 27 | 555.98 | Cash Management Bktransfe | 4913 | | 9488016602 |

**Total Electronic Deposits: $5,265.98**
**Total number of Electronic Deposits: 3**

### Checks paid this statement period

\* This symbol indicates a break in check number sequence

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|---|---|---|---|---|---|---|---|
| 1008 | -550.00 * | Oct 03 | 0651024437 | 1011 | -4,000.00 * | Oct 14 | 0655008309 |
| 1009 | -565.94 * | Oct 11 | 0652028996 | 1012 | -710.00 * | Oct 26 | 0653029139 |
| 1010 | -1,207.00 * | Oct 12 | 0653009144 | | | | |

**Total checks paid this statement period: -$7,032.94**
**Total number of checks paid this statement period: 5**

### Fees and service charges this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| Oct 14 | -6.00 | Service Charge | XA  101655 |

**Total Fees and Service Charges: -$6.00**
**Total number of Fees and Service Charges: 1**

### $ Lowest daily balance

Your lowest daily balance this statement period was **$3,201.75**
on **October 14, 2005**.

CH000084

*Commercial Checking* statement
December 1, 2005 to December 31, 2005

# *Commercial Checking* account details: ████ 7672

## Electronic deposits this statement period

| Date | Amount ($) | Activity | | Reference numbers Customer | Reference numbers Bank |
|------|-----------|----------|---|---------|------|
| Dec 06 | 50,000.00 | Cash Management Bktransfer | 3925 | | 9488837721 |
| Dec 23 | 40,000.00 | Cash Management Bktransfer | 0097 | | 9488778691 |

Total Electronic Deposits: $90,000.00
Total number of Electronic Deposits: 2

## Paper deposits this statement period

| Date | Amount($) | Reference numbers Customer | Reference numbers Bank | Date | Amount($) | Reference numbers Customer | Reference numbers Bank |
|------|-----------|---------|------|------|-----------|---------|------|
| Dec 08 | 20,000.00 | | 0654021538 | Dec 14 | 25,000.00 | | 0653044440 |
| Dec 08 | 8,101.50 | | 0654021540 | Dec 27 | 1,800.00 | | 0652069172 |
| Dec 09 | 25,000.00 | | 0655050652 | | | | |

Total Paper Deposits: $79,901.50
Total number of Paper Deposits: 5

## Checks paid this statement period

* This symbol indicates a break in check number sequence

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|------|-----------|------|------|------|-----------|------|------|
| 1017 | -4,185.00 | Dec 02 | 0674023034 | 1068 | -1,600.00 | Dec 19 | 0671046703 |
| *1023 | -100.00 | Dec 02 | 0675016716 | 1069 | -626.39 | Dec 20 | 0672015191 |
| *1027 | -24.77 | Dec 02 | 0655006297 | 1070 | -190.46 | Dec 19 | 0671011266 |
| *1033 | -10,000.00 | Dec 07 | 0653009110 | 1071 | -10,000.00 | Dec 19 | 0671052120 |
| *1035 | -2,215.82 | Dec 02 | 0655006296 | 1072 | -450.00 | Dec 19 | 0671011265 |
| 1036 | -107.81 | Dec 01 | 0674013223 | 1073 | -219.35 | Dec 27 | 0652002745 |
| 1037 | -980.00 | Dec 02 | 0675015606 | 1074 | -482.00 | Dec 27 | 0652002746 |
| 1038 | -10,000.00 | Dec 07 | 0653009111 | 1075 | -2,199.45 | Dec 27 | 0652002744 |
| 1039 | -1,000.00 | Dec 05 | 0671033377 | 1076 | -356.00 | Dec 28 | 0673019278 |
| 1040 | -624.22 | Dec 05 | 0671012542 | 1077 | -500.00 | Dec 23 | 0655001610 |
| 1041 | -1,600.00 | Dec 05 | 0671034049 | 1078 | -250.00 | Dec 28 | 0673019276 |
| 1042 | -800.00 | Dec 07 | 0675003891 | 1079 | -250.00 | Dec 27 | 0652007822 |
| 1043 | -320.00 | Dec 07 | 0673016088 | 1080 | -100.00 | Dec 28 | 0653005222 |
| 1044 | -1,095.00 | Dec 06 | 0983209098 | 1081 | -100.00 | Dec 23 | 0655024422 |
| *1046 | -10,000.00 | Dec 07 | 0653009112 | 1082 | -200.00 | Dec 27 | 0652002747 |
| 1047 | -3,788.00 | Dec 07 | 0613052460 | *5009 | -25.00 | Dec 02 | 0655009151 |
| 1048 | -239.00 | Dec 13 | 0672010108 | *5011 | -3,054.08 | Dec 02 | 0675022507 |
| 1049 | -276.12 | Dec 07 | 0653005558 | *5021 | -1,660.50 | Dec 07 | 0613049403 |
| 1050 | -4,405.00 | Dec 07 | 0653005559 | 5022 | -168.55 | Dec 12 | 0671030786 |
| 1051 | -21.50 | Dec 13 | 0672010107 | *5024 | -4,543.44 | Dec 15 | 0983011953 |
| 1052 | -85.00 | Dec 13 | 0672034949 | 5025 | -48.51 | Dec 09 | 0675013747 |
| *1055 | -760.70 | Dec 13 | 0672028031 | 5026 | -2,765.00 | Dec 13 | 0671003616 |
| 1056 | -199.44 | Dec 20 | 0652000417 | 5027 | -919.79 | Dec 13 | 0672008420 |
| 1057 | -941.12 | Dec 14 | 0653006984 | 5028 | -120.38 | Dec 09 | 0983806680 |
| 1058 | -217.93 | Dec 21 | 0653003326 | 5029 | -4,189.87 | Dec 13 | 0672016952 |
| 1059 | -120.00 | Dec 16 | 0675009728 | 5030 | -144.84 | Dec 13 | 0672034953 |
| 1060 | -615.00 | Dec 13 | 0672017541 | 5031 | -57.40 | Dec 28 | 0673019281 |
| 1061 | -108.50 | Dec 13 | 0983206600 | 5032 | -4,393.61 | Dec 15 | 0674000123 |
| *1064 | -161.63 | Dec 20 | 0672008313 | 5033 | -15.00 | Dec 15 | 0983609330 |
| 1065 | -3,995.00 | Dec 19 | 0671046724 | 5034 | -3,054.08 | Dec 22 | 0983606824 |
| 1066 | -205.00 | Dec 16 | 0675014852 | 5035 | -14.54 | Dec 19 | 0611049285 |
| 1067 | -360.00 | Dec 16 | 0675014019 | 5036 | -161.70 | Dec 21 | 0653003755 |

CH000085

#3 M-3

*Commercial Checking* statement
May 1, 2006 to May 31, 2006

## *Commercial Checking* account details: ▨7672

### Electronic deposits this statement period

| Date | Amount ($) | Activity | | Reference numbers Customer | Reference numbers Bank |
|------|-----------|----------|---|----------|------|
| May 01 | 10,000.00 * | Cash Management Bktransfer | ▨0821 | | 9488883839 |
| May 02 | 10,000.00 * | Cash Management Bktransfer | ▨0506 | | 9488834943 |
| May 03 | 10,000.00 | Cash Management Bktransfer | ▨0418 | | 9488425695 |
| May 04 | 10,000.00 * | Cash Management Bktransfer | ▨0486 | | 9488059948 |
| May 08 | 10,000.00 * | Cash Management Bktransfer | ▨3407 | | 9488716719 |
| May 09 | 10,000.00 | Cash Management Bktransfer | ▨0485 | | 9488550094 |
| May 12 | 10,000.00 * | Cash Management Bktransfer | ▨0446 | | 9488614367 |
| May 17 | 3,200.00 | Cash Management Bktransfer | ▨0309 | | 9488253002 |
| May 19 | 5,000.00 | Cash Management Bktransfer | ▨2478 | | 9488388142 |
| May 22 | 9,540.00 | Cash Management Bktransfer | ▨3672 | | 9488442416 |
| May 23 | 17,070.00 | Cash Management Bktransfer | ▨3745 | | 9488586986 |
| May 25 | 20,000.00 | Cash Management Bktransfer | ▨0799 | | 9488136071 |
| May 26 | 10,000.00 * | Cash Management Bktransfer | ▨0612 | | 9488756883 |
| May 31 | 25,000.00 | Cash Management Bktransfer | ▨0491 | | 9488303933 |

Total Electronic Deposits: $159,810.00
Total number of Electronic Deposits: 14

### Paper deposits this statement period

| Date | Amount($) | Reference numbers Customer | Reference numbers Bank | Date | Amount($) | Reference numbers Customer | Reference numbers Bank |
|------|-----------|---------|------|------|-----------|---------|------|
| May 18 | 12,000.00 | | 0654038941 | May 19 | 4,339.67 | | 0655053432 |

Total Paper Deposits: $16,339.67
Total number of Paper Deposits: 2

### Checks paid this statement period

*This symbol indicates a break in check number sequence

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|------|-----------|------|------|------|-----------|------|------|
| 1223 | -296.31 * | May 02 | 0672018890 | 1291 | -2,500.00 | May 01 | 0651054679 |
| *1241 | -69.75 * | May 02 | 0672033269 | 1292 | -1,600.00 | May 01 | 0651054678 |
| *1247 | -624.22 * | May 01 | 0651029251 | 1293 | -643.39 | May 10 | 0653030111 |
| *1254 | -2,850.00 * | May 17 | 0653018480 | 1294 | -1,884.55 | May 05 | 0655029020 |
| *1263 | -1,613.50 * | May 01 | 0651008303 | 1295 | -1,144.05 | May 09 | 0652039771 |
| *1269 | -840.00 * | May 01 | 0651054680 | 1296 | -32.81 | May 10 | 0613030792 |
| 1270 | -143.26 * | May 08 | 0651001152 | 1297 | -2,030.45 | May 08 | 0651016695 |
| 1271 | -1,725.99 * | May 03 | 0653000871 | 1298 | -400.00 | May 03 | 0653027535 |
| 1272 | -311.77 * | May 03 | 0653000872 | 1299 | -1,500.00 | May 03 | 0653027536 |
| *1274 | -3,385.29 * | May 02 | 0672027496 | 1300 | -955.80 | May 08 | 0651025401 |
| 1275 | -342.44 * | May 01 | 0983013804 | 1301 | -1,193.71 | May 08 | 0651001155 |
| *1277 | -2,472.64 * | May 01 | 0651054001 | 1302 | -19.00 | May 08 | 0651001156 |
| 1278 | -3,046.33 * | May 05 | 0615007744 | 1303 | -48.00 | May 04 | 0654009981 |
| 1279 | -10,321.79 * | May 02 | 0672034374 | 1304 | -1,250.00 | May 04 | 0654025638 |
| *1282 | -345.15 * | May 01 | 0611052162 | 1305 | -46.00 | May 17 | 0653001685 |
| 1283 | -1,082.45 * | May 03 | 0653037680 | 1306 | -265.85 | May 08 | 0651001157 |
| 1284 | -78.99 * | May 01 | 0651056495 | 1307 | -77.64 | May 11 | 0654002445 |
| 1285 | -624.22 | May 02 | 0672016359 | 1308 | -9,100.00 | May 05 | 0655001605 |
| *1287 | -222.67 | May 08 | 0651001153 | *1312 | -204.73 | May 15 | 0651027404 |
| 1288 | -167.33 | May 08 | 0651001154 | 1313 | -1,600.00 | May 11 | 0654023439 |
| 1289 | -677.31 | May 08 | 0651020494 | 1314 | -624.22 | May 11 | 0654012777 |
| 1290 | -592.50 | May 11 | 0654028259 | 1315 | -170.37 | May 16 | 0652007875 |

CH000086



**Comerica**

# STATEMENT OF ACCOUNT

#3 M-4

*Commercial Checking* **statement**
**May 1, 2006 to May 31, 2006**

## Commercial Checking: ▇▇▇▇ 7672

### Checks paid this statement period (continued)

\* This symbol indicates a break in check number sequence

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|---|---|---|---|---|---|---|---|
| 1316 | -563.17 | May 16 | 0652007876 | *1360 | -5,000.00 | May 23 | 0652050702 |
| 1317 | -17.00 | May 16 | 0652007874 | 1361 | -226.42 | May 24 | 0653028829 |
| *1319 | -695.00 | May 10 | 0653023354 | *1364 | -65.39 | May 30 | 0672042359 |
| 1320 | -147.89 | May 19 | 0655019049 | 1365 | -115.80 | May 30 | 0672042360 |
| *1322 | -1,000.00 | May 11 | 0654023438 | *1369 | -458.41 | May 25 | 0654026479 |
| 1323 | -642.54 | May 16 | 0652008477 | 1370 | -1,500.00 | May 25 | 0654026478 |
| 1324 | -2,500.00 | May 16 | 0652032076 | 1371 | -11,650.00 | May 26 | 0655015930 |
| 1325 | -150.00 | May 18 | 0654018610 | 1372 | -3,000.00 | May 26 | 0655014388 |
| 1326 | -262.50 | May 30 | 0672042349 | 1373 | -255.71 | May 30 | 0672005847 |
| 1327 | -1,061.34 | May 22 | 0651026753 | 1374 | -4,604.00 | May 30 | 0672005848 |
| 1328 | -1,090.13 | May 23 | 0652028048 | *1376 | -90.66 | May 30 | 0672005849 |
| 1329 | -2,474.35 | May 19 | 0655023432 | 1377 | -2,000.00 | May 30 | 0672042340 |
| 1330 | -2,754.00 | May 22 | 0651001517 | 1378 | -1,187.00 | May 31 | 0653010857 |
| 1331 | -2,725.57 | May 19 | 0654068806 | *5162 | -489.14 | May 10 | 0983407461 |
| 1332 | -2,145.52 | May 16 | 0652034324 | 5163 | -151.80 | May 11 | 0614020648 |
| 1333 | -195.97 | May 19 | 0655011297 | 5164 | -132.54 | May 11 | 0654023437 |
| 1334 | -130.05 | May 23 | 0652009018 | 5165 | -502.95 | May 12 | 0655014754 |
| *1336 | -84.23 | May 24 | 0653007146 | 5166 | -2,720.30 | May 12 | 0615024557 |
| *1338 | -4,500.00 | May 17 | 0653006487 | 5167 | -162.68 | May 24 | 0983408787 |
| 1339 | -2,900.00 | May 17 | 0653024981 | 5168 | -4,213.97 | May 18 | 0983608276 |
| 1340 | -800.00 | May 17 | 0653024980 | 5169 | -433.35 | May 19 | 0983805602 |
| 1341 | -1,980.00 | May 18 | 0654021227 | 5170 | -104.48 | May 25 | 0983607783 |
| 1342 | -3,280.86 | May 18 | 0654021226 | *5172 | -291.35 | May 24 | 0983408788 |
| 1343 | -3,750.00 | May 19 | 0655015795 | 5173 | -491.68 | May 25 | 0983607761 |
| 1344 | -898.48 | May 22 | 0655073180 | 5174 | -1,994.63 | May 25 | 0983607775 |
| *1347 | -10,000.00 | May 22 | 0651046395 | 5175 | -161.26 | May 25 | 0983607774 |
| *1349 | -1,700.00 | May 22 | 0651046392 | 5176 | -262.35 | May 25 | 0983607785 |
| 1350 | -1,113.00 | May 22 | 0651046387 | *5178 | -1,310.35 | May 31 | 0983408586 |
| 1351 | -8,458.54 | May 24 | 0613033725 | | | | |

**Total checks paid this statement period: -$160,720.83**
**Total number of checks paid this statement period: 101**

### Fees and service charges this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| May 11 | -1,424.84 | Service Charge | XA 100677 |
| May 11 | -45.61 | Service Charge | XA 100678 |

**Total Fees and Service Charges: -$1,470.45**
**Total number of Fees and Service Charges: 2**

 ### Lowest daily balance

Your lowest daily balance this statement period was $-17,037.66
on **May 22, 2006.**

CH000087



# STATEMENT OF ACCOUNT

#3 M-5

**Commercial Checking** statement
June 1, 2006 to June 30, 2006

## Commercial Checking: ██████7672

## Checks paid this statement period (continued)

\* This symbol indicates a break in check number sequence
\# This symbol indicates an original item not enclosed
ⓐ This symbol indicates a break in check number sequence and an original item not enclosed

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|---|---|---|---|---|---|---|---|
| *1429 | -2,459.28 | Jun 14 | 0653020671 | 1472 | -2,665.22 | Jun 26 | 0651029157 |
| 1430 | -1,510.19 | Jun 15 | 0983606172 | 1473 | -100.00 | Jun 26 | 0651000852 |
| 1431 | -50.00 | Jun 16 | 0655002285 | 1474 | -3,000.00 | Jun 23 | 0655020706 |
| 1432 | -39.00 | Jun 16 | 0983609068 | *1477 | -10,000.00 | Jun 26 | 0651065690 |
| 1433 | -980.00 | Jun 16 | 0655026670 | 1478 | -1,000.00 | Jun 26 | 0651041670 |
| 1434 | -1,000.00 | Jun 19 | 0651044728 | 1479 | -1,280.00 | Jun 27 | 0652029776 |
| 1435 | -15,350.00 | Jun 19 | 0651072062 | 1480 | -218.00 | Jun 27 | 0652029775 |
| *1438 | -1,000.00 | Jun 19 | 0655026663 | 1481 | -228.66 | Jun 27 | 0652029774 |
| 1439 | -908.70 | Jun 19 | 0651005634 | 1482 | -136.50 | Jun 27 | 0652029777 |
| *1442 | -1,900.00 | Jun 26 | 0651041667 | *1484 | -65.00 | Jun 30 | 0655001772 |
| 1443 | -171.03 | Jun 26 | 0651000855 | 1485 | -5,750.00 | Jun 29 | 0854018862 |
| 1444 | -580.00 | Jun 26 | 0651000854 | *1487 | -1,200.00 | Jun 28 | 0653020335 |
| 1445 | -51.00 | Jun 26 | 0983005984 | *1490 | -6,000.00 | Jun 30 | 0655020691 |
| 1446 | -45.52 | Jun 26 | 0651000853 | *1497 →1432 | -1,500.00 | Jun 16 | 0655005407 |
| 1447 | -229.02 | Jun 21 | 0983408636 | 1498 | -535.55 | Jun 29 | 0654014520 |
| 1448 | -86.98 | Jun 26 | 0651002517 | *5177 | -370.00 | Jun 08 | 0654029538 |
| 1449 | -97.79 | Jun 28 | 0653020336 | *5179 | -663.00 | Jun 08 | 0654029537 |
| 1450 | -371.86 | Jun 26 | 0651028390 | 5180 | -102.00 | Jun 08 | 0654029539 |
| 1451 | -681.50 | Jun 28 | 0653029271 | *5182 | -592.74 | Jun 13 | 0983207723 |
| 1452  11,114.65 | -1,114.65 | Jun 28 | 0613016071 | 5183 | -234.41 | Jun 15 | 0654021724 |
| 1453 | -850.00 | Jun 22 | 0654019114 | 5184 | -3,035.68 | Jun 12 | 0983010628 |
| 1454 | -200.00 | Jun 22 | 0654019115 | *5186 | -4,896.50 | Jun 20 | 0983209565 |
| ✓1455 | -350.00 | Jun 22 | 0654019113 | 5187 | -10.85 | Jun 22 | 0983608397 |
| *1458 | -543.33 | Jun 26 | 0651010089 | 5188 | -391.75 | Jun 19 | 0983010751 |
| 1459 | -2,485.00 | Jun 26 | 0651010033 | 5189 | -131.88 | Jun 26 | 0983012006 |
| *1464 | -323.25 | Jun 26 | 0651011549 | 5190 | -29.57 | Jun 26 | 0983011989 |
| *1466 | -1,400.00 | Jun 23 | 0655020707 | 5191 | -167.04 | Jun 22 | 0983608341 |
| 1467 | -2,067.50 | Jun 26 | 0651010034 | 5192 | -22.93 | Jun 23 | 0983806131 |
| 1468 | -1,265.00 | Jun 27 | 0652009498 | 5193 | -665.65 | Jun 22 | 0983608339 |
| 1469 | -3,571.26 | Jun 26 | 0651010035 | 5194 | -36.26 | Jun 22 | 0983608340 |
| 1470  768.74 | -768.74 | Jun 27 | 0652009496 | 5195 | -5,500.00 | Jun 15 | 0983607081 |
| 1471 | -1,013.60 | Jun 27 | 0652009497 | | | | |

**Total checks paid this statement period: -$194,552.89**
**Total number of checks paid this statement period: 121**

## Electronic withdrawals this statement period

| | | | Reference numbers | |
|---|---|---|---|---|
| Date | Amount ($) | Activity | Customer | Bank |
| Jun 23 | -10,000.00 | Cash Management Bktransfer ██ 0884 | | 9488107887 |

**Total Electronic Withdrawals: -$10,000.00**
**Total number of Electronic Withdrawals: 1**

CA03234 (Rev. 11-04)

CH000088



Check: 5360  Amount: $5,570.00  Date: 12/19/06

Check: 1789  Amount: $9,002.50  Date: 09/18/06

Check: 1703  Amount: $1,000.00  Date: 09/01/06

Check: 1842  Amount: $280.00  Date: 10/11/06

Check: 1789  Amount: $9,002.50  Date: 09/18/06

Check: 1738  Amount: $225.00  Date: 09/13/06

Page **18** of 33

#3m-7

***Commercial Checking* statement**
August 1, 2006 to August 31, 2006

## *Commercial Checking* account details:  7672

## Paper deposits this statement period

| Date | Amount($) | Reference numbers Customer | Bank | Date | Amount($) | Reference numbers Customer | Bank |
|------|-----------|----------|------|------|-----------|----------|------|
| Aug 17 | 25,000.00 | | 0654056571 | Aug 28 | 25,000.00 | | 0651098361 |
| Aug 25 | 7,900.00 | | 0655059295 | Aug 30 | 10,000.00 | | 0653049959 |

**Total Paper Deposits: $67,900.00**
**Total number of Paper Deposits: 4**

## Transfers from other accounts this statement period

| Date | Amount ($) | Activity | | Bank reference number |
|------|-----------|----------|---|------------------------|
| Aug 01 | 20,000.00 | Axs Funds Transfer From Account | 3744 | AS02004984 |
| Aug 04 | 20,000.00 | Axs Funds Transfer From Account | 3744 | AS02001044 |
| Aug 08 | 34,000.00 | Axs Funds Transfer From Account | 3744 | AS02001432 |
| Aug 09 | 30,000.00 | Axs Funds Transfer From Account | 3744 | AS02005477 |
| Aug 10 | 9,500.00 | Axs Funds Transfer From Account | 3744 | AS02003139 |
| Aug 11 | 5,000.00 | Axs Funds Transfer From Account | 3744 | AS02002931 |
| Aug 14 | 27,000.00 | Axs Funds Transfer From Account | 3744 | AS02000223 |
| Aug 15 | 13,000.00 | Axs Funds Transfer From Account | 4346 | AS02003921 |
| Aug 15 | 3,200.00 | Axs Funds Transfer From Account | 4361 | AS02000944 |
| Aug 15 | 1,000.00 | Axs Funds Transfer From Account | 3744 | AS02005960 |
| Aug 16 | 8,500.00 | Axs Funds Transfer From Account | 4361 | AS02001900 |
| Aug 16 | 1,000.00 | Axs Funds Transfer From Account | 4197 | AS02001917 |
| Aug 22 | 12,000.00 | Axs Funds Transfer From Account | 3639 | AS02002176 |
| Aug 24 | 5,000.00 | Axs Funds Transfer From Account | 4197 | AS02004569 |
| Aug 29 | 26,100.00 | Axs Funds Transfer From Account | 3744 | AS02005082 |
| Aug 31 | 27,000.00 | Axs Funds Transfer From Account | 3744 | AS02001087 |

**Total Transferred from Other Accounts: $242,300.00**
**Total number of Transfers from Other Accounts: 16**

## Checks paid this statement period
\* This symbol indicates a break in check number sequence
\# This symbol indicates an original item not enclosed
e This symbol indicates a break in check number sequence and an original item not enclosed

 673.01 ck ADJS.

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|------|-----------|------|------------|------|-----------|------|------------|
| 1440 | -100.00 | Aug 23 | 0653018326 | 1579 | -110.00 | Aug 07 | 0651025649 |
| * 1460 | -1,332.32 | Aug 07 | 0651002746 | 1580 | -7,962.00 | Aug 09 | 0653006860 |
| * 1515 | -3,844.17 | Aug 03 | 0983607524 | 1581 | -2,124.42 | Aug 07 | 0601040776 |
| * 1536 | -217.97 | Aug 02 | 0653005806 | 1582 | -825.00 | Aug 04 | 0655019909 |
| * 1543 | -5,307.54 | Aug 03 | 0983607522 | 1583 | -41.72 | Aug 07 | 0651001267 |
| * 1551 | -748.97 | Aug 02 | 0653011781 | 1584 | -3,500.00 | Aug 25 | 0983805803 |
| * 1564 | -286.74 | Aug 04 | 0655024908 | 1585 | -85.00 | Aug 11 | 0675002346 |
| 1565 | -22,064.00 | Aug 08 | 0652030296 | 1586 | -476.59 | Aug 08 | 0652030297 |
| 1566 * | -673.18 • | Aug 07 | 0651023263 | 1587 | -1,241.59 | Aug 03 | 0654027907 |
| 1567 | -631.25 | Aug 04 | 0655010962 | 1588 | -2,200.00 • | Aug 03 | 0654027909 |
| * 1569 | -10,000.00 | Aug 07 | 0651032440 | 1589 | -200.00 | Aug 03 | 0654027908 |
| 1570 867.66 | -194.48 | Aug 07 | 0651013232 | 1590 | -910.23 | Aug 07 | 0651023264 |
| * 1572 | -5,437.50 | Aug 03 | 0654016734 | 1591 | -280.10 | Aug 04 | 0983805329 |
| * 1575 | -2,174.14 | Aug 04 | 0983805328 | 1592 | -14.52 | Aug 16 | 0653001964 |
| 1576 | -5,675.00 | Aug 02 | 0653006284 | 1593 | -325.00 | Aug 07 | 0651005059 |
| 1577 5256.71 | -5,256.71 | Aug 03 | 0983607523 | 1594 | -1,780.00 | Aug 07 | 0651005060 |
| 1578 | -239.01 | Aug 09 | 0653000679 | 1595 | -450.00 | Aug 07 | 0651032761 |

CH000090

Comerica

# STATEMENT OF ACCOUNT

**Commercial Checking statement**
**August 1, 2006 to August 31, 2006**

H 3 M-8

## Commercial Checking: ▉7672

### Checks paid this statement period (continued)

\* This symbol indicates a break in check number sequence
# This symbol indicates an original item not enclosed
℮ This symbol indicates a break in check number sequence and an original item not enclosed

| Check number | Amount ($) | Date paid | Bank reference number | Check number | Amount ($) | Date paid | Bank reference number |
|---|---|---|---|---|---|---|---|
| 1596 | -828.75 | Aug 04 | 0655024907 | 1650 | -1,500.00 | Aug 25 | 0655002867 |
| 1597 | -422.49 | Aug 07 | 0651050157 | * 1652 | -1,190.64 | Aug 28 | 0651010373 |
| 1598 | -1,424.00 | Aug 03 | 0654027911 | 1653 | -1,250.00 | Aug 24 | 0654014521 |
| # 1599 | -1,036.91 | Aug 08 | 0602031413 | 1654 | -5,000.00 | Aug 25 | 0655003096 |
| 1600 | -113.42 | Aug 07 | 0651001268 | 1655 | -11,895.00 | Aug 25 | 0655003097 |
| 1601 | -177.11 | Aug 07 | 0651001266 | 1656 | -686.82 | Aug 28 | 0651027932 |
| 1602 | -305.17 | Aug 04 | 0983804144 | 1657 | -15,000.00 | Aug 28 | 0651027931 |
| 1603 | -178.66 | Aug 14 | 0651041742 | 1658 | -2,500.00 | Aug 28 | 0651010371 |
| 1604 | -50.00 | Aug 07 | 0651006652 | 1659 | -4,000.00 | Aug 28 | 0651010372 |
| 1605 | -1,000.00 | Aug 07 | 0651050160 | 1660 | -585.00 | Aug 28 | 0651068823 |
| 1606 | -1,000.00 | Aug 14 | 0651041741 | 1661 | -3,561.66 | Aug 30 | 0653006590 |
| 1607 | -491.40 | Aug 10 | 0654019238 | ℮ 1664 | -400.00 | Aug 29 | 0612044018 |
| 1608 | -40.00 | Aug 04 | 0655020494 | * 1666 | -1,000.00 | Aug 29 | 0652028494 |
| 1609 | -50.00 | Aug 07 | 0651006653 | 1667 | -200.00 | Aug 29 | 0652028495 |
| 1610 | -137.67 | Aug 09 | 0653018148 | * 1672 | -462.00 | Aug 29 | 0983205301 |
| 1611 | -15,287.50 | Aug 07 | 0983009364 | * 1683 | -32.08 | Aug 31 | 0654005783 |
| 1612 | -10,000.00 | Aug 14 | 0651027194 | * 1691 | -2,500.00 | Aug 31 | 0654018903 |
| 1613 | -1,797.80 | Aug 09 | 0653011423 | 1692 | -460.00 | Aug 31 | 0654018900 |
| # 1614 | -29,000.00 * | Aug 11 | 0615025919 | * 1701 | -215.20 | Aug 31 | 0654019715 |
| 1615 | -129.48 ℮ | Aug 30 | 0653006629 | * 1711 | -10,000.00 | Aug 31 | 0654040598 |
| 1616 | -4,440.36 * | Aug 16 | 0653003860 | * 5212 | -1,050.00 | Aug 08 | 0652020544 |
| 1617 | -5,500.00 * | Aug 08 | 0652017691 | * 5221 | -9,000.00 | Aug 16 | 0613055148 |
| # 1618 | -392.54 | Aug 11 | 0615044552 | 5222 | -9,327.77 | Aug 15 | 0983206781 |
| 1619 | -100.00 | Aug 23 | 0653018327 | 5223 | -87.50 | Aug 15 | 0652023796 |
| 1620 | -288.85 | Aug 16 | 0653004718 | 5224 | -528.33 | Aug 16 | 0613005170 |
| 1621 | -746.45 | Aug 30 | 0653006630 | 5225 | -199.66 | Aug 16 | 0653020688 |
| * 1623 | -6,681.36 | Aug 24 | 0654016775 | 5226 | -13.03 | Aug 18 | 0983805920 |
| * 1627 | -1,218.92 | Aug 31 | 0654018901 | 5227 | -110.80 | Aug 21 | 0651007320 |
| 1628 | -228.88 | Aug 31 | 0983608402 | 5228 | -6,336.92 | Aug 14 | 0983010611 |
| 1629 | -5,837.50 | Aug 29 | 0983205316 | 5229 | -421.99 | Aug 14 | 0983010415 |
| * 1631 | -2,250.82 | Aug 25 | 0655009514 | 5230 | -19.36 | Aug 17 | 0983607691 |
| * 1633 | -46.00 | Aug 25 | 0983805215 | 5231 | -22.71 | Aug 17 | 0983607618 |
| ℮ 1636 | -1,856.46 | Aug 31 | 0614021699 | * 5233 | -21.11 | Aug 17 | 0983607692 |
| * 1639 | -4,000.00 | Aug 23 | 0653018325 | 5234 | -43.26 | Aug 18 | 0983805921 |
| 1640 | -264.57 | Aug 29 | 0652029445 | 5235 | -107.57 | Aug 17 | 0983607619 |
| 1641 | -223.00 | Aug 29 | 0652028496 | 5236 | -5,500.00 | Aug 18 | 0655017955 |
| * 1643 | -2,880.85 | Aug 30 | 0653006437 | 5237 | -15,537.50 | Aug 21 | 0651074076 |
| 1644 | -168.12 | Aug 31 | 0654000181 | 5238 | -1,000.00 | Aug 21 | 0651043910 |
| ℮ 1646 | -2,618.35 | Aug 30 | 0613031423 | 5239 | -980.00 | Aug 23 | 0653018187 |
| 1647 | -1,186.64 | Aug 29 | 0612031526 | * 5241 | -2,900.00 | Aug 28 | 0651030174 |
| ℮ 1649 | -16,930.00 | Aug 30 | 0612026418 | | | | |

**Total checks paid this statement period: -$323,685.09**
**Total number of checks paid this statement period: 115**

CA03234  (Rev. 11-04)

CH000091

## #6    Fiscal/Administrative Policies Description

OMB Circular A-110 Uniform Administrative Requirements for
Grants and Agreements with Institutions of Higher Education,
Hospitals, and Other Non-Profit Organizations

# OMB CIRCULAR A-110
## UNIFORM ADMINISTRATIVE REQUIREMENTS FOR GRANTS AND AGREEMENTS
## WITH INSTITUTIONS OF HIGHER EDUCATION, HOSPITALS, AND OTHER
## NON-PROFIT ORGANIZATIONS
### November 19, 1993 (As Amended August 29, 1997 and September 30, 1999)

---

**Authors' Note:** This Circular was issued in November 1993 and amended on August 29, 1997 and September 30, 1999. Each federal agency has issued its own Circular A-110 that reflects any statutorily required or other agency differences from the OMB Circular A-110. It is not practical to include each of the codifications in this Library; however, OMB maintains a chart which includes the location of the codification for each department and agency. The charts are located on the OMB website at **www.whitehouse.gov/omb**. (Go to "Grants Management" and look under Circular A-110.) Some of the agencies may also provided copies if requested.

---

### EXECUTIVE OFFICE OF THE PRESIDENT
### OFFICE OF MANAGEMENT AND BUDGET
#### WASHINGTON, D.C. 20503
November 19, 1993

TO THE HEADS OF EXECUTIVE DEPARTMENTS AND ESTABLISHMENTS

SUBJECT: Uniform Administrative Requirements for Grants and Agreements With Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations

1. *Purpose.* This Circular sets forth standards for obtaining consistency and uniformity among Federal agencies in the administration of grants to and agreements with institutions of higher education, hospitals, and other non-profit organizations.

2. *Authority.* Circular A-110 is issued under the authority of 31 U.S.C. 503 (the Chief Financial Officers Act), 31 U.S.C. 1111, 41 U.S.C. 405 (the Office of Federal Procurement Policy Act), Reorganization Plan No. 2 of 1970, and E.O. 11541 ("Prescribing the Duties of the Office of Management and Budget and the Domestic Policy Council in the Executive Office of the President").

3. *Policy.* Except as provided herein, the standards set forth in this Circular are applicable to all Federal agencies. If any statute specifically prescribes policies or specific requirements that differ from the standards provided herein, the provisions of the statute shall govern.

   The provisions of the sections of this Circular shall be applied by Federal agencies to recipients. Recipients shall apply the provisions of this Circular to subrecipients performing substantive work under grants and agreements that are passed through or awarded by the primary recipient, if such subrecipients are organizations described in paragraph 1.

   This Circular does not apply to grants, contracts, or other agreements between the Federal Government and units of State or local governments covered by OMB Circular A-102, "Grants and Cooperative Agreements with State and Local Governments," and the Federal agencies' grants management common rule which standardized and codified the administrative requirements Federal agencies impose on State and local grantees. In addition, subawards and contracts to State or local governments are not covered by this Circular. However, this Circular applies to subawards made by State and local governments to organizations covered by this Circular. Federal agencies may apply the provisions of this Circular to commercial organizations, foreign governments, organizations under the jurisdiction of foreign governments, and international organizations.

4. *Definitions.* Definitions of key terms used in this Circular are contained in Section 2 in the Attachment.

5. *Required Action.* The specific requirements and responsibilities of Federal agencies and institutions of higher education, hospitals, and other non-profit organizations are set forth in this Circular. Federal agencies responsible for awarding and administering grants to and other agreements with organizations described in paragraph 1 shall adopt the language in the Circular unless different provisions are required by Federal statute or are approved by OMB.

6. *OMB Responsibilities.* OMB will review agency regulations and implementation of this Circular, and will provide interpretations of policy requirements and assistance to insure effective and efficient implementation. Any exceptions will be subject to approval by OMB, as indicated in Section 4 in the Attachment. Exceptions will only be made in particular cases where adequate justification is presented.

7. *Information Contact.* Further information concerning this Circular may be obtained by contacting the Office of Federal Financial Management, Office of Management and Budget, Washington, DC 20503, Telephone (202) 395-3993.

8. *Termination Review Date.* This Circular will have a policy review three years from date of issuance.

9. *Effective Date.* The standards set forth in this Circular which affect Federal agencies will be effective 30 days after publication of the final revision in the *Federal Register*. Those standards which Federal agencies impose on grantees will be adopted by agencies in codified regulations within six months after publication in the *Federal Register*. Earlier implementation is encouraged.

Leon E. Panetta, Director                    Attachment

CH000093

**Grants and Agreements with Institutions of Higher Education,
Hospitals, and Other Non-Profit Organizations**

**SUBPART A—GENERAL**

Section

1 Purpose.
2 Definitions.
3 Effect on other issuances.
4 Deviations.
5 Subawards.

**SUBPART B—PRE-AWARD REQUIREMENTS**

10 Purpose.
11 Pre-award policies.
12 Forms for applying for Federal assistance.
13 Debarment and suspension.
14 Special award conditions.
15 Metric system of measurement.
16 Resource Conservation and Recovery Act.
17 Certifications and representations.

**SUBPART C—POST-AWARD REQUIREMENTS**

Financial and Program Management

20 Purpose of financial and program management.
21 Standards for financial management systems.
22 Payment.
23 Cost sharing or matching.
24 Program income.
25 Revision of budget and program plans.
26 Non-Federal audits.
27 Allowable costs.
28 Period of availability of funds.
29 Conditional exemptions.

Property Standards

30 Purpose of property standards.
31 Insurance coverage.
32 Real property.
33 Federally-owned and exempt property.
34 Equipment.
35 Supplies and other expendable property.
36 Intangible property.
37 Property trust relationship.

Procurement Standards

40 Purpose of procurement standards.
41 Recipient responsibilities.
42 Codes of conduct.
43 Competition.
44 Procurement procedures.
45 Cost and price analysis.
46 Procurement records.
47 Contract administration.
48 Contract provisions.

Reports and Records

50 Purpose of reports and records.
51 Monitoring and reporting program performance.
52 Financial reporting.
53 Retention and access requirements for records.

Termination and Enforcement

60 Purpose of termination and enforcement.
61 Termination.
62 Enforcement.

**SUBPART D—AFTER-THE-AWARD REQUIREMENTS**

70 Purpose.
71 Closeout procedures.
72 Subsequent adjustments and continuing responsibilities.
73 Collection of amounts due.

**APPENDIX A—CONTRACT PROVISIONS**

**SUBPART A—General**

**Section 1: Purpose.** This Circular establishes uniform administrative requirements for Federal grants and agreements awarded to institutions of higher education, hospitals, and other non-profit organizations. Federal awarding agencies shall not impose additional or inconsistent requirements, except as provided in Sections 4 and 14 or unless specifically required by Federal statute or

CH000094

executive order. Non-profit organizations that implement Federal programs for the States are also subject to State requirements.

## Section 2: Definitions.

(a) *Accrued expenditures* means the charges incurred by the recipient during a given period requiring the provision of funds for: (1) goods and other tangible property received; (2) services performed by employees, contractors, subrecipients, and other payees; and, (3) other amounts becoming owed under programs for which no current services or performance is required.

(b) *Accrued income* means the sum of: (1) earnings during a given period from (i) services performed by the recipient, and (ii) goods and other tangible property delivered to purchasers, and (2) amounts becoming owed to the recipient for which no current services or performance is required by the recipient.

(c) *Acquisition cost of equipment* means the net invoice price of the equipment, including the cost of modifications, attachments, accessories, or auxiliary apparatus necessary to make the property usable for the purpose for which it was acquired. Other charges, such as the cost of installation, transportation, taxes, duty or protective in-transit insurance, shall be included or excluded from the unit acquisition cost in accordance with the recipient's regular accounting practices.

(d) *Advance* means a payment made by Treasury check or other appropriate payment mechanism to a recipient upon its request either before outlays are made by the recipient or through the use of predetermined payment schedules.

(e) *Award* means financial assistance that provides support or stimulation to accomplish a public purpose. Awards include grants and other agreements in the form of money or property in lieu of money, by the Federal Government to an eligible recipient. The term does not include: technical assistance, which provides services instead of money; other assistance in the form of loans, loan guarantees, interest subsidies, or insurance; direct payments of any kind to individuals; and, contracts which are required to be entered into and administered under procurement laws and regulations.

(f) *Cash contributions* means the recipient's cash outlay, including the outlay of money contributed to the recipient by third parties.

(g) *Closeout* means the process by which a Federal awarding agency determines that all applicable administrative actions and all required work of the award have been completed by the recipient and Federal awarding agency.

(h) *Contract* means a procurement contract under an award or subaward, and a procurement subcontract under a recipient's or subrecipient's contract.

(i) *Cost sharing or matching* means that portion of project or program costs not borne by the Federal Government.

(j) *Date of completion* means the date on which all work under an award is completed or the date on the award document, or any supplement or amendment thereto, on which Federal sponsorship ends.

(k) *Disallowed costs* means those charges to an award that the Federal awarding agency determines to be unallowable, in accordance with the applicable Federal cost principles or other terms and conditions contained in the award.

(l) *Equipment* means tangible nonexpendable personal property including exempt property charged directly to the award having a useful life of more than one year and an acquisition cost of $5000 or more per unit. However, consistent with recipient policy, lower limits may be established.

(m) *Excess property* means property under the control of any Federal awarding agency that, as determined by the head thereof, is no longer required for its needs or the discharge of its responsibilities.

(n) *Exempt property* means tangible personal property acquired in whole or in part with Federal funds, where the Federal awarding agency has statutory authority to vest title in the recipient without further obligation to the Federal Government. An example of exempt property authority is contained in the Federal Grant and Cooperative Agreement Act (31 U.S.C. 6306), for property acquired under an award to conduct basic or applied research by a non-profit institution of higher education or non-profit organization whose principal purpose is conducting scientific research.

(o) *Federal awarding agency* means the Federal agency that provides an award to the recipient.

(p) *Federal funds authorized* means the total amount of Federal funds obligated by the Federal Government for use by the recipient. This amount may include any authorized carryover of unobligated funds from prior funding periods when permitted by agency regulations or agency implementing instructions.

(q) *Federal share* of real property, equipment, or supplies means that percentage of the property's acquisition costs and any improvement expenditures paid with Federal funds.

(r) *Funding period* means the period of time when Federal funding is available for obligation by the recipient.

(s) *Intangible property and debt instruments* means, but is not limited to, trademarks, copyrights, patents and patent applications and such property as loans, notes and other debt instruments, lease agreements, stock and other instruments of property ownership, whether considered tangible or intangible.

(t) *Obligations* means the amounts of orders placed, contracts and grants awarded, services received and similar transactions during a given period that require payment by the recipient during the same or a future period.

(u) *Outlays or expenditures* means charges made to the project or program. They may be reported on a cash or accrual basis. For reports prepared on a cash basis, outlays are the sum of cash disbursements for direct charges for goods and services, the amount of indirect expense charged, the value of third party in-kind contributions applied and the amount of cash advances and payments made to subrecipients. For reports prepared on an accrual basis, outlays are the sum of cash disbursements for direct charges for goods and services, the amount of indirect expense incurred, the value of in-kind contributions applied, and the net increase (or decrease) in the amounts owed by the recipient for goods and other property received, for services performed by employees, contractors, subrecipients and other payees and other amounts becoming owed under programs for which no current services or performance are required.

(v) *Personal property* means property of any kind except real property. It may be tangible, having physical existence, or intangible, having no physical existence, such as copyrights, patents, or securities.

(w) *Prior approval* means written approval by an authorized official evidencing prior consent.

(x) *Program income* means gross income earned by the recipient that is directly generated by a supported activity or earned as a result of the award (see exclusions in Sec. 24 paragraphs (e) and (h)). Program income includes, but is not limited to, income from fees for services performed, the use or rental of real or personal property acquired under federally-funded projects, the sale of commodities or items fabricated under an

**Gov. Doc. No. 6**

award, license fees and royalties on patents and copyrights, and interest on loans made with award funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal awarding agency regulations or the terms and conditions of the award, program income does not include the receipt of principal on loans, rebates, credits, discounts, etc., or interest earned on any of them.

(y) *Project costs* means all allowable costs, as set forth in the applicable Federal cost principles, incurred by a recipient and the value of the contributions made by third parties in accomplishing the objectives of the award during the project period.

(z) *Project period* means the period established in the award document during which Federal sponsorship begins and ends.

(aa) *Property* means, unless otherwise stated, real property, equipment, intangible property and debt instruments.

(bb) *Real property* means land, including land improvements, structures and appurtenances thereto, but excludes movable machinery and equipment.

(cc) *Recipient* means an organization receiving financial assistance directly from Federal awarding agencies to carry out a project or program. The term includes public and private institutions of higher education, public and private hospitals, and other quasi-public and private non-profit organizations such as, but not limited to, community action agencies, research institutes, educational associations, and health centers. The term may include commercial organizations, foreign or international organizations (such as agencies of the United Nations) which are recipients, subrecipients, or contractors or subcontractors of recipients or subrecipients at the discretion of the Federal awarding agency. The term does not include government-owned contractor-operated facilities or research centers providing continued support for mission-oriented, large-scale programs that are government-owned or controlled, or are designated as federally-funded research and development centers.

(dd) *Research and development* means all research activities, both basic and applied, and all development activities that are supported at universities, colleges, and other non-profit institutions. "Research" is defined as a systematic study directed toward fuller scientific knowledge or understanding of the subject studied. "Development" is the systematic use of knowledge and understanding gained from research directed toward the production of useful materials, devices, systems, or methods, including design and development of prototypes and processes. The term research also includes activities involving the training of individuals in research techniques where such activities utilize the same facilities as other research and development activities and where such activities are not included in the instruction function.

(ee) *Small awards* means a grant or cooperative agreement not exceeding the small purchase threshold fixed at 41 U.S.C. 403(11) (currently $25,000).

[Note: Public Law 103-355, the Federal Acquisition Streamlining Act of 1994, amended 41 U.S.C. 403(11) increasing the threshold from $25,000 to $100,000 effective October 13, 1994.]

(ff) *Subaward* means an award of financial assistance in the form of money, or property in lieu of money, made under an award by a recipient to an eligible subrecipient or by a subrecipient to a lower tier subrecipient. The term includes financial assistance when provided by any legal agreement, even if the agreement is called a contract, but does not include procurement of goods and services nor does it include any form of

assistance which is excluded from the definition of "award" in paragraph (e).

(gg) *Subrecipient* means the legal entity to which a subaward is made and which is accountable to the recipient for the use of the funds provided. The term may include foreign or international organizations (such as agencies of the United Nations) at the discretion of the Federal awarding agency.

(hh) *Supplies* means all personal property excluding equipment, intangible property, and debt instruments as defined in this section, and inventions of a contractor conceived or first actually reduced to practice in the performance of work under a funding agreement ("subject inventions"), as defined in 37 CFR part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts, and Cooperative Agreements."

(ii) means an action by a Federal awarding agency that temporarily withdraws Federal sponsorship under an award, pending corrective action by the recipient or pending a decision to terminate the award by the Federal awarding agency. Suspension of an award is a separate action from suspension under Federal agency regulations implementing E.O.s 12549 and 12689, "Debarment and Suspension."

(jj) *Termination* means the cancellation of Federal sponsorship, in whole or in part, under an agreement at any time prior to the date of completion.

(kk) *Third party in-kind contributions* means the value of noncash contributions provided by non-Federal third parties. Third party in-kind contributions may be in the form of real property, equipment, supplies and other expendable property, and the value of goods and services directly benefiting and specifically identifiable to the project or program.

(ll) *Unliquidated obligations*, for financial reports prepared on a cash basis, means the amount of obligations incurred by the recipient that have not been paid. For reports prepared on an accrued expenditure basis, they represent the amount of obligations incurred by the recipient for which an outlay has not been recorded.

(mm) *Unobligated balance* means the portion of the funds authorized by the Federal awarding agency that has not been obligated by the recipient and is determined by deducting the cumulative obligations from the cumulative funds authorized.

(nn) *Unrecovered indirect cost* means the difference between the amount awarded and the amount which could have been awarded under the recipient's approved negotiated indirect cost rate.

(oo) *Working capital advance* means a procedure where by funds are advanced to the recipient to cover its estimated disbursement needs for a given initial period.

**Section 3: Effect on other issuances.** For awards subject to this Circular, all administrative requirements of codified program regulations, program manuals, handbooks and other nonregulatory materials which are inconsistent with the requirements of this Circular shall be superseded, except to the extent they are required by statute, or authorized in accordance with the deviations provision in Section 4.

**Section 4: Deviations.** The Office of Management and Budget (OMB) may grant exceptions for classes of grants or recipients subject to the requirements of this Circular when exceptions are not prohibited by statute. However, in the interest of maximum uniformity, exceptions from the requirements of this Circular shall be permitted only in unusual circumstances. Federal awarding agencies may apply more restrictive requirements to a class of recipients when approved by OMB. Federal awarding agencies may apply less restrictive requirements when awarding small awards, except for those

CH000096

requirements which are statutory. Exceptions on a case-by-case basis may also be made by Federal awarding agencies.

**Section 5: Subawards.** Unless sections of this Circular specifically exclude subrecipients from coverage, the provisions of this Circular shall be applied to subrecipients performing work under awards if such subrecipients are institutions of higher education, hospitals or other non-profit organizations. State and local government subrecipients are subject to the provisions of regulations implementing the grants management common rule, "Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments," published at 53 FR 8034 (3/11/88).

**SUBPART B—Pre-Award Requirements**

**Section 10: Purpose.** Sections 11 through 17 prescribes forms and instructions and other pre-award matters to be used in applying for Federal awards.

**Section 11: Pre-award policies.**

(a) *Use of Grants and Cooperative Agreements, and Contracts.* In each instance, the Federal awarding agency shall decide on the appropriate award instrument (i.e., grant, cooperative agreement, or contract). The Federal Grant and Cooperative Agreement Act (31 U.S.C. 6301-08) governs the use of grants, cooperative agreements and contracts. A grant or cooperative agreement shall be used only when the principal purpose of a transaction is to accomplish a public purpose of support or stimulation authorized by Federal statute. The statutory criterion for choosing between grants and cooperative agreements is that for the latter, "substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement." Contracts shall be used when the principal purpose is acquisition of property or services for the direct benefit or use of the Federal Government.

(b) *Public Notice and Priority Setting.* Federal awarding agencies shall notify the public of its intended funding priorities for discretionary grant programs, unless funding priorities are established by Federal statute.

**Section 12: Forms for applying for Federal assistance.**

(a) Federal awarding agencies shall comply with the applicable report clearance requirements of 5 CFR part 1320, "Controlling Paperwork Burdens on the Public," with regard to all forms used by the Federal awarding agency in place of or as a supplement to the Standard Form 424 (SF-424) series.

(b) Applicants shall use the SF-424 series or those forms and instructions prescribed by the Federal awarding agency.

(c) For Federal programs covered by E.O. 12372, "Intergovernmental Review of Federal Programs," the applicant shall complete the appropriate sections of the SF-424 (Application for Federal Assistance) indicating whether the application was subject to review by the State Single Point of Contact (SPOC). The name and address of the SPOC for a particular State can be obtained from the Federal awarding agency or the *Catalog of Federal Domestic Assistance.* The SPOC shall advise the applicant whether the program for which application is made has been selected by that State for review.

(d) Federal awarding agencies that do not use the SF-424 form should indicate whether the application is subject to review by the State under E.O. 12372.

**Section 13: Debarment and suspension.** Federal awarding agencies and recipients shall comply with the nonprocurement debarment and suspension common rule implementing E.O.s 12549 and 12689, "Debarment and Suspension." This common rule restricts subawards and contracts with certain parties that are debarred, suspended or otherwise excluded from or ineligible for participation in Federal assistance programs or activities.

**Section 14: Special award conditions.** If an applicant or recipient: (a) has a history of poor performance, (b) is not financially stable, (c) has a management system that does not meet the standards prescribed in this Circular, (d) has not conformed to the terms and conditions of a previous award, or (e) is not otherwise responsible, Federal awarding agencies may impose additional requirements as needed, provided that such applicant or recipient is notified in writing as to: the nature of the additional requirements, the reason why the additional requirements are being imposed, the nature of the corrective action needed, the time allowed for completing the corrective actions, and the method for requesting reconsideration of the additional requirements imposed. Any special conditions shall be promptly removed once the conditions that prompted them have been corrected.

**Section 15: Metric system of measurement.** The Metric Conversion Act, as amended by the Omnibus Trade and Competitiveness Act (15 U.S.C. 205) declares that the metric system is the preferred measurement system for U.S. trade and commerce. The Act requires each Federal agency to establish a date or dates in consultation with the Secretary of Commerce, when the metric system of measurement will be used in the agency's procurements, grants, and other business-related activities. Metric implementation may take longer where the use of the system is initially impractical or likely to cause significant inefficiencies in the accomplishment of federally-funded activities. Federal awarding agencies shall follow the provisions of E.O. 12770, "Metric Usage in Federal Government Programs."

**Section 16: Resource Conservation and Recovery Act (RCRA) (Pub. L. 94-580 codified at 42 U.S.C. 6962).** Under the Act, any State agency or agency of a political subdivision of a State which is using appropriated Federal funds must comply with Section 6002. Section 6002 requires that preference be given in procurement programs to the purchase of specific products containing recycled materials identified in guidelines developed by the Environmental Protection Agency (EPA) (40 CFR parts 247-254). Accordingly, State and local institutions of higher education, hospitals, and non-profit organizations that receive direct Federal awards or other Federal funds shall give preference in their procurement programs funded with Federal funds to the purchase of recycled products pursuant to the EPA guidelines.

**Section 17: Certifications and representations.** Unless prohibited by statute or codified regulation, each Federal awarding agency is authorized and encouraged to allow recipients to submit certifications and representations required by statute, executive order, or regulation on an annual basis, if the recipients have ongoing and continuing relationships with the agency. Annual certifications and representations shall be signed by responsible officials with the authority to ensure recipients' compliance with the pertinent requirements.

**SUBPART C—Post-Award Requirements**

Financial and Program Management

Section 20: Purpose of financial and program management. Sections 21 through 28 prescribe standards for financial management systems, methods for making payments and rules for: satisfying cost sharing and matching requirements, accounting for program income, budget revision approvals, making audits, determining allowability of cost, and establishing fund availability.

**Gov. Doc. No. 6**

## Section 21: Standards for financial management systems.

(a) Federal awarding agencies shall require recipients to relate financial data to performance data and develop unit cost information whenever practical.

(b) Recipients' financial management systems shall provide for the following.

   (1) Accurate, current and complete disclosure of the financial results of each federally-sponsored project or program in accordance with the reporting requirements set forth in Section 52. If a Federal awarding agency requires reporting on an accrual basis from a recipient that maintains its records on other than an accrual basis, the recipient shall not be required to establish an accrual accounting system. These recipients may develop such accrual data for its reports on the basis of an analysis of the documentation on hand.

   (2) Records that identify adequately the source and application of funds for federally-sponsored activities. These records shall contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, outlays, income and interest.

   (3) Effective control over and accountability for all funds, property and other assets. Recipients shall adequately safeguard all such assets and assure they are used solely for authorized purposes.

   (4) Comparison of outlays with budget amounts for each award. Whenever appropriate, financial information should be related to performance and unit cost data.

   (5) Written procedures to minimize the time elapsing between the transfer of funds to the recipient from the U.S. Treasury and the issuance or redemption of checks, warrants or payments by other means for program purposes by the recipient. To the extent that the provisions of the Cash Management Improvement Act (CMIA) (Pub. L. 101-453) govern, payment methods of State agencies, instrumentalities, and fiscal agents shall be consistent with CMIA Treasury-State Agreements or the CMIA default procedures codified at 31 CFR part 205, "Withdrawal of Cash from the Treasury for Advances under Federal Grant and Other Programs."

   (6) Written procedures for determining the reasonableness, allocability and allowability of costs in accordance with the provisions of the applicable Federal cost principles and the terms and conditions of the award.

   (7) Accounting records including cost accounting records that are supported by source documentation.

(c) Where the Federal Government guarantees or insures the repayment of money borrowed by the recipient, the Federal awarding agency, at its discretion, may require adequate bonding and insurance if the bonding and insurance requirements of the recipient are not deemed adequate to protect the interest of the Federal Government.

(d) The Federal awarding agency may require adequate fidelity bond coverage where the recipient lacks sufficient coverage to protect the Federal Government's interest.

(e) Where bonds are required in the situations described above, the bonds shall be obtained from companies holding certificates of authority as acceptable sureties, as prescribed in 31 CFR part 223, "Surety Companies Doing Business with the United States."

## Section 22: Payment.

(a) Payment methods shall minimize the time elapsing between the transfer of funds from the United States Treasury and the issuance or redemption of checks, warrants, or payment by other means by the recipients. Payment methods of State agencies or instrumentalities shall be consistent with Treasury-State CMIA agreements or default procedures codified at 31 CFR part 205.

(b) Recipients are to be paid in advance, provided they maintain or demonstrate the willingness to maintain: (1) written procedures that minimize the time elapsing between the transfer of funds and disbursement by the recipient, and (2) financial management systems that meet the standards for fund control and accountability as established in Section 21. Cash advances to a recipient organization shall be limited to the minimum amounts needed and be timed to be in accordance with the actual, immediate cash requirements of the recipient organization in carrying out the purpose of the approved program or project. The timing and amount of cash advances shall be as close as is administratively feasible to the actual disbursements by the recipient organization for direct program or project costs and the proportionate share of any allowable indirect costs.

(c) Whenever possible, advances shall be consolidated to cover anticipated cash needs for all awards made by the Federal awarding agency to the recipient.

   (1) Advance payment mechanisms include, but are not limited to, Treasury check and electronic funds transfer.

   (2) Advance payment mechanisms are subject to 31 CFR part 205.

   (3) Recipients shall be authorized to submit requests for advances and reimbursements at least monthly when electronic fund transfers are not used.

(d) Requests for Treasury check advance payment shall be submitted on SF-270, "Request for Advance or Reimbursement," or other forms as may be authorized by OMB. This form is not to be used when Treasury check advance payments are made to the recipient automatically through the use of a predetermined payment schedule or if precluded by special Federal awarding agency instructions for electronic funds transfer.

(e) Reimbursement is the preferred method when the requirements in paragraph (b) cannot be met. Federal awarding agencies may also use this method on any construction agreement, or if the major portion of the construction project is accomplished through private market financing or Federal loans, and the Federal assistance constitutes a minor portion of the project.

   (1) When the reimbursement method is used, the Federal awarding agency shall make payment within 30 days after receipt of the billing, unless the billing is improper.

   (2) Recipients shall be authorized to submit request for reimbursement at least monthly when electronic funds transfers are not used.

(f) If a recipient cannot meet the criteria for advance payments and the Federal awarding agency has determined that reimbursement is not feasible because the recipient lacks sufficient working capital, the Federal awarding agency may provide cash on a working capital advance basis. Under this procedure, the Federal awarding agency shall advance cash to the recipient to cover its estimated disbursement needs for an initial period generally geared to the awardee's disbursing

CH000098

cycle. Thereafter, the Federal awarding agency shall reimburse the recipient for its actual cash disbursements. The working capital advance method of payment shall not be used for recipients unwilling or unable to provide timely advances to their subrecipient to meet the subrecipient's actual cash disbursements.

(g) To the extent available, recipients shall disburse funds available from repayments to and interest earned on a revolving fund, program income, rebates, refunds, contract settlements, audit recoveries and interest earned on such funds before requesting additional cash payments.

(h) Unless otherwise required by statute, Federal awarding agencies shall not withhold payments for proper charges made by recipients at any time during the project period unless (1) or (2) apply.

  (1) A recipient has failed to comply with the project objectives, the terms and conditions of the award, or Federal reporting requirements.

  (2) The recipient or subrecipient is delinquent in a debt to the United States as defined in OMB Circular A-129, "Managing Federal Credit Programs." Under such conditions, the Federal awarding agency may, upon reasonable notice, inform the recipient that payments shall not be made for obligations incurred after a specified date until the conditions are corrected or the indebtedness to the Federal Government is liquidated.

(i) Standards governing the use of banks and other institutions as depositories of funds advanced under awards are as follows.

  (1) Except for situations described in paragraph (i)(2), Federal awarding agencies shall not require separate depository accounts for funds provided to a recipient or establish any eligibility requirements for depositories for funds provided to a recipient. However, recipients must be able to account for the receipt, obligation and expenditure of funds.

  (2) Advances of Federal funds shall be deposited and maintained in insured accounts whenever possible.

(j) Consistent with the national goal of expanding the opportunities for women-owned and minority-owned business enterprises, recipients shall be encouraged to use women-owned and minority-owned banks (a bank which is owned at least 50 percent by women or minority group members).

(k) Recipients shall maintain advances of Federal funds in interest bearing accounts, unless (1), (2) or (3) apply.

  (1) The recipient receives less than $120,000 in Federal awards per year.

  (2) The best reasonably available interest bearing account would not be expected to earn interest in excess of $250 per year on Federal cash balances.

  (3) The depository would require an average or minimum balance so high that it would not be feasible within the expected Federal and non-Federal cash resources.

(l) For those entities where CMIA and its implementing regulations do not apply, interest earned on Federal advances deposited in interest bearing accounts shall be remitted annually to Department of Health and Human Services, Payment Management System, Rockville, MD 20852. Interest amounts up to $250 per year may be retained by the recipient for administrative expense. State universities and hospitals shall comply with CMIA, as it pertains to interest. If an entity subject to CMIA uses its own funds to pay pre-award costs for discretionary awards without prior written approval from the Federal awarding agency, it waives its right to recover the interest under CMIA.

(m) Except as noted elsewhere in this Circular, only the following forms shall be authorized for the recipients in requesting advances and reimbursements. Federal agencies shall not require more than an original and two copies of these forms.

  (1) SF-270, Request for Advance or Reimbursement. Each Federal awarding agency shall adopt the SF-270 as a standard form for all nonconstruction programs when electronic funds transfer or predetermined advance methods are not used. Federal awarding agencies, however, have the option of using this form for construction programs in lieu of the SF-271, "Outlay Report and Request for Reimbursement for Construction Programs."

  (2) SF-271, Outlay Report and Request for Reimbursement for Construction Programs. Each Federal awarding agency shall adopt the SF-271 as the standard form to be used for requesting reimbursement for construction programs. However, a Federal awarding agency may substitute the SF-270 when the Federal awarding agency determines that it provides adequate information to meet Federal needs.

## Section 23: Cost sharing or matching.

(a) All contributions, including cash and third party in-kind, shall be accepted as part of the recipient's cost sharing or matching when such contributions meet all of the following criteria.

  (1) Are verifiable from the recipient's records.

  (2) Are not included as contributions for any other federally-assisted project or program.

  (3) Are necessary and reasonable for proper and efficient accomplishment of project or program objectives.

  (4) Are allowable under the applicable cost principles.

  (5) Are not paid by the Federal Government under another award, except where authorized by Federal statute to be used for cost sharing or matching.

  (6) Are provided for in the approved budget when required by the Federal awarding agency.

  (7) Conform to other provisions of this Circular, as applicable.

(b) Unrecovered indirect costs may be included as part of cost sharing or matching only with the prior approval of the Federal awarding agency.

(c) Values for recipient contributions of services and property shall be established in accordance with the applicable cost principles. If a Federal awarding agency authorizes recipients to donate buildings or land for construction/facilities acquisition projects or long-term use, the value of the donated property for cost sharing or matching shall be the lesser of (1) or (2).

  (1) The certified value of the remaining life of the property recorded in the recipient's accounting records at the time of donation.

  (2) The current fair market value. However, when there is sufficient justification, the Federal awarding agency may approve the use of the current fair market value of the donated property, even if it exceeds the certified value at the time of donation to the project.

(d) Volunteer services furnished by professional and technical personnel, consultants, and other skilled and unskilled labor may be counted as cost sharing or matching if the service is an integral and necessary part of an approved project or program. Rates for volunteer services shall be consistent with those paid for similar work in the recipient's organization. In those instances in which the required skills are not found in the recipient organization, rates shall be consistent with those paid for similar work in the labor market in which the recipient

**Gov. Doc. No. 6**

CH000099

competes for the kind of services involved. In either case, paid fringe benefits that are reasonable, allowable, and allocable may be included in the valuation.

(e) When an employer other than the recipient furnishes the services of an employee, these services shall be valued at the employee's regular rate of pay (plus an amount of fringe benefits that are reasonable, allowable, and allocable, but exclusive of overhead costs), provided these services are in the same skill for which the employee is normally paid.

(f) Donated supplies may include such items as expendable equipment, office supplies, laboratory supplies or workshop and classroom supplies. Value assessed to donated supplies included in the cost sharing or matching share shall be reasonable and shall not exceed the fair market value of the property at the time of the donation.

(g) The method used for determining cost sharing or matching for donated equipment, buildings and land for which title passes to the recipient may differ according to the purpose of the award, if (1) or (2) apply.

(1) If the purpose of the award is to assist the recipient in the acquisition of equipment, buildings or land, the total value of the donated property may be claimed as cost sharing or matching.

(2) If the purpose of the award is to support activities that require the use of equipment, buildings or land, normally only depreciation or use charges for equipment and buildings may be made. However, the full value of equipment or other capital assets and fair rental charges for land may be allowed, provided that the Federal awarding agency has approved the charges.

(h) The value of donated property shall be determined in accordance with the usual accounting policies of the recipient, with the following qualifications.

(1) The value of donated land and buildings shall not exceed its fair market value at the time of donation to the recipient as established by an independent appraiser (e.g., certified real property appraiser or General Services Administration representative) and certified by a responsible official of the recipient.

(2) The value of donated equipment shall not exceed the fair market value of equipment of the same age and condition at the time of donation.

(3) The value of donated space shall not exceed the fair rental value of comparable space as established by an independent appraisal of comparable space and facilities in a privately-owned building in the same locality.

(4) The value of loaned equipment shall not exceed its fair rental value.

(5) The following requirements pertain to the recipient's supporting records for in-kind contributions from third parties.

(i) Volunteer services shall be documented and, to the extent feasible, supported by the same methods used by the recipient for its own employees.

(ii) The basis for determining the valuation for personal service, material, equipment, buildings and land shall be documented.

### Section 24: Program income.

(a) Federal awarding agencies shall apply the standards set forth in this section in requiring recipient organization to account for program income related to projects financed in whole or in part with Federal funds.

(b) Except as provided in paragraph (h) below, program income earned during the project period shall be retained by the recipient and, in accordance with Federal awarding agency regulations or the terms and conditions of the award, shall be used in one or more of the ways listed in the following.

(1) Added to funds committed to the project by the Federal awarding agency and recipient and used to further eligible project or program objectives.

(2) Used to finance the non-Federal share of the project or program.

(3) Deducted from the total project or program allowable cost in determining the net allowable costs on which the Federal share of costs is based.

(c) When an agency authorizes the disposition of program income as described in paragraphs (b)(1) or (b)(2), program income in excess of any limits stipulated shall be used in accordance with paragraph (b)(3).

(d) In the event that the Federal awarding agency does not specify in its regulations or the terms and conditions of the award how program income is to be used, paragraph (b)(3) shall apply automatically to all projects or programs except research. For awards that support research, paragraph (b)(1) shall apply automatically unless the awarding agency indicates in the terms and conditions another alternative on the award or the recipient is subject to special award conditions, as indicated in Section 14.

(e) Unless Federal awarding agency regulations or the terms and conditions of the award provide otherwise, recipients shall have no obligation to the Federal Government regarding program income earned after the end of the project period.

(f) If authorized by Federal awarding agency regulations or the terms and conditions of the award, costs incident to the generation of program income may be deducted from gross income to determine program income, provided these costs have not been charged to the award.

(g) Proceeds from the sale of property shall be handled in accordance with the requirements of the Property Standards (See Sections 30 through 37).

(h) Unless Federal awarding agency regulations or the terms and condition of the award provide otherwise, recipients shall have no obligation to the Federal Government with respect to program income earned from license fees and royalties for copyrighted material, patents, patent applications, trademarks, and inventions produced under an award. However, Patent and Trademark Amendments (35 U.S.C. 18) apply to inventions made under an experimental, developmental, or research award.

### Section 25: Revision of budget and program plans.

(a) The budget plan is the financial expression of the project or program as approved during the award process. It may include either the Federal and non-Federal share, or only the Federal share, depending upon Federal awarding agency requirements. It shall be related to performance for program evaluation purposes whenever appropriate.

(b) Recipients are required to report deviations from budget and program plans, and request prior approvals for budget and program plan revisions, in accordance with this section.

(c) For nonconstruction awards, recipients shall request prior approvals from Federal awarding agencies for one or more of the following program or budget related reasons.

(1) Change in the scope or the objective of the project or program (even if there is no associated budget revision requiring prior written approval).

CH000100

(2) Change in a key person specified in the application or award document.

(3) The absence for more than three months, or a 25 percent reduction in time devoted to the project, by the approved project director or principal investigator.

(4) The need for additional Federal funding.

(5) The transfer of amounts budgeted for indirect costs to absorb increases in direct costs, or vice versa, if approval is required by the Federal awarding agency.

(6) The inclusion, unless waived by the Federal awarding agency, of costs that require prior approval in accordance with OMB Circular A-21, "Cost Principles for Institutions of Higher Education," OMB Circular A-122, "Cost Principles for Non-Profit Organizations," or 45 CFR part 74 Appendix E, "Principles for Determining Costs Applicable to Research and Development under Grants and Contracts with Hospitals," or 48 CFR part 31, "Contract Cost Principles and Procedures," as applicable.

(7) The transfer of funds allotted for training allowances (direct payment to trainees) to other categories of expense.

(8) Unless described in the application and funded in the approved awards, the subaward, transfer or contracting out of any work under an award. This provision does not apply to the purchase of supplies, material, equipment or general support services.

(d) No other prior approval requirements for specific items may be imposed unless a deviation has been approved by OMB.

(e) Except for requirements listed in paragraphs (c)(1) and (c)(4) of this section, Federal awarding agencies are authorized, at their option, to waive cost-related and administrative prior written approvals required by this Circular and OMB Circulars A-21 and A-122. Such waivers may include authorizing recipients to do any one or more of the following.

(1) Incur pre-award costs 90 calendar days prior to award or more than 90 calendar days with the prior approval of the Federal awarding agency. All pre-award costs are incurred at the recipient's risk (i.e., the Federal awarding agency is under no obligation to reimburse such costs if for any reason the recipient does not receive an award or if the award is less than anticipated and inadequate to cover such costs).

(2) Initiate a one-time extension of the expiration date of the award of up to 12 months unless one or more of the following conditions apply. For one-time extensions, the recipient must notify the Federal awarding agency in writing with the supporting reasons and revised expiration date at least 10 days before the expiration date specified in the award. This one-time extension may not be exercised merely for the purpose of using unobligated balances.

(i) The terms and conditions of award prohibit the extension.

(ii) The extension requires additional Federal funds.

(iii) The extension involves any change in the approved objectives or scope of the project.

(3) Carry forward unobligated balances to subsequent funding periods.

(4) For awards that support research, unless the Federal awarding agency provides otherwise in the award or in the agency's regulations, the prior approval requirements described in paragraph (e) are automatically waived (i.e., recipients need not obtain such prior approvals) unless one of the conditions included in paragraph (e)(2) applies.

(f) The Federal awarding agency may, at its option, restrict the transfer of funds among direct cost categories or programs, functions and activities for awards in which the Federal share of the project exceeds $100,000 and the cumulative amount of such transfers exceeds or is expected to exceed 10 percent of the total budget as last approved by the Federal awarding agency. No Federal awarding agency shall permit a transfer that would cause any Federal appropriation or part thereof to be used for purposes other than those consistent with the original intent of the appropriation.

(g) All other changes to nonconstruction budgets, except for the changes described in paragraph (j), do not require prior approval.

(h) For construction awards, recipients shall request prior written approval promptly from Federal awarding agencies for budget revisions whenever (1), (2) or (3) apply.

(1) The revision results from changes in the scope or the objective of the project or program.

(2) The need arises for additional Federal funds to complete the project.

(3) A revision is desired which involves specific costs for which prior written approval requirements may be imposed consistent with applicable OMB cost principles listed in Section 27.

(i) No other prior approval requirements for specific items may be imposed unless a deviation has been approved by OMB.

(j) When a Federal awarding agency makes an award that provides support for both construction and nonconstruction work, the Federal awarding agency may require the recipient to request prior approval from the Federal awarding agency before making any fund or budget transfers between the two types of work supported.

(k) For both construction and nonconstruction awards, Federal awarding agencies shall require recipients to notify the Federal awarding agency in writing promptly whenever the amount of Federal authorized funds is expected to exceed the needs of the recipient for the project period by more than $5000 or five percent of the Federal award, whichever is greater. This notification shall not be required if an application for additional funding is submitted for a continuation award.

(l) When requesting approval for budget revisions, recipients shall use the budget forms that were used in the application unless the Federal awarding agency indicates a letter of request suffices.

(m) Within 30 calendar days from the date of receipt of the request for budget revisions, Federal awarding agencies shall review the request and notify the recipient whether the budget revisions have been approved. If the revision is still under consideration at the end of 30 calendar days, the Federal awarding agency shall inform the recipient in writing of the date when the recipient may expect the decision.

**Section 26: Non-Federal audits.**

(a) Recipients and subrecipients that are institutions of higher education or other non-profit organizations (including hospitals) shall be subject to the audit requirements contained in the Single Audit Act Amendments of 1996 (31 USC 7501-7507) and revised OMB Circular A-133, "Audits of States, Local Governments, and Non-Profit Organizations."

(b) State and local governments shall be subject to the audit requirements contained in the Single Audit Act Amendments of 1996 (31 USC 7501-7507) and revised OMB Circular A-133, "Audits of States, Local Governments, and Non-Profit Organizations."

CH000101

(c) For-profit hospitals not covered by the audit provisions of revised OMB Circular A-133 shall be subject to the audit requirements of the Federal awarding agencies.

(d) Commercial organizations shall be subject to the audit requirements of the Federal awarding agency or the prime recipient as incorporated into the award document.

**Section 27: Allowable costs.** For each kind of recipient, there is a set of Federal principles for determining allowable costs. Allowability of costs shall be determined in accordance with the cost principles applicable to the entity incurring the costs. Thus, allowability of costs incurred by State, local or federally-recognized Indian tribal governments is determined in accordance with the provisions of OMB Circular A-87, "Cost Principles for State and Local Governments." The allowability of costs incurred by non-profit organizations is determined in accordance with the provisions of OMB Circular A-122, "Cost Principles for Non-Profit organizations." The allowability of costs incurred by institutions of higher education is determined in accordance with the provisions of OMB Circular A-21, "Cost Principles for Educational Institutions." The allowability of costs incurred by hospitals is determined in accordance with the provisions of Appendix E of 45 CFR part 74, "Principles for Determining Costs Applicable to Research and Development Under Grants and Contracts with Hospitals." The allowability of costs incurred by commercial organizations and those non-profit organizations listed in Attachment C to Circular A-122 is determined in accordance with the provisions of the Federal Acquisition Regulation (FAR) at 48 CFR part 31.

**Section 28: Period of availability of funds.** Where a funding period is specified, a recipient may charge to the grant only allowable costs resulting from obligations incurred during the funding period and any pre-award costs authorized by the Federal awarding agency.

**Section 29: Conditional exemptions.**

(a) OMB authorizes conditional exemption from OMB administrative requirements and cost principles circulars for certain Federal programs with statutorily-authorized consolidated planning and consolidated administrative funding, that are identified by a Federal agency and approved by the head of the Executive department or establishment. A Federal agency shall consult with OMB during its consideration of whether to grant such an exemption.

(b) To promote efficiency in State and local program administration, when Federal non-entitlement programs with common purposes have specific statutorily-authorized consolidated planning and consolidated administrative funding and where most of the State agency's resources come from non-Federal sources, Federal agencies may exempt these covered State-administered, non-entitlement grant programs from certain OMB grants management requirements. The exemptions would be from all but the allocability of costs provisions of OMB Circulars A-87 (Attachment A, subsection C.3), "Cost Principles for State, Local, and Indian Tribal Governments," A-21 (Section C, subpart 4), "Cost Principles for Educational Institutions," and A-122 (Attachment A, subsection A.4), "Cost Principles for Non-Profit Organizations," and from all of the administrative requirements provisions of OMB Circular A-110, "Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations," and the agencies' grants management common rule.

(c) When a Federal agency provides this flexibility, as a prerequisite to a State's exercising this option, a State must adopt its own written fiscal and administrative requirements for expending and accounting for all funds, which are consistent with the provisions of OMB Circular A-87, and extend such policies to all subrecipients. These fiscal and administrative requirements must be sufficiently specific to ensure that: funds are used in compliance with all applicable Federal statutory and regulatory provisions, costs are reasonable and necessary for operating these programs, and funds are not be used for general expenses required to carry out other responsibilities of a State or its subrecipients.

Property Standards

**Section 30: Purpose of property standards.** Sections 31 through 37 set forth uniform standards governing management and disposition of property furnished by the Federal Government whose cost was charged to a project supported by a Federal award. Federal awarding agencies shall require recipients to observe these standards under awards and shall not impose additional requirements, unless specifically required by Federal statute. The recipient may use its own property management standards and procedures provided it observes the provisions of Sections 31 through 37.

**Section 31: Insurance coverage.** Recipients shall, at a minimum, provide the equivalent insurance coverage for real property and equipment acquired with Federal funds as provided to property owned by the recipient. Federally-owned property need not be insured unless required by the terms and conditions of the award.

**Section 32: Real property.** Each Federal awarding agency shall prescribe requirements for recipients concerning the use and disposition of real property acquired in whole or in part under awards. Unless otherwise provided by statute, such requirements, at a minimum, shall contain the following.

(a) Title to real property shall vest in the recipient subject to the condition that the recipient shall use the real property for the authorized purpose of the project as long as it is needed and shall not encumber the property without approval of the Federal awarding agency.

(b) The recipient shall obtain written approval by the Federal awarding agency for the use of real property in other federally-sponsored projects when the recipient determines that the property is no longer needed for the purpose of the original project. Use in other projects shall be limited to those under federally-sponsored projects (i.e., awards) or programs that have purposes consistent with those authorized for support by the Federal awarding agency.

(c) When the real property is no longer needed as provided in paragraphs (a) and (b), the recipient shall request disposition instructions from the Federal awarding agency or its successor Federal awarding agency. The Federal awarding agency shall observe one or more of the following disposition instructions.

(1) The recipient may be permitted to retain title without further obligation to the Federal Government after it compensates the Federal Government for that percentage of the current fair market value of the property attributable to the Federal participation in the project.

(2) The recipient may be directed to sell the property under guidelines provided by the Federal awarding agency and pay the Federal Government for that percentage of the current fair market value of the property attributable to the Federal participation in the project (after deducting actual and reasonable selling and fix-up expenses, if any, from the sales proceeds). When the recipient is authorized or required to sell the property, proper sales procedures shall be established that provide for competition to the extent practicable and result in the highest possible return.

(3) The recipient may be directed to transfer title to the property to the Federal Government or to an eligible third party provided that, in such cases, the recipient shall be entitled to compensation for its attributable percentage of the current fair market value of the property.

**Section 33: Federally-owned and exempt property.**

(a) Federally-owned property.

CH000102

(1) Title to federally-owned property remains vested in the Federal Government. Recipients shall submit annually an inventory listing of federally-owned property in their custody to the Federal awarding agency. Upon completion of the award or when the property is no longer needed, the recipient shall report the property to the Federal awarding agency for further Federal agency utilization.

(2) If the Federal awarding agency has no further need for the property, it shall be declared excess and reported to the General Services Administration, unless the Federal awarding agency has statutory authority to dispose of the property by alternative methods (e.g., the authority provided by the Federal Technology Transfer Act (15 U.S.C. 3710 (I)) to donate research equipment to educational and non-profit organizations in accordance with E.O. 12821, "Improving Mathematics and Science Education in Support of the National Education Goals.") Appropriate instructions shall be issued to the recipient by the Federal awarding agency.

(b) Exempt property. When statutory authority exists, the Federal awarding agency has the option to vest title to property acquired with Federal funds in the recipient without further obligation to the Federal Government and under conditions the Federal awarding agency considers appropriate. Such property is "exempt property." Should a Federal awarding agency not establish conditions, title to exempt property upon acquisition shall vest in the recipient without further obligation to the Federal Government.

### Section 34: Equipment.

(a) Title to equipment acquired by a recipient with Federal funds shall vest in the recipient, subject to conditions of this section.

(b) The recipient shall not use equipment acquired with Federal funds to provide services to non-Federal outside organizations for a fee that is less than private companies charge for equivalent services, unless specifically authorized by Federal statute, for as long as the Federal Government retains an interest in the equipment.

(c) The recipient shall use the equipment in the project or program for which it was acquired as long as needed, whether or not the project or program continues to be supported by Federal funds and shall not encumber the property without approval of the Federal awarding agency. When no longer needed for the original project or program, the recipient shall use the equipment in connection with its other federally-sponsored activities, in the following order of priority: (i) Activities sponsored by the Federal awarding agency which funded the original project, then (ii) activities sponsored by other Federal awarding agencies.

(d) During the time that equipment is used on the project or program for which it was acquired, the recipient shall make it available for use on other projects or programs if such other use will not interfere with the work on the project or program for which the equipment was originally acquired. First preference for such other use shall be given to other projects or programs sponsored by the Federal awarding agency that financed the equipment; second preference shall be given to projects or programs sponsored by other Federal awarding agencies. If the equipment is owned by the Federal Government, use on other activities not sponsored by the Federal awarding agency shall be permissible if authorized by the Federal awarding agency. User charges shall be treated as program income.

(e) When acquiring replacement equipment, the recipient may use the equipment to be replaced as trade-in or sell the equipment and use the proceeds to offset the costs of the replacement equipment subject to the approval of the Federal awarding agency.

(f) The recipient's property management standards for equipment acquired with Federal funds and federally-owned equipment shall include all of the following.

(1) Equipment records shall be maintained accurately and shall include the following information.

(i) A description of the equipment.

(ii) Manufacturer's serial number, model number, Federal stock number, national stock number, or other identification number.

(iii) Source of the equipment, including the award number.

(iv) Whether title vests in the recipient or the Federal Government.

(v) Acquisition date (or date received, if the equipment was furnished by the Federal Government) and cost.

(vi) Information from which one can calculate the percentage of Federal participation in the cost of the equipment (not applicable to equipment furnished by the Federal Government).

(vii) Location and condition of the equipment and the date the information was reported.

(viii) Unit acquisition cost.

(ix) Ultimate disposition data, including date of disposal and sales price or the method used to determine current fair market value where a recipient compensates the Federal awarding agency for its share.

(2) Equipment owned by the Federal Government shall be identified to indicate Federal ownership.

(3) A physical inventory of equipment shall be taken and the results reconciled with the equipment records at least once every two years. Any differences between quantities determined by the physical inspection and those shown in the accounting records shall be investigated to determine the causes of the difference. The recipient shall, in connection with the inventory, verify the existence, current utilization, and continued need for the equipment.

(4) A control system shall be in effect to insure adequate safeguards to prevent loss, damage, or theft of the equipment. Any loss, damage, or theft of equipment shall be investigated and fully documented; if the equipment was owned by the Federal Government, the recipient shall promptly notify the Federal awarding agency.

(5) Adequate maintenance procedures shall be implemented to keep the equipment in good condition.

(6) Where the recipient is authorized or required to sell the equipment, proper sales procedures shall be established which provide for competition to the extent practicable and result in the highest possible return.

(g) When the recipient no longer needs the equipment, the equipment may be used for other activities in accordance with the following standards. For equipment with a current per unit fair market value of $5000 or more, the recipient may retain the equipment for other uses provided that compensation is made to the original Federal awarding agency or its successor. The amount of compensation shall be computed by applying the percentage of Federal participation in the cost of the original project or program to the current fair market value of the equipment. If the recipient has no need for the equipment, the recipient shall request disposition instructions from the Federal awarding agency. The Federal awarding agency shall determine whether the equipment can be used to meet the agency's

CH000103

requirements. If no requirement exists within that agency, the availability of the equipment shall be reported to the General Services Administration by the Federal awarding agency to determine whether a requirement for the equipment exists in other Federal agencies. The Federal awarding agency shall issue instructions to the recipient no later than 120 calendar days after the recipient's request and the following procedures shall govern.

(1) If so instructed or if disposition instructions are not issued within 120 calendar days after the recipient's request, the recipient shall sell the equipment and reimburse the Federal awarding agency an amount computed by applying to the sales proceeds the percentage of Federal participation in the cost of the original project or program. However, the recipient shall be permitted to deduct and retain from the Federal share $500 or ten percent of the proceeds, whichever is less, for the recipient's selling and handling expenses.

(2) If the recipient is instructed to ship the equipment elsewhere, the recipient shall be reimbursed by the Federal Government by an amount which is computed by applying the percentage of the recipient's participation in the cost of the original project or program to the current fair market value of the equipment, plus any reasonable shipping or interim storage costs incurred.

(3) If the recipient is instructed to otherwise dispose of the equipment, the recipient shall be reimbursed by the Federal awarding agency for such costs incurred in its disposition.

(4) The Federal awarding agency may reserve the right to transfer the title to the Federal Government or to a third party named by the Federal Government when such third party is otherwise eligible under existing statutes. Such transfer shall be subject to the following standards.

   (i) The equipment shall be appropriately identified in the award or otherwise made known to the recipient in writing.

   (ii) The Federal awarding agency shall issue disposition instructions within 120 calendar days after receipt of a final inventory. The final inventory shall list all equipment acquired with grant funds and federally-owned equipment. If the Federal awarding agency fails to issue disposition instructions within the 120 calendar day period, the recipient shall apply the standards of this section, as appropriate.

   (iii) When the Federal awarding agency exercises its right to take title, the equipment shall be subject to the provisions for federally-owned equipment.

### Section 35: Supplies and other expendable property.

(a) Title to supplies and other expendable property shall vest in the recipient upon acquisition. If there is a residual inventory of unused supplies exceeding $5000 in total aggregate value upon termination or completion of the project or program and the supplies are not needed for any other federally-sponsored project or program, the recipient shall retain the supplies for use on non-Federal sponsored activities or sell them, but shall, in either case, compensate the Federal Government for its share. The amount of compensation shall be computed in the same manner as for equipment.

(b) The recipient shall not use supplies acquired with Federal funds to provide services to non-Federal outside organizations for a fee that is less than private companies charge for equivalent services, unless specifically authorized by Federal

statute as long as the Federal Government retains an interest in the supplies.

### Section 36: Intangible property.

(a) The recipient may copyright any work that is subject to copyright and was developed, or for which ownership was purchased, under an award. The Federal awarding agency(ies) reserve a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for Federal purposes, and to authorize others to do so.

(b) Recipients are subject to applicable regulations governing patents and inventions, including government-wide regulations issued by the Department of Commerce at 37 CFR part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements."

(c) The Federal Government has the right to:

(1) obtain, reproduce, publish or otherwise use the data first produced under an award; and

(2) authorize others to receive, reproduce, publish, or otherwise use such data for Federal purposes.

(d) (1) In addition, in response to a Freedom of Information Act (FOIA) request for research data relating to published research findings produced under an award that were used by the Federal Government in developing an agency action that has the force and effect of law, the Federal awarding agency shall request, and the recipient shall provide, within a reasonable time, the research data so that they can be made available to the public through the procedures established under the FOIA. If the Federal awarding agency obtains the research data solely in response to a FOIA request, the agency may charge the requester a reasonable fee equaling the full incremental cost of obtaining the research data. This fee should reflect costs incurred by the agency, the recipient, and applicable subrecipients. This fee is in addition to any fees the agency may assess under the FOIA (5 U.S.C. 552(a)(4)(A)).

(2) The following definitions apply for purposes of paragraph (d) of this section:

   (i) Research data is defined as the recorded factual material commonly accepted in the scientific community as necessary to validate research findings, but not any of the following: preliminary analyses, drafts of scientific papers, plans for future research, peer reviews, or communications with colleagues. This "recorded" material excludes physical objects (e.g., laboratory samples). Research data also do not include:

      (A) Trade secrets, commercial information, materials necessary to be held confidential by a researcher until they are published, or similar information which is protected under law; and

      (B) Personnel and medical information and similar information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, such as information that could be used to identify a particular person in a research study.

   (ii) Published is defined as either when:

      (A) Research findings are published in a peer-reviewed scientific or technical journal; or

      (B) A Federal agency publicly and officially cites the research findings in support of an agency action that has the force and effect of law.

CH000104

(iii) *Used by the Federal Government in developing an agency action that has the force and effect of law* is defined as when an agency publicly and officially cites the research findings in support of an agency action that has the force and effect of law.

(e) Title to intangible property and debt instruments acquired under an award or subaward vests upon acquisition in the recipient. The recipient shall use that property for the originally-authorized purpose, and the recipient shall not encumber the property without approval of the Federal awarding agency. When no longer needed for the originally authorized purpose, disposition of the intangible property shall occur in accordance with the provisions of paragraph ___.34(g).

**Section 37: Property trust relationship.** Real property, equipment, intangible property and debt instruments that are acquired or improved with Federal funds shall be held in trust by the recipient as trustee for the beneficiaries of the project or program under which the property was acquired or improved. Agencies may require recipients to record liens or other appropriate notices of record to indicate that personal or real property has been acquired or improved with Federal funds and that use and disposition conditions apply to the property.

Procurement Standards

**Section 40: Purpose of procurement standards.** Sections 41 through 43 set forth standards for use by recipients in establishing procedures for the procurement of supplies and other expendable property, equipment, real property and other services with Federal funds. These standards are furnished to ensure that such materials and services are obtained in an effective manner and in compliance with the provisions of applicable Federal statutes and executive orders. No additional procurement standards or requirements shall be imposed by the Federal awarding agencies upon recipients, unless specifically required by Federal statute or executive order or approved by OMB.

**Section 41: Recipient responsibilities.** The standards contained in this section do not relieve the recipient of the contractual responsibilities arising under its contract(s). The recipient is the responsible authority, without recourse to the Federal awarding agency, regarding the settlement and satisfaction of all contractual and administrative issues arising out of procurements entered into in support of an award or other agreement. This includes disputes, claims, protests of award, source evaluation or other matters of a contractual nature. Matters concerning violation of statute are to be referred to such Federal, State or local authority as may have proper jurisdiction.

**Section 42: Codes of conduct.** The recipient shall maintain written standards of conduct governing the performance of its employees engaged in the award and administration of contracts. No employee, officer, or agent shall participate in the selection, award, or administration of a contract supported by Federal funds if a real or apparent conflict of interest would be involved. Such a conflict would arise when the employee, officer, or agent, any member of his or her immediate family, his or her partner, or an organization which employs or is about to employ any of the parties indicated herein, has a financial or other interest in the firm selected for an award. The officers, employees, and agents of the recipient shall neither solicit nor accept gratuities, favors, or anything of monetary value from contractors, or parties to subagreements. However, recipients may set standards for situations in which the financial interest is not substantial or the gift is an unsolicited item of nominal value. The standards of conduct shall provide for disciplinary actions to be applied for violations of such standards by officers, employees, or agents of the recipient.

**Section 43: Competition.** All procurement transactions shall be conducted in a manner to provide, to the maximum extent practical, open and free competition. The recipient shall be alert to organizational conflicts of interest as well as noncompetitive practices among contractors that may restrict or eliminate competition or otherwise restrain trade. In order to ensure objective contractor performance and eliminate unfair competitive advantage, contractors that develop or draft specifications, requirements, statements of work, invitations for bids and/or requests for proposals shall be excluded from competing for such procurements. Awards shall be made to the bidder or offerer whose bid or offer is responsive to the solicitation and is most advantageous to the recipient, price, quality and other factors considered. Solicitations shall clearly set forth all requirements that the bidder or offeror shall fulfill in order for the bid or offer to be evaluated by the recipient. Any and all bids or offers may be rejected when it is in the recipient's interest to do so.

**Section 44: Procurement procedures.**

(a) All recipients shall establish written procurement procedures. These procedures shall provide for, at a minimum, that (1), (2) and (3) apply.

(1) Recipients avoid purchasing unnecessary items.

(2) Where appropriate, an analysis is made of lease and purchase alternatives to determine which would be the most economical and practical procurement for the Federal Government.

(3) Solicitations for goods and services provide for all of the following.

(i) A clear and accurate description of the technical requirements for the material, product or service to be procured. In competitive procurements, such a description shall not contain features which unduly restrict competition.

(ii) Requirements which the bidder/offeror must fulfill and all other factors to be used in evaluating bids or proposals.

(iii) A description, whenever practicable, of technical requirements in terms of functions to be performed or performance required, including the range of acceptable characteristics or minimum acceptable standards.

(iv) The specific features of "brand name or equal" descriptions that bidders are required to meet when such items are included in the solicitation.

(v) The acceptance, to the extent practicable and economically feasible, of products and services dimensioned in the metric system of measurement.

(vi) Preference, to the extent practicable and economically feasible, for products and services that conserve natural resources and protect the environment and are energy efficient.

(b) Positive efforts shall be made by recipients to utilize small businesses, minority-owned firms, and women's business enterprises, whenever possible. Recipients of Federal awards shall take all of the following steps to further this goal.

(1) Ensure that small businesses, minority-owned firms, and women's business enterprises are used to the fullest extent practicable.

(2) Make information on forthcoming opportunities available and arrange time frames for purchases and contracts to encourage and facilitate participation by small businesses, minority-owned firms, and women's business enterprises.

(3) Consider in the contract process whether firms competing for larger contracts intend to subcontract with small

**Gov. Doc. No. 6**

businesses, minority-owned firms, and women's business enterprises.

(4) Encourage contracting with consortiums of small businesses, minority-owned firms and women's business enterprises when a contract is too large for one of these firms to handle individually.

(5) Use the services and assistance, as appropriate, of such organizations as the Small Business Administration and the Department of Commerce's Minority Business Development Agency in the solicitation and utilization of small businesses, minority-owned firms and women's business enterprises.

(c) The type of procuring instruments used (e.g., fixed price contracts, cost reimbursable contracts, purchase orders, and incentive contracts) shall be determined by the recipient but shall be appropriate for the particular procurement and for promoting the best interest of the program or project involved. The "cost-plus-a-percentage-of-cost" or "percentage of construction cost" methods of contracting shall not be used.

(d) Contracts shall be made only with responsible contractors who possess the potential ability to perform successfully under the terms and conditions of the proposed procurement. Consideration shall be given to such matters as contractor integrity, record of past performance, financial and technical resources or accessibility to other necessary resources. In certain circumstances, contracts with certain parties are restricted by agencies' implementation of E.O.s 12549 and 12689, "Debarment and Suspension."

(e) Recipients shall, on request, make available for the Federal awarding agency, pre-award review and procurement documents, such as request for proposals or invitations for bids, independent cost estimates, etc., when any of the following conditions apply.

(1) A recipient's procurement procedures or operation fails to comply with the procurement standards in the Federal awarding agency's implementation of this Circular.

(2) The procurement is expected to exceed the small purchase threshold fixed at 41 U.S.C. 403 (11) (currently $25,000) and is to be awarded without competition or only one bid or offer is received in response to a solicitation.

[Note: Public Law 103-355, the Federal Acquisition Streamlining Act of 1994, amended 41 U.S.C. 403(11) increasing the threshold from $25,000 to $100,000 effective October 13, 1994.]

(3) The procurement, which is expected to exceed the small purchase threshold, specifies a "brand name" product.

(4) The proposed award over the small purchase threshold is to be awarded to other than the apparent low bidder under a sealed bid procurement.

(5) A proposed contract modification changes the scope of a contract or increases the contract amount by more than the amount of the small purchase threshold.

**Section 45: Cost and price analysis.** Some form of cost or price analysis shall be made and documented in the procurement files in connection with every procurement action. Price analysis may be accomplished in various ways, including the comparison of price quotations submitted, market prices and similar indicia, together with discounts. Cost analysis is the review and evaluation of each element of cost to determine reasonableness, allocability and allowability.

**Section 46: Procurement records.** Procurement records and files for purchases in excess of the small purchase threshold shall include the following at a minimum: (a) basis for contractor selection, (b) justification for lack of competition when competitive bids or offers are not obtained, and (c) basis for award cost or price.

**Section 47: Contract administration.** A system for contract administration shall be maintained to ensure contractor conformance with the terms, conditions and specifications of the contract and to ensure adequate and timely follow up of all purchases. Recipients shall evaluate contractor performance and document, as appropriate, whether contractors have met the terms, conditions and specifications of the contract.

**Section 48: Contract provisions.** The recipient shall include, in addition to provisions to define a sound and complete agreement, the following provisions in all contracts. The following provisions shall also be applied to subcontracts.

(a) Contracts in excess of the small purchase threshold shall contain contractual provisions or conditions that allow for administrative, contractual, or legal remedies in instances in which a contractor violates or breaches the contract terms, and provide for such remedial actions as may be appropriate.

(b) All contracts in excess of the small purchase threshold shall contain suitable provisions for termination by the recipient, including the manner by which termination shall be effected and the basis for settlement. In addition, such contracts shall describe conditions under which the contract may be terminated for default as well as conditions where the contract may be terminated because of circumstances beyond the control of the contractor.

(c) Except as otherwise required by statute, an award that requires the contracting (or subcontracting) for construction or facility improvements shall provide for the recipient to follow its own requirements relating to bid guarantees, performance bonds, and payment bonds unless the construction contract or subcontract exceeds $100,000. For those contracts or subcontracts exceeding $100,000, the Federal awarding agency may accept the bonding policy and requirements of the recipient, provided the Federal awarding agency has made a determination that the Federal Government's interest is adequately protected. If such a determination has not been made, the minimum requirements shall be as follows.

(1) A bid guarantee from each bidder equivalent to five percent of the bid price. The "bid guarantee" shall consist of a firm commitment such as a bid bond, certified check, or other negotiable instrument accompanying a bid as assurance that the bidder shall, upon acceptance of his bid, execute such contractual documents as may be required within the time specified.

(2) A performance bond on the part of the contractor for 100 percent of the contract price. A "performance bond" is one executed in connection with a contract to secure fulfillment of all the contractor's obligations under such contract.

(3) A payment bond on the part of the contractor for 100 percent of the contract price. A "payment bond" is one executed in connection with a contract to assure payment as required by statute of all persons supplying labor and material in the execution of the work provided for in the contract.

(4) Where bonds are required in the situations described herein, the bonds shall be obtained from companies holding certificates of authority as acceptable sureties pursuant to 31 CFR part 223, "Surety Companies Doing Business with the United States."

(d) All negotiated contracts (except those for less than the small purchase threshold) awarded by recipients shall include a provision to the effect that the recipient, the Federal awarding agency, the Comptroller General of the United States, or any of their duly authorized representatives, shall have access to any books, documents, papers and records of the contractor which are directly pertinent to a specific program for the

CH000106

purpose of making audits, examinations, excerpts and tran-scriptions.

(e) All contracts, including small purchases, awarded by recipi-ents and their contractors shall contain the procurement provisions of Appendix A to this Circular, as applicable.

Reports and Records

**Section 50: Purpose of reports and records.** Sections 51 through 53 set forth the procedures for monitoring and reporting on the recipient's financial and program performance and the necessary standard reporting forms. They also set forth record retention requirements.

**Section 51: Monitoring and reporting program performance.**

(a) Recipients are responsible for managing and monitoring each project, program, subaward, function or activity supported by the award. Recipients shall monitor subawards to ensure subrecipients have met the audit requirements as delineated in Section 26.

(b) The Federal awarding agency shall prescribe the frequency with which the performance reports shall be submitted. Except as provided in paragraph 51(f), performance reports shall not be required more frequently than quarterly or, less frequently than annually. Annual reports shall be due 90 calendar days after the grant year; quarterly or semi-annual reports shall be due 30 days after the reporting period. The Federal awarding agency may require annual reports before the anniversary dates of multiple year awards in lieu of these requirements. The final performance reports are due 90 calendar days after the expiration or termination of the award.

(c) If inappropriate, a final technical or performance report shall not be required after completion of the project.

(d) When required, performance reports shall generally contain, for each award, brief information on each of the following.

(1) A comparison of actual accomplishments with the goals and objectives established for the period, the findings of the investigator, or both. Whenever appropriate and the output of programs or projects can be readily quantified, such quantitative data should be related to cost data for computation of unit costs.

(2) Reasons why established goals were not met, if appropriate.

(3) Other pertinent information including, when appropriate, analysis and explanation of cost overruns or high unit costs.

(e) Recipients shall not be required to submit more than the original and two copies of performance reports.

(f) Recipients shall immediately notify the Federal awarding agency of developments that have a significant impact on the award-supported activities. Also, notification shall be given in the case of problems, delays, or adverse conditions which materially impair the ability to meet the objectives of the award. This notification shall include a statement of the action taken or contemplated, and any assistance needed to resolve the situation.

(g) Federal awarding agencies may make site visits, as needed.

(h) Federal awarding agencies shall comply with clearance requirements of 5 CFR part 1320 when requesting perfor-mance data from recipients.

**Section 52: Financial reporting.**

(a) The following forms or such other forms as may be approved by OMB are authorized for obtaining financial information from recipients.

(1) SF-269 or SF-269A, Financial Status Report.

(i) Each Federal awarding agency shall require recipi-ents to use the SF-269 or SF-269A to report the status of funds for all nonconstruction projects or programs. A Federal awarding agency may, however, have the option of not requiring the SF-269 or SF-269A when the SF-270, Request for Advance or Reimbursement, or SF-272, Report of Federal Cash Transactions, is determined to provide adequate information to meet its needs, except that a final SF-269 or SF-269A shall be required at the completion of the project when the SF-270 is used only for advances.

(ii) The Federal awarding agency shall prescribe whether the report shall be on a cash or accrual basis. If the Federal awarding agency requires accrual information and the recipient's accounting records are not normally kept on the accrual basis, the recipient shall not be required to convert its accounting system, but shall develop such accrual information through best estimates based on an analysis of the documentation on hand.

(iii) The Federal awarding agency shall determine the frequency of the Financial Status Report for each project or program, considering the size and com-plexity of the particular project or program. However, the report shall not be required more frequently than quarterly or less frequently than annually. A final report shall be required at the completion of the agreement.

(iv) The Federal awarding agency shall require recipients to submit the SF-269 or SF-269A (an original and no more than two copies) no later than 30 days after the end of each specified reporting period for quarterly and semi-annual reports, and 90 calendar days for annual and final reports. Extensions of reporting due dates may be approved by the Federal awarding agency upon request of the recipient.

(2) SF-272, Report of Federal Cash Transactions.

(i) When funds are advanced to recipients the Federal awarding agency shall require each recipient to submit the SF-272 and, when necessary, its continua-tion sheet, SF-272a. The Federal awarding agency shall use this report to monitor cash advanced to recipients and to obtain disbursement information for each agreement with the recipients.

(ii) Federal awarding agencies may require forecasts of Federal cash requirements in the "Remarks" section of the report.

(iii) When practical and deemed necessary, Federal awarding agencies may require recipients to report in the "Remarks" section the amount of cash advances received in excess of three days. Recipients shall provide short narrative explanations of actions taken to reduce the excess balances.

(iv) Recipients shall be required to submit not more than the original and two copies of the SF-272 15 calendar days following the end of each quarter. The Federal awarding agency may require a monthly report from those recipients receiving advances totaling $1 million or more per year.

(v) Federal awarding agencies may waive the require-ment for submission of the SF-272 for any one of the following reasons: (1) When monthly advances do not exceed $25,000 per recipient, provided that such advances are monitored through other forms con-tained in this section; (2) If, in the Federal awarding

**Gov. Doc. No. 6**

CH000107

agency's opinion, the recipient's accounting controls are adequate to minimize excessive Federal advances; or, (3) When the electronic payment mechanisms provide adequate data.

(b) When the Federal awarding agency needs additional information or more frequent reports, the following shall be observed.

    (1) When additional information is needed to comply with legislative requirements, Federal awarding agencies shall issue instructions to require recipients to submit such information under the "Remarks" section of the reports.

    (2) When a Federal awarding agency determines that a recipient's accounting system does not meet the standards in Section 21, additional pertinent information to further monitor awards may be obtained upon written notice to the recipient until such time as the system is brought up to standard. The Federal awarding agency, in obtaining this information, shall comply with report clearance requirements of 5 CFR part 1320.

    (3) Federal awarding agencies are encouraged to shade out any line item on any report if not necessary.

    (4) Federal awarding agencies may accept the identical information from the recipients in machine readable format or computer printouts or electronic outputs in lieu of prescribed formats.

    (5) Federal awarding agencies may provide computer or electronic outputs to recipients when such expedites or contributes to the accuracy of reporting.

**Section 53: Retention and access requirements for records.**

(a) This section sets forth requirements for record retention and access to records for awards to recipients. Federal awarding agencies shall not impose any other record retention or access requirements upon recipients.

(b) Financial records, supporting documents, statistical records, and all other records pertinent to an award shall be retained for a period of three years from the date of submission of the final expenditure report or, for awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report, as authorized by the Federal awarding agency. The only exceptions are the following.

    (1) If any litigation, claim, or audit is started before the expiration of the 3-year period, the records shall be retained until all litigation, claims or audit findings involving the records have been resolved and final action taken.

    (2) Records for real property and equipment acquired with Federal funds shall be retained for 3 years after final disposition.

    (3) When records are transferred to or maintained by the Federal awarding agency, the 3-year retention requirement is not applicable to the recipient.

    (4) Indirect cost rate proposals, cost allocations plans, etc. as specified in paragraph 53(g).

(c) Copies of original records may be substituted for the original records if authorized by the Federal awarding agency.

(d) The Federal awarding agency shall request transfer of certain records to its custody from recipients when it determines that the records possess long term retention value. However, in order to avoid duplicate recordkeeping, a Federal awarding agency may make arrangements for recipients to retain any records that are continuously needed for joint use.

(e) The Federal awarding agency, the Inspector General, Comptroller General of the United States, or any of their duly authorized representatives, have the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents. This right also includes timely and reasonable access to a recipient's personnel for the purpose of interview and discussion related to such documents. The rights of access in this paragraph are not limited to the required retention period, but shall last as long as records are retained.

(f) Unless required by statute, no Federal awarding agency shall place restrictions on recipients that limit public access to the records of recipients that are pertinent to an award, except when the Federal awarding agency can demonstrate that such records shall be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (5 U.S.C. 552) if the records had belonged to the Federal awarding agency.

(g) Indirect cost rate proposals, cost allocations plans, etc. Paragraphs (g)(1) and (g)(2) apply to the following types of documents, and their supporting records: indirect cost rate computations or proposals, cost allocation plans, and any similar accounting computations of the rate at which a particular group of costs is chargeable (such as computer usage chargeback rates or composite fringe benefit rates).

    (1) If submitted for negotiation. If the recipient submits to the Federal awarding agency or the subrecipient submits to the recipient the proposal, plan, or other computation to form the basis for negotiation of the rate, then the 3-year retention period for its supporting records starts on the date of such submission.

    (2) If not submitted for negotiation. If the recipient is not required to submit to the Federal awarding agency or the subrecipient is not required to submit to the recipient the proposal, plan, or other computation for negotiation purposes, then the 3-year retention period for the proposal, plan, or other computation and its supporting records starts at the end of the fiscal year (or other accounting period) covered by the proposal, plan, or other computation.

Termination and Enforcement

**Section 60: Purpose of termination and enforcement.** Sections 61 and 62 set forth uniform suspension, termination and enforcement procedures.

**Section 61: Termination.**

(a) Awards may be terminated in whole or in part only if (1), (2) or (3) apply.

    (1) By the Federal awarding agency, if a recipient materially fails to comply with the terms and conditions of an award.

    (2) By the Federal awarding agency with the consent of the recipient, in which case the two parties shall agree upon the termination conditions, including the effective date and, in the case of partial termination, the portion to be terminated.

    (3) By the recipient upon sending to the Federal awarding agency written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Federal awarding agency determines in the case of partial termination that the reduced or modified portion of the grant will not accomplish the purposes for which the grant was made, it may terminate the grant in its entirety under either paragraphs (a)(1) or (2).

(b) If costs are allowed under an award, the responsibilities of the recipient referred to in paragraph 71(a), including those for property management as applicable, shall be considered in

CH000108

the termination of the award, and provision shall be made for continuing responsibilities of the recipient after termination, as appropriate.

## Section 62: Enforcement.

(a) Remedies for noncompliance. If a recipient materially fails to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application, or notice of award, the Federal awarding agency may, in addition to imposing any of the special conditions outlined in Section .14, take one or more of the following actions, as appropriate in the circumstances.

(1) Temporarily withhold cash payments pending correction of the deficiency by the recipient or more severe enforcement action by the Federal awarding agency.

(2) Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance.

(3) Wholly or partly suspend or terminate the current award.

(4) Withhold further awards for the project or program.

(5) Take other remedies that may be legally available.

(b) Hearings and appeals. In taking an enforcement action, the awarding agency shall provide the recipient an opportunity for hearing, appeal, or other administrative proceeding to which the recipient is entitled under any statute or regulation applicable to the action involved.

(c) Effects of suspension and termination. Costs of a recipient resulting from obligations incurred by the recipient during a suspension or after termination of an award are not allowable unless the awarding agency expressly authorizes them in the notice of suspension or termination or subsequently. Other recipient costs during suspension or after termination which are necessary and not reasonably avoidable are allowable if (1) and (2) apply.

(1) The costs result from obligations which were properly incurred by the recipient before the effective date of suspension or termination, are not in anticipation of it, and in the case of a termination, are noncancelable.

(2) The costs would be allowable if the award were not suspended or expired normally at the end of the funding period in which the termination takes effect.

(d) Relationship to debarment and suspension. The enforcement remedies identified in this section, including suspension and termination, do not preclude a recipient from being subject to debarment and suspension under E.O.s 12549 and 12689 and the Federal awarding agency implementing regulations (see Section 13).

## SUBPART D—After-the-Award Requirements

**Section 70: Purpose.** Sections 71 through 73 contain closeout procedures and other procedures for subsequent disallowances and adjustments.

## Section 71: Closeout procedures.

(a) Recipients shall submit, within 90 calendar days after the date of completion of the award, all financial, performance, and other reports as required by the terms and conditions of the award. The Federal awarding agency may approve extensions when requested by the recipient.

(b) Unless the Federal awarding agency authorizes an extension, a recipient shall liquidate all obligations incurred under the award not later than 90 calendar days after the funding period or the date of completion as specified in the terms and conditions of the award or in agency implementing instructions.

(c) The Federal awarding agency shall make prompt payments to a recipient for allowable reimbursable costs under the award being closed out.

(d) The recipient shall promptly refund any balances of unobligated cash that the Federal awarding agency has advanced or paid and that is not authorized to be retained by the recipient for use in other projects. OMB Circular A-129 governs unreturned amounts that become delinquent debts.

(e) When authorized by the terms and conditions of the award, the Federal awarding agency shall make a settlement for any upward or downward adjustments to the Federal share of costs after closeout reports are received.

(f) The recipient shall account for any real and personal property acquired with Federal funds or received from the Federal Government in accordance with Sections 31 through 37.

(g) In the event a final audit has not been performed prior to the closeout of an award, the Federal awarding agency shall retain the right to recover an appropriate amount after fully considering the recommendations on disallowed costs resulting from the final audit.

## Section 72: Subsequent adjustments and continuing responsibilities.

(a) The closeout of an award does not affect any of the following.

(1) The right of the Federal awarding agency to disallow costs and recover funds on the basis of a later audit or other review.

(2) The obligation of the recipient to return any funds due as a result of later refunds, corrections, or other transactions.

(3) Audit requirements in Section 26.

(4) Property management requirements in Sections 31 through 37.

(5) Records retention as required in Section 53.

(b) After closeout of an award, a relationship created under an award may be modified or ended in whole or in part with the consent of the Federal awarding agency and the recipient, provided the responsibilities of the recipient referred to in paragraph 73(a), including those for property management as applicable, are considered and provisions made for continuing responsibilities of the recipient, as appropriate.

## Section 73: Collection of amounts due.

(a) Any funds paid to a recipient in excess of the amount to which the recipient is finally determined to be entitled under the terms and conditions of the award constitute a debt to the Federal Government. If not paid within a reasonable period after the demand for payment, the Federal awarding agency may reduce the debt by (1), (2) or (3).

(1) Making an administrative offset against other requests for reimbursements.

(2) Withholding advance payments otherwise due to the recipient.

(3) Taking other action permitted by statute.

(b) Except as otherwise provided by law, the Federal awarding agency shall charge interest on an overdue debt in accordance with 4 CFR Chapter II, "Federal Claims Collection Standards."

**Gov. Doc. No. 6**

CH000109

**Appendix A**
**Contract Provisions**

) contracts, awarded by a recipient including small purchases, shall contain the following provisions as applicable:

1. **Equal Employment Opportunity.** All contracts shall contain a provision requiring compliance with E.O. 11246, "Equal Employment Opportunity," as amended by E.O. 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," and as supplemented by regulations at 41 CFR part 60, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor."

2. **Copeland "Anti-Kickback" Act (18 U.S.C. 874 and 40 U.S.C. 276c).** All contracts and subgrants in excess of $2000 for construction or repair awarded by recipients and subrecipients shall include a provision for compliance with the Copeland "Anti-Kickback" Act (18 U.S.C. 874), as supplemented by Department of Labor regulations (29 CFR part 3, "Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States"). The Act provides that each contractor or subrecipient shall be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public work, to give up any part of the compensation to which he is otherwise entitled. The recipient shall report all suspected or reported violations to the Federal awarding agency.

3. **Davis-Bacon Act, as amended (40 U.S.C. 276a to a-7).** When required by Federal program legislation, all construction contracts awarded by the recipients and subrecipients of more than $2000 shall include a provision for compliance with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations (29 CFR part 5, "Labor Standards Provisions Applicable to Contracts Governing Federally Financed and Assisted Construction"). Under this Act, contractors shall be required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the Secretary of Labor. In addition, contractors shall be required to pay wages not less than once a week. The recipient shall place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation and the award of a contract shall be conditioned upon the acceptance of the wage determination. The recipient shall report all suspected or reported violations to the Federal awarding agency.

4. **Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333).** Where applicable, all contracts awarded by recipients in excess of $2000 for construction contracts and in excess of $2500 for other contracts that involve the employment of mechanics or laborers shall include a provision for compliance with Sections 102 and 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333), as supplemented by Department of Labor regulations (29 CFR part 5). Under Section 102 of the Act, each contractor shall be required to compute the wages of every mechanic and laborer on the basis of a standard work week of 40 hours. Work in excess of the standard work week is permissible provided that the worker is compensated at a rate of not less than 1½ times the basic rate of pay for all hours worked in excess of 40 hours in the work week. Section 107 of the Act is applicable to construction work and provides that no laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous. These requirements do not apply to the purchases of supplies or materials or articles ordinarily available on the open market, or contracts for transportation or transmission of intelligence.

5. **Rights to Inventions Made Under a Contract or Agreement.** Contracts or agreements for the performance of experimental, developmental, or research work shall provide for the rights of the Federal Government and the recipient in any resulting invention in accordance with 37 CFR part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any implementing regulations issued by the awarding agency.

6. **Clean Air Act (42 U.S.C. 7401 et seq.) and the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.) as amended.** Contracts and subgrants of amounts in excess of $100,000 shall contain a provision that requires the recipient to agree to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401 et seq.) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251 et seq.). Violations shall be reported to the Federal awarding agency and the Regional Office of the Environmental Protection Agency (EPA).

7. **Byrd Anti-Lobbying Amendment (31 U.S.C. 1352).** Contractors who apply or bid for an award of $100,000 or more shall file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a member of Congress, officer or employee of Congress, or an employee of a member of Congress in connection with obtaining any Federal contract, grant or any other award covered by 31 U.S.C. 1352. Each tier shall also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the recipient.

8. **Debarment and Suspension (E.O.s 12549 and 12689).** No contract shall be made to parties listed on the General Services Administration's List of Parties Excluded from Federal Procurement or Nonprocurement Programs in accordance with E.O.s 12549 and 12689, "Debarment and Suspension." This list contains the names of parties debarred, suspended, or otherwise excluded by agencies, and contractors declared ineligible under statutory or regulatory authority other than E.O. 12549. Contractors with awards that exceed the small purchase threshold shall provide the required certification regarding its exclusion status and that of its principal employees.

**Gov. Doc. No. 6**

CH000110

# Documentation Request Check List

| Applicant | Chabad of California |
|---|---|
| Grant Award Number/FIPS# | 2007-0023 / 037-90820 |

Description of Accounting System: Double entry, computerized using Sage Pro software and Quickbooks.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-001-000)

Expenditures for this Grant are recorded as Running Springs Improvements (GL account #15000-118-000)

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants<br>**This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000111

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-001-000 Through 40200-001-000**

| Account Number | Description | Status |
|---|---|---|

Account Type: S01 Donations & revenues:

| 40200-001-000 | Homeland Security Grant | A |

CH000112

Case 2:10-cv-01056-MCE-EFB   Document 80-5   Filed 06/26/14   Page 62 of 191   #1 (1b)

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-118-000 Through 15000-118-000**

| Account Number | Description | Status |
|---|---|---|
| Account Type: A02  Fixed Assets, property: | | |
| 15000-118-000 | Running Springs, improvements | A |

CH000113

| Date | Payor | Amount | GL account |
|------|-------|--------|------------|
| 09/03/08 | State of Calif. | -30275.00 | 40200-001-000 |
| 07/16/09 | State of Calif. | -66725.00 | 40200-001-000 |

CH000114

#2 (2b)

Chabad of California Grant 2007-023
Cash disbursment ledger/invoice/proof of payment cover sheet

| Vendor | Contractual expense | Amount disbursed | Ck# | Invoice # |
|---|---|---|---|---|
| Elite Interactive | $65,675 | $2,000 | 4749 | 8974 |
| Magen Security | $6,080 | $6,086 | 4166, 22609 | 4503 |
| Zidani, Yova | $600 | $1,800 | 2826 | 493649 |
| Copley, Steve | $770 | $770 | 2776, 2755 | two invoices not numbered |
| Clayton, Larry | $23,875 | $24,925 | ** | 185 |
| | $97,000 | | | |

** Clayton check numbers:
2748
2788
2777
2834
2887
2964

CH000115

Chabad of California
Computer & Manual Check Register
Current and History Files, 06/16/09 to 06/16/09
All Accounts, Sessions 000000 to 008680
Vendor = ELI

Active Sessions (Not Included in Report)
008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| ELI832 / Elite Interactive Solutions, Inc. | 4749 | 06/16/09 | M | 0021 | 006862 | | 2000.00 |
| | | | | ELI832 Subtotal : | | | 2000.00 |
| | | Total For Check Account: | 10000-040-000 | | | | 2000.00 |
| | | | | Check Register Total : | | | 2000.00 |

CH000116

**Chabad of California**
**Computer & Manual Check Register**
**Current and History Files, 06/01/08 to 06/30/08**
**All Accounts, Sessions 000000 to 008664**
**Vendor = MAGENS**

**Active Sessions (Not Included in Report)**
**008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| MAGENS / Magen Security | 4166 | 06/20/08 | M | 06/20/08 | 004915 | ELEC. GATE | 2000.00 |
| | | | | | | MAGENS Subtotal : | 2000.00 |
| | 22609 | 06/30/08 | 1 | 4503 | 004958 | | 4086.00 |
| | | | | | | MAGENS Subtotal : | 4086.00 |
| | | | Total For Check Account: | 10000-040-000 | | | 6086.00 |
| | | | | | | Check Register Total : | 6086.00 |

#2 (20)

4:35 PM
05/17/10
Accrual Basis

# Running Springs Retreat Center
## Transactions by Account
### As of June 20, 2008

| Type | Date | Num | Name | Class | Clr | Amount |
|------|------|-----|------|-------|-----|--------|
| **10000 · Cash in Bank** | | | | | | |
| Bill Pmt -Check | 6/20/2008 | 2826 | Yuval Zidani | | X | -1,800.00 |
| Total 10000 · Cash in Bank | | | | | | -1,800.00 |
| **TOTAL** | | | | | | **-1,800.00** |

CH000118

#2 (2f)

4:34 PM

05/17/10

Accrual Basis

## Running Springs Retreat Center
## Transactions by Account
### As of July 31, 2008

| Type | Date | Num | Name | Class | Clr | Amount |
|------|------|-----|------|-------|-----|--------|
| **10000 · Cash in Bank** | | | | | | |
| Check | 6/3/2008 | 2776 | Steve Copley Snow... | | X | -245.00 |
| ~~Check~~ | ~~6/5/2008~~ | ~~2752~~ | ~~Steve Copley Snow...~~ | | ~~X~~ | ~~-560.00~~ N/A |
| Check | 6/5/2008 | 2755 | Steve Copley Snow... | | X | -525.00 |
| Total 10000 · Cash in Bank | | | | | | -1,330.00 |
| **TOTAL** | | | | | | **-1,330.00** |

Page 1

CH000119

4:32 PM

05/17/10

Accrual Basis

# Running Springs Retreat Center
## Transactions by Account
### As of July 31, 2008

| Type | Date | Num | Name | Class | Clr | Amount |
|------|------|-----|------|-------|-----|--------|
| **10000 · Cash in Bank** | | | | | | |
| Check | 6/3/2008 | 2748 | Larry Clayton | | X | -10,859.00 |
| Check | 6/6/2008 | 2788 | Larry Clayton | | X | -500.00 |
| Check | 6/13/2008 | 2777 | Larry Clayton | | X | -2,500.00 |
| Check | 6/25/2008 | 2834 | Larry Clayton | | X | -3,192.00 |
| Check | 7/3/2008 | 2887 | Larry Clayton | | X | -6,274.00 |
| Bill Pmt -Check | 7/21/2008 | 2964 | Larry Clayton | | X | -1,600.00 |
| Total 10000 · Cash in Bank | | | | | | -24,925.00 |
| **TOTAL** | | | | | | **-24,925.00** |

CH000120

#3 (3a)



# Installation
# INVOICE

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8974
DATE: MAY 5, 2010

**Bill To:**
**Chabad Running Springs**
**3500 Seymour Road**
**Running Springs, Ca. 92382**
**Estimated Date of Completion:**
**July 27, 2009**

Addresses to be
installed:

SAME

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| AK | | | Upon Receipt |

| QTY | DESCRIPTION | LINE TOTAL |
|---|---|---|
| 5 | Network Digital Video Recorders w/ Central Mgt Software | $23,750. |
| 1 | 8 Channel Video Analytics | $7,000. |
| 9 | Outdoor Day/ Night Vandal Domes | $3,150. |
| 48 | Indoor Vandal Domes | $14,400. |
| 2 | Day/ Night PTZ Cameras | $3,500. |
| 25 | Condenser Adjustable Microphones | $1,875. |
| 4 | 3 Mega Pixel H.264 Day/ Night IP w/ POE Cameras | $7,000. |
| Misc. | Hardware/ Monitors, Cable/ Connectors | $5,000. |
| | Total | $$65,675.00. |

Make all checks payable to Elite Interactive Solutions
**THANK YOU FOR YOUR BUSINESS!**

#3 (3b)

To: Case 2:10-cv-01056-MCE-EFB Document 80-5 Filed 06/26/14 Page 71 of 191 Page 1 of 1
Sent by the Award Winning Cheyenne Bitware

# MAGEN SECURITY INC

5341 TEESDALE AVE
VALLEY VILLAGE CA 91607
Phone # 818-508-1004

# Invoice

Number: **4503**

Date: **June 22, 2008**

**Bill To:**

Chabad of West Coast
741 Gayley Ave
Los Angeles, CA 90024

**Ship To:**

Chabad of LA
Runing Spring
#2

| Description | Amount |
|---|---|
| Phone entry system with entry key-pad. | 2,650.00 |
| 1 Swing gate opearator, radio reciver, 2 loop detectors safty & exit. | 3,240.00 |
| * No digging for pipes wiring, No asfalt cuting. | |
| Add 1 Center loop. | 196.00 |
| Liftmaster 371LM radio transmiter $22.50 each | |
| Upgrad gate operator to Elite csw 200, add heater kit. | 0.00 |

CAPITOL

Re Secu
SECURETX

| | | | | Total | 6,086.00 ~~$6,086.00~~ |

Amount Paid: 2,000.00
Amount Due: 4,086.00

| 0 - 30 days | 31 - 60 days | 61 - 90 days | > 90 days | Total |
|---|---|---|---|---|
| $4,086.00 | $0.00 | $0.00 | $0.00 | $4,086.00 |

#3 (3c)

Yuval Zidani - Electrician

# INVOICE

493649

| SOLD TO | | | | SHIP TO | | | |
|---|---|---|---|---|---|---|---|
| chabad LA | | | | | | | |
| ADDRESS | | | | ADDRESS | | | |
| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | | | |
| CUSTOMER ORDER NO. | | SOLD BY | | TERMS | | F.O.B. | DATE |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | electrical work | | | 1800 |
| | → | @ front gate ($600.00) $600 | | | |
| | | Sprung, Wasserman Front electrical | | | |
| | | replaced but a some new | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | PAY THIS INVOICE 50 | | | |
| | | JOSEPH SHUC | | | |
| | | GEORGIA SCHWEEN | | | |
| | | JAN TERRY | | | |
| | | DON DONOVAN | | | |
| | | DATE: / / | | | 1800 |

Front gate

c

Radians 5840

CH000123

# Snow Removal
# Invoice

## Client Information

Name: _CHABAd PETREAT_    Phone: _867-7020_

Address: _PO Box 2929_    Facsimile: _____

## Location

Job Address: _____    Date of Service: _____

_Running SpRings_    Amount Charged $_2.45_ 00

3 1/2 @ $70 PER HR

Description of Services    1 1/2 HR 6-68

_RE-dig TRENCH  6-6-8 &_

_BACK fill STREET TRENCH_

_6-11-8 BACK fill All TRENCHS_

_And CleAn up dRive_

_2 HR 6-11-8_

Please make checks payable:    Steve Copley
P.O. Box 232
Running Springs, CA 92382
909/867-2441

PAY THIS INVOICE
JOSEPH GROSS _5.B_
GERSHON SANDLER _____
JAN TERRY _____
DON BRAHAM _____
DATE: _____

CH000124

# Snow Removal
# Invoice

## Client Information

Name: _CHABAD_          Phone: _____

Address: _3500 SEYMOUR_    Facsimile: _____

_RUNNING SPRING_

## Location

Job Address: _RUNNING_     Date of Service: _6-5-8_

_SPRINGS_          Amount Charged: _$525.00_

Description of Services

_1.5 HRS   6-4-8_

_6.0 HRS   6-5-8_

_RENTAl   ASPHAlT  CUTTER_

_JACK   HAMMER_

_7.5 X 70 = $525.00_

Please make checks payable:     Steve Copley
                                P.O. Box 232
                                Running Springs, CA 92382
                                909/867-2441

CH000125

#3 (3F)

# Estimate

Larry Clayton
PO Box 92
Running Springs, CA 92382
Phone 909-867-2010

| Date | Invoice # |
|------|-----------|
| 3/27/2008 | 185 |

**Bill To**

Chabad of California
Attn: Don Braham
3500 Seymour Rd.
Running Springs, CA 92382

**Deposit Due Date**

4/1/2008

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | LOCATION: 3500 Seymour Road, Running Springs, CA 92382 | | |
| | 2300 linear feet of 6' 11 gauge chain link fence around the existing posts around | 21,575.00 | 21,575.00 |
| | property. Install 1 5/8 Diameter Top Rail , 9 gauge tension | 250.00 | 250.00 |
| | In Patio area, manufacture a steel grate for the drain area | 400.00 | 400.00 |
| | Build gates by Emerson area - One 6' high, 6' wide double gate (walk gate) with two 2 | | |
| | 3/8 corner posts. Frames are 1 5/8 with 11 gauge wire. | 250.00 | 250.00 |
| | Build gates by Emerson area - One 6' high, 5' wide walk gate with 1 5/8 frame | 650.00 | 650.00 |
| | Install 32' of 6' high chain link with 1 5/8 toprail, 11 gauge wire, 9 gauge tension wire | | |
| | attached to bottom of fence | 750.00 | 750.00 |
| | Install frame and posts for existing slide gate 6' x 15' | | |

| Phone # | Fax # | E-mail | | |
|---------|-------|--------|---|---|
| 909-867-7020 | 909-867-9770 | rs_retreat@hotmail.com | **Payments/Credits** | $0.00 |
| | | | **Balance Due** | $23,875.00 |

#3-91



Check: 22609  Amount: $4,086.00  Date: 07/07/08

Check: 4166  Amount: $2,000.00  Date: 07/01/08

Check: 4749  Amount: $2,000.00  Date: 06/18/09

Check 2776  Amount $245.00  Date 6/13/2008

Check 2752  Amount $560.00  Date 6/5/2008

Check 2755  Amount $525.00  Date 6/5/2008

Check 2776  Amount $245.00  Date 6/13/2008

Check 2826  Amount $1,800.00  Date 7/1/2008

CH000127



Check 2788 Amount $500.00 Date 6/18/2008



Check 2777 Amount $2,500.00 Date 6/13/2008




Check 2748 Amount $10,859.00 Date 6/5/2008



Check 2834 Amount $3,192.00 Date 6/25/2008



Check 2887 Amount $6,274.00 Date 7/3/2008

Check 2964 Amount $1,600.00 Date 7/23/2008

Case 2:10-cv-01056-MCE-EFB   Document 80-5   Filed 06/26/14   Page 78 of 191

#4-a

**Chabad of California**
**Entry for Batch #: 000936**
**GL Journal**
**Transaction #: 016333 Date: 12/31/07**

| Account | Description | Debit | Credit |
|---|---|---|---|
| 5000-118-000 | Running Springs, improvements | 160,000.00 | 0.00 |
| 0300-002-000 | Non-cash donations-capitalized | 0.00 | 160,000.00 |

CH000129

#4 b

Chabad of California and Affiliates
Donated goods and services 2007

| Donor/Vendor | Amount | Description | Valued by |
|---|---|---|---|
| Don Braham | $160,000 | Running Springs construction supervision | Fair market value |

donated goods services 2007

CH000130

## #6   Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations</u>

CH000131

# Documentation Request Check List

| Applicant | Chabad of California |
|---|---|
| Grant Award Number/FIPS# | 2008-0005 / 037-90820 |

Description of Accounting System: Double entry, computerized using Sage Pro software.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-001-000)

Expenditures for this Grant are recorded as 741 Gayley Improvements (GL account #15000-012-000)

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000132

#1 (1ₛ)

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-001-000 Through 40200-001-000**

| Account Number | Description | Status |
|---|---|---|
| Account Type: S01  Donations & revenues: | | |
| 40200-001-000 | Homeland Security Grant | A |

CH000133

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-012-000 Through 15000-012-000**

| Account Number | Description | Status |
|----------------|-------------|--------|

Account Type: A02  Fixed Assets, property:

| | | |
|---|---|---|
| 15000-012-000 | 741 Gayley, improvements | A |

CH000134

| Date | Payor | Amount | GL account |
|------|-------|--------|------------|
| 09/09/09 | State of Calif. | -68140.00 | 40200-001-000 |

CH000135

#2 (2b)

Chabad of California Grant 2008-005
Cash disbursment ledger/invoice/proof of payment cover sheet

| Vendor | Contractual expense | Amount disbursed | Ck# | Invoice # |
|---|---|---|---|---|
| Elite Interactive | $60,000 | $0 | | |
| ThyssenKrup | $8,140 | $4,070 | American Express | 8984 07/23/09 |
| | $68,140 | | | |

CH000136

**Chabad of California**
**Entry for Batch #: 001670**
**AP Source Journal for Company 01**
**Invoice #: 082409 Vendor #: AMERI1 Date: 08/24/09**

| Account | Description | Debit | Credit |
|---|---|---:|---:|
| 20000-001-000 | ~~Accounts payable~~ | 0.00 | 35758.78 |
| 15000-118-000 | Running Springs, improvements | 2286.80 | 0.00 |
| 10500-004-000 | ~~Text Camp Gan Israel~~ | 6795.19 | 0.00 |
| 55000-500-000 | ~~Vehicle~~ | 144.74 | 0.00 |
| 15000-124-000 | ~~1312 Robertson, improvements~~ | 9055.95 | 0.00 |
| 55000-500-000 | ~~Vehicle~~ | 124.30 | 0.00 |
| 58250-759-000 | Subsidy, Chabad of Central Westwood | 1840.92 | 0.00 |
| 15000-012-000 | 741 Gayley, improvements | 4070.00 | 0.00 |
| 18100-002-000 | Exchanges, miscellaneous | 2993.50 | 0.00 |
| 51350-500-000 | ~~Reference~~ | 888.74 | 0.00 |
| 56250-525-000 | ~~Reference, intellectual~~ | 1190.23 | 0.00 |
| 56050-840-000 | Facility repair, 6029 W. Charleston | 472.56 | 0.00 |
| 55? 500-000 | Travel, gen | 451.45 | 0.00 |
| 51150-641-000 | ~~Chafe, faculty~~ | 4816.00 | 0.00 |
| 55250-500-000 | ~~Travel~~ | 628.40 | 0.00 |
| 20000-001-000 | Accounts payable, ~~changes~~ | 35758.78 | 0.00 |
| 10000-040-000 | ~~Cash in bank, Comerica main 3744~~ | 0.00 | 35758.78 |



## Installation INVOICE

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8984
DATE: JULY 13, 2009

Bill To:
Chabad Gayley
741 Gayley Ave.
Los Angeles, Ca. 90024

Addresses to be
installed:

SAME

| Item | Description | Qty. | |
|------|-------------|------|---|
| | **Devices and Accessories:** | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 1 | |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 1 | |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 1 | |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 1 | |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night Box Camera | 6 | |
| Computar Lens | Computar Auto Iris Camera Lens 2.9-8mm | 6 | |
| Samsung Housing | Samsung STH-350 Camera Housing | 6 | |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 6 | |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 15 | |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 2 | |
| Samsung Vandal Dome | Samsung SVD-4400W 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 6 | |
| Arc-Vision Mini VD | ARC-12N49 Mini Vandal Dome - 3.6mm lens 1/3 Color Sony Super HAD | 2 | |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 6 | |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 1 | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | |
| Audio PA Speakers | PA Speakers - 8ohm | 9 | |
| | **Access Control:** | | |
| Card Readers | 2 Inside Elevator - 1 at Front Door Entrance | 3 | |
| Control Hardware | Access Control Hardware | 1 | |
| Access Software | Access Control - Remote Management Software | 1 | |

CH000138

| | **Head-End Equipment:** | | |
|---|---|---|---|
| NVR/DVR | Network Video Recorder for 32 Channels, Remote View Software | 1 | |
| | w/ Elite Interactive CMS Event Management Software | | |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | |
| Network Switch | 8 Port Network Switch/Firewall | 1 | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | |
| UPS | Universal Power Supply - Battery Back-up | 1 | |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | |
| | | | |
| | Programming and networking all Cameras and equipment | | |
| | | | |
| Equipment rental | Scissor Lift | 1 | |
| Misc. | Connecters, fittings | 1 | |
| **Totals** | **Materials Total for all of the above equipment -** | **Mat. Total: $69,789.00** | |
| | | | |
| | **Labor and Supervision to install all of the above equipment** | **$28,764.00** | |
| | | | |
| | **Grand Total** | **$98,553.00** | |
| | | | |
| | **Grand Total Discount Price for Chabad** | **$60,000.00** | |
| | | | |

CH000139

#3 (3b)

# ThyssenKrupp Elevator



## Repair Order.

| | | | | |
|---|---|---|---|---|
| Date: | 7/23/09 | | | |
| Attention: | Yanky Baitelman | | Building: | Chabad House |
| Address: | 741 Gayley | | Address: | 741 Gayley |
| City: | Los Angeles 90024 | | City: | Los Angeles 90024 |
| | | | Service contract #: | 041-40050 |
| Telephone: | 310-628-3944 / yanky@chabad.com | | | |

---

Purchaser authorizes ThyssenKrupp Elevator to perform the following described repair work on the subject elevator(s) in the above building:

Furnish the necessary material and labor to work in conjunction with the security company (provided by building) for the proper operation of security card reader system with the elevators (State# 78560, 78561).

Scope of Work

- Run wire from half way box to security company's control box.
- Run ¾ inch flex coil and wire from elevator car top to elevator control panel.
- Run wire from elevator controller to security company's control box.
- Make all necessary wire connections to control panel, card readers and controllers.
- Test for proper operation and return elevators to service.

Total Price:  Eight Thousand One Hundred Forty Dollars and 00/100ths          $ 8,140.00
*The price includes freight, taxes and all applicable permits.*

Note: ThyssenKrupp will provide warranty for our work listed above.  We do not provide any warranty for equipment installed by the security company, nor is that equipment covered under our elevator maintenance agreement. 50% deposit is required prior to scheduling the work. ($4,070.00)

---

Unless otherwise stated, you agree to pay as follows: 50% upon signed acceptance and 50% upon completion.

This Repair Order is submitted for acceptance within 30 days from the date executed by ThyssenKrupp Elevator.

Purchaser's acceptance of this Repair Order together with the terms and conditions printed on subsequent pages hereof and which are expressly made a part of this proposal and agreed to, and its approval by an executive officer of ThyssenKrupp Elevator will constitute exclusively and entirely the agreement for the work herein described.  All prior representations or agreements regarding this work, whether written or verbal, will be deemed to be merged herein, and no other changes in or additions to this agreement will be recognized unless made in writing and properly executed by both parties.  This Repair Order specifically contemplates work outside the scope of any maintenance contract currently in effect between the parties; any such contract shall be unaffected by this Repair Order.

No agent or employee shall have the authority to waive or modify any of the terms of this agreement without the written approval of an authorized ThyssenKrupp Elevator manager.

Accepted:                                           **THYSSENKRUPP ELEVATOR CORPORATION**
                                                    6087 Triangle Drive
**CHABAD HOUSE**                                    Los Angeles, CA  90040
                                                    (323)278-9888  fax(323)278-9899
By: _____
     (Signature of Authorized Individual)           By: _____
                                                         (Signature of ThyssenKrupp Elevator Representative)
     _____               Michael Davidson, Account Representative
     (Printed or Typed Name)                        323-278-2811

Title: _____  Date: _____           Date: _____

                                                    Approved by: _____

                                                    Title:  Branch Manager     Date: _____

RO 03/01

CH000140

*Commercial Checking* statement
**August 1, 2009 to August 31, 2009**

# Commercial Checking: ██████ 3744

## Electronic withdrawals this statement period

| | | | Reference numbers | |
|---|---|---|---|---|
| Date | Amount ($) | Activity | Customer | Bank |
| Aug 03 | -1,181.74 | Vz Wireless Vw E Check 090731 7496246 | | 9488862524 |
| Aug 04 | -30.00 | Authnet Gateway Billing 16615593 | | 9488743048 |
| Aug 05 | -2,211.22 | Nevada Power Pro Npc Pymt 026425431469583 | | 9488534285 |
| Aug 06 | -125.00 | Check Deposit Error Correction Debit | | 0654311922 |
| Aug 06 | -100.00 | Check Deposit Error Correction Debit | | 0654311902 |
| Aug 06 | -524.43 | American Express Elec Remit 090805061162833 | | 9488757842 |
| Aug 06 | -353.74 | Citi Card Online Payment 113032430793482 | | 9488668203 |
| Aug 13 | -36.00 | Return Item Chargeback 090813 000000000000000 | | 9488718303 |
| Aug 13 | -5,397.26 | IRS  Usataxpymt 081309 220962500160059 | | 9488043278 |
| Aug 13 | -258.92 | Employment Devel Edd Eftpmt 081309 80247851 | | 9488035786 |
| Aug 14 | -50,000.00 | Wire # 008711 Bnf Chabad Pacific Fed # 001897 | | 9485004918 |
| Aug 14 | -540.00 | Wire # 008712 Bnf Chabad Of Cali Fed # 001893 | | 9485004917 |
| Aug 17 | -199.00 | Citi Card Online Payment 113040914839082 | | 9488636719 |
| Aug 19 | -388.00 | T.m.c.c Loan Pmt 090817 02662005180001 | | 9488762348 |
| Aug 21 | -21,407.23 | American Express Elec Remit 090820062188396 | | 9488468655 |
| Aug 24 | -20,000.00 | Wire # 007056 Bnf Chabad Of Cali Fed # 001266 | | 9485004534 |
| Aug 24 | -35,758.78 | American Express Elec Remit 090821063867712 | | 9488157194 |
| Aug 27 | -5.00 | Check Deposit Error Correction Debit | | 0654305021 |
| Aug 27 | -5,939.61 | IRS  Usataxpymt 082709 220963900230450 | | 9488516443 |
| Aug 27 | -288.65 | Employment Devel Edd Eftpmt 082709 80247851 | | 9488526031 |
| Aug 28 | -3,000.00 | Wire # 011214 Bnf Chabad Of Cali Fed # 002519 | | 9485006132 |

**Total Electronic Withdrawals: -$147,744.58**
**Total number of Electronic Withdrawals: 21**

## Other withdrawals this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| Aug 05 | -977.00 | Debit Paid  - Account Overdrawn | 9488626231 |
| Aug 05 | -484.97 | Debit Paid  - Account Overdrawn | 9488735040 |

**Total Other Withdrawals: -$1,461.97**
**Total number of Other Withdrawals: 2**

## Fees and service charges this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| Aug 13 | -3,860.65 | Service Charge | 0008829521 |

**Total Fees and Service Charges: -$3,860.65**
**Total number of Fees and Service Charges: 1**

## Transfers to other accounts this statement period

| Date | Amount ($) | Activity | | Bank reference number |
|---|---|---|---|---|
| Aug 07 | -9,000.00 | Axs Funds Transfer To Account | ████4361 | 0A71901615 |
| Aug 13 | -2,000.00 | Axs Funds Transfer To Account | ████3639 | 0A72502462 |
| Aug 17 | -100.00 | Axs Funds Transfer To Account | ████4346 | 0A72900135 |
| Aug 26 | -5,000.00 | Axs Funds Transfer To Account | ████7895 | 0A73800268 |
| Aug 28 | -5,000.00 | Axs Funds Transfer To Account | ████7895 | 0A74000402 |

**Total Transferred to Other Accounts: -$21,100.00**
**Total number of Transfers to Other Accounts: 5**

CH000141

Case 2:10-cv-01056-MCE-EFB   Document 80-5   Filed 06/26/14   Page 91 of 191

#3 C-2
#51 57



Yoel Edelson <yoelse@gmail.com>

## Platinum-11002-2009-07 Statement

**Rabbi Chaim N. Cunin <rabbicunin@chabad.com>**          Mon, Aug 3, 2009 at 9:48 PM
To: Yoel Edelson <yoel@chabad.com>

Hi R. Yoel,

Here's the July 2009 statement for Chabad expenses on the Platinum (AMEX) card totaling <u>$33,471.98</u>.

Please note the "CGI Running Springs" charges that need to be "billed" to camp, as well as the "Rabbi Cunin's Card" charges that I sent to Yanky to review and itemize for you separately.

This payment is due on ~~July~~ AUG 14, 2009.

Please let me know when the manual check is ready so I can pay it online.

$35,758.78

Thank you!

CN

    📄 **PLATINUM-11002-2009-07.pdf**
        453K

| | | | | |
|---|---|---|---|---|
| 07/29/2009 | $4,070.00 | THYSSENKRUPP ELEVATO 770-7990445 | | Rabbi Cunin's Card |
| 07/28/2009 | $472.56 | ADT SECURITY SERVICE 800-238-2455 | | Rabbi Cunin's Card |

8/4/2009 9:10 AM

CH000142



# Installation
# INVOICE

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8984
DATE: JULY 13, 2009

Bill To:
Chabad Gayley
741 Gayley Ave.
Los Angeles, Ca. 90024

Addresses to be
installed:

SAME

| Item | Description | Qty. | |
|---|---|---|---|
| | **Devices and Accessories:** | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 1 | |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 1 | |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 1 | |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 1 | |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night Box Camera | 6 | |
| Computar Lens | Computar Auto Iris Camera  Lens  2.9-8mm | 6 | |
| Samsung Housing | Samsung STH-350 Camera Housing | 6 | |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 6 | |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 15 | |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 2 | |
| Samsung Vandal Dome | Samsung SVD-4400W 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 6 | |
| Arc-Vision Mini VD | ARC-12N49 Mini Vandal Dome - 3.6mm lens 1/3 Color Sony Super HAD | 2 | |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 6 | |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 1 | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | |
| Audio PA Speakers | PA Speakers - 8ohm | 9 | |
| | **Access Control:** | | |
| Card Readers | 2 Inside Elevator - 1 at Front Door Entrance | 3 | |
| Control Hardware | Access Control Hardware | 1 | |
| Access Software | Access Control - Remote Management Software | 1 | |

CH000143

| | Head-End Equipment: | | |
|---|---|---|---|
| NVR/DVR | Network Video Recorder for 32 Channels, Remote View Software | 1 | |
| | w/ Elite Interactive CMS  Event Management Software | | |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | |
| Network Switch | 8 Port Network Switch/Firewall | 1 | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | |
| UPS | Universal Power Supply - Battery Back-up | 1 | |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | |
| | Programming and networking all Cameras and equipment | | |
| | | | |
| Equipment rental | Scissor Lift | 1 | |
| Misc. | Connecters, fittings | 1 | |
| **Totals** | **Materials Total for all of the above equipment -** | **Mat. Total: $69,789.00** | |
| | | | |
| | **Labor and Supervision to install all of the above equipment** | $28,764.00 | |
| | | | |
| | **Grand Total** | $98,553.00 | |
| | | | |
| | **Grand Total Discount Price for Chabad** | **$60,000.00** | |

## #6    Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations</u>

# Documentation Request Check List

| Applicant | Bais Chana High School, Inc. |
|---|---|
| Grant Award Number/FIPS# | 2008-0005 / 037-95602 |

Description of Accounting System: Double entry, computerized using Sage Pro software.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-003)

Expenditures for this Grant are recorded as 9017 W. Pico Leasehold Improvements (GL account #15000-001)

| Item #<br>** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger (Journal Entry) | Yes | |
| 3 | Vendor invoice(s) (Contract enclosed, work did not commence) | | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | No | |
| 5 | Contracts: Services/Consultants<br>**This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000146

#4 (1a)

**Bais Chana High School, Inc.**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-003 Through 40200-003**

| Account Number | Description | Status |
|---|---|---|
| Account Type: S01 Donations & revenues: | | |
| 40200-003 | Grants, Homeland Security | A |

CH000147

Case 2:10-cv-01056-MCE-EFB   Document 80-5   Filed 06/26/14   Page 97 of 191

#1 (1b)

**Bais Chana High School, Inc.**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-001 Through 15000-001**

| Account Number | Description | Status |
|---|---|---|

Account Type: A02  Fixed Assets:

| 15000-001 | Leashold improvements, 9017 | A |

CH000148

Bais Chana High School, Inc.
Cash Receipts Report

| Date | Payor | Amount | GL account |
|------|-------|--------|------------|
| 12/18/09 | State of CA | -72750.00 | 40200-003 |

CH000149

**Bais Chana High School, Inc.**
**Detail Transactions for Account Number 15000-001**
**Long Description : Leashold improvements, 9017**
**Acount Type : A02   Fixed Assets:**
**For Period: 004 Year: 2010**

| Batch # | Tran # | SJ | Date | Session | Transaction Description | Dr/Cr() |
|---------|--------|-----|---------|---------|-------------------------|---------|
| 00467 | 005617 | GL | 12/31/09 | | DEC 09 BANK REC | 72750.00 |

CH000150

#3-a



**Installation
INVOICE**

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8989
DATE: OCTOBER 1, 2009

**Bill To:**                              **Addresses to be installed:**
Rabbi Begun
**Bais Chana High School**                SAME
**9017 Pico Blvd.**
**Los Angeles, CA 90035**

| | | | | |
|---|---|---|---|---|
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 3 | | |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 3 | | |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 3 | | |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 3 | | |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night Box Camera | 8 | | |
| Computar Lens | Computar Auto Iris Camera Lens 2.9-8mm | 8 | | |
| Samsung Housing | Samsung STH-350 Camera Housing | 8 | | |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 8 | | |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 29 | | |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 8 | | |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | | |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 3 | | |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | | |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 6 | | |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | | |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 3 | | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 3 | | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | | |
| Audio PA Speakers | PA Speakers - 8ohm | 4 | | |

CH000151

# 3s-1

| Access Control Monitor | 2 doors | | | |
|---|---|---|---|---|
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 16 Channels, Remote View Software | 3 | | |
| | w/ Elite Interactive CMS  Event Management Software | | | |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | | |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solutions) | 1 | | |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | | |
| Network Switch | 8 Port Network Switch/Firewall | 1 | | |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | | |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | | |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | | |
| UPS | Universal Power Supply - Battery Back-up | 1 | | |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | | |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | | |
| Misc. | Connecters, fittings | 1 | | |
| | **Materials Total for all of the above equipment -** | Mat. Total: | | $73,324.09 |
| | **Labor and Supervision to install all of the above equipment -** | LaborTotal: | | $23,400.00 |
| | | Grand Total: | | $96,724.09 |
| | | **Chabad Total:** | | **$72,000.00** |

CH000152

**Welcome**
Announcements

**Balance Reporting**
Prior Day
Intra-day

**Wire Transfers**
Wire Entry
Approval
Ack Rejects
Status and Reports
Template Summary

**Account Transfers**
Entry
Status and Reports

**Check Services**
Check Inquiries
Stop Payments
Cancel Stops
Photocopies
Status and Reports

**Administration**
Audit
Change Password
User Profiles

**Help**

**Exit**

**Wire Template**
Maintenance

**Image Services**

# Account Transfer Detail

Help

| | |
|---|---|
| **Value Date:** | 12/21/2009 |
| **Entry Date:** | 12/21/2009 |
| **Trace Number:** | CALIFOR-35500386 |
| **Initiated By:** | ADMIN |
| **From Account:** | CALIFOR-▓▓▓▓4063 |
| | Bais Chana High School Inc |
| **To Account:** | CALIFOR-▓▓▓▓4361 |
| | Keren Mamesh |
| **Currency:** | United States Dollar |
| **Amount:** | 72,750.00 |
| **Status:** | Confirmed |
| **Remarks:** | BOOK TRANSFER ACCEPTED |

Back

Top of Page | Help

For assistance, click here
Comerica Treasury Management Connect Web (SM) Version 4.2

12/21/2009 9:26 AM

CH000153

## #6   Fiscal/Administrative Policies Description

OMB Circular A-110 Uniform Administrative Requirements for
Grants and Agreements with Institutions of Higher Education,
Hospitals, and Other Non-Profit Organizations

# Documentation Request Check List

| Applicant | **Bais Chaya Mushka School for Girls, Inc.** |
|---|---|
| Grant Award Number/FIPS# | **2008-0005 / 037-90839** |

Description of Accounting System: Double entry, computerized using Sage Pro software and Quickbooks.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-005-000)

Expenditures for this Grant are recorded as 9051 W. Pico Leasehold Improvements (GL account #15000-002-000)

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000155

**Bais Chaya Mushka School For Girls**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-005 Through 40200-005**

| Account Number | Description | Status |
|---|---|---|
| Account Type: S01  Donations & revenues: | | |
| 40200-005 | Homeland Security Grant | A |

CH000156

**Bais Chaya Mushka School For Girls**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-002 Through 15000-002**

| Account Number | Description | Status |
|---|---|---|
| Account Type: A02 Fixed Assets: | | |
| 15000-002 | Leashold improvements, 9051 W. Pico | A |

CH000157

#2-a

## Bais Chaya Mushka
## Deposit Detail
### March 11, 2009

| Type | Num | Date | Name | Account | Amount |
|------|-----|------|------|---------|--------|
| Deposit | | 3/11/2009 | | 1001 · Comerica 18... | 64,185.00 |
| | | | misc. | 4400 · Homeland se... | -64,185.00 |
| TOTAL | | | | | -64,185.00 |

CH000158

#2-b

11:55 AM
05/24/10
Accrual Basis

## Bais Chaya Mushka
### Account QuickReport
#### March 1, 2009 through May 24, 2010

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **3200 · Retained Earnings** | | | | | | |
| Closing Entry | 8/31/2009 | | | | | 64,185.00 |
| **Total 3200 · Retained Earnings** | | | | | | 64,185.00 |
| **4400 · Homeland security grant** | | | | | | |
| Deposit | 11/9/2009 | 242988 | misc. | State of CA | 1001 · Comeric... | 7,420.00 |
| **Total 4400 · Homeland security grant** | | | | | | 7,420.00 |
| **TOTAL** | | | | | | 71,605.00 |

CH000159

#2-c

Bais Chaya Mushka School for Girls grant 2008-0005
Cash disbursement ledger/invoice/proof of payment cover sheet

| Vendor | Contractual expense | Amount disbursed | Ck# | Invoice # |
|--------|--------------------|-----------------|------|-----------|
| Chabad of California | $71,605 | $71,605 | 1002, 756 | |

CH000160

#2-d



12:37 PM
05/28/10

# Bais Chaya Mushka
## Transaction List by Vendor
### March 10, 2009 through May 28, 2010

| Type | Date | Num | Memo | Account | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|
| **Chabad of California** | | | | | | | |
| Check | 3/10/2009 | 1002 | | 1001 · Comerica 189... | X | 1500-1 · 9017 ... | -64,185.00 |

CH000161

**Bais Chaya Mushka School For Girls**
**Computer & Manual Check Register**
**Current and History Files, 05/12/09 to 05/12/09**
**All Accounts, Sessions 000000 to 001973**

**Active Sessions (Not Included in Report)**
**001959, 001969**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-002 | | | | | | |
| CHABAD / Chabad of California | 756 | 05/12/09 | M | 051209 | 001758 | | 10000.00 |
| | | | | | | CHABAD Subtotal : | 10000.00 |
| | | | Total For Check Account: | 10000-002 | | | 10000.00 |
| | | | | | | Check Register Total : | 10000.00 |

CH000162

#3-a
BASIS OF CONTRACTUAL EXPENSE



**Elite Virtual Presence**
2800 Nielson Way, Suite 609
Santa Monica, Ca 90405
(877)435-4832

Date
8/12/2009
Proposal#
40109

Proposal For:
Bais Chana High School
9017 Pico Blvd.
Los Angeles, Ca

**Proposal for 48 Camera - Complete Interactive Surveillance System**

| Item | Description | Qty. | | Totals |
|---|---|---|---|---|
| | **Devices and Accessories:** | | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 3 | $2,643.00 | $7,929.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 3 | $623.00 | $1,869.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 3 | $80.23 | $240.69 |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 3 | $26.80 | $80.40 |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night Box Camera | 8 | $595.00 | $4,760.00 |
| Computar Lens | Computar Auto Iris Camera Lens 2.9-8mm | 8 | $84.00 | $672.00 |
| Samsung Housing | Samsung STH-350 Camera Housing | 8 | $96.00 | $768.00 |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 8 | $26.00 | $208.00 |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 29 | $450.00 | $13,050.00 |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8 | 8 | $740.00 | $5,920.00 |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | $1,000.00 | $1,000.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 3 | $265.00 | $795.00 |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | $175.00 | $175.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 6 | $324.00 | $1,944.00 |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | $27.00 | $27.00 |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 3 | $125.00 | $375.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 3 | $156.00 | $468.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $39.00 | $39.00 |
| Audio PA Speakers | PA Speakers - 8ohm | 4 | $85.00 | $340.00 |
| | | | | |
| | | | | |
| | | | | |
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 16 Channels, Remote View Software | 3 | $3,526.00 | $10,578.00 |
| | w/ Elite Interactive CMS Event Management Software | 1 | $16,000.00 | $16,000.00 |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | $0.00 | $0.00 |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solution | 1 | $716.00 | $716.00 |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | $212.00 | $212.00 |
| Network Switch | 8 Port Network Switch/Firewall | 1 | $56.00 | $56.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $12.00 | $12.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $1,600.00 | $1,600.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $654.00 | $654.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $156.00 | $156.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | | | |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | $785.00 | $785.00 |
| Misc. | Connecters, fittings | 1 | $1,895.00 | $1,895.00 |
| | **Materials Total for all of the above equipment -** | | Mat. Total: | $73,324.09 |
| | **Labor and Supervision to install all of the above equipment -** | | LaborTotal: | $23,400.00 |
| | | | | |
| | | | Grand Total: | $96,724.09 |
| | | | Chabad Total: | $72,000.00 |

CH000163

Commercial Checking statement
March 1, 2009 to March 31, 2009

**Images for account:** 8975

BAIS CHANA NIUSHKA SCHOOL FOR GIRLS INC.
OPERATING ACCOUNT
LOS ANGELES CA 90035

DATE: 3/11/1

1002

Check: 1002 Amount: $64,185.00 Date: 03/11/09

S T A T E M E N T   O F

**Welcome**
Announcements

Exit

**Balance Reporting**
Prior Day
Intra-day

**Wire Transfers**
Wire Entry
Approval
Ack Rejects
Status and Reports
Template Summary

**Wire Template**
Maintenance

**Account Transfers**
Entry
Status and Reports

**Check Services**
Check Inquiries
Stop Payments
Cancel Stops
Photocopies
Status and Reports

**Administration**
Audit
Change Password
User Profiles

**Help**

**Image Services**

# Account Transfer Detail

Help

| | |
|---|---|
| **Value Date:** | 05/12/2009 |
| **Entry Date:** | 05/12/2009 |
| **Trace Number:** | CALIFOR-13202606 |
| **Initiated By:** | ADMIN |
| **From Account:** | CALIFOR▒▒▒▒4098    Clc # 756 |
| **To Account:** | CALIFOR▒▒▒▒3744 |
| | BAIS CHAYA MUSHKA SCHOOL FOR GIRLS INC |
| | Chabad of California CKG |
| **Currency:** | United States Dollar |
| **Amount:** | 10,000.00 |
| **Status:** | Sent |
| **Remarks:** | |

Back

Top of Page | Help

#4

**Elite Virtual Presence**
2800 Nielson Way, Suite 609
Santa Monica, Ca 90405
(877)435-4832

Proposal For:
Bais Chana High School
9017 Pico Blvd.
Los Angeles, Ca



**Date**
8/12/2009
**Proposal#**
40109

### Proposal for 48 Camera - Complete Interactive Surveillance System

| Item | Description | Qty. | | Totals |
|------|-------------|------|------|--------|
| | **Devices and Accessories:** | | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 3 | $2,643.00 | $7,929.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 3 | $623.00 | $1,869.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 3 | $80.23 | $240.69 |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 3 | $26.80 | $80.40 |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night  Box Camera | 8 | $595.00 | $4,760.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.9-8mm | 8 | $84.00 | $672.00 |
| Samsung Housing | Samsung STH-350 Camera Housing | 8 | $96.00 | $768.00 |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 8 | $26.00 | $208.00 |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 29 | $450.00 | $13,050.00 |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8r | 8 | $740.00 | $5,920.00 |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | $1,000.00 | $1,000.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 3 | $265.00 | $795.00 |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | $175.00 | $175.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 6 | $324.00 | $1,944.00 |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | $27.00 | $27.00 |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 3 | $125.00 | $375.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 3 | $156.00 | $468.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $39.00 | $39.00 |
| Audio PA Speakers | PA Speakers - 8ohm | 4 | $85.00 | $340.00 |
| | | | | |
| | | | | |
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 16 Channels, Remote View Software | 3 | $3,526.00 | $10,578.00 |
| | w/ Elite Interactive CMS  Event Management Software | | | |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | $16,000.00 | $16,000.00 |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solution | 1 | $0.00 | $0.00 |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | $716.00 | $716.00 |
| Network Switch | 8 Port Network Switch/Firewall | 1 | $212.00 | $212.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $56.00 | $56.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $12.00 | $12.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $1,600.00 | $1,600.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $654.00 | $654.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | $156.00 | $156.00 |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | $785.00 | $785.00 |
| Misc. | Connecters, fittings | 1 | $1,895.00 | $1,895.00 |
| | **Materials Total for all of the above equipment -** | | Mat. Total: | $73,324.09 |
| | **Labor and Supervision to install all of the above equipment -** | | LaborTotal: | $23,400.00 |
| | | | | |
| | | | Grand Total: | $96,724.09 |
| | | | Chabad Total: | $72,000.00 |

CH000166

## #6   Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations</u>

CH000167

# Documentation Request Check List

| Applicant | **Chabad Jewish Community Center of Marina Del Rey** |
|---|---|
| Grant Award Number/FIPS# | **2008-0005 / 037-90842** |

Description of Accounting System: Double entry, computerized using Quickbooks software.

Revenue for this grant is recorded as Grant Income (GL account #30300)

Expenditures for this Grant are recorded as Buildings Improvements (GL account #16110)

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

**CHABAD OF MARINA DEL REY**

Chart of
**Accounts**

**30300 · Grants**

Homeland Security Grant

CH000169

# CHABAD OF MARINA DEL REY
## Chart of
## Accounts

16110 · Buildings

CH000170

# 2-a

3:11 PM
05/24/10
Accrual Basis

# CHABAD OF MARINA DEL REY
## Account QuickReport
### August 1, 2009 through May 24, 2010

| Type | Date | Num | Name | Split | Amount |
|---|---|---|---|---|---|
| **30000 · Revenues** | | | | | |
| **30300 · Grants** | | | | | |
| Deposit | 12/08/2009 | 05-320822 | Department of Homeland Security | 10101 · Washington Mutual Bank | 72,750.00 |
| Total 30300 · Grants | | | | | 72,750.00 |
| Total 30000 · Revenues | | | | | 72,750.00 |
| **TOTAL** | | | | | 72,750.00 |

ge 1 of 1

CH000171

#2 - b

Chabad / Marina Del Rey 2008-0005
Cash disbursement ledger/invoice/proof of payment cover sheet

| Vendor | Contractual expense | Amount disbursed | Ck# | Invoice # |
|---|---|---|---|---|
| Chabad of California | $58,675 | $50,000 | wire | |
| Wolf Bros | $14,075 | $14,075 | 3993, 4048 | 167, 12/3/09 |
| | $72,750 | | | |

CH000172

# CHABAD OF MARINA DEL REY
## Register QuickReport
### All Transactions

| | Type | Date | Num | Account | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|
| **Chabad of Ca.** | | | | | | | |
| | Check | 12/17/2009 | Wire | 10101 · Washington Mutual Bank | √ | 16110 · Buildings | -50,000.00 |
| Total Chabad of Ca. | | | | | | | -50,000.00 |
| **TOTAL** | | | | | | | -50,000.00 |

CH000173

# CHABAD OF MARINA DEL REY
## Register QuickReport
### All Transactions

| | Type | Date | Num | Account | Split | Amount |
|---|---|---|---|---|---|---|
| **Wolf Bros.** | | | | | | |
| | Check | 09/09/2009 | 3993 | 10101 · Washington Mutual Bank | 16110 · Buildings | -7,000.00 |
| | Check | 12/15/2009 | 4048 | 10101 · Washington Mutual Bank | 16110 · Buildings | -7,075.00 |
| Total Wolf Bros. | | | | | | -14,075.00 |
| | | | | | | |
| **TOTAL** | | | | | | **-14,075.00** |

CH000174

#3-a

BASIS OF CONTRACTUAL EXPENSE

**Elite Virtual Presence**
2800 Nielson Way, Suite 609
Santa Monica, Ca 90405
(877)435-4832



| Date |
|---|
| 8/11/2009 |
| **Proposal#** |
| 1200708 |

Proposal For:
Chabad
2929 Washington Blvd.
Marina Del Rey, Ca

**Proposal for 32 Camera - Complete Interactive Surveillance System**

| Item | Description | Qty. | | Totals |
|---|---|---|---|---|
| | **Devices and Accessories:** | | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 2 | $2,643.00 | $5,286.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 2 | $623.00 | $1,246.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 2 | $80.23 | $160.46 |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 2 | $26.80 | $53.60 |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night  Box Camera | 10 | $595.00 | $5,950.00 |
| Computar Lens | Computar Auto Iris Camera Lens  2.9-8mm | 10 | $84.00 | $840.00 |
| Samsung Housing | Samsung STH-350 Camera Housing | 10 | $96.00 | $960.00 |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 10 | $26.00 | $260.00 |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 11 | $450.00 | $4,950.00 |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8m | 1 | $740.00 | $740.00 |
| Samsung Vandal Dome | Samsung SVD-4400W 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 6 | $623.00 | $3,738.00 |
| Arc-Vision IRVD | ARC-12N49 IR Vandal Dome - VF lens 1/3 Color Sony Super HAD | 8 | $260.00 | $2,080.00 |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | $2,250.00 | $2,250.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | $265.00 | $530.00 |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | $175.00 | $175.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 4 | $324.00 | $1,296.00 |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | $27.00 | $27.00 |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 1 | $125.00 | $125.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 2 | $156.00 | $312.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $39.00 | $39.00 |
| Audio PA Speakers | PA Speakers - 8ohm | 3 | $85.00 | $255.00 |
| | | | | |
| | | | | |
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 16 Channels, Remote View Software | 2 | $3,526.00 | $7,052.00 |
| | w/ Elite Interactive CMS  Event Management Software | | | |
| Video Analytics Engine | Video Inteliligence Hardware w/ Human Detection | 1 | $16,000.00 | $16,000.00 |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solution | 1 | $0.00 | $0.00 |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | $716.00 | $716.00 |
| Network Switch | 8 Port Network Switch/Firewall | 1 | $212.00 | $212.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $56.00 | $56.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $12.00 | $12.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $1,600.00 | $1,600.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $654.00 | $654.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | $156.00 | $156.00 |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | $785.00 | $785.00 |
| Misc. | Connecters, fittings | 1 | $2,500.00 | $2,500.00 |
| | **Materials Total for all of the above equipment -** | | Mat. Total: | $61,016.06 |
| | **Labor and Supervision to install all of the above equipment -** | | LaborTotal: | $26,480.00 |
| | | | | |
| | | | Grand Total: | $87,496.06 |
| | | | Chabad Total: | $53,500.00 |

#3 - b

Wolf Brothers, LLC

3645 Inglewood Avenue, Unit 9
Redondo Beach, CA 90278

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/24/2009 | 167 |

| Bill To | Ship To |
|---------|---------|
| 2929 Washington blvd<br>Marina Del ray, Ca 90212 | 2929 Washington blvd<br>Marina Del ray, CA 90212 |

| | Terms | Project |
|---|-------|---------|
| | Ballance due on completion | |

| Description | Total % | Contract | Deposit |
|-------------|---------|----------|---------|
| Scope of work<br>Furnish and install custom frameless glass railing -post system<br>Install posts every 6 feet.<br>Post to be fabricated from 1 1/2 stainless steel tubing with pyramid cape and welded base.<br>Glass to be installed with 3/8 clear tempered glass.<br>All glass to include polished edges. | 50.00% | 14,075.00 | 7,037.50 |

| We are please to quote you're requirements. Our company delivers and install quality products on-time | **Total** | $7,037.50 |
|---|---|---|
| | **Payments/Credits** | $0.00 |

43-c

Wolf Brothers, LLC
3645 Inglewood Avenue, Unit 9
Redondo Beach, CA 90278

# Statement

| Date |
|------|
| 12/3/2009 |

| To: |
|-----|
| 2929 Washington blvd<br>Marina Del ray, Ca 90212 |

| | | Amount Due | Amount Enc. |
|---|---|---|---|
| | | $7,075.00 | |
| Date | Transaction | Amount | Balance |
| 09/09/2009 | INV #184. Orig. Amount $14,075.00. Estimate 520: | 7,075.00 | 7,075.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|-----------|
| 0.00 | 0.00 | 0.00 | 7,075.00 | 0.00 | $7,075.00 |

CH000177

#3 d.

**CHABAD OF MARINA DEL REY**
2929 WASHINGTON BLVD.
MARINA DEL REY, CA 90292
(310)301-9770

3993

WASHINGTON MUTUAL BANK, FA
9080 W. PICO BLVD.
MARINA DEL REY, CA 90292
90-7162/3222

9/9/2009

PAY TO THE
ORDER OF   Wolf Bros.                                    $ **7,000.00

Seven Thousand and 00/100************************************************************* DOLLARS

Wolf Bros.

MEMO                                    AUTHORIZED SIGNATURE

⑈003993⑈  ⑆322716271⑆  5010813210 09-14-09 7669 03  ⑈0000700000⑈

Security Features Included ⊡ Details on Back.

CH000178

#3-c



CHABAD OF MARINA DEL REY
2929 WASHINGTON BLVD
MARINA DEL REY, CA 90929
310-301-9770

4048

WASHINGTON MUTUAL BANK
9080 W PICO BLVD
LOS ANGELES, CA 90035
80-7162/3222

12/15/2009

PAY TO THE
ORDER OF_____ Wolf Bros.

$ ***7,075.00

Seven Thousand Seventy-Five and 00/100********************************************************

DOLLARS

Wolf Bros.

MEMO

AUTHORIZED SIGNATURE

⑈004048⑈   ⑆3222⑈   5275⑈   ⑈00070750⑈

Security Features Included ▣   Details on Back.

CH000179

#3e-1



**Elite Virtual Presence**
2800 Nielson Way, Suite 609
Santa Monica, Ca 90405
(877)435-4832



| Date |
| --- |
| 8/11/2009 |
| Proposal# |
| 1200708 |

Proposal For:
Chabad
2929 Washington Blvd.
Marina Del Rey, Ca

### Proposal for 32 Camera - Complete Interactive Surveillance System

| Item | Description | Qty. | | Totals |
| --- | --- | --- | --- | --- |
| | **Devices and Accessories:** | | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 2 | $2,643.00 | $5,286.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 2 | $623.00 | $1,246.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 2 | $80.23 | $160.46 |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 2 | $26.80 | $53.60 |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night  Box Camera | 10 | $595.00 | $5,950.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.9-8mm | 10 | $84.00 | $840.00 |
| Samsung Housing | Samsung STH-350 Camera Housing | 10 | $96.00 | $960.00 |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 10 | $26.00 | $260.00 |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 11 | $450.00 | $4,950.00 |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8m | 1 | $740.00 | $740.00 |
| Samsung Vandal Dome | Samsung SVD-4400W 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8mm | 6 | $623.00 | $3,738.00 |
| Arc-Vision IRVD | ARC-12N49 IR Vandal Dome - VF lens 1/3 Color Sony Super HAD | 8 | $260.00 | $2,080.00 |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | $2,250.00 | $2,250.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | $265.00 | $530.00 |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | $175.00 | $175.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 4 | $324.00 | $1,296.00 |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | $27.00 | $27.00 |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 1 | $125.00 | $125.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 2 | $156.00 | $312.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $39.00 | $39.00 |
| Audio PA Speakers | PA Speakers - 8ohm | 3 | $85.00 | $255.00 |
| | | | | |
| | | | | |
| | | | | |
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 16 Channels, Remote View Software | 2 | $3,526.00 | $7,052.00 |
| | w/ Elite Interactive CMS  Event Management Software | | | |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | $16,000.00 | $16,000.00 |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solution | 1 | $0.00 | $0.00 |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | $716.00 | $716.00 |
| Network Switch | 8 Port Network Switch/Firewall | 1 | $212.00 | $212.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $56.00 | $56.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $12.00 | $12.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $1,600.00 | $1,600.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $654.00 | $654.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | $156.00 | $156.00 |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | $785.00 | $785.00 |
| Misc. | Connecters, fittings | 1 | $2,500.00 | $2,500.00 |
| | **Materials Total for all of the above equipment -** | | Mat. Total: | $61,016.06 |
| | **Labor and Supervision to install all of the above equipment -** | | LaborTotal: | $26,480.00 |
| | | | | |
| | | | Grand Total: | $87,496.06 |
| | | | Chabad Total: | $53,500.00 |

CH000181

## #6    Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for
Grants and Agreements with Institutions of Higher Education,
Hospitals, and Other Non-Profit Organizations</u>

CH000182

# Documentation Request Check List

| Applicant | **Chabad National Residential Treatment Center** |
|---|---|
| Grant Award Number/FIPS# | **2008-0005 / 037-95063** |

Description of Accounting System: Double entry, computerized using Sage Pro software.

Revenue for this grant is recorded as Homeland Security Grant Income (GL account #40200-001-000)

Expenditures for this Grant are recorded as 5675 Olympic Leasehold Improvements (GL account #15000-125-000)

| Item # ** | **Item** | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000183

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 40200-001-000 Through 40200-001-000**

| Account Number | Description | Status |
| --- | --- | --- |
| Account Type: S01 Donations & revenues: | | |
| 40200-001-000 | Homeland Security Grant | A |

**Chabad of California**
**Chart of Accounts**
**Summary Listing**
**Account Group: [none]   Account Status: All**
**For Account 15000-125-000 Through 15000-125-000**

| Account Number | Description | Status |
|---|---|---|
| **Account Type:** A02  Fixed Assets, property: | | |
| 15000-125-000 | 5675 Olympic leasehold (homeland security) | A |

CH000185

| Date | Payor | Amount | GL account |
|------|-------|--------|------------|
| 04/20/09 | Chabad Residential | -72108.00 | 40200-001-000 |

CH000186

\# 2  (2b)

Chabad National Residential Grant 2008-005
Cash disbursement ledger/invoice/proof of payment cover sheet

| Vendor | Contractual expense | Amount disbursed | Ck# | Invoice # |
|---|---|---|---|---|
| Elite Interactive | $52,000 | $52,000 | 5066, 26091 | 8916 |
| 1 Oz Construction | $1,986 | $1,986 | 24644 | 1969 |
| Gueuara, Amparo | $2,300 | $2,300 | 4473, 25224 | 701 |
| Vahes Custom Iron Works | $18,000 | $18,000 | 24188, 24275, 24501 | 1017 |
| | $74,286 | $74,286 | | |

CH000187

**Chabad of California**
**Complete Check Register**
Current and History Files, 05/28/09 to 05/28/09
All Accounts, Sessions 000000 to 008664
Vendor = MIS

Active Sessions (Not Included in Report)
008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547

| Vendor | Vendor Name | Check # | Ck Date | Prity | Invoices | Reference | Amount |
|--------|-------------|---------|---------|-------|----------|-----------|--------|
| Checking Account: | 10000-040-000 | | | Session: | 006704 | | |
| MIS | Transaction Funding In | 5066 | 05/28/09 | N | 05/28/09 | 5675OLYMPI | 45760.00 |
| | | | | | | MIS Subtotal : | 45760.00 |
| Checking Account: | 10000-040-000 | | | Session: | 006703 | | |
| MIS | Elite Interactive Solu | 26091 | 05/28/09 | 1 | 8916 | 5675OLYMPI | 6240.00 |
| | | | | | | MIS Subtotal : | 6240.00 |
| | | | | | | Check Register Total : | 52000.00 |

CH000188

**Chabad of California**
**Computer & Manual Check Register**
**Current and History Files, 12/23/08 to 12/23/08**
**All Accounts, Sessions 000000 to 008680**
**Vendor = OZ**

**Active Sessions (Not Included in Report)**
**008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| OZC033 / OZ Construction, Inc. | 24644 | 12/23/08 | 1 | 1995 | 005949 | | 1986.18 |
| | | | | | | OZC033 Subtotal : | 1986.18 |
| | | Total For Check Account: | | 10000-040-000 | | | 1986.18 |
| | | | | | | Check Register Total : | 1986.18 |

**Chabad of California**
**Computer & Manual Check Register**
**Current and History Files, 01/01/09 to 12/31/09**
**All Accounts, Sessions 000000 to 008667**
**Vendor = GUEUAR**

**Active Sessions (Not Included in Report)**
**008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| GUEUAR / Amparo Gueuara | 4473 | 01/28/09 | M | 01/28/09 | 006192 | | 500.00 |
| | | | | | | GUEUAR Subtotal : | 500.00 |
| | 25224 | 02/17/09 | 1 | 701 | 006289 | 5675OLYMPI | 1800.00 |
| | | | | | | GUEUAR Subtotal : | 1800.00 |
| | | | Total For Check Account: | 10000-040-000 | | | 2300.00 |
| | | | | | | Check Register Total : | 2300.00 |

CH000190

**Chabad of California**
**Computer & Manual Check Register**
**Current and History Files, 11/14/08 to 11/14/08**
**All Accounts, Sessions 000000 to 008664**
**Vendor = MIS**

**Active Sessions (Not Included in Report)**
**008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| MIS / Vahes Custom Iron Works | 24188 | 11/14/08 | 1 | 1017 | 005633 | | 8000.00 |
| | | | | | | MIS Subtotal : | 8000.00 |
| | | Total For Check Account: | 10000-040-000 | | | | 8000.00 |
| | | | | | | Check Register Total : | 8000.00 |

**Chabad of California**
**Computer & Manual Check Register**
**Current and History Files, 11/19/08 to 11/19/08**
**All Accounts, Sessions 000000 to 008664**
**Vendor = MIS**

**Active Sessions (Not Included in Report)**
**008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547**

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| MIS / Vahes Custom Iron Works | 24275 | 11/19/08 | 1 | 1017A | 005654 | | 5000.00 |
| | | | | | | MIS Subtotal : | 5000.00 |
| | | | Total For Check Account: | 10000-040-000 | | | 5000.00 |
| | | | | | | Check Register Total : | 5000.00 |

CH000192

#2 (2h)

**Chabad of California**
**Computer & Manual Check Register**
Current and History Files, 12/08/08 to 12/08/08
All Accounts, Sessions 000000 to 008664
Vendor = MIS

**Active Sessions (Not Included in Report)**
008004, 008005, 008061, 008123, 008179, 008326, 008403, 008426, 008547

| Payment / Vendor Information | Check | Ck Date | Prity | Invoice | Session | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Checking Account: | 10000-040-000 | | | | | | |
| MIS / Vahes Custom Iron Works | 24501 | 12/08/08 | 1 | 1017B | 005806 | 5675OLYMPI | 5000.00 |
| | | | | | | MIS Subtotal : | 5000.00 |
| | | | | Total For Check Account: | 10000-040-000 | | 5000.00 |
| | | | | | | Check Register Total : | 5000.00 |

CH000193

#3 (3a)



# Installation
# INVOICE

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8916
DATE: MAY 5, 2010

**Bill To:**
Chabad  Rehab
5675 W. Olympic Blvd.
Los Angeles, Ca.

**Addresses to be installed:**
Chabad Rehab
Rabbi Yanky Baitelman
5675 W. Olympic Blvd.
Los Angeles, Ca.

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| GE | | | Upon Receipt |

| QTY | DESCRIPTION | | LINE TOTAL |
|---|---|---|---|
| | Installation of Security System, parts and labor | Original price $86,976.00 | Discount Price $52,000. |
| | | Total | $52,000. |

Make all checks payable to Elite Interactive Solutions
**THANK YOU FOR YOUR BUSINESS!**

CH000194

#3(3b)

*OLIMPIC  SUBMITED)*

# 1OZ Construction, Inc.
*Complete Electrical Services*



# Invoice

| Date | Invoice # |
|------|-----------|
| 31/10/2008 | 1969 |

**Bill To**

Chabbad of california
741 Geyley Ave
Fax 310 20812361
Attn: Yankee

**Job Address**

5767 Olympic Blv

| Terms | Rep |
|-------|-----|
| Due on receipt | Assaf |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | run 110v 20amp line for garage gate | 800.00 | 800.00 |
| 1 | run 110v 20amp line for Olympic gate | 450.00 | 450.00 |
| 1 | for cut and repair of walk way | 750.00 | 750.00 |

Thank you for your business.

| **Total** | ¤2,000.00 |
|-----------|-----------|

Lic# C10-679537 • BBB Member
1431 Livonia Avenue • Los Angeles, CA 90035 • Tel: (310) 766-0033 • Fax: (310) 282-8404 • assafgol72@sbcglobal.net



**VAHES CUSTOM IRON WORKS**

# INVOICE

1211 1/2 BRANDFORD ST. UNIT C-4
SUN VALLEY CA 91352
818-485-0585
CELL 818-648-0306 FAX 818-485-0586

Number: **1017**

Date:    **November 12, 2008**

**Bill To:**

CHABAd
5767 OLYMPIC BLVD
LOS ANGELES, CA

**Ship To:**

CHABAD
5767 OLYPIC BLVD
LOS ANGELES

| PO Number | Terms |
|---|---|
| | |

| Description | Price | Amount |
|---|---|---|
| Fabricate and install 100' guardrail 42" high | | |
| including design, and primer | | |
| fabricate and install one swing gate with 2 side | | |
| panel 6' high. | | |
| install one sliding gate 20' including one 3' gate | | |
| 6' high | | |
| install 2 side panel one 3' gate 6' high | | |
| install one panel fence 45" x 6' high | | |
| install 2 balcony 32' x 42" high | | |
| install 2 side panel 3' gate 6' high | | |
| total job cost with labor material and installation | 18,000.00 | 18,000.00 |

| | Total | **$18,000.00** |
|---|---|---|

| 0 – 30 days | 31 – 60 days | 61 – 90 days | > 90 days | Total |
|---|---|---|---|---|
| $0.00 | $0.00 | $18,000.00 | $0.00 | $18,000.00 |

CH000196

#3 (3d)

W.9 On FILE

701

**INVOICE**

NO. 12711 Branford ap 201H

DATE 02-13-09

BILL TO: Edificio
ADDRESS: Olimpi q Hoses
CITY, STATE, ZIP

SHIP TO: Amparo Guevara
ADDRESS: 12711 Branford st
CITY, STATE, ZIP: Arleta 91331

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | | | |
| 2 | Pintada de Rejas delos | | |
| 3 | Castados. 2 portones. | $2.300 | |
| 4 | Grandes y 2 portones. | | |
| 5 | Medianos 2 balcones | | |
| 6 | | | |
| 7 | | | |
| 8 | Abono | $500 | |
| 9 | | | |
| 10 | | | |
| 11 | Saldo | | |
| 12 | PAY BALENCE $1.800 | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | Amparo Guev | | |
| 20 | | | |

RECEIVED BY

TAX
TOTAL $2.300

ORIGINAL

CRTC GATE PAINTING
HOME LAND

CH000197



# STATEMENT OF ACCOUNT

#3e-2

*Commercial Checking* statement
May 1, 2009 to May 31, 2009

## Commercial Checking: ▇▇▇3744

## Electronic withdrawals this statement period

| Date | Amount ($) | Activity | Customer | Bank |
|------|-----------|----------|----------|------|
| May 04 | -10,961.00 | Kaiserdues 8007314661 C90501 000000120547905 | | 9488645601 |
| May 04 | -30.00 | Authnet Gateway Billing 15859527 | | 9488483220 |
| May 05 | -6,585.58 | IRS Usataxpymt 050509 220952500994983 | | 9488920495 |
| May 05 | -724.39 | American Express Elec Remit 090504064829490 | | 9488296708 |
| May 05 | -392.07 | Employment Devel Edd Eftpmt 050409 80247851 | | 9488917258 |
| May 07 | -769.00 | Check Deposit Error Correction Debit | | 0654302877 |
| May 08 | -992.00 | American Express Elec Remit 090507067720920 | | 9488799936 |
| May 12 | -3,825.77 | American Express Elec Remit 090511062122098 | | 9488390407 |
| May 15 | -37.85 | Citi Card Online Payment 112960720108525 | | 9488801507 |
| May 18 | -2,078.65 | American Express Elec Remit 090517060034687 | | 9488281150 |
| May 19 | -388.00 | T.m.c.c Loan Pmt 090518 02662005180001 | | 9488844558 |
| May 20 | -4,509.28 | IRS Usataxpymt 052009 220954000680201 | | 9488110416 |
| May 20 | -2,414.00 | American Express Elec Remit 090519066160744 | | 9488661810 |
| May 20 | -253.90 | Employment Devel Edd Eftpmt 051909 80247851 | | 9488107808 |
| May 22 | -250,000.00 | Returned Item Redeposit Debit | | 9488195582 |
| May 28 | -45,760.00 | Wire # 005286 Bnf Transaction Fu Fed # 000788 | | 9485007892 |
| May 28 | -1,000.00 | Wire # 009768 Bnf Bais Chana Wom Fed # 002004 | | 9485007891 |
| May 29 | -42.72 | American Express Elec Remit 090528066082648 | | 9488418790 |

**Total Electronic Withdrawals: -$330,764.21**
**Total number of Electronic Withdrawals: 18**





Check: 26091  Amount: $6,240.00  Date: 05/29/09

Page **37** of 37

CH000198

**Commercial Checking** statement
February 1, 2009 to February 28, 2009

H3e-4

# Images for account: 3744




Check: 4473  Amount: $500.00  Date: 02/03/09




Check: 25224  Amount: $1,800.00  Date: 02/18/09

Page 5

#3e-7

***Commercial Checking*** statement
November 1, 2008 to November 30, 2008

# Images for account: ███ 3744




Check: 24275  Amount: $5,000.00  Date: 11/20/08




Check: 24188  Amount: $8,000.00  Date: 11/17/08




Check: 24501  Amount: $5,000.00  Date: 12/10/08

CH000200

#4-a



**Installation**
**INVOICE**

900 N. Alameda St.
Los Angeles, Ca. 90012
Phone (877) 435-4832  Fax
www.eliteinteractivesolutions.com

INVOICE # 8916
DATE: MAY 5, 2010

**Bill To:**
Chabad Rehab
5675 W. Olympic Blvd.
Los Angeles, Ca.

**Addresses to be installed:**
Chabad Rehab
Rabbi Yanky Baitelman
5675 W. Olympic Blvd.
Los Angeles, Ca.

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| GE | | | Upon Receipt |

| QTY | DESCRIPTION | | LINE TOTAL |
|---|---|---|---|
| | Installation of Security System, parts and labor | Original price $86,976.00 | Discount Price $52,000. |
| | | Total | $52,000. |

Make all checks payable to Elite Interactive Solutions
**THANK YOU FOR YOUR BUSINESS!**

CH000201

#4 -b

**Olympic**

**EQUIPMENT DESCRIPTION**

| Quantity | Item | Description | Price | Discounted |
|---|---|---|---|---|
| | | **Control Equipment** | | |
| 3 | Battery Backup | APC Smart UPC 1100VA | $1,200.00 | $750.00 |
| 2 | Linksys | Network Firewall System/Router | $1,120.00 | $700.00 |
| 1 | Rack | 8U Wall Mount Rack/W Door | $760.00 | $475.00 |
| | | | | |
| | | **Cameras & Accessories** | | |
| 1 | Pan Tilt Zoom | High Resolution Sony Chip Day/Night PTZ | $2,800.00 | $1,750.00 |
| 13 | Indoor Dome | High Resolution Sony Chip IR Indoor Dome | $5,200.00 | $3,250.00 |
| 16 | Outdoor | High Resolution Sony Chip Outdoor IR cameras | $8,960.00 | $5,600.00 |
| 2 | NDVR | 16 Channel Network Digital Video Recorder | $15,200.00 | $9,500.00 |
| 1 | NDVR | 4 Channel Network Digital Video Recorder | $4,560.00 | $2,850.00 |
| CMS | Software | Central Management Software | $5,500.00 | 0.00 |
| | | **Audio-Visual Paging System** | | |
| 3 | Outdoor Speaker | Bogen Outdoor 8ohm Speaker/W Audio Control | $960.00 | $600.00 |
| 1 | AMP | 4 channel Bogen Amp | $480.00 | $300.00 |
| | | | | |
| | | **Detection Devices** | | |
| 4 | Artificial Intelligence | Video Intelligence Software with Human Detection | 11,200.00 | $7,000.00 |
| | | **Connectors/Hardware** | | |
| | | | $4560.00 | $490.00 |
| | | **Equipment Total** | 55,920.00 | $35,625.00 |
| | | | | |
| | | **Labor** | $31,056.00 | $18,735.00 |
| | | **Total** | 86,976.00 | $52,000.00 |

## #6   Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations</u>

CH000203

# Documentation Request Check List

| Applicant | **Chabad of Beverlywood** |
|---|---|
| Grant Award Number/FIPS# | **2008-0005 / 037-90837** |

Advance funds not yet received.

| Item #<br>** | Item | Included<br>Herein | Not<br>Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | | |
| 2 | Cash Receipts Ledger | | |
| 2 | Cash Disbursement Ledger | | |
| 3 | Vendor invoice(s) | | |
| 3 | Proof of Payment | | |
| 4 | Documentation supporting matching | | |
| 5 | Contracts: Services/Consultants | | |
| 6 | Fiscal/Administrative Policies Description | YES | |
| 7 | Summary of interest earned on grant funds | | |

** Item Number from CALEMA Documentation Review request.

CH000204

## #6   Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for
Grants and Agreements with Institutions of Higher Education,
Hospitals, and Other Non-Profit Organizations</u>

# Documentation Request Check List

| Applicant | **Cheder Menachem School** |
|---|---|
| Grant Award Number/FIPS# | **2008-0005 / 037-95061** |

Description of Accounting System: Double entry, computerized using Quickbooks software.

Revenue for this grant is recorded as Grant Income

Expenditures for this Grant are recorded as Tenant Improvements

Please note the school recently let go of their outside accountant and they are in the processing of deciding on a new accountant therefore their Chart of Accounts/General Ledger is currently not available.

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger (not available) | | |
| 2 | Cash Receipts Ledger (not available) | See attached | |
| 2 | Cash Disbursement Ledger (not available) | See attached | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants **This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000206

Cheder Menachem Cash Receipts

11/27/2009   State of California   $72,750   Grant Income

Assigned to Chabad of California

CH000207

Cheder Menachem Cash Disbursements

11/27/2009

See note on Cash Receipts.

Categorize as Tenant Improvements.

CH000208

#3a

**Comerica Bank**

**MMIA / Checking / Savings Deposit**

CP01642 (05/08)

Date 11/27/09

Name CHABAD OF CALIFORNIA

Present Address 741 GAYLEY AVE.

PLEASE NOTIFY TELLER OF CHANGE OF ADDRESS

This deposit subject to Comerica's Business and Personal Deposit Account Contract.

For Credit Account:

☑ CHECKING   ☐ SAVINGS

Sign Here for Less Cash

| | Yr. | Mo. | Day | Cash | |
|---|---|---|---|---|---|
| Exception Date | | | | Checks | 72750 00 |
| | | | | | |
| | | | | | |
| | | | | Sub Total | |
| | | | | Less Cash Received | |

4361

Net Deposit $ — 7 2 7 5 0 . 0 0

7772⑆   36

---

THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK - VIEW AT AN ANGLE

WARRANT NUMBER

# STATE OF CALIFORNIA 05-290083

H   THE TREASURER OF THE STATE WILL PAY OUT OF THE

IDENTIFICATION NO.

FUND NO.   FUND NAME
0890  FEDERAL TRUST FUND

0690

| MO. | DAY | YR. |
|---|---|---|
| 11 | 19 | 2009 |

90–1342/1211
05290083

TO:   290083
--- CHEDER MENACHEM SCHOOL

| DOLLARS | CENTS |
|---|---|
| $***72750 | 00 |

John Chiang
**JOHN CHIANG**
CALIFORNIA STATE CONTROLLER

34 23⑆   0839⑈

---

AUTHORIZED SIGNATURE

THIS WARRANT MUST BE ENDORSED BY PAYEE EXACTLY AS DRAWN AND WHEN MADE PAYABLE TO MORE THAN ONE PAYEE EACH PAYEE MUST ENDORSE.

Cheder Menachem Schol
ENDORSEMENT OF
Cheder Menachem
School Only

IS GUARANTEED BY

NATIONAL BANK OF CALIFORNIA
ENDORSE ABOVE THIS LINE
LOS ANGELES, CA

CH000209

#3-b

CONTRACTUAL EXPENSE



JOB # : 0917081606          DATE:09/17/08

JOB NAME:  1606 S La Ceinga Blvd LA 90035

(If materials came from Shop Warehouse write "STOCK" in PART NUMBER column)

| | ITEM AND DESCRIPTION | QTY | PART NUMBER | Cost | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | Elite 16 Channel NDVR | 2 | | | | |
| 2 | Elite 4 channel NDVR | | | | | |
| 3 | 17" Flat Panel LCD Monitor | 1 | | | | |
| 4 | 42" Flat Panel LCD Monitor | | | | | |
| 5 | 21" Flat Panel LCD Monitor | | | | | |
| 6 | Elite D/N Sony high res PTZ | 4 | | | | |
| 7 | Elite D/N Sony chip high indoor dome | 20 | | | | |
| 8 | Elite D/N Sony chip high res Elevator Vandal | | | | | |
| 9 | Arecont 360 | | | | | |
| 10 | Server | | | | | |
| 11 | Mux | | | | | |
| 12 | Special Mount | | | | | |
| 13 | Video IQ | 1 | | | | |
| 14 | RF Logic Biometrics reader with Time and Attendance | 3 | | | | |
| 15 | Condensor Microphone | | | | | |
| 16 | Elite 24VA 16ch  Fused 16 Cir Power Supply | 2 | | | | |
| 17 | 640W Uninteruptible Power Supply 20 Min | | | | | |
| 18 | Plenum B&C Conns | | | | | |
| 19 | Twisted pair connector (passive) | | | | | |
| 20 | Hardware Switch | | | | | |
| 21 | BNC connector | | | | | |
| 22 | BNC plenum connector | | | | | |
| 23 | | | | | | |
| | Cat5 per 1000' | | | | | |
| | 18-4 per 1000' | 3 | | | | |
| | RG 59U per 1000' | | | | | |
| | Plenum RG59 per 1000' | | | | | |
| | Plenum 18-2 per 1000' | | | | | |
| 24 | Cable Support | | | | | |
| 25 | Bogen outdoor speakers | 8 | | | | |
| 26 | Subtotal: | | | | | |
| | Markup | | | | | |
| | Tax | | | | | |
| | Material Total | | | | | |
| | Equipment Rental | | | | | |
| | Commission | | | | | |
| | Labor at Cost | | hours @ | | | |
| | Grand Total | | | | | $54,966.25 |

CH000210

# INVOICE

ARROW TOOLS, FASTENERS & SA
Branc  001      MAIN BRANCH
7635 Burnet Ave
Van Nuys, CA 91405
US

818-780-1464

| INVOICE | |
|---|---|
| 5010073 | |
| Invoice Dat | Page |
| 12/17/2009 11:23:51 | 1 of 2 |
| ORDER NUMBER | |
| 1010784 | |

**Bill To:**
R.G.B. CONSTRUCTION
4066 RHODES AVENUE
STUDIO CITY, CA 91604

**Ship**
1606 S. LA CIENEGA
DAVID
LA, CA

Ordered By: ELI SITTY

Customer ID:  11467

| PO Number | Term Descriptio | Net Due Dat | Disc Due Da | Discount Amou |
|---|---|---|---|---|
| ELI | NET 30 | 01/16/10 | 01/16/10 | 0.00 |

| Order Date | Pick Ticket | Primary Salesrep Name | | Taker |
|---|---|---|---|---|
| 12/10/2009 17:30:35 | 3012118 | ACCT HOUSE | | CHOBSON |

| Quantities | | | | | Item ID / Item Description | Prici ng Unit S | Uni | Exten Price |
|---|---|---|---|---|---|---|---|---|
| Ordered | Skippe | Remaini | UOM Unit | | | | | |
| | Carri OUR TRUCK | | | | Tracking | | | |
| 360.0000 | 360.0000 | 0.0000 EA | 1.0 | | BLOCKG8X8X16<br>8x8x16 STAND BLOCK (90) | EA 1 | 1.1200 | 403.20 |
| 6.0000 | 6.0000 | 0.0000 EA | 1.0 | | PALLETB<br>BLOCK PALLET CHARGE | EA 1 | 16.0000 | 96.00 |
| 180.0000 | 180.0000 | 0.0000 EA | 1.0 | | BLOCKG8X8X16B<br>8x8x16   BOND   BEAM   BLOCK<br>(90) | EA 1 | 1.1200 | 201.60 |
| 24.0000 | 24.0000 | 0.0000 EA | 1.0 | | REBAR5-60<br>5/8     X     20     GRD-60<br>(96=2003LBS)<br>1 BUNDLE = 96 PIECES | EA 1 | 7.4900 | 179.76 |
| 28.0000 | 28.0000 | 0.0000 EA | 1.0 | | REBAR4-60<br>1/2         X         20<br>GRD-60(150=2004LBS)<br>1   BUNDLE  =  150  OR  152  OR<br>154 PIECES | EA 1 | 4.8100 | 134.68 |
| 40.0000 | 40.0000 | 0.0000 EA | 1.0 | | MORTAR S<br>TYPE   S   MORTAR   94#   (35   PR<br>FLT) | EA 1 | 6.2300 | 249.20 |
| 1.0000 | 1.0000 | 0.0000 EA | 1.0 | | PALLETM<br>MORTAR PALLET CHARGE | EA 1 | 11.0000 | 11.00 |

*ORIGINAL*

# INVOICE

**ARROW TOOLS, FASTENERS & SA**
Branc 001     MAIN BRANCH
7635 Burnet Ave
Van Nuys, CA 91405
US

818-780-1464

| | INVOICE | |
|---|---|---|
| | 5010073 | |
| Invoice Dat | | Page |
| 12/17/2009 11:23:51 | | 2 of 2 |
| ORDER NUMBER | | |
| 1010784 | | |

| Quantities | | | | | Item ID | | Prici ng | | Uni | Exten |
|---|---|---|---|---|---|---|---|---|---|---|
| Ordered | Shippe | Remaini | UOM Unit | % | Item Description | | Unit S | | | Price |
| 6.0000 | 6.0000 | 0.0000 EA | L0 | | SIMCARTSETXP22 SET XP EPOXY, 22 CARTRIDGE APPROVED FOR IBC (CRACKED CONCRETE) PER CASE 600 PER PALLET) | EA oz 2006 (10 | 1 | 37.3000 | 223.80 |
| 4.0000 | 4.0000 | 0.0000 EA | 1.0 | | SIMNO1 EMN N22 EPOXY NOZZLE | EA | 1 | 2.6500 | 10.60 |

Total Lin 9

| | |
|---|---|
| **SUB-TOTAL:** | 1,509.84 |
| **CALIFORNIA:** | 129.50 |
| **LOS ANGELES COUNTY:** | 23.56 |
| **DELAS:** | 60.00 |
| **AMOUNT DUE:** | 1,722.90 |

*Attn yankee*

*ORIGINAL*

CH000212

# 3d



**CONSTRUCTION & DESIGN CO.**
Remodeling, New Construction & Interior Design

# INVOICE

Date: December 31, 2008

Invoice #: 1907-2

| Item | Total Due |
|---|---|
| Windows installed | $13,685.00 |

Please make check payable to: **Royal Windows**

*HOLD FOM YANK ON FRIDAY*



**CONSTRUCTION & DESIGN CO.**

1120 S. Robertson Blvd. Suite 201, Los Angeles, CA 90035
Phone: (310) 246-1096 • Fax: (310) 246-1097 • Email: HighlandHouses@aol.com

# TAKHMANS ORNAMENTAL DESIGN INC.

11 1/2 BRANDFORD ST. UNITE C-4
SUN VALLEY CA 91352
818-485-0585 CELL 818-648-0306 FAX 818-485-0586
License #925551

**INVOICE**

Number: **1068**

Date: **May 30, 2010**

**Bill To:**

Rabbi Yankie
CHABAD OF CA
310-208-1236

**Ship To:**

CHABAD OF CA
1606 LA CIENGA
WEST WOOD, CA

| Description | Amount |
|---|---|
| JOB COMPLETED ON SEPTEMBER 12, 2009  LOCATED AT 1606 LA CIENGA  BLVD | |
| IN WEST WOOD.  JOB INCLUDED INSTALLATION OF POST FOR BACK WALL | |
| INSTALLED DIAMOND MESH. | 3,200.00 |
| TOTAL AMOUNT PAID | (3,200.00) |
| PAID | |
| | |
| **Total** | **$0.00** |

| 0 - 30 days | 31 - 60 days | 61 - 90 days | > 90 days | Total |
|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

CH000214

#4

**irtual Presence**
ielson Way, Suite 609
a Monica, Ca 90405
)435-4832



Date
8/12/2009
Proposal#
120808

Proposal For:
Bais Chaya Mushka School
1610 La Cienega Blvd.
Los Angeles, Ca

**Proposal for 59 Camera - Complete Interactive Surveillance System**

| Item | Description | Qty. | | Totals |
|---|---|---|---|---|
| | **Devices and Accessories:** | | | |
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 3 | $2,643.00 | $7,929.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 3 | $623.00 | $1,869.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 3 | $80.23 | $240.69 |
| PTZ Corner Mount | Samsung STB-340PCM - PTZ Corner Mount Bracket | 3 | $26.80 | $80.40 |
| Samsung Ext Box Cam | Samsung SHC-737 1/3 Hi-Res Day/Night  Box Camera | 9 | $595.00 | $5,355.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.9-8mm | 9 | $84.00 | $756.00 |
| Samsung Housing | Samsung STH-350 Camera Housing | 9 | $96.00 | $864.00 |
| Samsung Brackets | Samsung STB-400 Camera Bracket | 9 | $26.00 | $234.00 |
| Samsung Int Dome Cam | Samsung SID-462W 1/3 Hi-Res VF Med-Dome Camera 3.5-8mm | 46 | $450.00 | $20,700.00 |
| Samsung Vandal Dome | Samsung SVD-4600W WDR 1/3 Hi-Res VF- Vandal Dome Camera 3.5-8 | 1 | $740.00 | $740.00 |
| Conduit | Install compliant low voltage insulating conduit to cameras | 1 | $1,000.00 | $1,000.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 4 | $265.00 | $1,060.00 |
| Alt-24VAC-04 | AC 4 channel power supply, 24 VAC | 1 | $175.00 | $175.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 8 | $324.00 | $2,592.00 |
| BNC Connectors | 2 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 1 | $27.00 | $27.00 |
| 18-2 wire | Multi 18-2 Strd UL CM GRY | 2 | $125.00 | $250.00 |
| C       e | UTP CAT 5E 24/4 PR PVC Blue | 3 | $156.00 | $468.00 |
| R     Connectors | RJ-45 Cat 5E Connectors | 1 | $39.00 | $39.00 |
| Audio PA Speakers | PA Speakers - 8ohm | 4 | $85.00 | $340.00 |
| | | | | |
| | | | | |
| | **Head-End Equipment:** | | | |
| NVR/DVR | Network Video Recorder for 64 Channels, Remote View Software w/ Elite Interactive CMS  Event Management Software | 4 | $3,562.00 | $14,248.00 |
| Fastrace TX | Fastrace TX Video Alarm transmitter -( Owned by Elite Interactive Solutio | 1 | $0.00 | $0.00 |
| Video Analytics Engine | Video Intelligence Hardware w/ Human Detection | 1 | $16,000.00 | $16,000.00 |
| Audio Amplifier | Speco Audio Amplifier - 75watt w/ audio control | 1 | $716.00 | $716.00 |
| Network Switch | 8 Port Network Switch/Firewall | 1 | $212.00 | $212.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $56.00 | $56.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $12.00 | $12.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $1,600.00 | $1,600.00 |
| UPS | Universal Power Supply - Battery Back-up | 2 | $654.00 | $1,308.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 2 | $156.00 | $312.00 |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| Equipment rental | Boom Lift | 1 | $785.00 | $785.00 |
| Misc. | Connecters, fittings | 1 | $2,750.00 | $2,750.00 |
| | **Materials Total for all of the above equipment -** | | Mat. Total: | $82,718.09 |
| | **Labor and Supervision to install all of the above equipment -** | | LaborTotal: | $31,200.00 |
| | | | | |
| | | | Grand Total: | $113,918.09 |
| | | | Chabad Total: | $52,000.00 |

# #6   Fiscal/Administrative Policies Description

OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations

# Documentation Request Check List

| Applicant | Yeshiva Ohr Elchonon Chabad |
|---|---|
| Grant Award Number/FIPS# | 2008-0005 / 037-90838 |

Description of Accounting System: Double entry, computerized using Quickbooks software.

Revenue for this grant is recorded as Homeland Security.

Expenditures for this Grant are recorded as Leasehold Improvements.

| Item # ** | Item | Included Herein | Not Applicable |
|---|---|---|---|
| 1 | Chart of Accounts/General Ledger | Yes | |
| 2 | Cash Receipts Ledger | Yes | |
| 2 | Cash Disbursement Ledger | Yes | |
| 3 | Vendor invoice(s) | Yes | |
| 3 | Proof of Payment | Yes | |
| 4 | Documentation supporting matching | Yes | |
| 5 | Contracts: Services/Consultants<br>**This is addressed in the cover letter** | | |
| 6 | Fiscal/Administrative Policies Description | Yes | |
| 7 | Summary of interest earned on grant funds | | n/a |

** Item Number from CALEMA Documentation Review request.

CH000217

No. 0543   P. 2

#1b

Yeshiva Ohr Elchonon Chabad

5/31/2010 10:21 AM

Register: LEASEHOLD IMPROVEMENTS:Main Building
From 11/01/2009 through 12/24/2009
Sorted by: Date, Type, Number/Ref

| Date | Ref. | Payee | Account | Memo | Decrease | C | Increase | Balance |
|------|------|-------|---------|------|----------|---|----------|---------|
| 11/24/2009 | 20750 | Chabad | OPERATING ACCOU... | | | | 40,000.00 | 728,148.67 |
| 12/15/2009 | 20806 | Chabad | OPERATING ACCOU... | | | | 32,000.00 | 760,148.67 |

CH000218

#2c

```
                               72,750.00
              36.00                25.00
             100.00
              54.00
             200.00
11/23/2009    80.00                          73,263.00
              18.00


                               08            $73,263.00
```

# Deposit Summary

5/31/2010

Summary of Deposits to OPERATING ACCOUNT-FFB on 11/23/2009

| Chk No. | PmtMethod | Rcd From | Memo | Amount |
|---------|-----------|----------|------|--------|
| 5641 | CHECK | | | 36.00 |
| 6893 | CHECK | | | 100.00 |
| 961 | CHECK | | | 54.00 |
| 962 | CHECK | | | 200.00 |
| 3190 | CHECK | | | 80.00 |
| 1038 | CHECK | | | 18.00 |
| 05-279101 | CHECK | STATE OF CALIFORNIA | Homeland Security | 72,750.00 |
| 57115097 | CHECK | | | 25.00 |

Deposit Subtotal:                          73,263.00

Less Cash Back:

Deposit Total:                             73,263.00

CH000219

Yeshiva Ohr Elchonon Chabad

5/31/2010 10:21 AM

Register: LEASEHOLD IMPROVEMENTS:Main Building
From 11/01/2009 through 12/24/2009
Sorted by: Date, Type, Number/Ref

| Date | Ref. | Payee | Account | Memo | Decrease | C | Increase | Balance |
|------|------|-------|---------|------|----------|---|----------|---------|
| 11/24/2009 | 20750 | Chabad | OPERATING ACCOU... | | | | 40,000.00 | 728,148.67 |
| 12/15/2009 | 20806 | Chabad | OPERATING ACCOU... | | | | 32,000.00 | 760,148.67 |

CH000220

# 3a

BASIS OF CONTRATUAL EXPENSE

**Elite Interactive Solutions**
900 N. Alameda St. #220H, Los Angeles, Ca 90012
Phone (877) 435-4832 Fax
www.eliteinteractivesolutions.com

# INVOICE

**ELITE**
P R E S E N C E ®

INVOICE #8975
DATE: August 14, 2009

**Bill To:**
**Chabad Yeshiva Ohr Elchonon**
**7215 Waring Ave.**
**Los Angeles, Ca**
**(877) 435-4832**

| Item | Description | Qty. | | Totals |
|------|-------------|------|------|--------|
| | **(1) Main Building (Three Floors) - Camera Equipment** | | | |
| **Equipment** | | | | |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm- (Int Dome) | 23 | $640.00 | $14,720.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night  Box Camera  (Ext box Cam) | 9 | $595.00 | $5,355.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.8-8mm | 9 | $84.00 | $756.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 9 | $128.00 | $1,152.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 4 | $200.00 | $800.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 2 | $50.00 | $100.00 |
| Misc. | Connecters, fittings  etc... | 1 | $1,500.00 | $1,500.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 3 | $186.00 | $558.00 |
| | **Scope of Work:** | | | |
| | | | | |
| | Provide Cable to and Install 18 New Interior Dome Cameras | | | |
| | Provide Cable to and Install 5 New Exterior Box Cameras | | | |
| | Provide and swap out , using existing wiring - 14 New Interior Cameras | | | |
| | Provide and swap out , using existing wiring - 4 New Exterior Cameras | | | |
| | | | | |
| | **Camera Total for Main Bldg: 32 Interior and Exterior** | | | |
| | | | | |
| | | | Sub-Total: | $25,541.00 |
| | | | | |
| | **(2) Middle Building (Two Floors) - Camera Equipment** | | | |
| **Equipment** | | | | |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm- (Int Dome) | 6 | $640.00 | $3,840.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night  Box Camera  (Ext box Cam) | 0 | $595.00 | $0.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.8-8mm | 0 | $84.00 | $0.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 0 | $128.00 | $0.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 1 | $200.00 | $200.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 0.5 | $50.00 | $25.00 |
| Misc. | Connecters, fittings  etc... | 1 | $800.00 | $800.00 |
| Alt-24VAC-08 | AC 8 channel power supply, 24 VAC | 1 | $145.00 | $145.00 |
| | **Scope of Work:** | | | |
| | | | | |
| | Provide Cable to and Install 4 New Interior Dome Cameras | | | |
| | Provide and swap out , using existing wiring - 2 New Interior Cameras | | | |
| | | | | |
| | **Camera Total for Middle Bldg: 6 Interior** | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Sub-Total: | $5,610.00 |

CH000221

| Equipment | (3) Dorm Building (Three Floors) - Camera Equipment | | | |
|---|---|---|---|---|
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 1 | $3,265.00 | $3,265.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 1 | $623.00 | $623.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 1 | $80.23 | $80.23 |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm - (Int Dome) | 16 | $640.00 | $10,240.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night Box Camera (Ext box Cam) | 6 | $595.00 | $3,570.00 |
| Computar Lens | Computar Auto Iris Camera Lens 2.8-8mm | 6 | $84.00 | $504.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 3 | $128.00 | $384.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Cat 5e | 1000 ft. UTP CAT 5E 24/4 PR PVC Blue | 1 | $189.00 | $189.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 3 | $200.00 | $600.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 2 | $50.00 | $100.00 |
| Misc. | Connecters, fittings etc... | 1 | $1,500.00 | $1,500.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | $186.00 | $372.00 |
| | Scope of Work: | | | |
| | Provide Cable to and Install 1 New Outdoor Pan, Tilt and Zoom Camera | | | |
| | Provide Cable to and Install 6 New Interior Dome Cameras | | | |
| | Provide Cable to and Install 3 New Exterior Box Cameras | | | |
| | Provide and swap out , using existing wiring - 16 New Interior Cameras | | | |
| | Provide and swap out , using existing wiring - 6 New Exterior Cameras | | | |
| | | | | |
| | Camera Total for Main Bldg: 23 Interior and Exterior | | | |
| | | | | |
| | | | Sub-Total: | $22,027.23 |
| | | | | |
| Equipment | Head-End Equipment: | | | |
| NVR | Network video recorder, 16 Channel, Remote View Software | 4 | $6,800.00 | $27,200.00 |
| | w/ Elite Interactive CMS Event Management Software | | | $0.00 |
| Network Switch | 4 Port Network Switch/Firewall | 1 | $110.00 | $110.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $98.00 | $98.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $32.00 | $32.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $679.00 | $679.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $283.00 | $283.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | $178.00 | $178.00 |
| | | | | |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| | | | Sub-Total: | $28,580.00 |
| Equipment | Card Access System: | | | |
| Card Readers | Card Readers w/ keypad feature for 11 Doors | 5 | $890.00 | $4,450.00 |
| Control Hardware | Access Control Hardware | 1 | $1,410.00 | $1,410.00 |
| Access Software | Access Control - Remote Management Software | 1 | $1,560.00 | $1,560.00 |
| Misc. | Connecters, fittings etc... | 1 | $998.00 | $998.00 |
| Door Hardware | | 1 | $750.00 | $750.00 |
| | Scope of Work: | | | |
| | Provide Cable to and Install, 11 New Managed Access points | | | |
| | | | | |
| | | | Sub-Total: | $9,168.00 |
| | Card Access Total for all Parts - | | Access: | $9,168.00 |
| | Materials Total for all of the above Camera equipment - | | Mat. Total: | $81,758.23 |
| | Labor and Supervision to install all of the above equipment- | | Labor Total: | $22,450.00 |
| | | | Grand Total: | 113,376.23 |
| | | | Chabad Total: | $72,750.00 |

CH000222



This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.

YESHIVA OHR ELCHONON CHABAD

20806

DATE 12-15-09

PAY TO THE ORDER OF   Chabed  of California                    $32,000

Thirty Two Thousand ...                                DOLLARS

FIRST REGULAR BANK OF CALIFORNIA

FOR Dollars of ...

#20806   Posted   1216   $32,000.00

CH000223



**$125.00**   **Posted 20091127**   **0752**

**YESHIVA OHR ELCHONON CHABAD**                                        20750

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

#20750   Posted         124   $40,000.00

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

# 9 4

Elite Interactive Solutions
900 N. Alameda St. #220H, Los Angeles, Ca 90012
Phone (877) 435-4832 Fax
www.eliteinteractivesolutions.com

**INVOICE**



INVOICE #8975
DATE: August 14, 2009

**Bill To:**
Chabad Yeshiva Ohr Elchonon
7215 Waring Ave.
Los Angeles, Ca
(877)435-4832

| Item | Description | Qty. | | Totals |
|---|---|---|---|---|
| | **(1) Main Building (Three Floors) - Camera Equipment** | | | |
| **Equipment** | | | | |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm- (Int Dome) | 23 | $640.00 | $14,720.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night  Box Camera (Ext box Cam) | 9 | $595.00 | $5,355.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.8-8mm | 9 | $84.00 | $756.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 9 | $128.00 | $1,152.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 4 | $200.00 | $800.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 2 | $50.00 | $100.00 |
| Misc. | Connecters, fittings  etc… | 1 | $1,500.00 | $1,500.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 3 | $186.00 | $558.00 |
| | **Scope of Work:** | | | |
| | | | | |
| | Provide Cable to and Install 18 New Interior Dome Cameras | | | |
| | Provide Cable to and Install 5 New Exterior Box Cameras | | | |
| | Provide and swap out , using existing wiring - 14 New Interior Cameras | | | |
| | Provide and swap out , using existing wiring - 4 New Exterior Cameras | | | |
| | | | | |
| | **Camera Total for Main Bldg: 32 Interior and Exterior** | | | |
| | | | | |
| | | | **Sub-Total:** | **$25,541.00** |
| | | | | |
| | **(2) Middle Building (Two Floors) - Camera Equipment** | | | |
| **Equipment** | | | | |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm- (Int Dome) | 6 | $640.00 | $3,840.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night  Box Camera (Ext box Cam) | 0 | $595.00 | $0.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.8-8mm | 0 | $84.00 | $0.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 0 | $128.00 | $0.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 1 | $200.00 | $200.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 0.5 | $50.00 | $25.00 |
| Misc. | Connecters, fittings  etc… | 1 | $800.00 | $800.00 |
| Alt-24VAC-08 | AC 8 channel power supply, 24 VAC | 1 | $145.00 | $145.00 |
| | **Scope of Work:** | | | |
| | | | | |
| | Provide Cable to and Install 4 New Interior Dome Cameras | | | |
| | Provide and swap out , using existing wiring - 2 New Interior Cameras | | | |
| | | | | |
| | **Camera Total for Middle Bldg: 6 Interior** | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | **Sub-Total:** | **$5,610.00** |

CH000225

| Equipment | (3) Dorm Building (Three Floors) - Camera Equipment | | | |
|---|---|---|---|---|
| Samsung PTZ | SPD-2700 Day/Night Speed Dome 27x Zoom Color Camera | 1 | $3,265.00 | $3,265.00 |
| PTZ Housing | Samsung PTZ Housing STH-370PO | 1 | $623.00 | $623.00 |
| PTZ Arm | Samsung STB-270PWV - PTZ Housing to Corner Mount bracket Arm | 1 | $80.23 | $80.23 |
| Samsung Int Dome Cam | Samsung 1/3 Hi-Res VF Dome Camera 3.5-8mm- (Int Dome) | 16 | $640.00 | $10,240.00 |
| Samsung Ext Box Cam | Samsung 1/3 Hi-Res Day/Night Box Camera  (Ext box Cam) | 6 | $595.00 | $3,570.00 |
| Computar Lens | Computar Auto Iris Camera  Lens  2.8-8mm | 6 | $84.00 | $504.00 |
| Housing and Mount | Housing w/ Heater and Blower - Housing Mount | 3 | $128.00 | $384.00 |
| Conduit/Panduit | Install compliant low voltage insulating conduit or panduit | 1 | $600.00 | $600.00 |
| Cat 5e | 1000 ft. UTP CAT 5E 24/4 PR PVC Blue | 1 | $189.00 | $189.00 |
| Coax Cable | 1000 ft. SP*CCTV Combo RG 59+18/2 CL2 zip pvc white | 3 | $200.00 | $600.00 |
| BNC Connectors | 3 pc. BNC Crimp RG 59/62 - (bag of 100 ea) | 2 | $50.00 | $100.00 |
| Misc. | Connecters, fittings  etc… | 1 | $1,500.00 | $1,500.00 |
| Alt-24VAC-16 | AC 16 channel power supply, 24 VAC | 2 | $186.00 | $372.00 |
| | Scope of Work: | | | |
| | Provide Cable to and Install 1 New Outdoor Pan, Tilt and Zoom Camera | | | |
| | Provide Cable to and Install 6 New Interior Dome Cameras | | | |
| | Provide Cable to and Install 3 New Exterior Box Cameras | | | |
| | Provide and swap out , using existing wiring - 16 New Interior Cameras | | | |
| | Provide and swap out , using existing wiring - 6 New Exterior Cameras | | | |
| | | | | |
| | Camera Total for Main Bldg: 23 Interior and Exterior | | | |
| | | | | |
| | | | Sub-Total: | $22,027.23 |
| | | | | |
| Equipment | Head-End Equipment: | | | |
| NVR | Network video recorder,16 Channel, Remote View Software | 4 | $6,800.00 | $27,200.00 |
| | w/ Elite Interactive CMS  Event Management Software | | | $0.00 |
| Network Switch | 4 Port Network Switch/Firewall | 1 | $110.00 | $110.00 |
| Cat 5e | UTP CAT 5E 24/4 PR PVC Blue | 1 | $98.00 | $98.00 |
| RJ-45 Connectors | RJ-45 Cat 5E Connectors | 1 | $32.00 | $32.00 |
| Wall Mount Rack | 3-Way Swingable Wall Mount Rack | 1 | $679.00 | $679.00 |
| UPS | Universal Power Supply - Battery Back-up | 1 | $283.00 | $283.00 |
| Rack Mounted Power | Rack Mounted Surge Protector | 1 | $178.00 | $178.00 |
| | | | | |
| | | | | |
| | Programming and networking all Cameras and equipment | | | |
| | | | | |
| | | | Sub-Total: | $28,580.00 |
| Equipment | Card Access System: | | | |
| Card Readers | Card Readers w/ keypad feature for 11 Doors | 5 | $890.00 | $4,450.00 |
| Control Hardware | Access Control Hardware | 1 | $1,410.00 | $1,410.00 |
| Access Software | Access Control - Remote Management Software | 1 | $1,560.00 | $1,560.00 |
| Misc. | Connecters, fittings  etc… | 1 | $998.00 | $998.00 |
| Door Hardware | | 1 | $750.00 | $750.00 |
| | Scope of Work: | | | |
| | Provide Cable to and Install, 11 New Managed Access points | | | |
| | | | | |
| | | | Sub-Total: | $9,168.00 |
| | | | | |
| | Card Access Total  for all Parts - | | Access: | $9,168.00 |
| | Materials Total for all of the above Camera equipment - | | Mat. Total: | $81,758.23 |
| | Labor and Supervision to install all of the above equipment- | | Labor Total: | $22,450.00 |
| | | | Grand Total: | 113,376.23 |
| | | | Chabad Total: | $72,750.00 |

CH000226

## #6    Fiscal/Administrative Policies Description

<u>OMB Circular A-110 Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations</u>

CH000227

# EXHIBIT 51

ARNOLD SCHWARZENEGGER
GOVERNOR

MATTHEW R. BETTENHAUSEN
SECRETARY





Cal E·M·A
CALIFORNIA EMERGENCY
MANAGEMENT AGENCY



March 15, 2010

David Sternlight
Special Advisor to the President
Chabad of California
741 Gayley Avenue
Los Angeles, CA.  90024

SUBJECT:   NOTICE OF GRANT MONITORING FIELD REVIEW
           COMPLIANCE REVIEW NO. F10-502 AND F10-505
           UASI NON-PROFIT SECURITY GRANT PROGRAM
           GRANT NO.:2008-0005, FIPS #037-90820 & #037-90838

Dear

The California Emergency Management Agency (CalEMA) will be conducting a review of your
organization's grant processes and documentation related to the above subject grant(s).  The purpose of the
monitoring visit is to review your organization's overall compliance with applicable state and federal
regulations and guidelines.

The field review has been set for April 12, 2010 through April 12, 2010.  Please ensure that all grant
documents are available for review during this onsite visit, and that all personnel responsible for this grant
are available to provide information on your organization's grant processes and activities.  To assist you in
preparing for our visit, we have attached a preliminary list of the programmatic and financial source
documents we will be reviewing.

We plan to begin our visit with an entrance conference at 8:30AM on Monday, April 12, 2010, and would
like to request that in addition to yourself, the Financial Officer for your organization is also present.  An
exit conference will be held in the afternoon at the conclusion of our visit on Monday, April 12, 2010, at
which time we will meet with you to discuss the results of the review.

If you have any questions about the review, please feel free to contact the monitor who will be conducting
the review, Jennifer Kolbe, at (916) 845-8137, or at Jennifer.Kolbe@ohs.ca.gov.

Sincerely,

Jennifer Kolbe
Program Monitor

Attachment

cc:   Brendan Murphy, Director of Grants
      Amber Lane, Program Representative

3650 SCHRIEVER AVENUE • MATHER, CA 95655
ATTN: GRANTS MONITORING DIVISION
(916) 845-8120 • (916) 845-8392 FAX

US000972

CALEMA MONITORING AND GRANTS TECHNICAL ASSISTANCE DIVISION

**DOCUMENTATION REVIEW** – Please gather copies of all worksheets and other records used to prepare and support the Request for Reimbursement(s) for the referenced grant(s) as follows:

| GRANT AWARD # | PROJECT # | PROGRAM NAME | PERIOD COVERED | REIMBURSEMENT AMOUNT |
|---|---|---|---|---|
| 2008-0005 | A | UASI Non-Profit Security Grant Program | 07/01/09 to 07/23/09 | $50,000 |
| 2008-0005 | B | UASI Non-Profit Security Grant Program | 07/01/29 to 07/23/09 | $18,140 |
| 2008-0005 | A | UASI Non-Profit Security Grant Program | 07/01/09 to 08/24/09 | $60,000 |
| 2008-0005 | B | UASI Non-Profit Security Grant Program | 07/01/09 to 08/24/09 | $12,750 |

Please assemble and have ready all requested documents as applicable for the review. The items should be labeled according to their item number (e.g., **Organization Chart would be labeled as #1; Procurement Policy would be labeled as #3-b**), and separated by paper clips, binder clips, folders, etc. If your expenses were reported by cost category, please organize your documents in support of each applicable category, e.g., Personal Services, Operating Expenses, Equipment, Training, Exercise, Management & Administration, etc.

1. Organizational Chart (that includes unit, name, title, percent of time charged to CalEMA grants)
2. Chart of Accounts / General Ledger
3. Fiscal / Administrative Policies
   a. Accounting
   b. Procurement
   c. Travel
   d. Conflict of Interest / Code of Conduct
4. Any bonding/insurance policies related to grant funds
5. Cash receipts & cash disbursement ledgers covering the review period
6. Functional timesheets/time logs/cards/attendance reports along with any time study and cost allocation plan, if applicable
7. Payroll register
8. Job descriptions for staff that are only partially being charged to this grant(s)
9. Vouchers supporting all claimed operating and equipment expenses[1], including the following: purchase orders, lease agreements, receiving reports and vendor invoices
10. Copies of all invoices for training and exercise activities (which your organization either organized or participated in), including sign-in sheets, training agendas, certificates of completion as applicable
11. Contracts: Services/Consultant contracts; sole source or bid process documentation
12. Documentation to support activities in Memoranda of Understanding (MOUs) and Operational Agreements (OAs)
13. If applicable, Project Income (PI): all source documents describing the type of PI earned, when it was earned, how much was earned and how it was expended
14. If your organization subawards project activities, responsibilities and/or grant funds, please describe the process your use to monitor and oversee any of the grant funds that are passed through to subrecipients

**Please be advised the Monitor may request additional documentation as necessary at the time of the visit.**

---

[1]For Homeland Security grants, please email a copy of your current Equipment Log / Workbook to the Monitor one week prior to the field review.

(10/09)

# EXHIBIT 52

ARNOLD SCHWARZENEGGER
GOVERNOR

MATTHEW R. BETTENHAUSEN
SECRETARY



**Cal E·M·A**
CALIFORNIA EMERGENCY
MANAGEMENT AGENCY

April 23, 2010

David Sternlight
Special Advisor to the President
Chabad of California
741 Gayley Avenue
Los Angeles, CA. 90024

SUBJECT:   NOTICE OF DOCUMENTATION REQUEST
COMPLIANCE REVIEW NOS. F10-502 AND F10-505
UASI NON-PROFIT SECURITY GRANT PROGRAM
GRANT NO.:2008-0005, FIPS #037-90820 & #037-90838

Dear Mr. Sternlight:

This letter is in follow-up to CalEMA's recent site visit related to the monitoring of the above grants.

The California Emergency Management Agency (CalEMA) is required by federal regulations to determine whether subgrantees have spent Federal assistance funds in accordance with applicable laws and regulations. Per the Single Audit Act and Office of Management and Budget (OMB) Circular A-133, *Audits of State, Local Governments, and Non-Profit Organizations*, Subpart D, §___.400, *"A pass-through entity shall perform the following for the Federal awards it makes: (3) Monitor the activities of subrecipients as necessary to ensure that Federal awards are used for authorized purposes in compliance with laws, regulations, and the provisions of contracts or grant agreements and that performance goals are achieved."* Subpart B, §___.200 (d) of the Circular states, *"Non-Federal entities that expend less than $500,000 a year in Federal awards are exempt from Federal [Single] audit requirements for that year...but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and General Accounting Office (GAO)."*

44CFR Part 13, Subpart C, Section 13.42 (e) (1) states that subrecipients must provide access to records as follows: *"Access to records. (1) Records of grantees and subgrantees. The awarding agency and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of grantees and subgrantees which are pertinent to the grant, in order to make audits, examinations, excerpts, and transcripts."*

As stated in the original monitoring notification letter, the purpose of the monitoring visit was to review your organization's overall compliance with applicable state and federal regulations and guidelines. Because CalEMA monitors were unable to successfully complete the monitoring review at your site and were not provided with documentation to support expenditures claimed under the above grants, the scope of this monitoring has been expanded to an extended desk review to include each of the grant awards listed on the attached.

US000974

Mr. David Sternlight
April 22, 2010
Page 2

Please provide the source documentation to support grant expenditures for the grants listed to this office no later than May 10, 2010.

If you have any questions in this matter, please feel free to contact me at (916) 845-8106, or at Catherine.Lewis@calema.ca.gov.

Sincerely,

CATHERINE LEWIS
Division Chief

Enclosure

cc:   Peggy Okabayashi, Assistant Secretary, CalEMA
      David Zocchetti, Director of Legal and Legislative Affairs, CalEMA
      Brendan Murphy, Director, Office of Grants Management, CalEMA
      Gina Buccieri-Harrington, Assistant Director, Office of Grants Management, CalEMA
      Amber Lane, Program Representative, CalEMA

US000975

CALEMA GRANTS MONITORING DIVISION

**DOCUMENTATION REVIEW** – Please gather and submit copies of all records used to prepare and support the Request for Reimbursement(s) for the referenced grant(s) as follows:

1. Chart of Accounts / General Ledger, along with a short narrative detailing to which account the revenue and expenditures are recorded for each grant
2. Cash receipts & cash disbursement ledgers covering the entire grant period reflecting all revenue and expenditures for each of the grants
3. Vendor invoices and proof of payment (e.g., cancelled checks) supporting all claimed expenditures
4. Documentation supporting match achievement for each grant
5. Contracts: Services/Consultant contracts along with sole source or bid process documentation
6. Fiscal / Administrative Policies covering the areas of accounting, procurement, and conflict of interest/code of conduct.  (If you do not have written policies, please describe the procedures your organization uses to ensure control over and accountability for grant funds, including how procurements are undertaken and approved, and the internal process used for the review and approval of Reimbursement Requests, as well as for the disbursement of funds related to grant expenditures.)
7. A summary of any interest earned on grant funds

| GRANT AWARD NUMBER | PROGRAM NAME | APPLICANT | FIPS # | TOTAL REIMBURSED |
|---|---|---|---|---|
| 2005-0015 | FY05 Homeland Security Grant Program | Chabad of California | 037-90820 | $47,990 |
| 2007-0023 | FY07 UASI Non-Profit Security Grant Program | Chabad of California | 037-90820 | $97,000 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Chabad of California | 037-90820 | $68,140 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Bais Chana High School | 037-95062 | $72,750 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Bais Chaya Mushka School | 037-90839 | $71,605 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Chabad Jewish Community Center of Marina Del Rey | 037-90842 | $72,750 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Chabad National Residential Treatment Center | 037-95063 | $72,108 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Chabad of Beverlywood | 037-90837 | $72,750 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Cheder Menachem School | 037-95061 | $72,750 |
| 2008-0005 | FY08 UASI Non-Profit Security Grant Program | Yeshiva Ohr Elchonon Chabad | 037-90838 | $72,750 |

# EXHIBIT 53

ARNOLD SCHWARZENEGGER
GOVERNOR



MATTHEW R. BETTENHAUSEN
SECRETARY

**Cal E·M·A**
CALIFORNIA EMERGENCY
MANAGEMENT AGENCY

November 1, 2010

Mr. David Sternlight
Special Advisory to the President
Chabad of California
741 Gayley Avenue
Los Angeles, CA 90024

SUBJECT:   COMPLIANCE REVIEW REPORT #F10-502/505
           UASI NON-PROFIT SECURITY GRANT PROGRAM
           GRANT AWARDS REVIEWED:

| | | |
|---|---|---|
| Chabad of California | 2008-0005 | FIPS #037-90820 |
| Yeshiva Ohr Elchonon Chabad | 2008-0005 | FIPS #037-90838 |
| Chabad of California | 2005-0015 | FIPS #037-90820 |
| Chabad of California | 2007-0023 | FIPS #037-90820 |
| Bais Chana High School | 2008-0005 | FIPS #037-95062 |
| Bais Chaya Mushka School | 2008-0005 | FIPS #037-90839 |
| Chabad National Residential Treatment Center | 2008-0005 | FIPS #037-95063 |
| Chabad of Beverlywood | 2008-0005 | FIPS #037-90837 |
| Cheder Menachem School | 2008-0005 | FIPS #037-95061 |
| Chabad Jewish Community Center of Marina Del Rey | 2008-0005 | FIPS #037-90842 |

Dear Mr. Sternlight:

The California Emergency Management Agency (CalEMA), conducted a compliance field review on April 12, 2010 for the Chabad of California and the Yeshiva Ohr Elchonon Chabad grants. A subsequent desk review was conducted of the remaining grants listed above. The purpose of the reviews was to determine if the organizations for which you serve as Authorized Agent complied with applicable laws, regulations, and grant guidelines.

The grants were reviewed for compliance with the administrative and fiscal requirements as outlined in the Office of Management and Budget (OMB) Circulars and the Code of Federal Regulations (CFR). Our scope included reviewing the reimbursements and all supporting documentation for the entire grant period noted below.

Executive Summary:

Grant Type:        UASI Non-Profit Security Grant Program
Review Type:       Compliance Review
Scope:             Fiscal and Administrative
Review Period:     10/01/07 to 3/31/10

US001245

David Sternlight
November 1, 2010
Page 2

Findings Summary:

1. Claimed grant expenditures are ineligible for reimbursement due to lack of supporting payment, match and procurement documentation.

Following are the detailed Findings resulting from the Compliance Review. Findings are discoveries that, within the context of a review process, represent operational deficiencies or errors, material program weaknesses or unacceptable program liabilities that could result in questioned grant costs, or collectively characterize a significant risk to program integrity.

## FINDINGS

**Finding #1: Claimed grant expenditures are ineligible for reimbursement due to lack of supporting payment, match, and procurement documentation.**

**Requirement(s):**
2 CFR Part 230, Appendix A, Section A (2) states, *"Factors affecting allowability of costs. To be allowable under an award, costs must meet the following general criteria: a. Be reasonable for the performance of the award and be allocable thereto under these principles...; g. Be adequately documented."*

2 CFR Part 215, Subpart C, Section 215.21 (b) states, *"Recipients' financial management systems shall provide for the following... (7) Accounting records including cost account records that are supported by source documentation."*

2 CFR Part 215, Subpart C, Section 215.23 (a) states, *"All contributions, including cash and third party in-kind, shall be accepted as part of the recipient's cost sharing or matching when such contributions meet all of the following criteria: (1) Are verifiable from the recipient's records."*

2 CFR Part 215, Subpart C, Section 215.45 states, *"Some form of cost or price analysis shall be made and documented in the procurement files in connection with every procurement action. Price analysis may be accomplished in various ways, including the comparison of price quotations submitted, market prices and similar indicia, together with discounts. Cost analysis is the review and evaluation of each element of cost to determine reasonableness, allocability and allowability."*

2 CFR Part 215, Subpart C, Section 215.13 states, *Federal awarding agencies and recipients shall comply with Federal agency regulations implementing E.O.s 12549 and 12689, "Debarment and Suspension." Under those regulations, certain parties who are debarred, suspended or otherwise excluded may not be participants or principals in Federal assistance awards and subawards, and in certain contracts under those awards and subawards."*

**Observation:**
Accounting records were not supported by such source documentation as invoices, cancelled checks, and general ledgers showing an audit trail of expenditures. The match requirements were not fully documented or supported. And in the procurement of contracts, the subgrantee did not keep adequate

David Sternlight
November 1, 2010
Page 3

records showing the method and rationale for the selection of the vendor, or verify vendor eligibility to participate in procurement transactions under federal awards.

**Required Corrective Action:**
The total amount disbursed under these awards was $647,843.00; of this amount, $612,066.00 is unsupported and therefore ineligible for reimbursement.  An invoice in the amount of $612,066.00 will be forwarded to you from the CalEMA Accounting Office.  Payment in this amount should be remitted to CalEMA no later than 30 days after receipt of the invoice.

If you desire to challenge any of the Findings included in this report, you must respond with your written comments and any supporting documentation within 30 days of the date of this letter.

If you have any questions about this letter or the enclosures, please contact Jennifer Kolbe at (916) 845-8137, or electronically at Jennifer.Kolbe@calema.ca.gov.

Sincerely,

CATHERINE LEWIS
Division Chief

Enclosure

cc:   Yoel Edelson, Chief Financial Officer, Chabad of California
      Rabbi Yaakov Baitelman, Manager, Special Projects, Chabad of California
      Rabbi Boruch Shlomo Cunin, Chabad of California
      Peggy Okabayashi, CalEMA Assistant Secretary
      Brendan Murphy, Director, CalEMA Office of Grants Management
      Renee Mota-Jackson, Section Chief, CalEMA Infrastructure Protection
      Subgrantee File

# EXHIBIT 54



**Cal E·M·A**

CALIFORNIA EMERGENCY
MANAGEMENT AGENCY

May 2, 2011

Mr. David Sternlight
Special Advisory to the President
Chabad of California
741 Gayley Avenue
Los Angeles, CA 90024

SUBJECT:   MANAGEMENT DECISION: CHABAD OF CALIFORNIA CHALLENGE
           COMPLIANCE REVIEW REPORT #F10-502/505
           UASI NON-PROFIT SECURITY GRANT PROGRAM

Dear Mr. Sternlight:

The California Emergency Management Agency (CalEMA) received documents submitted by
Chaim Aaron Levin on January 3, 2011 in support of the Chabad of California's challenge to the
above compliance review report. The submission consisted of a narrative response and supporting
expenditure tables for each grant (new item), a repeat of previously supplied supporting
documentation, and a copy of a proposed Order and Final Judgment - Statement of Confession of
Judgment related to the Complaint filed by Continental Business Credit, Inc. against Chabad of
California, et al., Case No. BC 431893 (new item).

After review of the submission, CalEMA has determined the following:

1.  It appears that the proposed Order and Final Judgment Chabad provided is not a legally
    binding court document: it has not been signed by the judge and/or plaintiff, does not
    contain the seal or filing date of the court, and it is only signed by Chabad representatives.
    The signatures are not notarized. Within the narrative response further description was
    provided related to the project for the grant awarded to the Chabad Jewish Community
    Center of Marina del Rey project (Grant Award #2008-0005, FIPS #037-90842). The
    project description supplied indicated a portion of the funds were used to install perimeter
    glass for security on the second story deck. As this is an allowable cost and payment to the
    vendor providing the services was verified, the amount of $9,383.33 ($14,075 less the 25%
    match requirement on this amount) was credited to reduce the amount of ineligible
    expenditures under this grant.

2.  During the final review of all documentation submitted a mathematical error was
    discovered. Chabad of California's check number 1789 payable to Larry Clayton covered
    payment under multiple invoices for eligible grant expenditures. The error was made on
    the Chabad of California's cash disbursement ledger/invoice/proof of payment cover sheet
    in that it did not account for the full amount of the check. This left an unapplied credit

US001217

Mr. David Sternlight
May 2, 2011
Page 2

balance on the check in the amount of $4,564.50, which was also appropriately applied (after deducting the required match) to offset ineligible expenditures.

The offset of items 2 and 3 above bring the unsupported and therefore ineligible for reimbursement amount to $598,118.17. An invoice in this amount will be forwarded to you from the CalEMA Accounting Office. Payment in full must be remitted to CalEMA no later than 30 days after receipt of the invoice.

If you have any questions about this letter, please contact the undersigned at the address shown above.

Sincerely,

CATHERINE LEWIS
DIVISION CHIEF

cc:   Yoel Edelson, Chief Financial Officer, Chabad of California
      Rabbi Yaakov Baitelman, Manager, Special Projects, Chabad of California
      Rabbi Boruch Shlomo Cunin, Chabad of California
      Chaim Aaron Levin, Certified Public Accountant
      Peggy Okabayashi, CalEMA Assistant Secretary
      Brendan Murphy, Director, CalEMA Office of Grants Management
      Renee Mota-Jackson, Section Chief, CalEMA Infrastructure Protection
      Subgrantee File

US001218

Z 325 150 332

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

| | |
|---|---|
| Sent to Mr. David Sternlight | |
| Street & Number 741 Gayley Ave | |
| Post Office, State, & ZIP Code Los Angeles CA 90024 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| **TOTAL** Postage & Fees | $ |
| Postmark or Date 5/3/11 | |

PS Form **3800**, April 1995

US001219