1   Donald L. Saltzman, State Bar No. 54483
    Professional Law Corporation
2   10537 Butterfield Road
    Los Angeles, California 90064
3   Telephone: (310) 617-3073
    Facsimile: (310) 836-8944
4   dlslawcorp@aol.com

5   Attorneys for Defendant
    YESHIVA OHR
6   ELCHONON CHABAD

7

8                  IN THE UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA *ex rel.*        Case No. 2:10-cv-01056-MCE-EFB
    ARIA KOZAK AND DONNA KOZAK,
12

13          Plaintiff,

14      vs.

15  CHABAD-LUBAVITCH INC.; CHABAD OF     **POINTS AND AUTHORITIES OF**
    CALIFORNIA; CHABAD RUNNING           **DEFENDANT AND CROSS-**
16  SPRINGS RESIDENTIAL CAMP; CHABAD     **COMPLAINANT YESHIVA OHR**
    CHEDER MENACHEM; YESHIVA OHR         **ELCHONON CHABAD IN OPPOSITION**
17  ELCHONON CHABAD; BAIS CHANA          **TO PLAINTIFFS' MOTION FOR**
    HIGH SCHOOL; CHABAD OF MARINA;       **SUMMARY JUDGMENT**
18  and BAIS CHAYA MUSHKA,

19
            Defendants.
20

21  YESHIVA OHR ELCHONON CHABAD,

22          Cross-Complainant,
                                          Date:         August 21, 2014
23      vs.                               Time:         2:00 p.m.
                                          Courtroom:    7
24  CHABAD OF CALIFORNIA,                 Judge:        Hon. Morrison C. England, Jr.
                                          Trial Date:   January 5, 2015
25          Cross-Defendant.

26

27

28                                                      No. 2:10-cv-01056-MCE-EFB

# TABLE OF CONTENTS

I.   Introduction and Factual Background as to Yeshiva Ohr. . . . . . . . . . . . . . . . 1

     A.   Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Witness Testimony fully Supports the Conclusion that
          Yeshiva Ohr Had No Knowledge of Any Wrongdoing . . . . . . . . . . . . . 7

II.  Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Plaintiffs Have No Evidence That Yeshiva Ohr Knowingly Submitted
     Any False Claims or Knowingly Avoided Obligations to Re-Pay Grant
     Money; Yeshiva Ohr has No Liability for Damages or Penalties Under
     Any "Agency" Theory and Summary Judgment Will Not Lie . . . . . . . . . . . . 12

IV.  Summary Judgment May Not be Granted Where Triable Issues of
     Material Fact Exist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     A.   Applicable Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     B.   Burden On Moving Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.   In the Event Yeshiva Ohr is Found Liable for Payment of Damages,
     Yeshiva Ohr is Entitled to Full Indemnity, including Reimbursement of
     Attorneys' Fees and Costs From Defendant Chabad of California . . . . . . . . . 18

VI.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**1**

**2**                                                                                          **Page**

**3** <u>**Federal Cases**</u>

**4** Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1985)

**5** <u>**State Cases**</u>

**6** Travelers Indem. Co. v. McIntosh, 112 C.A. 2d, 245 P.2d 1065 . . . . . . . . . . . . . . . . . . 16

Corwin v. Los Angeles Newspaper Serv. Bureau, Inc., 4 Cal. 3d 842,
**7**       94 Cal.Rptr. 785 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**8** Joe Schlitz Brewing Co. v. Downey distributor, 109 Cal.App. 3d,
**9**       167 Cal. Rptr. 510 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**10** Lipson v. Superior Court, 31 Cal.3d 362, 182 Cal. Rptr. 629 (1982) . . . . . . . . . . . . . . . 17

**11** Miller v. Metzinger, 91 Cal. App. 3d 31, 154 Cal. Rptr. 22 (1979) . . . . . . . . . . . . . . . . .17

**12** Snider v. Snider, 200 Cal.App. 2d 741, 19 Cal. Rptr. 709 (1962) . . . . . . . . . . . . . . . . . .17

**13** Family Service Agency of Santa Barbara v. Ames, 166 Cal.App. 2d 344 (1959) . . . . . . .17

**14**
**15** Molko v. Holy Spirit Assn., 46 Cal.3d 1092, 252 Cal. Rptr. 2d 122 (1988) . . . . . . . . . . . 17

**16** Grady v. Easley, 114 P.2d 635, 45 C.A.2d 632 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**16** <u>**Federal Statutes**</u>

**17** 31 U.S.C. §3729(a)(1)(A), (B) and (G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**18** 31 U.S.C. §3729(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**19** Federal Rules of Civil Procedure, Rule 56, 28 U.S.C. . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**20** Federal Rules of Civil Procedure, Rule 56€, 28 U.S.C. . . . . . . . . . . . . . . . . . . . . . . . . . .17

**21** <u>**State Statutes**</u>

**22** California Civil Code §§ 2339 and 2342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**23** California Civil code § 2306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**24** California Code of Civil Procedure §437c(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**25**
**26**
**27**                                            -0-                    No. 2:10-cv-01056-MCE-EFB

COMES NOW DEFENDANT AND CROSS-COMPLAINANT YESHIVA OHR

ELCHONON CHABAD ("YESHIVA OHR") WHO, ON ITS OWN BEHALF ONLY,

RESPECTFULLY SUBMITS THE FOLLOWING POINTS AND AUTHORITIES IN

OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT ("MSJ") BROUGHT BY

PLAINTIFFS HEREIN:

## I.   Introduction and Factual Background as to Yeshiva Ohr

### A.   Background

Defendant and Cross-Complainant Yeshiva Ohr is an innocent bystander to this action and bears no liability whatsoever to the Plaintiffs. The government is well aware that its "case" against Yeshiva Ohr is weak to non-existent: it has not deposed any Yeshiva Ohr personnel. The plaintiffs are not entitled to summary judgment against Yeshiva Ohr because all of the statutes in issue require "knowing" violation. Yeshiva Ohr contends that it had no knowledge of any of the alleged violations and the government has no evidence whatsoever to establish "knowledge" on behalf of Yeshiva Ohr. The determination of whether or not Yeshiva Ohr "knowingly" violated any statute is a contested determination of fact to be made by a jury, not by the Court upon a motion for summary judgment.

Yeshiva Ohr is a religious school with its principal place of business located 7215 Waring Avenue, Los Angeles, California 90046. Its two principal managers and educators are Rabbi Ezra Schochet and Rabbi Mendel Spalter.

Defendant and Cross-Defendant Chabad of California ("Chabad of California" or "Chabad" herein) is a corporation with its principal office located at 741 Gayley Avenue, Los Angeles, California. In about 1978, Chabad of California, acting by and through its President, Rabbi Boruch Cunin, was instrumental in founding the new school Yeshiva Ohr. Chabad of California originally owned the property on which Yeshiva Ohr is located, although that is no longer the case and Yeshiva Ohr owns the property as well. **At all times relevant herein, Yeshiva Ohr is and always has been a totally separate organization from Chabad of California**.

1    At some point in time prior to August 25, 2008, a representative or representatives of
2    Chabad of California approached representatives of Yeshiva Ohr and offered to Yeshiva Ohr
3    that Chabad of California could and would apply to the Office of Homeland Security to obtain a
4    grant for improvements in the physical security at the Yeshiva Ohr school.  Chabad of
5    California represented to Yeshiva Ohr that it was making similar applications to the Office of
6    Homeland Security for a number of Chabad organizations with which it was affiliated.  Chabad
7    of California also represented and promised to Yeshiva Ohr that Chabad of California had
8    personnel in place who were experienced in the matters of obtaining grants from the Office of
9    Homeland Security and that Chabad would handle all aspects of the application for and
10   administration of the grant funds in compliance with all applicable federal and state rules and
11   regulations.  Yeshiva Ohr represented that it had no experience with respect to the application
12   for grants and would be relying entirely upon Chabad.  The Court will observe, from a review of
13   all Summary Judgment briefs, that none of the above facts are disputed by the plaintiffs.

14        Chabad of California also at that time represented and promised to Yeshiva Ohr that it
15   knew many vendors and that it would deal directly with and handle all aspects of contracts,
16   negotiations and payments of grant funds to the vendors of the security equipment.  At some
17   point in time before the grant was received, Chabad of California told representatives of Yeshiva
18   Ohr that the grant amount would be in the sum of $72,750.  Based upon Chabad of California's
19   representations and promises to Yeshiva Ohr, Yeshiva Ohr authorized Chabad of California to
20   proceed with obtaining and administering the grant in issue.  Again, none of these facts are
     disputed by the plaintiffs.

21        Yeshiva Ohr relied upon the representations and promises made to it by Chabad of
22   California.  Yeshiva Ohr truly believed the grant money would be used by Chabad of California
23   to pay vendors to improve security at the Yeshiva Ohr facility. Yeshiva Ohr had no reason to
24   doubt the truthfulness or abilities of Chabad of California in obtaining and administering the
25   grants.  Yeshiva Ohr's reliance on the promises of Chabad of California was reasonable under
26   all of the circumstances.  Yeshiva Ohr respectfully submits to the Court that under any

27                                                    -2-                    No. 2:10-cv-01056-MCE-EFB

1 circumstances, the plaintiffs will be unable to show that Yeshiva Ohr's reliance on Chabad was
2 unreasonable or reckless.

3      As soon as the grants were received, Yeshiva Ohr immediately turned over the grant
4 funds to Chabad of California (except the sum of $750 through oversight). Chabad represented
5 to Yeshiva Ohr that it would use the grant funds to pay the vendors selected by Chabad and
6 Yeshiva Ohr had no reason not be believe Chabad.  It is uncontroverted that Yeshiva Ohr had no
7 influence or authority over Chabad as to how the grant funds would be spent.  As explained
8 below, Yeshiva Ohr has no liability in this action because it did know "knowingly" violate any
9 applicable statute.

10      Yeshiva Ohr has filed a cross-claim against Chabad of California for complete
11 indemnity. Attached as "Exhibit 1" to Yeshiva Ohr's Cross-Claim is a letter dated June 1, 2010
12 to the California SAA (CalEMA) from Chabad of California's accountant, Chaim Aaron Levin.
13 This letter is referenced in paragraph number 35 of the principal Complaint.  Among other
14 things, in that letter Cross-Defendant Chabad of California specifically admitted that entities
15 such as Yeshiva Ohr totally relied upon Chabad of California to properly administer the grant
16 funds:

17      "[S]everal of the entities relied on the expertise and experience of the procurement
18      personnel employed by Chabad of California to select and manage the vendors grants.
19      The Chabad of California personnel have broad expertise in construction management;
20      examples including . . . .

21      To build up the purchasing power of all the entities, the other entities paid
22      or transferred the grant proceeds to Chabad of California. . . . Thus you may see that
23      an outside vendor may consider that there is an open balance to their account with
24      one of the entities even though the entity paid Chabad of California completely.  Thus,
25      because Chabad of California is in-between the other subrecipients and some of the
26      vendors, there may be the temporary situation of the vendor showing a balance due
27      even though the subrecipient shows the charges under the contract as expended

-3-                     No. 2:10-cv-01056-MCE-EFB

28

in full. . . ."

After convincing Yeshiva Ohr to allow Chabad of California to apply for a grant on its behalf, Chabad of California prepared and presented a few papers to Yeshiva Ohr for signature. Yeshiva Ohr signed these papers. The United States does not dispute that Yeshiva Ohr had no control over Chabad of California or its subsequent actions. Nor does it dispute the fact that Yeshiva Ohr relied entirely on Chabad of California to apply for and administer the grant. The government does not dispute that Yeshiva Ohr promptly turned over all of the grant money (except the sum of $750 through oversight) to Chabad of California for administration and payment to vendors. Rather, the government's entire case against Yeshiva Ohr is founded solely on these few signatures. Under any theory, these few signatures are far less than adequate to ultimately prove a "knowing" violation of the statute in issue at trial, let alone satisfy the requirements for summary judgment.

In short, the government's only case against Yeshiva Ohr is based on the following four documents, only one of which was actually signed by Yeshiva Ohr:

1.     On August 25, 2008, "Grant Assurances" were submitted to the Office of Homeland Security on behalf of Yeshiva Ohr. The last page thereof was signed by Rabbi Danny Yiftach-Hashem, who was working solely for Chabad of California. Rabbi Yiftach-Hashem signed as "Authorized Agent," with the title "Project Director." His signature was preceded by the following language: "The undersigned represents that he/she is authorized by the above named applicant to enter into this agreement for and on behalf of the said applicant." It is undisputed that Rabbi Yiftach-Hashem was not a principal or employee of Yeshiva Ohr. He was employed by Chabad of California. Whether or not Rabbi Yiftach-Hashem had been authorized to execute this document on Yeshiva Ohr's behalf (see discussion below), it is clear that there is no language in the "Grant Assurances" that would allow Rabbi Yiftach-Hashem and/or Chabad of California to commit any illegal or fraudulent acts in the grant application or administration process. Hence, there is no possible argument that Yeshiva Ohr somehow "authorized" Rabbi Yiftach-Hashem and/or Chabad of California to commit illegal or fraudulent

-4-                     No. 2:10-cv-01056-MCE-EFB

1  acts. Similarly, there is no merit to any possible argument by the government that somehow

2  Yeshiva Ohr *reasonably should have known* that Rabbi Yiftach-Hashem and/or Chabad of

3  California might commit illegal or fraudulent acts in the grant application or administration

4  process.

5        2.     In a document entitled "Investment Justification Template" (a government form

6  document) that was submitted to Cal-EMA in mid-2008, under the heading "V. Project

7  Management," somebody associated with Chabad of California filled in that section and

8  included the following sentence: "Rabbi Danny Yiftach is managing Yeshiva Ohr Elchonon

9  Chabad's security upgrade."

10       3.     On October 28, 2008, two months *after* the Grant Assurances were submitted by

11 Rabbi Yiftach-Hashem, Chabad of California presented to Rabbi Schochet of Yeshiva Ohr a

12 "Resolution" to be signed. It is believed that this was the same form "Resolution" used by

13 Chabad of California with the other entities on whose behalf Chabad of California applied for

14 grant funds. Rabbi Schochet signed this resolution at the "x" next to the signature line. **It is**

15 **undisputed that this is the only document in this entire case that bears the signature of an**

16 **actual principal or employee of Yeshiva Ohr**. The resolution itself is entitled "A Resolution

17 Approving an Application for Funding From. . . [Cal-EMA]." Hence by its express terms

18 Rabbi Schochet did no more than authorize Chabad of California to *apply* for funding and agree

19 that Chabad of California's employees and representatives would be entirely responsible for the

20 application and management of the funding. Section 3 of the resolution provided:

21        "Be it resolved that Dr. David Sternlight, Special Advisor to the President,

22        Chabad of California, or Rabbi Danny Yiftach-Hashem, Project Director, or

23        Rabbi Yakov Baitelman, Manager Special Projects, Chabad of California is

24        hereby authorized and directed to act on the Yeshiva Ohr Elchonon Chabad

25 behalf

26        in all matters pertaining to this application."

27 As noted, this resolution was not signed until well after Rabbi Yiftach-Hashem

28

-5-                    No. 2:10-cv-01056-MCE-EFB

submitted the "Grant Assurances" allegedly on behalf of Yeshiva Ohr. Yeshiva Ohr will

contend at trial that at the time Rabbi Yiftach-Hashem signed the assurances ostensibly on

behalf of Yeshiva Ohr, he had not been authorized by Yeshiva Ohr to do so. Further, and

regardless of timing, there is no language in the resolution that authorizes Chabad of California

or any or its representatives or employees to commit illegal or fraudulent acts with respect to the

grant.

      4.    On or about September 1, 2009, a written request was submitted to Cal-EMA,

ostensibly on behalf of Yeshiva Ohr, requesting a drawdown of $72,750 in grant funds. The

request was signed by David Sternlight, an employee/representative of Chabad of California.

As noted above, Yeshiva Ohr at no time authorized Mr. Sternlight, Chabad of California or any

of its employees or representatives to make false representations to Cal-EMA or to commit any

illegal or fraudulent acts whatsoever in connection with the grants.

      The above documentation is the *only* connection between Yeshiva Ohr and any of the

wrongdoing alleged by the government in this case. Other than the "Resolution" signed by

Rabbi Schochet, representatives of Yeshiva Ohr played no part in the preparation of and never

even saw the other documents submitted by Chabad of California to the Office of Homeland

Security. During the period September – November, 2009, Yeshiva Ohr received the entire

grant amount of $72,500 from Cal-EMA. The government does not dispute that very shortly

thereafter, Yeshiva Ohr forwarded $40,000 of these funds directly to Chabad of California, for

management and payment to vendors. Please see Exhibit No. 2 to Yeshiva Ohr's Cross-Claim,

a true and correct copy of a check dated November 24, 2009, from Yeshiva Ohr payable to

Chabad of California, in the sum of $40,000. Nor does the government dispute that about three

weeks after forwarding the first check to Chabad of California, Yeshiva Ohr forwarded the

remaining $32,000 directly to Chabad of California for management and payment to vendors.

See Exhibit No. 3 to Cross-Claim, a true and correct copy of a check, dated December 15, 2009,

YESHIVA OHR ELCHONON CHABAD'S POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1  from Yeshiva Ohr payable to Chabad of California, in the amount of $32,000.[1]

2      At any and all times relevant herein, Yeshiva Ohr was unaware of the specific actions

3  taken by, or inactions of, Chabad of California in its interactions with any governmental

4  agencies or vendors.  At all times herein relevant, Yeshiva Ohr was justified in its reliance on

5  the representations and promises of Chabad of California that it would obtain the grants and

6  manage the security improvements to the Yeshiva Ohr premises, including but not limited to

7  selection of the vendors and payment to the vendors.  Moreover, it is undisputed that the

8  vendors at no time asked Yeshiva Ohr directly for payment, as they knew from the outset that

9  Chabad of California and Rabbi Cunin had hired them and were responsible for payment.

10      If from time to time any vendors would ask Yeshiva Ohr about the status of payment for

11  their services, representatives of Yeshiva Ohr always responded that all payments were being

12  handled by Chabad of California and they should contact Chabad of California concerning status

13  of any payment or payments.  If questions were raised by vendors, representatives of Yeshiva

14  Ohr would call representatives of Chabad of California and mention that a vendor had raised a

15  question about payment, at which time Chabad of California always responded to Yeshiva Ohr

16  that they were "on top of it," "not to worry about it" and that "the vendors would be paid."  None

17  of these facts are disputed by the government or any of the defendants, including Chabad of

18  California.

19      Furthermore, representatives of Yeshiva Ohr were at all relevant times of the belief that

20  all vendors had been paid by Chabad of California.  They did not discover otherwise until served

21  with the principal Complaint herein.  Yeshiva Ohr neither participated in nor had knowledge of

    the wrongful acts alleged against Yeshiva Ohr in the Complaint.

22  **B.    Witness Testimony Fully Supports the Conclusion that Yeshiva Ohr Had No**
23  **Knowledge of any Wrongdoing**

24      The government has taken the depositions of all of the individuals involved with

25  _____

26  [1] Through oversight, it appears that Yeshiva Ohr inadvertently retained $750 of the grant funds
    that should have been forwarded to Chabad of California.

27                                                  -7-                    No. 2:10-cv-01056-MCE-EFB
    _____
28                  YESHIVA OHR ELCHONON CHABAD'S POINTS AND AUTHORITIES IN
                    OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

submission of grant applications and management of grant funds.  All of these individuals are or
were employed by or associated with Chabad of California.  None of them were employed by or
associated with Yeshiva Ohr.  No employee or principal of Yeshiva Ohr has been deposed.  All
of the persons deposed have fully supported Yeshiva Ohr's position that it entirely relied upon
Chabad of California in applying for and managing the grant funds.  They have also fully
supported Yeshiva Ohr's position that it had no knowledge of any of the alleged misuse of grant
funds or fraudulent activities of Chabad of California.  The following are merely highlights of
the testimony of these individuals:

     1.    Rabbi Yanky Baitelman:

He works for Chabad of California and answers directly to its President, Rabbi Cunin.
In general, he managed security upgrades being handled by Chabad of California.  He noted that
Yoel Edelson is the controller of Chabad of California.  He acknowledged that Yeshiva Ohr is
an organization independent of Chabad of California.  Based on the documentation he has
reviewed, he believes that David Sternlight, also employed by Chabad of California, prepared
and submitted all of the various applications for Homeland Security grants at issue.

Rabbi Baitelman testified that he arranged for Elite to do the work at Yeshiva Ohr:
security cameras and security control.  He was referred to Elite and the Kozaks by Danny
Yiftach-Hashem, also employed by Chabad of California.  He testified that whenever he
received invoices from Elite or other vendors, he would give the invoices to Rabbi Cunin.  He
stated that it was always Rabbi Cunin's decision whether or not to pay Elite or the other
vendors.  He did not reach out to Yeshiva Ohr or the other defendants in connection with
applications for grants.  He had no recollection of discussing, with any representative of Yeshiva
Ohr, the subject of payments to Elite.  He did tell Rabbi Spalter, with respect to the security
upgrades in general, that he "would see it through."

Rabbi Baitelman admitted that Chabad of California managed all grant funds.  After this
lawsuit was filed, he testified that he told Rabbi Spalter of Yeshiva Ohr that "Chabad of
California realizes this is its responsibility."  Furthermore, he agreed that Rabbi Spalter fully

1  relied on him and Chabad of California with respect to the security work to be done at Yeshiva

2  Ohr.

3       2.     David Sternlight:

4       David Sternlight worked for Chabad of California and Rabbi Cunin at all times relevant

5  herein. He testified that he was very familiar with the requirements of Homeland Security

6  grants and attended government training meetings. He assisted Rabbi Cunin in applying for the

7  grants; he actually prepared the grant solicitations. He received vendor proposals and invoices

8  from Yanky Baitelman and applied for advances or drawdowns from Homeland Security based

9  upon these proposals and invoices.

10      Mr. Sternlight testified that he understood he and Chabad of California were assisting

11  other entities, such as Yeshiva Ohr, in obtaining grants because these entities did not have the

12  necessary background in applying for and/or managing the grants. He testified that he told

13  Cunin, Edelson and Baitelman that the vendors needed to be paid within three months of receipt

14  of grant funds. He claimed he did not know the vendors were not being paid; after he submitted

15  the applications for grants, the process was "out of his hands." On cross-examination, he

16  admitted that "Yeshiva Ohr had no experience with grants, they relied on us." He also admitted

17  that he did not discuss the Homeland Security grants with anyone associated with Yeshiva Ohr.

18      3.     Rabbi Danny Yiftach-Hashem:

19      He testified that when he executed the "Grant Assurances" on behalf of the defendants in

20  this case, he understood that Chabad of California would be managing the grants: "Chabad of

21  California would orchestrate everything that needs to happen and this did not change between

22  2008 and 2010." When he executed the Grant Assurances ostensibly on behalf of Yeshiva Ohr,

23  he has no recollection of discussing the assurances with Rabbis Spalter or Schochet of Yeshiva

24  Ohr. He largely relied upon David Sternlight for the preparation of the grant applications. He

25  had no special training in the grant process and "relied on Chabad of California to tell me what

26  need to be done, and when."

27      He testified that the documents he signed, on behalf of all of the defendants including

-9-                    No. 2:10-cv-01056-MCE-EFB

28  YESHIVA OHR ELCHONON CHABAD'S POINTS AND AUTHORITIES IN
    OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Yeshiva Ohr, were prepared and pre-filled by David Sternlight before he signed them.  He said he had no idea how Chabad of California managed its funds.

*Rabbi Yiftach-Hashem testified that he fully understood and agreed that Yeshiva Ohr was at all times relying on him and Chabad of California to apply for the grants, manage the grants, hire vendors, monitor work performed and ultimately pay the vendors.*

　　　4.　　Chaim Levin:

He is a C.P.A but has no special training in obtaining or administering federal grants.  He helped an outside auditor with work for Chabad of California and signed the cover letter of June 1, 2010 to Cal-EMA (see Exhibit 1 to attached Cross-Claim).  He was not involved in seeking grants but David Sternlight would consult with him on certain questions when Sternlight was preparing the forms.  In preparing the letter of June 1, 2010, he conferred with Rabbi Yoel Edelson, the CFO of Chabad of California.  He did not confer with either Rabbi Schochet or Rabbi Spalter of Yeshiva Ohr when he prepared that letter.

　　　5.　　Yoel Edelson:

He has been employed by Chabad of California for about 15 years.  He is its CFO, Controller and Treasurer.  He admitted that Chabad of California deposited Cal-EMA grant funds into Chabad accounts that were used for purposes other than grant expenses, but does not know if grant funds were actually used for other purposes.  These other accounts were used to pay ordinary expenses of Chabad of California.  He was not involved in applying for grants; David Sternlight and Rabbi Cunin applied for the grants.  He had no discussions with anyone at Yeshiva Ohr concerning the application or management of the grants.  He testified that Rabbi Cunin was the only person to make decisions concerning disbursement of the Yeshiva Ohr grant funds.

　　　6.　　Rabbi Boruch Cunin:

He is the President of Chabad of California.  He agrees there is no legal relationship between Chabad of California and Yeshiva Ohr.  He directed David Sternlight to go to Washington, D.C. to learn about security grants.  He acknowledged that he and Sternlight

-10-　　　　　　No. 2:10-cv-01056-MCE-EFB

prepared the security grant applications for Yeshiva Ohr and the other defendants. He admitted that Homeland Security grant funds were put into the Chabad of California "general pot." He claims he did not read a lot of the documents he signed.

Rabbi Cunin admitted that it was his and Chabad of California's responsibility to apply for the grants, manage the funds, hire vendors and pay the vendors. He stated that even though Rabbi Schochet is a very respected scholar, Rabbi Cunin was aware that Rabbi Schochet had no experience with government grants. It was generally his decision to request particular drawdowns of grant funds. He admitted that it was solely *his* decision as to when and how much to pay Elite.

He also directly admitted that Yeshiva Ohr and the others turned over the grant funds to Chabad of California because they relied on him and Chabad of California to manage the projects. He did not think of having the other defendants pay the vendors directly because *he* was managing the security upgrade projects. He gave directions to Rabbi Yiftach-Hashem and Yoel Edelson as to when to seek drawdowns. **He admitted that ultimately it was always his decision as to if and when vendors were paid**.

Rabb Cunin also admitted that he had an "agreement" with Yeshiva Ohr whereby Chabad of California would apply for the grants and manage all grand funds. All that Yeshiva Ohr had to do was to send the grand funds, when received, to Chabad of California. He could not recall any specific meetings or discussions with Yeshiva Ohr representatives wherein this "agreement" was reached. He does not recall giving Yeshiva Ohr any notice of the April 12, 2010 meeting between Chabad of California and Cal-EMA. He does not recall reaching out to Yeshiva Ohr or any of the other defendants to inform them of the Cal-EMA grant review.

It is undisputed that Cal-EMA did not give Yeshiva Ohr notice of the April 12, 2010 meeting. Accordingly, Yeshiva Ohr did not participate in that meeting or in any other meeting involved in this case.

## II.    Procedural Background

Yeshiva Ohr has filed a Cross-Claim against Chabad of California seeking full

-11-                    No. 2:10-cv-01056-MCE-EFB

1   indemnity for any amounts of damages or penalties for which Yeshiva Ohr may be found liable.

2   Yeshiva Ohr also seeks from Chabad of California full reimbursement of all of its attorneys'

3   fees and costs expended in defending this action.

4   The Cross-Claim contains three separate causes of action against Chabad of California.

5   The first is for Declaratory Relief on the theory of Implied Indemnity of Principal by Agent.

6   Yeshiva Ohr justifiably relied upon the promises and representations of Chabad of California

7   and its representatives.  To the extent they acted as "agent" of Yeshiva Ohr, and with no

8   admission that they were in fact authorized agents of Yeshiva Ohr, if Yeshiva Ohr is found

9   liable due to the wrongful acts of its agent, such agent is obligated to indemnify Yeshiva Ohr to

10  the full extent of its damages.

11  The Second Cause of Action is for Implied Contractual Indemnity.  This theory is based

12  upon the fact that Chabad of California offered to Yeshiva Ohr that it was qualified to obtain

13  and manage the subject grant in compliance with all applicable and state rules and regulations.

14  To the extent Yeshiva Ohr agreed and allowed Chabad of California to proceed on its behalf, an

15  oral contract was made between the two parties with respect to obtaining and managing the

16  grant.  This contract carried with it an implied agreement to indemnify and to discharge

17  foreseeable damages resulting from negligent performance and/or intentional wrongdoing by

18  Cross-Defendant.

19  The Third Cause of Action against Chabad of California is based upon the theory of

20  Comparative Indemnity.  Yeshiva Orh claims, under this theory, that Chabad of California was

21  entirely responsible for any damages that may be assessed against Yeshiva Ohr, through no act

22  of negligence or intentional wrongdoing by Yeshiva Ohr. Accordingly, Chabad of California is

23  obligatged to fully indemnify Yeshiva Ohr for any sums that Yeshiva Ohr may be required to

24  pay.

25  There is substantial case law to support all of Yeshiva Ohr's theories of relief against

    Chabad of California.

26  **III.   Plaintiffs Have No Evidence that Yeshiva Ohr Knowingly Submitted Any**

27

28

**False Claims or Knowingly Avoided Obligations to Re-Pay Grant Money;**

**Yeshiva Ohr Has No Liability for Damages or Penalties Under Any**

**"Agency" Theory and Summary Judgment Will Not Lie**

The plaintiffs herein seek recovery against all defendants under either or all of the following three subsections of 31 U.S.C. §3729, as follows:

1.      <u>31 U.S.C. §3729(a)(1)(A)</u>:

". . . (1) IN GENERAL. –Subject to paragraph (2), any person who—

      (A)      <u>knowingly</u> presents, or causes to be presented, a <u>false or fraudulent claim</u> for payment or approval;

2.      <u>31 U.S.C. §3729(a)(1)(B)</u>:

      "(B)      <u>knowingly</u> makes, uses, or causes to be made or used, a <u>false record or statement</u> material to a <u>false or fraudulent claim</u>;

3.      <u>31 U.S.C. §3729(a)(1)(G)</u>:

      "(G)      <u>knowingly</u> makes, uses, or causes to be made or used, a <u>false record or statement</u> material to an obligation to pay or transmit money or property to the Government, or <u>knowingly conceals</u> or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. [is liable to the Government for certain civil penalties]." (Emphasis added.)

This statute also provides important definitions, as follows:

      <u>31 U.S.C. §3729(b)</u>:

      "(b)      DEFINITIONS—For purposes of this section—

         (1) the terms "<u>knowing</u> and "<u>knowingly</u>" –

            (A) mean that a person, with respect to information—

               (i)      has <u>actual knowledge</u> of the information;

               (ii)     acts in <u>deliberate ignorance of the truth </u>or falsity of the information; or

               (iii)    acts in <u>reckless disregard of the truth</u> or falsity of the

-13-                                    No. 2:10-cv-01056-MCE-EFB

information; and

(B) require no proof of specific intent to defraud;"

(Emphasis added.)

It is readily apparent that Yeshiva Orh cannot be found liable under any of the three code sections relied upon by the government. There are many reasons for this conclusion and the following list is for information only and not intended to be fully inclusive:

1.     The alleged few documents which were arguably signed by "agents" of Yeshiva Ohr were not "false" or "fraudulent" on their face. The government is claiming that what Chabad of California later did, or did not do, with the grant funds is fraudulent.

2.     To the extent the government may be claiming that the documents submitted by Chabad of California were "fraudulent" because Chabad of California had no intent of performing as promised; that level of early intent is something the government may not be able to prove. But, as far as Yeshiva Ohr is concerned, it makes no difference. There is no evidence whatsoever that Yeshiva Ohr **ever** had actual knowledge that anything submitted on its behalf was "false."Nor is there any evidence that Yeshiva Ohr **ever** acted in deliberate ignorance of the truth or falsity of any information arguably submitted on its behalf by Chabad of California. Last, there is not one shred of evidence that Yeshiva Ohr **ever** acted in reckless disregard of the truth or falsity of any documents that may have been submitted to the government on its behalf.

3.     To the extent the government may be claiming that any or all of the documents submitted to the government, including such items as grant assurances and requests for drawdowns, were somehow false or fraudulent on their face(es),again there is no liability on the part of Yeshiva Ohr. There is simply no evidence at all that Yeshiva Ohr knew of the falsity of any documents, or acted in deliberate disregard of the truth or falsity of any documents, or that it acted in reckless disregard of the truth or falsity of any documents.

4.     Yeshiva Ohr was reasonably justified in relying upon the expertise and experience of Chabad of California in applying for, and managing, grant funds. To the extent Chabad of California may have had its own agenda in what it was going to do with the grant

-14-                         No. 2:10-cv-01056-MCE-EFB

YESHIVA OHR ELCHONON CHABAD'S POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1  funds, once obtained, this was totally unknown to Yeshiva Ohr and could not reasonably have

2  been anticipated by Yeshiva Ohr.

3

4       Nor can the government successfully contend that Yeshiva Ohr is somehow liable as

5  "principal" for the acts of Chabad of California, its "designated agent." The law is well

6  established that a principal cannot be held liable for the fraudulent or illegal acts of its agents.

7  For example, see California Civil Code §§ 2339 ("Limitation of Liability") and 2343 (agent is

8  responsible to third persons "When his acts are wrongful in their nature."). In short, a party

9  dealing with an agent cannot hold the principal liable for any act or transaction of the agent not

10  within the scope of his or her actual or apparent authority.

11       In its Points and Authorities, the government cites no cases to support its theory that

12  Yeshiva Ohr "knowingly" violated any of the statutes in issue. Indeed, the government presents

13  no evidence that Yeshiva Ohr did anything wrong at all, other than to authorize Chabad of

14  California to apply a grant for improvement of security at the Yeshiva Ohr premises. Most

15  important, the government cites no case wherein an otherwise innocent principal may be held

16  liable for false claims submitted or other illegal acts of its agent, when such illegal acts were not

17  authorized by the principal. In the subheading in its Points and Authorities entitled "Defendants

18  Acted Knowingly," **no authority at all is presented that would support a grant of summary**

19  **judgment against Yeshiva Ohr on an agency or other theory**. The government presents no

20  facts or case authority to support a claim that Yeshiva Ohr acted "knowingly" or "recklessly" or

21  "with deliberate ignorance of the truth" in submitting claims. Even if for purposes of argument

22  Yeshiva Ohr may be considered a principal, which is not admitted by Yeshiva Ohr, the law in

23  California is clear that while a principal may be liable for the acts and even torts of its agent

24  under certain circumstances, "A principal is responsible for no other wrongs committed by his

25  agent than those mentioned in the last section . . . ." California Civil Code, §2339. In short,

26  unless specifically authorized by a principal, a principal is not liable for illegal acts of its agents

27  or for acts of its agent beyond the scope of the agent's ostensible authority.

-15-                    No. 2:10-cv-01056-MCE-EFB

28

In fact, for argument's sake and without making any admissions as to agency, to the extent Chabad of California and its employees or representatives may be considered "agents" of Yeshiva Ohr, such agents also committed acts that in fraud upon their principal, Yeshiva Ohr. They took action with respect to the grants and payment or non-payment to vendors that was contrary to what they represented to Yeshiva Ohr. Their unauthorized and illegal actions placed Yeshiva Ohr in peril for damages. The law is clear that an agent can never have authority, either actual or ostensible, to do an act which is a fraud upon its principal. See California Civil Code, §2306.

The government, in its Motion for Summary Judgment, for Yeshiva Ohr seems to have completely overlooked the "knowingly" requirements of the statute at issue. **The government presents no facts or case law under which Yeshiva Ohr may be considered to have "knowingly" participated in any of Chabad of California's wrongdoing**. Further, the government has failed to establish a right to summary judgment against Yeshiva Ohr.

## IV.   SUMMARY JUDGMENT MAY NOT BE GRANTED WHERE TRIABLE ISSUES OF MATERIAL FACT EXIST

A.   Applicable Rules. Pursuant to California Code of Civil Procedure § 437c(c), summary judgment may only be granted if the supporting papers are sufficient to sustain a judgment as a matter of law in favor of the moving party and the opposing party has not presented any facts which give rise to a triable issue as to any material fact. Pursuant to that statute and supporting cases, the moving party's affidavits are to be strictly construed and those of the opposing party are liberally construed. Statements of fact contained in the affidavits or declarations in opposition to the motion should be accepted as true, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.

It is well established that Federal Rules on Summary Judgment are much the same as California law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505 (1985); Federal Rules of Civil Procedure, Rule 56, 28 U.S.C. Because summary judgment is a drastic remedy, power given to the Court thereby should be used with caution. Hence, when there is doubt as to

-16-                                      No. 2:10-cv-01056-MCE-EFB

1  the propriety of the motion, courts should, without hesitancy, deny the motion. *Travelers*

2  *Indem. Co., v. McIntosh,* 112 C.A. 2d, 177, 245 P.2d 1065.  Summary judgment is a drastic

3  procedure and should be used with caution so that it does not become a substitute for the open

4  trial method of determining facts. *Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.,* 4 Cal.

5  3d 842, 851-852, 94 Cal. Rptr. 785 (1971); *Joe Schlitz Brewing Co. v. Downey Distributor,* 109

6  Cal. App. 3d 908, 914, 916, 167 Cal. Rptr. 510 (1985).

7       B.      Burden on Moving Party.  It is well established that the moving party bears the

8  burden of furnishing supporting documents which establish that the claims of the opposing party

9  are entirely without merit on any legal theory and must negate all of the opposing party's claims,

10 including claims on which the opposing party has the burden of proof. *Lipson v. Superior*

11 *Court,*  31 Cal.3d 362, 182 Cal.Rptr. 629 (1982); *Miller v. Metzinger,* 91 Cal. App. 3d 31, 42,

12 154 Cal.Rptr. 22 (1979).

13      Any doubt as to whether summary judgment should be granted should be resolved

14 against the moving party. *Snider v. Snider,* 200 Cal.App.2d 741, 19 Cal.Rptr. 709 (1962);

15 *Family Service Agency of Santa Barbara v. Ames,* 166 Cal.App.2d 344, 333 P.2d 142 (1959).

16      In ruling on a summary judgment motion, the Court must consider "all of the evidence

17 and all of the inferences reasonably drawn therefrom (California Code of Civil Procedure

18 §437c(c)), which must be viewed in a light most favorable to the opposing party. *Molko v. Holy*

19 *Spirit Assn.,* 46 Cal.3d 1092, 1107, 252 Cal.Rptr. 2d 122 (1988); *Anderson*, supra, at p. 255;

20 Federal Rules of Civil Procedure, Rule 56(e), 28 U.S.C.

21      To warrant a summary judgment, there must be a failure on the part of defendant to

22 satisfy the Court that there is any basis for his denial or any truth in his defense, and unless the

23 defendant fails to do so, the case should proceed to trial. *Grady v. Easley,* 114 P.2d 635, 45

24 C.A.2d 632 (1941).

25      In this case, it is clear that, as to Yeshiva Ohr, the plaintiffs have failed to satisfy any or

26 all of the above tests as to a grant of summary judgment. All of the statutes in issue require a

27 "knowing" violation of the statutes. That is a determination of fact to be made by the jury, not

-17-                          No. 2:10-cv-01056-MCE-EFB

28

on summary judgment.  Moreover, the plaintiffs have presented no evidence whatsoever to establish that Yeshiva Ohr "knowingly" violated any of the statutes.  All depositions and statements offered by the government confirm that Chabad of California was fully in charge of application for and administration of the grants for Yeshiva Ohr and that Yeshiva Ohr merely turned over the grant funds to Chabad of California, an independent entity.[2]  The government's only case against Yeshiva Ohr rests upon an "agency" theory, and the government has presented no facts or law that would support a grant of summary judgment against a principal where the principal had no knowledge of any wrongdoing and the agent committed illegal acts, outside the scope of his agency.  If any of the parties is entitled to summary judgment, it is Yeshiva Ohr.

## V.     In the Event Yeshiva Ohr is found Liable for the Payment of Damages, Yeshiva Ohr is Entitled to Full Indemnity and Reimbursement from Defendant Chabad of California

The Court is respectfully referred to the discussion in Section II above ("Procedural Background").  If Yeshiva Ohr is found liable for any damages at all, Chabad of California must fully indemnify Yeshiva Ohr for its losses.  Yeshiva Orh is entitled to indemnification under any and all of the three causes of action asserted in its Cross-Claim.  This means that Chabad of California must indemnify Yeshiva Ohr for attorney's fees and costs incurred as well as damages.

## VI.     Conclusion

The plaintiffs have offered no facts or case law in support of their claim that they are entitled to summary judgment against Yeshiva Ohr.  The undisputed facts are to the contrary: Yeshiva Ohr did not knowingly violate any of the statutes charged by the government.  At a minimum, there are triable issues of fact as to the extent of Yeshiva Ohr's involvement in the wrongful actions charged by the government and whether or not Yeshiva Ohr "knowingly"

---

[2] For example, please see Deposition of Rabbi Boruch Cunin ("Cunin"), Vol. 2, p. 144, lines 18-25, attached as Exhibit 12 to the Dorgan Declaration.  Cunin admitted that at all times, he and Chabad of California were solely responsible for application and management of all grant funds.

1  violated any of the statutes.  Related to this is the triable issue of fact of whether or not Yeshiva

2  Ohr was "reckless" in violating the statutes.  These conclusions cannot be reached by the Court

3  as a matter of law.  Plaintiffs' motion for summary judgment, with respect to Yeshiva Ohr, must

4  therefore be denied in its entirety.

5                              Respectfully submitted,

6

7  Dated: July 24, 2014                    DONALD L. SALTZMAN, PLC

8

9                                    By: _____

10                                         Donald L. Saltzman
                                          Attorneys for Defendant and Cross-Claimant,
11                                         Yeshiva Ohr Elchonon Chabad

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              -19-                    No. 2:10-cv-01056-MCE-EFB