LAW OFFICES OF MARK J. WERKSMAN
Mark J. Werksman, Esq. (CA SBN 120767)
Mark M. Hathaway, Esq.  (CA SBN 151332;
NY SBN 2431682; DC SBN 437335)
Emmanuelle Subar Esq. (CA SBN 287497)
    888 West Sixth Street, Fourth Floor
    Los Angeles, California  90017
    Telephone: (213) 688-0460
    Facsimile: (213) 624-1942
    E-Mail: mhathaway@werksmanlaw.com

Attorneys for defendant Chabad of California

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ARIA KOZAK and DONNA KOZAK,<br><br>            Plaintiff<br><br>v.<br><br>CHABAD-LUBAVITCH INC.; CHABAD OF CALIFORNIA; CHABAD RUNNING SPRINGS RESIDENTIAL CAMP; CHABAD CHEDER MENACHEM; YESHIVA OHR ELCHONON CHABAD; BAIS CHANA HIGH SCHOOL; CHABAD OF MARINA; and BAIS CHAYA MUSHKA,<br><br>            Defendants | Case No.  10-CV-01056-MCE-EFB<br><br>OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF CHABAD OF CALIFORNIA<br><br>[Fed. R. Civ. P. 56; Local Rule 260]<br><br>Date: August 21, 2014<br>Time: 2:00 p.m.<br>Courtroom: 7<br>Judge: Hon. Morrison C. England, Jr.<br>Trial: January 5, 2015 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

      PLEASE TAKE NOTICE that defendant Chabad of California hereby submits it Memorandum of Points and Authorities in opposition to the Motion for Summary Judgment ("MSJ") brought by Plaintiffs UNITED STATES OF

AMERICA ("U.S.") ex rel. ARIA KOZAK and DONNA KOZAK (collectively "Plaintiffs").

LAW OFFICES OF MARK J. WERKSMAN

Dated: July 24, 2014

_____
Mark J. Werksman
Mark M. Hathaway
Emmanuelle Subar
Attorney for Defendant Plaintiff

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . 6
I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.    Chabad of California and Homeland Security Grants.. . . . . . . . . . . . 7
      B.    Grant Advances and Financial Management Standards.. . . . . . . . . . 7
III.    PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
IV.    SUMMARY JUDGMENT STANDARD.. . . . . . . . . . . . . . . . . . . . . . . . . 12
V.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      A.    Burden Not Met for 31 U.S.C. § 3279(a)(1)(A) Nor (B).. . . . . . . . . 14
          1.    *The Grant Assurances and Drawdown Requests*.. . . . . . . . . . . 14
      B.    Burden Not Met for Liability under 31 U.S.C. § 3729(a)(1)(g). . . . . 17
          1.    *No Concealment of Obligation to Repay Grant Funds.*. . . . . . 17
VI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Incorporated., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cummings v. Fire Insurance Exchange, 202 Cal.App.3d 1407 (1988). . . . . . . . . . 16

Hooper v. Lockheed Martin Corp., 688 F.3d 1037 (9th Cir. 2012). . . . . . . . . . 14, 16

International Shortstop Incorporated v. Rally's Incorporated, 939 F.2d 1257 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kennedy v. Silas Mason Company, 334 U.S. 249, 68 Southern Ct. 1031, 92 L. Ed. 1347 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Matsushita Elec. Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 106 Southern Ct. 1348, 89 L. Ed. 2d 538 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . 13

Pylant v. Hartford Life and Accident Insurance Company, 497 F.3d 536 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Q International Courier, Inc., 131 F.3d 770 (8th Cir. 1997). . . . . 17

Smith v. Selma Community Hospital, 188 Cal.App.4th 1 (2010). . . . . . . . . . . . . . 16

Stults v. Conoco, 76 F.3d 651 (5th Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. ex rel. Bain v. Georgia Gulf Corp., 386 F.3d 648 (5th Cir. 2004). . . . . . . . . . 17

U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166 (9th Cir. 2006). . . . 16

U.S. ex rel. Yannacopoulos v. General Dynamics, 636 F. Supp. 2d 739 (N.D. Ill. 2009) aff'd, 652 F.3d 818 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

31 U.S.C. § 3279(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

31 U.S.C. § 3729(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

31 U.S.C. § 3729(a)(1)(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 17

31 U.S.C. § 3729(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

31 U.S.C. § 3730(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

The United States claims entitlement to summary judgment of $1,035,195, plus civil penalties, against three affiliated non-profit Jewish community organizations, which the United States determined were at high risk of terrorist attack, for the non-profits' handling of $345,056 in Homeland Security grants to install security systems at the non-profits' community facilities. The security systems were actually installed four years ago and, of the $345,056 in grant advances, $136,920 for security installations at facilities that were no longer used by the non-profits, was not disputed and has been tendered to the United States. The balance of $208,136, for security systems actually installed, was settled with the vendor (and the vendor's assignee) for $232,137 through state court litigation three years ago, bringing Chabad's payments to date to $369,057, in excess of the original grants at issue.

Essentially, the United States demands $1,035,195, plus civil penalties, because the $208,136 owed the vendor (or the vendor's assignee) for the installation of the security systems, was not timely paid and disputed among the non-profits, the vendor, and the vendor's factor, which dispute was settled through state court litigation with payment from Chabad of $232,137 long before the United State intervened in the *qui tam* action, brought by the vendor.

Triable issues of disputed fact remain regarding whether Chabad maintained or demonstrated the willingness to maintain the requisite written accounting procedures and financial management standards; whether Chabad knowingly misrepresents that it maintained or demonstrated the willingness to maintain the requisite written accounting procedures and financial management standards; and whether Chabad ever knowingly concealed an obligation to repay any grant advances.

## II.  STATEMENT OF FACTS

### A.  Chabad of California and Homeland Security Grants.

The Department of Homeland Security ("DHS") Nonprofit Security Grant Program ("NSG Program") was designed to assist non-profit organizations that are at high risk of terrorist attack and to fund target-hardening and security installation projects at their facilities.

That Chabad and other Jewish community organizations are targets of terrorism cannot be disputed; Jews and non-Jews alike have been killed in attacks on Jewish community centers in the United States and abroad.

Chabad of California is part of the Chabad-Lubavitch movement, a branch of Hasidic and Orthodox Judaism, whose system of Jewish religious philosophy, the deepest dimension of G-d's Torah, teaches understanding and recognition of the Creator, the role and purpose of creation, and the importance and unique mission of each creature.  Chabad-Lubavitch includes a network of over 3,600 institutions in over 1,000 cities, spanning 70 countries. Chabad institutions provide religious, cultural and educational activities at Chabad run community centers, synagogues, schools and camps.  Chabad of California, and the other remaining defendants, are independent entities financed by voluntary contributions.  The Homeland Security grant program allowed the Chabad entities to install security systems to better protect the people in their facilities.

Chabad of California ("Chabad") president Rabbi Boruch Shlomo Cunin ("Rabbi Cunin") testified at his deposition, "The reason for the application of the grants was to partner with the federal and state entities to assure safety of all of God's children in every one of the places they go to, so nobody ever should harm them." (Exhibit 67 45:11-14.)

### B.  Grant Advances and Financial Management Standards.

The United State's discussion of financial management standards is not

entirely complete. United States Memorandum, p. 3. As the Homeland Security grant program administrator, California Emergency Management Agency ("Cal EMA") could either reimburse grant subrecipient Chabad for security installations costs that had been advanced to a vendor by Chabad, or advance grant funds to Chabad for security program expenses that had been incurred, but not yet paid to the vendor.  With respect to the grant advances, Cal EMA instructed Chabad to identify the funds advanced against costs that had been incurred, but not yet paid to the vendor, as "expended."  (SSUF no. 72; Exhibit 58, p. 2.)

Under 28 CFR § 70 (d) "Advance means a payment made by Treasury check or other appropriate payment mechanism to a recipient upon its request either before *outlays* are made by the recipient or through the use of predetermined payment schedules." (Emphasis added.) 28 CFR § 70.22 (b) provides that "Recipients may be paid in advance, provided they *maintain or demonstrate the willingness to maintain* written procedures that minimize the time elapsing between the transfer of funds and disbursement by the recipient, and financial management systems that meet the standards for fund control and accountability as established in § 70.21." (Emphasis added.)  In turn, 28 CFR § 70.21 states that the recipient's financial management systems must provide certain capabilities, including "(1) Accurate, current and complete disclosure of the financial results of each Federally-sponsored project or program in accordance with the reporting requirements set forth in § 70.52."  In turn, 28 CFR § 70.52 states in relevant part that, " (2)  Records that identify adequately the source and application of funds for Federally-sponsored activities. These records must contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, outlays, income and interest.  (3)  Effective control over and accountability for all funds, property and other assets. Recipients must adequately safeguard all such assets and assure they are used solely for authorized purposes."  OMB Circular A-110 includes some of these same requirements and guidance, and states further:

(u) *Outlays or expenditures* means charges made to the project or program. They may be reported on a cash or accrual basis. For reports prepared on a cash basis, outlays are the sum of cash disbursements for direct charges for goods and services, the amount of indirect expense charged, the value of third party in-kind contributions applied and the amount of cash advances and payments made to subrecipients. <u>For reports prepared on an accrual basis, outlays are the sum of cash disbursements for direct charges for goods and services, the amount of indirect expense incurred, the value of in-kind contributions applied, and the net increase (or decrease) in the amounts owed by the recipient for goods and other property received, for services performed by employees, contractors, subrecipients and other payees and other amounts becoming owed under programs for which no current services or performance are required.</u>   Exhibit 56, p. 3 (underline supplied).

In this case, Chabad of California maintained or demonstrated the willingness to maintain written procedures required by the NSG Program and reported security installation outlays and expenditures to Cal EMA on an accrual basis, per OMB Circular A-110, 28 CFR §§ 70 et sec, and as instructed by Cal EMA. SSUF no. 73; Exh 56, 57. [All references to SSUF's refer to Chabad SSUFs, Doc. 78-2 and Chabad's separate statement in opposition.]

### C.   No Misappropriation.

After meeting the eligibility requirements, Chabad was approved for grant funds under the NSG Program.  At the time the grant funds were received, Chabad commenced installations of security measures, as intended under the NSG Program.  As allowed by the financial management standards, Chabad accounted for the funds using the accrual method, a generally accepted accounting standard and Chabad recognized the grant funds upon receipt.

In applying for the grants, Chabad contracted with Elite Interactive Solutions, Inc. ("Elite") to install security upgrades.  Elite is owned and operated by the Relators Aria and Kozak.  Decl. Donna Kozak; Doc. 80-2.  After applying for the NSG Program grants, Chabad had to wait about a year to receive the grant funding.

Chabad SSUF no. 1, 3, 25, and 26.

Neither Chabad nor Elite had funds to finance the installation of the security upgrades on their own. As a result, Elite sold their contract for services to a factor, Transaction Funding, Inc., which in turn sold its interests to Continental Business Credit, Inc. ("Continental"). Decl. Donna Kozak; Doc. 80-2. As President of Chabad, Rabbi Cunin determined when to request drawdowns, when to pay vendors, and how to manage grant advances. SSUF no. 18. Following disputes over the installation and vendor payments, Continental brought suit against the Chabad entities and Elite, which the parties ultimately settled with Chabad paying $102,000 to Elite and $130,137 to Continental. The plaintiff's in the court case filed a Notice of Settlement in February 2011. SSUF nos. 40, 76-81.

When Chabad received the grant funds from Cal EMA, the funds were deposited into checking accounts with Comerica Bank, bearing an account number ending in either 3744 ("Account 3744") or 4361 ("Account 4361"). SSUF nos. 26, 26, 52. The financial management standards state that federal awarding agencies shall "not require separate depository accounts for funds provided to a recipient or establish any eligibility requirements for depositories for funds provided to the recipient" and that recipients shall "maintain advances of Federal funds in interest bearing accounts," unless the recipient "receives less than $120,000 per year." OMB Circular A-110, Exhibit 55, p. 6. The analysis performed by economist Eric Volk, M.A. to trace each "net grant advance," analyzes only bank accounts on a cash basis, not the assets and liabilities of Chabad on an accrual basis. Volk Report, Exhibit 47. There is no showing, for instance, that, although Chabad does not maintain significant cash balances, none of the substantial funds deposited over the time period were not available to pay Elite. *Id.*

In seeking summary judgment, the United States appears to impose a condition on Chabad that does not exist in the rules and regulations, and that would effectively make the non-profit entity the fiduciary of the United States for the

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

benefit of the third-party vendor.  United States Memorandum 7:10-18.  This seems to substitute the United States' interest in anti-terrorism and the installation of the security program at high risk non-profit community facilities for an interest in payment of the vendor, or the vendor's assignee, when the cost for security installation work had been incurred, but payment was in dispute.  SSUF nos. 40, 76-81.

III.  PROCEDURAL HISTORY

In mid-2008, Chabad, and Yeshiva Ohr, Chabad of Marina, and Bais Chana, submitted applications to Cal EMA for five NSG Program grants to pay the costs of installing security upgrades at their various facilities. Chabad applied for two grants, one for security improvements at its main office on Gayley Avenue (the "Gayley Grant") and another for improvements at a property in Running Springs, California (the "Running Springs Grant").  SSUF Nos. 1-6.

From May 2009 continuing through November 2009, the defendants submitted five separate grant assurances seeking drawdowns of NSG Program funds for the various projects.  SSUF Nos. 19-23; Yeshiva Ohr SSUF No. 9; Marina SSUF No. 8.  Of the total grant funds collected by Chabad, over $320,000 was to pay Elite for the installation of video surveillance equipment at their facilities. SSUF Nos. 19-23.

On February 15, 2010, Continental Business Credit Inc. sued the Chabad entities and Elite for, *inter alia,* breach of contract.  SSUF no. 40.

On April 23, 2010, Cal EMA advised Chabad a review of the Running Springs Grant, the Gayley Grant, and other grants.  SSUF No. 66.

On April 30, 2010, Relators Aria and Donna Kozak, the principals of Elite filed this *qui tam* action, under seal, pursuant to 31 U.S.C. § 3730(b) (2).  Doc. 1.

On June 1, 2010, Chabad presented its 175-page response from Chaim Levin Aaron Levin, CPA to Cal EMA's April 23, 2010 audit request. SSUF No. 67;

11
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Exhibit 41.

On May 11, 2010, Elite filed a cross-complaint against the Chabad entities in the state court action. Exhibit E.

On November 1, 2010, Cal EMA wrote to Dr. Sternlight stating that an invoice would be forwarded to Chabad for repayment of $612,066 in grant funds. SSUF No. 68; Exhibit 53.

On February 17, 2011, Continental Business Credit Inc., the Relators, and the Chbad entities settled their claims in the state case. SSUF nos. 40, 76-81.

On May 2, 2011, Cal EMA wrote again to Dr. Sternlight stating that an invoice would be forwarded to Chabad for repayment of $598,118.17 in grant funds. SSUF No. 69; Exhibit 54.

The United States presents no evidence that Cal EMA ever issued an invoice to Chabad for repayment of grant funds. SSUF nos. 74, 75.

On October 9, 2012, the United States filed, under seal, its election to intervene in this *qui tam* action. Docket 27.

On December 5, 2012, the United States filed its First Amended Complaint ("FAC") and Chabad was first alerted to the false claim allegation, two years after the security installations were undertaken and a year after settling all claims with the Relators and the factor, Continental Business Credit, Inc.

IV. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of establishing the basis for its motion, and identifying those portions "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996).

Thereafter, the non-moving party must produce evidence sufficient to establish a genuine unresolved material issue of material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S. Ct. 1348, 1353, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 106 S. Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). A court should not grant summary judgment unless the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Finally, the Court is not required to grant summary judgment even when it appears that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56 advisory committee's note on 2007 amendments (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-57, 68 S. Ct. 1031, 1032, 92 L. Ed. 1347 (1948)) ("It is established that although there is no discretion to enter summary judgment when there is a genuine issue of material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact.").

V. ARGUMENT

The False Claims Act ("FCA") imposes liability for defrauding the United States through the submission of false claims seeking receipt of federal funds. 31 U.S.C. § 3729(a)(1)(A)-(B). Additionally, the FCA imposes liability for knowingly concealing or knowingly and improperly avoiding an obligation to repay funds to the United States. 31 U.S.C. § 3729(a)(1)(G). The FCA is designed to combat

government fraud and corruption, not recover treble damages from non-profits that are targets of terrorism where the security installations were completed and have been paid for.

### A. Burden Not Met for 31 U.S.C. § 3279(a)(1)(A) Nor (B).

For summary judgement under 31 U.S.C. § 3729(a)(1)(A), the United States must show no triable issues of fact for the following four elements: "(1) a false or fraudulent claim (2) that was material to the decision-making process, (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). The United States must establish that Chabad acted with "the intent to deceive." *Id.*, at 1049. Similarly, 31 U.S.C. § 3729(a)(1)(B) requires a showing of no triable issue of fact that "defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." *Id.*, at 1047.

#### 1. *The Grant Assurances and Drawdown Requests*.

As the false or fraudulent claim, the United States points to the "Grant Assurances" signed during the grant application process in April 2008 and August 2008 and the drawdown requests signed a year later in May and July 2009. (Exhibits 28, 29, 36, 37.) By executing the Grant Assurances and drawdowns, the defendants agreed to be bound by and comply with the terms of the enumerated guidelines and regulations, including that Chabad "*maintain or demonstrate the willingness to maintain* written procedures that minimize the time elapsing between the transfer of funds and disbursement by the recipient, and financial management systems that meet the standards for fund control and accountability as established in § 70.21." 28 CFR § 70.22 (b) (emphasis added).

Here, numerous uncontested facts show triable issues as to whether Chabad

maintained, or at least demonstrated a willingness to maintain accountable financial management systems: Chabad hired Dr. Sternlight to assist with the grants. SSUF no. 59.  Chabad sent Dr. Sternlight to Washington DC for training.  SSUF 60. Chabad had a certified public accountant assisting with grant reporting. SSUF 73. Chabad responded to Cal EMA's document requests with 175 pages of records. SSUF 67; Exhibit 41.  Chabad accounted for the grant funds on an accrual basis. SSUF 73. Chabad deposited all grant funds in it bank accounts, where the funds could be tracked.  SSUF nos. 26, 26, 52.  Chabad complied with Cal EMA's instruction to records grant advances as "Expended." SSUF 72.  Chabad's accrual accounting conformed to OMB Circular A-110.  Exhibit 56.  Chabad ultimately resolve the payments to the vendor.  SSUF 40, 76-81.

       Chabad does not contest here that the Grant Assurances and drawdown requests were material to the decision-making process and were to be presented to the United States for payment or approval.

       As to knowledge that the claim was false or fraudulent, the same uncontested facts show no knowledge by Chabad that they did not maintained, or at least demonstrated a willingness to maintain, accountable financial management systems: Chabad hired Dr. Sternlight to assist with the grants. SSUF no. 59.  Chabad sent Dr. Sternlight to Washington DC for training.  SSUF 60.  Chabad had a certified public accountant assisting with grant reporting. SSUF 73.  Chabad responded to Cal EMA's document requests with 175 pages of records.  SSUF 67; Exhibit 41. Chabad accounted for the grant funds on an accrual basis.  SSUF 73. Chabad deposited all grant funds in it bank accounts, where the funds could be tracked. SSUF nos. 26, 26, 52.  Chabad complied with Cal EMA's instruction to records grant advances as "Expended." SSUF 72.  Chabad's accrual accounting conformed to OMB Circular A-110.  Exhibit 56.  Chabad ultimately resolve the payments to the vendor.  SSUF 40, 76-81.

       The United States focuses on circumstantial evidence of Chabad's failure to

pay the vendor to show Chabad's state of mind at the time of the grant applications in 2008 and the drawdown requests in 2009, which is a "quintessential question of fact" that should be resolved by a jury. *Smith v. Selma Cmty. Hosp.*, 188 Cal.App.4th 1, 36 (2010) (inquiry into state of mind poses a question of fact); *Cummings v. Fire Ins. Exch.*, 202 Cal.App.3d 1407, 1417 (1988) (knowledge of falsity "is a question of fact."); *Int'l Shortstop Inc. v. Rally's Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) (discussing scienter element in Federal False Claims Act: "we have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment").

As such, "there is a genuine issue of material fact whether [Chabad] acted either knowingly, in deliberate ignorance of the truth, or in reckless disregard of the truth" when submitting grant funds requests which all relate to a question of fact and are not "well-suited" for summary judgment. *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1049-50 (9th Cir. 2012). Mere negligence or innocent mistake is insufficient to satisfy the standards for knowledge. *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir.1991).

Under the FCA, Courts emphasize the central importance of the scienter element, "holding that false claims must in fact be" false when made and the information or statement "must be an intentional, palpable lie." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006). The Court further notes that "some request for payment containing falsities made with scienter (i.e., with knowledge of the falsity and with intent to deceive) must exist...In short, we made clear that a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006).

Given that Chabad's allegedly false statements reflect assertions of judgement or opinion, – "maintain or demonstrate willingness to maintain" – rather than fact, they may not be false; thus, the United States cannot show false claim liability as a

matter of law. *United States ex rel. Boisjoly v. Morton Thiokol, Inc*., 706 F.Supp 795, 810 (D. Utah 1988).

### B. Burden Not Met for Liability under 31 U.S.C. § 3729(a)(1)(g)

#### 1. *No Concealment of Obligation to Repay Grant Funds*.

The United States claims that the Chabad was overpaid by "the amount it received but failed to disburse to vendor Elite by March 31, 2010, or 90 days following the December 31, 2009 grant performance period," citing 28 CFR § 70.71 subd. (b), (d).  United States Memorandum 18:27-1.

True, 28 CFR § 70.71(b) does state, "Unless the Department authorizes an extension, a recipient must liquidate all obligations incurred under the award not later than ninety calendar days after the funding period or the date of completion as specified in the terms and conditions of the award or in agency implementing instructions."  However, 28 CFR § 70.71(d) provides the remedy: "The recipient must promptly refund any balances of *unobligated* cash that the Department has advanced or paid and that is not authorized to be retained by the recipient for use in other projects. OMB Circular A–129 governs unreturned amounts that become delinquent debts." (emphasis provided).

As shown by the undisputed facts, other than the $136,920 tendered to the United States, there was no *unobligated* cash; the balance of the funds were fully obligated and eventually paid to vendor Elite and Continental Business, Inc.  SSUF nos. 40, 76-81.

An "obligation" is defined to include a duty to pay the government arising "from the retention of any overpayment." 31 U.S.C. §3729(b)(3). *U.S. ex rel. Bain v. Georgia Gulf Corp*., 386 F.3d 648, 652-53 (5th Cir. 2004). "A defendant must have had a present duty....the duty, in other words, must have been an obligation in the nature of those that gave rise to actions of debt at common law for money or things owed." *United States v. Q Int'l Courier, Inc*., 131 F.3d 770, 773 (8th Cir.

1997).  In this case, Chabad acknowledged the deobligation of funds in the amount of $136,920, which have now been tendered to the United States and all other funds were obligated as of the expiration of the performance period.  SSUF nos. 40, 71, 76-81.

"To recover under the False Claims Act...the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the False Claims Act, a defendant must have a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of the indebtedness. The duty, in other words, must have been an obligation in the nature of those that gave rise to actions of debt at common law for money or things owed...The deliberate use of the certain, indicative, past tense suggests that Congress intended the reverse false claims provision to apply only to existing legal duties to pay or deliver property." *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 636 F. Supp. 2d 739, 750-51 (N.D. Ill. 2009) aff'd, 652 F.3d 818 (7th Cir. 2011).

The United States points to no undisputed fact that defendants concealed any overpayment.  When Cal EMA sought an audit, Chabad responded with 175 pages of records detailing their accounting of the funds.  The United States doesn't even use the word "false" in their entire Statement of Uncontested Facts.  And in over 1,000 pages of exhibits, the United States doesn't identify any false or untrue statement, other than the general certification in the grant assurances and drawdowns "to maintain or demonstrate willingness to maintain" financial management standards.  The remedy for non-compliance, if there was non-compliance, is set forth in OMB Circular A-110 and OMB Circular A–129, which govern unreturned amounts that become delinquent debts, not strict liability under the False Claim Act.

VI. CONCLUSION

For the reasons set forth above, Chabad of California respectfully requests that Chabad be allowed its day in court, that the Court deny the United States' motion for summary judgment, and permit the matter to proceed to jury trial.

LAW OFFICES OF MARK J. WERKSMAN

Dated: July 24, 2014

Mark J. Werksman
Mark M. Hathaway
Emmanuelle Subar
Attorney for Defendant
CHABAD OF CALIFORNIA