1  Donald L. Saltzman, State Bar No. 54483
   Professional Law Corporation
   10537 Butterfield Road
2  Los Angeles, California 90064
   Telephone: (310) 617-3073
3  Facsimile: (310) 836-8944
   dlslawcorp@aol.com
4
   Attorneys for Defendant
5  YESHIVA OHR
   ELCHONON CHABAD
6

7
                    **IN THE UNITED STATES DISTRICT COURT**
8
                     **EASTERN DISTRICT OF CALIFORNIA**
9

10
   UNITED STATES OF AMERICA *ex rel.*       Case No. 2:10-cv-01056-MCE-EFB
11 ARIA KOZAK AND DONNA KOZAK,

12
                    Plaintiff,
13
         vs.
14
   CHABAD-LUBAVITCH INC.; CHABAD OF         **TRIAL BRIEF OF DEFENDANT AND**
15 CALIFORNIA; CHABAD RUNNING               **CROSS-CLAIMANT YESHIVA OHR**
   SPRINGS RESIDENTIAL CAMP; CHABAD         **ELCHONON CHABAD**
16 CHEDER MENACHEM; YESHIVA OHR
   ELCHONON CHABAD; BAIS CHANA
17 HIGH SCHOOL; CHABAD OF MARINA;
   and BAIS CHAYA MUSHKA,
18

19                  Defendants.

20 ────────────────────────────────
   YESHIVA OHR ELCHONON CHABAD,
21
                    Cross-Claimant,
22                                           Trial Date:   January 20, 2015
         vs.                                 Time:         29:00 A.M.
23                                           Courtroom:    7
   CHABAD OF CALIFORNIA,                     Judge:        Hon. Morrison C. England, Jr.
24
                    Cross-Defendant.
25

26 ────────────────────────────────

27
                                                            No. 2:10-cv-01056-MCE-EFB
28 ────────────────────────────────
           TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMAINT
                  YESHIVA OHR ELCHONON CHABAD

# TABLE OF CONTENTS

I.   Introduction and Factual Background as to Yeshiva Ohr. . . . . . . . . . . . . . . .  1

   A.   Broad Overview:  The Government is Spending Hundreds
of Thousands of Dollars Prosecuting Yeshiva Ohr Over a
Claim of $750 in Unreturned Grant Funds. . . . . . . . . . . . . . . . . . . . . . .  1

   B.   Summary of Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  The Government's Entire Case Against Yeshiva Ohr is Based Upon a
few Early Signatures on Documents by Yeshiva Ohr; Under No Theory
Will Those Signatures Establish a Knowing or Reckless Violation
of Any Statute by Yeshiva Ohr . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.   It is Undisputed That there is No Evidence that Any Officer
or Employee of Yeshiva Ohr Knowingly Violated Any
Statute in Issue in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B.   Witness Testimony At Trial Will Fully Support a Finding
That Yeshiva Ohr Had No Knowledge of Any Wrongdoing. . . . . . . . . . 10

   C.   The Government's Anticipated Reliance Upon So-Called
"Admissions" by Yeshiva Ohr is Misplaced. . . . . . . . . . . . . . . . . . . . . .  11

III. There is No Evidence that Yeshiva Ohr Knowingly Submitted Any
False Claims or Knowingly Avoided Obligations to Re-Pay Grant
Money; Yeshiva Ohr has No Liability for Damages or Penalties
Under Any "Agency" Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.  Yeshiva Ohr Will Prevail Against Chabad of California on its
Cross-Claim for Indemnity and Other Relief . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1    **TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT**

2    **YESHIVA OHR ELCHONON CHABAD**

3

4    I.    **Introduction and Factual Background as to Yeshiva Ohr**

5        A.    Broad Overview:  The Government is Spending Hundreds of

6             Thousands of Dollars Prosecuting Yeshiva Ohr Over a

7             Claim of $750 in Unreturned Grant Funds

8        The Government and the Relators are fully aware that Defendant and Cross-Complainant

9    Yeshiva Ohr Elchonon Chabad ("Yeshiva Ohr") is an innocent bystander to this action and

10   bears no liability whatsoever to the Plaintiffs.  Indeed, the Plaintiffs are fully aware that the

11   worst "offense" of which Yeshiva Ohr may be charged is that it inadvertently forgot to turn over

12   to Chabad of California, for management and payment to vendors, $750 of the $72,750 in grant

13   funds it received from Cal EMA.  Likewise, Yeshiva Ohr representatives will testify at trial that

14   had the government simply called Yeshiva Ohr and explained why it wanted a return of $750 in

15   grant funds, it would have voluntarily done so.  This extremely costly and time-consuming

16   litigation by the government against Yeshiva Ohr has all the earmarks of abuse of process or, at

17   worst, malicious prosecution.

18       A quick review of portions of the "Joint Final Pretrial Statement" ("JFPS") filed by the

19   parties herein, fully supports Yeshiva Ohr's claims.  In summary form, it is undisputed that

20   Yeshiva Ohr received $72,750 in grant funds to improve security at its premises (JFPS

21   paragraph 3.C).  It is undisputed that Yeshiva Ohr had an agreement with defendant Chabad of

22   California ("Chabad") whereby: "(1) Chabad would have sole responsibility for selecting,

23   supervising and paying vendors hired to perform the security improvements; (2) Chabad would

24   direct the timing of all drawdown requests against the grants; and (3) all funds received by

25   Yeshiva Ohr through the drawdown requests would be transferred to, and held and managed by,

26   Chabad."  (Exhibit A to JFPS, paragraph 18.)  Furthermore, Yeshiva Ohr will offer

27   

28

-0-                    No. 2:10-cv-01056-MCE-EFB

uncontroverted evidence at trial that it had no prior experience in applying for or administering government grants and that it justifiably relied upon Chabad and its agents to apply for the grant and to administer the grant in full conformity with all applicable Federal and State statutes, rules and regulations.

It is also undisputed that: "For all of the grants in issue, Rabbi Cunin, Chabad's President, was the individual *solely* responsible for determining when to seek a grant drawdown, when to pay vendors, and how to manage advances." (Exhibit A to JFPS, paragraph 19; emphasis added.) We must also add to the undisputed column the following: (1) that Cal EMA received a drawdown request of $72,750 from the Yeshiva Ohr Grant (Exhibit A to JFPS, paragraph 21; (2) that after receiving the $72,750 grant from Cal EMA, "*Yeshiva Ohr transferred $72,000 of the grant funds to Chabad in two installments of $40,000 and $32,000, respectively.*" (Exhibit A to JFPS, paragraph 28.) Yeshiva Ohr admits that it "retained and never expended $750 of its receipts from the Yeshiva Ohr Grant." (Exhibit A to JFPS, paragraph 30.) As discussed below, the plaintiffs in this action have not taken the depositions of any officers or employees of Yeshiva Ohr. Yeshiva Ohr submits that it will offer uncontroverted testimony at trial that its retention of said $750 was solely through inadvertence or oversight. Yeshiva Ohr has offered to return the $750 to the government.

Of great importance is that the government is not claiming that some or none of the funds earmarked for the contractor at Yeshiva Ohr (i.e., "Elite") never received payment. *To the contrary, the government admits that Elite received full payment of $72,000 for services rendered at Yeshiva Ohr, before this lawsuit was filed*! Please see paragraph 3.C of the JFPS, wherein it is stipulated that $50,000 of the Yeshiva Ohr grant was "Timely" paid to vendor (i.e., to Elite). Paragraph 3.C also reflects that $22,000 of the grant advances were retained by Chabad. The vendors were thereafter forced to file a state complaint against Chabad for unpaid grant advances. The government admits that as part of settlement of this suit, Chabad commencing in February, 2011 paid to Elite, in connection with its work at the Yeshiva Ohr

-1-                           No. 2:10-cv-01056-MCE-EFB

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD

1  school, the full remaining amount of its claims, i.e., $22,000.  (Exhibit A to JFPS, paragraph

2  48.)  Chabad made the final payment to Elite on or about December 15, 2011.  (Exhibit A to

3  JFPS, paragraph 62.)  Of the entire Yeshiva Ohr grant, the only amount remaining

4  "unreimbursed" to the government was the sum of $750.  With respect to Yeshiva Ohr, the

5  present action appears to be a monumental waste of time and money by both sides.

6       B.  Summary of Factual Background

7     Yeshiva Ohr is a small religious school with its principal place of business located 7215

8  Waring Avenue, Los Angeles, California 90046.  Its two principal managers and educators are

9  Rabbi Ezra Schochet and Rabbi Mendel Spalter.  Both are respected scholars and teachers in the

10  community.  It will be uncontradicted at trial that Yeshiva Ohr had no prior experience with

11  government grants.

12     Defendant and Cross-Defendant Chabad of California ("Chabad of California" or

13  "Chabad" herein) is a corporation with its principal office located at 741 Gayley Avenue, Los

14  Angeles, California.  It is undisputed that "At all times relevant, Yeshiva Ohr was a separate

15  legal entity from Chabad of California and was located at premises separate from Chabad of

16  California."  (Exhibit A to JFPS, paragraph 60.)

17     Representatives of Yeshiva Ohr will offer uncontroverted testimony at trial that some

18  point in time prior to August 25, 2008, a representative or representatives of Chabad of

19  California approached representatives of Yeshiva Ohr and offered to Yeshiva Ohr that Chabad

20  of California could and would apply to the Office of Homeland Security to obtain a grant for

21  improvements in the physical security at the Yeshiva Ohr school.  Chabad of California

22  represented to Yeshiva Ohr that it was making similar applications to the Office of Homeland

23  Security for a number of Chabad organizations with which it was affiliated.  Chabad of

24  California also represented and promised to Yeshiva Ohr that Chabad of California had

25  personnel in place who were experienced in the matters of obtaining grants from the Office of

26  Homeland Security and that Chabad would handle all aspects of the application for and

27             -2-    No. 2:10-cv-01056-MCE-EFB

     TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
         YESHIVA OHR ELCHONON CHABAD

28

1  administration of the grant funds in compliance with all applicable federal and state rules and

2  regulations.  Yeshiva Ohr represented that it had no experience with respect to the application

3  for grants and would be relying entirely upon Chabad.  All of this anticipated testimony has

4  been fully supported by the testimony of every witness who has been deposed in this case.

5      Based upon Chabad of California's representations and promises to Yeshiva Ohr,

6  Yeshiva Ohr authorized Chabad of California to proceed with obtaining and administering the

7  grant in issue.  Again, none of these facts are disputed by the plaintiffs.  Yeshiva Ohr reasonably

8  relied upon the representations and promises made to it by Chabad of California.

9      As soon as the grants were received, Yeshiva Ohr immediately turned over the grant

10  funds to Chabad of California (except the sum of $750 through oversight or inadvertence).  It is

11  uncontroverted that Yeshiva Ohr had no influence or authority over Chabad as to how the grant

12  funds would be spent.  Please see Exhibit A to NSPF, paragraph 16, wherein it is stipulated by

13  the parties:  "For all of the grants in issue, Rabbi Cunin, Chabad's President, was the individual

14  solely responsible for determining when to seek a grant drawdown, when to pay vendors, and

15  how to manage advances."

16      Yeshiva Ohr has filed a Cross-Claim against Chabad of California for complete

17  indemnity.  Attached as "Exhibit 1" to Yeshiva Ohr's Cross-Claim is a letter dated June 1, 2010

18  to the California SAA (Cal EMA) from Chabad of California's accountant, Chaim Aaron Levin

19  (Plaintiff's Ex. number 41).  Yeshiva Ohr is not a signatory to this letter.  This letter is

20  referenced in paragraph number 35 of the First Amended Complaint.  Among other things, in

21  that letter Cross-Defendant Chabad of California specifically admitted that entities such as

22  Yeshiva Ohr *totally* relied upon Chabad of California to properly apply for and administer the

23  grant funds:

24      "[S]everal of the entities relied on the expertise and experience of the procurement

25      personnel employed by Chabad of California to select and manage the vendors grants.

26      The Chabad of California personnel have broad expertise in construction management;

27  

28

examples including . . . .

To build up the purchasing power of all the entities, the other entities paid or transferred the grant proceeds to Chabad of California. . . . **Thus you may see that an outside vendor may consider that there is an open balance to their account with one of the entities even though the entity [such as Yeshiva Ohr] paid Chabad of California completely**. Thus, because Chabad of California is in-between the other subrecipients and some of the vendors, there may be the temporary situation of the vendor showing a balance due **even though the subrecipient shows the charges under the contract as expended in full. . . .**" (Emphasis and insertion of name Yeshiva Ohr added.)

As shown immediately below, the government's entire "case" against Yeshiva Ohr is based solely on two documents signed by the President of Yeshiva Ohr (only one of which was submitted to Cal EMA) and approximately three documents signed by employees or representatives of Chabad of California who were agents authorized to apply for and manage the grant on behalf of Yeshiva Ohr.

II. **The Government's Entire Case against Yeshiva Ohr is Based Upon a Few Early Signatures on Documents by Yeshiva Ohr; Under No Theory Will Those Signatures Establish a Knowing or Reckless Violation of Any Statute by Yeshiva Ohr**

A. It is Undisputed That There is No Evidence that Any Officer or Employee of Yeshiva Ohr Knowingly Violated Any Statute in Issue in This Case

The United States has made it clear that it has no direct (or indirect) evidence that Yeshiva Ohr knowingly violated any statute in issue. In the "United States Reply Brief In Support of Motion for Summary Judgment," filed in this action on or about August 7, 2014, the

-4-                   No. 2:10-cv-01056-MCE-EFB

government at pages 9-10 thereof clearly enunciates its two "theories of liability" against

Yeshiva Ohr.  The first theory is that because the President of Yeshiva Ohr, Rabbi Ezra

Schochet, signed a one-page document on August 24, 2009 entitled "Supporting Information for

Reimbursement/Advance of State and Federal Funds," somehow that makes Yeshiva Ohr

"directly liable," as well as "jointly and severally liable," for virtually *all* of the alleged

wrongdoing by Chabad of California in this case.  The government's second theory is that since

Yeshiva Ohr signed an "authorization" that Chabad of California could proceed to seek a grant

on its behalf, the three documents (grant assurances and two drawdown requests) signed by

Chabad representatives (ostensibly on behalf of Yeshiva Ohr) that were submitted to Cal-EMA

somehow makes Yeshiva Ohr is liable for *all* of the alleged wrongdoing of Chabad under

agency theory.  Finally, the government contends that if Yeshiva Ohr is contending that it was

actually an agent for Chabad, then Yeshiva Ohr is liable because it failed to disclose its principal

(Chabad).  But since Yeshiva Ohr is not contending, and has never contended in this case, that it

was an agent of Chabad, we need not address the government's third theory.

It is important to observe that nowhere has the U.S. alleged that principals of Yeshiva

Ohr actually prepared or submitted to the government any false or fraudulent documents.

The following are the five signatures involving Yeshiva Ohr:

1.      On August 25, 2008, "Grant Assurances" were submitted to the Office of

Homeland Security on behalf of Yeshiva Ohr.  (U.S. exhibit number 30.)  The last page thereof

was signed by Rabbi Danny Yiftach-Hashem, who was working solely for Chabad of California.

Rabbi Yiftach-Hashem signed as "Authorized Agent," with the title "Project Director."  His

signature was preceded by the following language:  "The undersigned represents that he/she is

authorized by the above named applicant to enter into this agreement for and on behalf of the

said applicant."  It is undisputed that Rabbi Yiftach-Hashem was not a principal or employee of

Yeshiva Ohr.  He was employed by Chabad of California.  Whether or not Rabbi Yiftach-

Hashem had been authorized to execute this document on Yeshiva Ohr's behalf (see discussion

below), it is clear that there is no language in the "Grant Assurances" that would allow Rabbi Yiftach-Hashem and/or Chabad of California to commit any illegal or fraudulent acts in the grant application or administration process.

There has been no testimony to date, and it is anticipated there will be no testimony at trial, that Rabbi Yiftach-Hashem or any other person discussed the contents of the "grant assurances" with a principal of Yeshiva Ohr at any time. Hence, no principal of Yeshiva Ohr at any relevant time had knowledge of the contents of the grant assurances. It is the position of Yeshiva Ohr that its "authorization" to allow an agent to act on its behalf only went so far as to allow the agent to perform legal acts within the scope of his authority. At no time did Yeshiva Ohr authorize Chabad or its representatives to make false representations or in any manner perform acts that violate the relevant statutes. The law is clear (discussed below) that a principal is not liable for the illegal acts of its agents.

Moreoever, it does not appear to Yeshiva Ohr that there is any evidence to support a claim by the government that when Rabbi Yiftach-Hashem submitted the grant assurances, the grant assurances were false on their face and/or that he was aware or had knowledge that any of the representations contained therein may have been false at the time.

Last, at the time the grant assurances were submitted, Yeshiva Ohr had *not* yet signed its resolution authorizing Chabad and its representatives to apply for and manage the grant. See paragraph number 3 below.

2.      On October 28, 2008, two months *after* the Grant Assurances were submitted by Rabbi Yiftach-Hashem, Chabad of California presented to Rabbi Schochet of Yeshiva Ohr a "Resolution" to be signed. It is believed that this was the same form "Resolution" used by Chabad of California with the other entities on whose behalf Chabad of California applied for grant funds. Rabbi Schochet signed this resolution at the "x" next to the signature line. **It is undisputed that this is one of only two documents in this entire case that bears the signature of an actual principal or employee of Yeshiva Ohr**. The resolution itself is entitled

-6-                    No. 2:10-cv-01056-MCE-EFB

"A Resolution Approving an Application for Funding From. . . [Cal-EMA]."   Hence by its express terms Rabbi Schochet did no more than authorize Chabad of California to apply for funding and agree that Chabad of California's employees and representatives would be entirely responsible for the application and management of the funding.  Section 3 of the resolution provided:

> "Be it resolved that Dr. David Sternlight, Special Advisor to the President, Chabad of California, or Rabbi Danny Yiftach-Hashem, Project Director, or Rabbi Yakov Baitelman, Manager Special Projects, Chabad of California is hereby authorized and directed to act on the Yeshiva Ohr Elchonon Chabad behalf in all matters pertaining to this application."

As noted, this resolution was not signed until well after Rabbi Yiftach-Hashem submitted the "Grant Assurances" (U.S. exhibit number 30) allegedly on behalf of Yeshiva Ohr. Yeshiva Ohr will contend at trial that at the time Rabbi Yiftach-Hashem signed the assurances ostensibly on behalf of Yeshiva Ohr, he had not been authorized by Yeshiva Ohr to do so. Further, and regardless of timing, Yeshiva Ohr will also contend that there is no language in the resolution that authorizes Chabad of California or any or its representatives or employees to commit illegal or fraudulent acts with respect to the grant.

3.      In or about late August, 2009, a so-called "drawdown request" was submitted to Cal-EMA on behalf of Yeshiva Ohr.  (Contained in U.S. exhibit numbers 38 and/or 60.)  That single-page document is entitled "Supporting Information for Reimbursement/Advance of State and Federal Funds."  It is signed by Rabbi Schochet and also signed by David Sternlight as "authorized agent."  This is the second of the two documents in this case that bear the signature of a principal of Yeshiva Ohr.  Rabbi Schochet will testify at trial that this document was given to him by Chabad for signature as "necessary" for the grant, without further discussion. Furthermore, there is nothing "false" or "fraudulent" on the face of this document.  Rabbi Schochet did no more than to certify that:  "This claim is for costs incurred within the grant

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD

expenditure period from July 1, 2009 through August 24, 2009 and does not cross fiscal years."
No dollar amounts are specified.  Nothing else of importance is stated above his signature.

4.      On or about September 1, 2009, a written request was submitted to Cal-EMA, ostensibly on behalf of Yeshiva Ohr, requesting a drawdown of $72,750 in grant funds.  The request was signed only by David Sternlight, an employee/representative of Chabad of California.  It is difficult to see how anything on this single page may have been false or fraudulent when submitted.  In any event, Yeshiva Ohr at no time authorized Mr. Sternlight, Chabad of California or any of its employees or representatives to make false representations to Cal-EMA or to commit any illegal or fraudulent acts whatsoever in connection with the grants.

The above documentation is the *only* connection between Yeshiva Ohr and any of the wrongdoing alleged by the government in this case.  Other than the "Resolution" signed by Rabbi Schochet and his signature on the one-page drawdown request, representatives of Yeshiva Ohr played no part in the preparation of and never even saw the other documents submitted by Chabad of California to the Office of Homeland Security.  Yeshiva Ohr will establish that at no time did it authorize Chabad or its representatives to make misrepresentations to the government and/or to commit any illegal acts in connection with the grants.

B.      Witness Testimony At Trial Will Fully Support a Finding that Yeshiva Ohr Had No Knowledge of any Wrongdoing

The government has taken the depositions of all of the individuals involved with submission of grant applications and management of grant funds.  Most of these individuals are or were employed by or associated with Chabad of California.  None of them were employed by or associated with Yeshiva Ohr.  No employee or principal of Yeshiva Ohr has been deposed.  All of the persons deposed have fully supported Yeshiva Ohr's position that it entirely relied upon Chabad of California in applying for and managing the grant funds.  They have also fully supported Yeshiva Ohr's position that it had no knowledge of any of the alleged misuse of grant funds or fraudulent activities of Chabad of California.  It is anticipated that the same testimony

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD

1  will be offered at trial, either by live testimony or by the introduction of portions of deposition

2  transcripts.

3           C.     The Government's Anticipated Reliance Upon So-Called

4                "Admissions" by Yeshiva Ohr is Misplaced

5       Based upon its recent pleadings, it is anticipated that the government will attempt to use

6  Yeshiva Ohr's non-responses to requests for admissions in a manner to try to increase Yeshiva

7  Ohr's liability for the alleged wrongful acts of Chabad of California.  That reliance would be

8  misplaced.  First, there were no requests at all that sought Yeshiva Ohr to admit that it knew of

9  any of the alleged wrongful acts in this case.  There were no requests that sought Yeshiva Ohr to

10  admit that it is liable for the acts of its agents.  There were no requests by the government that

11  Yeshiva Ohr admit to any facts or circumstances that would somehow show it was "reckless" in

12  allowing Chabad of California to apply for and manage its government grant.

13       Furthermore, the requests for admissions served by the government are ambiguous in

14  critical respects.  Any "admission" due to non-response to the requests is susceptible to a variety

15  of reasonable meanings.  The following is an outline of those particular definitions and requests

16  for admission of which it is anticipated the government may attempt to use to support its claim

17  that Yeshiva Ohr is somehow liable in this case:

18       1.    "Definition number 2."  The government provided this definition under the

   heading "Definitions and Instructions:"

19               "2.    As used in these requests, the terms 'YOU,' 'YOUR' and 'YOURS' refer

20               to Defendant, its officers, directors, <u>agents</u>, employees, attorneys, investigators,

21               representatives, and <u>anyone else acting on its behalf</u>, <u>directly</u> or <u>through others</u>."

22               (Emphasis added.)

23       It is the foregoing definition that renders ambiguous, at best, many to all of the non-

24  responses to requests for admissions.  The definition of "YOU" refers to a large, diverse and

25  independent group of individuals.  For example, it can refer to an agent, or an attorney, or

26

27

28

                                     -9-            No. 2:10-cv-01056-MCE-EFB

anyone else theoretically acting on behalf of Yeshiva Ohr.  In reality, it reads as if the word "or"

is inserted between each grouping of individuals, such as "Defendant, or its officers, or its

directors, . . . or its agents, . . . etc."  Certainly, the government cannot be claiming that if

Yeshiva Ohr admits that any one of these persons or groups of persons *did* a particular act, that

all of the individuals or defined groups under the definition of "YOU" did that act as well.  By

way of example, if Yeshiva Ohr admits that its investigator did a particular act, that does not

mean that Yeshiva Ohr admits that its officers or attorneys did that act.

Likewise, if Yeshiva Ohr's non-response means that it admits that its "agent" or "anyone

else acting on its behalf, directly or through others" did a particular act, that does not mean that

Yeshiva Ohr is admitting that *it* did the act.

In this light, the following is a brief consideration of those "admissions" of which it

appears the government will most likely attempt to rely:

Request number 5:    "Admit that YOU applied for a federal grant under the Urban

Areas Security Initiative . . .on or about Aug. 29, 2008, to pay the costs of installing video and

identification equipment . . . ."

Yeshiva Ohr's non-response should be taken, pursuant to the government's definition of

"YOU," as an admission that either an <u>agent</u> or someone <u>acting on Yeshiva Ohr's behalf</u> applied

for the grant.  Under any reasonable interpretation, it certainly cannot be taken as an admission

that all of the sub-categories under the definition "YOU," such as Yeshiva Ohr's attorneys or

investigators, applied for the grant.

Request number 6:    "Admit that the document identified as Bates Nos. . . . . is a true

and correct copy of the Grant Assurances executed by YOU on or about August 25, 2008, for

the purpose of applying for a federal grant. . . ."

As with number 5 above, a nonresponse must be taken only as an admission that either

an "agent" of Yeshiva Ohr or "someone acting on behalf of" Yeshiva Ohr executed the Grant

Assurances.  Moreover, a party cannot "admit" something which is untruthful and which the

-10-                          No. 2:10-cv-01056-MCE-EFB

clear evidence contradicts.  In connection with the grant assurances, the document to be introduced at trial clearly shows only one signature, that of Rabbi Yiftach-Hashem. It is undisputed that he was employed by Chabad of California and was not employed by Yeshiva Ohr.  Rabbi Yiftach-Hashem signed as "Authorized Agent," with the title "Project Director." Yeshiva Ohr is admitting herein that the grant assurances were executed by an agent or by someone acting on behalf of Yeshiva Ohr.

Request number 10:   "Admit that, as a condition to participation in the Urban Area Security Initiative. . . , YOU agreed to be bound by and comply with the terms and conditions of the Urban Areas Security Initiative Nonprofit Security Grant Program Guidance and Application Kit dated February 2008."

Again, Yeshiva Ohr is admitting only that an "agent" or "someone acting on its behalf" agreed to be bound by the terms of the Guidance and Application Kit.  The admission cannot possibly mean that every person defined under the government's definition of "YOU," such as Yeshiva Ohr's attorney or investigator, agreed to be bound.

Request number 12:   "Admit that, as a condition to participation in the Urban Areas Security Initiative Nonprofit Security Grant Program, YOU agreed to be bound by and comply with the terms and conditions of the California Supplement Federal Program Guidance and Application Kit dated February 26, 2008."

For the same reasons as stated in connection with request number 10, the non-response should reasonably only be taken as an admission by Yeshiva Ohr that an agent or someone acting on its behalf agreed to be bound by the terms of the Guidance and Application Kit.

Request number14:   "Admit that, as a condition to participation in the Urban Areas Security Initiative Nonprofit Security Grant Program, you agreed to be bound by and comply with the terms and conditions of the Office of Justice Programs' Financial guide, dated 2006."

For the same reasons as stated in connection with request number 10, the non-response should reasonably only be taken as an admission by Yeshiva Ohr that an agent or someone

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD

1  acting on its behalf agreed to be bound by the terms of the financial guide.

2      Request number 23:   "Admit that, as of the present date, the grant funds issued to YOU

3  from the Yeshiva Ohr Grant that have not been expended total $750."

4      Because that is a request that refers to funds directly issued to Yeshiva Ohr, and not to an

5  agent or someone acting on its behalf, Yeshiva Ohr admits this request to be true.

6      Request number 24:   "Admit that, during the period of May 2008 through December

7  2012, YOU did not have written procedures to provide for control over and accountability for all

8  funds received under the [grant program] in order to adequately safeguard all such funds and

9  assure they were used solely for authorized purposes. . . ."

10      A non-response to this request may reasonably be taken as an admission by Yeshiva Ohr,

11  and/or its agents, and/or others acting on its behalf.  (In any event, it is the position of Yeshiva

12  Ohr that Yeshiva Ohr itself was not required to have such written procedures in place because it

13  turned over all grant funds to Chabad of California and turned over complete responsibility for

14  the management and payment of such funds to Chabad of California.)

15      Request number 25:   "Admit that the document identified as Bates Nos. . . . is a true

16  and correct copy of the letter received by YOU from Cal EMA on or about April 23, 2010."

17      By its non-response, Yeshiva Ohr admits nothing more than that it is a true and correct

18  copy of a letter was received by its agent or by someone acting on its behalf.  Once again, one

19  cannot "admit" a fact which is untrue and contradicted by all evidence.  The letter in question is

20  addressed ONLY to "David Sternlight, Special Advisor to the President, Chabad of California, .

21  . ." The document speaks for itself.  Whether or not the letter should be *deemed* "received" by

22  Yeshiva Ohr, an entity to whom it was not addressed, is a question of fact and law at trial

23  depending primarily upon application of the relevant facts and law of agency.

24      Request number 26:   "Admit that the document identified as Bates Nos. . . . . is a true

25  and correct copy of the letter received by YOU from Cal EMA on or about April 27, 2010."

26      Yeshiva Ohr admits nothing more than that it is a true and correct copy of the letter and

-12-      No. 2:10-cv-01056-MCE-EFB

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD

1  that it was received by an agent or someone acting on behalf of Yeshiva Ohr.  Again, this letter

2  was addressed only to David Sternlight.  As with request number 25, the document speaks for

3  itself.

4      Request number 27:  "Admit that the document identified as Bates Nos. . . . is a true

5  and correct copy of the letter, with exhibits, sent by YOU to Cal EMA on  or about June 1,

6  2010."

7      This letter was signed and sent only by an individual named Chaim Aaron Levin, a CPA

8  who worked for Chabad of California.  The document speaks for itself.  All that a nonresponse

9  can be deemed to admit, under the government's definition of "YOU," is that Yeshiva Ohr

10 admits it is a true and correct copy of a letter sent by "anyone else acting on its behalf, directly

11 or through others."

12     Request number 28:  "Admit that the document identified as Bates Nos. . . . is a true

13 and correct copy of the letter received by YOU from Cal EMA on or about November 1, 2010."

14     Please see discussion re request number 25 above, which discussion is incorporated

15 herein.  This letter was addressed only to David Sternlight of Chabad of California and speaks

16 for itself.  By its non-response, Yeshiva Ohr admits nothing more than that it is a true and

17 correct copy of a letter was received by its agent or by someone acting on its behalf.

18     Request number 29:  "Admit that the document identified as Bates Nos. . . . is a true

19 and correct copy of the letter sent by YOU to Cal EMA on or about November 29, 2010."

20     This letter was signed and sent only by an individual named Chaim Aaron Levin, a CPA

21 who worked for Chabad of California.  The document speaks for itself.  All that a nonresponse

22 can be deemed to admit, under the government's definition of "YOU," is that Yeshiva Ohr

23 admits it is a true and correct copy of a letter sent by "anyone else acting on its behalf, directly

24 or through others."  Please note that for this and all admissions, the phrase "acting on its behalf"

25 does not necessarily mean or include *authorized* to act on its behalf, which is an issue for trial.

26     Request number 30:  "Admit that the document identified as Bates Nos. . . . is a true

-13-         No. 2:10-cv-01056-MCE-EFB

1   and correct copy of the letter received by YOU from Cal EMA on or about December 3, 2010."

2   Please see discussion re request number 25 above, which discussion is incorporated

3   herein. This letter was addressed only to Chaim Aaron Levin, a CPA who worked for Chabad

4   of California. The letter speaks for itself. By its non-response, Yeshiva Ohr admits nothing

5   more than that it is a true and correct copy of a letter was received by someone "acting on its

6   behalf, directly or through others."

7   Request number 31:   "Admit that the document identified as Bates Nos. . . . is a true

8   and correct copy of the letter, with exhibits, sent by YOU to Cal EMA on or about December

9   24, 2010."

10   This letter was signed and sent only by an individual named Chaim Aaron Levin, a CPA

11   who worked for Chabad of California. The document speaks for itself. All that a nonresponse

12   can be deemed to admit, under the government's definition of "YOU," is that Yeshiva Ohr

13   admits it is a true and correct copy of a letter sent by "anyone else acting on its behalf, directly

14   or through others."

15   Request number 32:   "Admit that the document identified as Bates Nos. . . . is a true

16   and correct copy of the letter received by YOU from Cal EMA on or about May 2, 2011."

17   Please see discussion re request number 25 above, which discussion is incorporated

18   herein. This letter was addressed only to David Sternlight of Chabad of California and speaks

19   for itself. By its non-response, Yeshiva Ohr admits nothing more than that it is a true and

20   correct copy of a letter was received by its agent or by someone acting on its behalf.

21   It is clear that regardless of any of such admissions by Yeshiva Ohr, there is no evidence

22   whatsoever that Yeshiva Ohr had knowledge of any of the alleged wrongdoing by Chabad of

23   California or that it acted recklessly with respect to the grant, all essential elements of liability

24   under the applicable statutes.

25

26

27

28

III.   **There is No Evidence that Yeshiva Ohr Knowingly Submitted Any False Claims or Knowingly Avoided Obligations to Re-Pay Grant Money; Yeshiva Ohr Has No Liability for Damages or Penalties Under Any "Agency" Theory**

The plaintiffs herein seek recovery against all defendants under either or all of the following three subsections of 31 U.S.C. §3729, as follows:

1.   31 U.S.C. §3729(a)(1)(A):

". . . (1) IN GENERAL. –Subject to paragraph (2), any person who—

(A)   knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

2.   31 U.S.C. §3729(a)(1)(B):

"(B)   knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

3.   31 U.S.C. §3729(a)(1)(G):

"(G)   knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. [is liable to the Government for certain civil penalties]."  (Emphasis added.)

This statute also provides important definitions, as follows:

31 U.S.C. §3729(b):

"(b)   DEFINITIONS—For purposes of this section—

(1) the terms "knowing and "knowingly" –

(A) mean that a person, with respect to information—

(i)   has actual knowledge of the information;

-15-                    No. 2:10-cv-01056-MCE-EFB

(ii)    acts in <u>deliberate ignorance of the truth</u> or falsity of the information; or

(iii)   acts in <u>reckless disregard of the truth</u> or falsity of the information; and

(B) require no proof of specific intent to defraud;"

(Emphasis added.)

It is readily apparent that Yeshiva Orh will not be found liable at trial under any of the three code sections relied upon by the government. There are many reasons for this conclusion and the following list is not intended to be fully inclusive:

1.     The alleged few documents which were arguably signed by "agents" of Yeshiva Ohr were not "false" or "fraudulent" on their face. Likewise, the one grant drawdown signed by a principal of Yeshiva Ohr is not "false" or "fraudulent" on its face. The government is claiming that what Chabad of California later did, or did not do, with the grant funds is fraudulent.

2.     To the extent the government may be claiming that the documents submitted by Chabad of California were "fraudulent" because Chabad of California had no intent of performing as promised; that level of early intent is most likely something the government will not be able to prove. But, as far as Yeshiva Ohr is concerned, it makes no difference. There is no evidence whatsoever that Yeshiva Ohr **ever** had actual knowledge that anything submitted on its behalf was "false." Nor is there any evidence that Yeshiva Ohr **ever** acted in deliberate ignorance of the truth or falsity of any information arguably submitted on its behalf by Chabad of California. Last, there is not one shred of evidence that Yeshiva Ohr **ever** acted in reckless disregard of the truth or falsity of any documents that may have been submitted to the government on its behalf.

3.     To the extent the government may be claiming that any or all of the documents submitted to the government, including such items as grant assurances and requests for

-16-                    No. 2:10-cv-01056-MCE-EFB

drawdowns, were somehow false or fraudulent on their face(es), again there is no liability on the part of Yeshiva Ohr.  There is simply no evidence at all that Yeshiva Ohr knew of the falsity of any documents, or acted in deliberate disregard of the truth or falsity of any documents, or that it acted in reckless disregard of the truth or falsity of any documents.

    4.    Yeshiva Ohr was reasonably justified in relying upon the expertise and experience of Chabad of California in applying for, and managing, grant funds. To the extent Chabad of California may have had its own agenda in what it was going to do with the grant funds, once obtained, this was totally unknown to Yeshiva Ohr and could not reasonably have been anticipated by Yeshiva Ohr.

    Nor can the government successfully contend that Yeshiva Ohr is somehow liable as "principal" for the acts of Chabad of California, its "designated agent."  The law is well established that a principal cannot be held liable for the fraudulent or illegal acts of its agents. For example, see California Civil Code §§ 2339 ("Limitation of Liability") and 2343 (agent is responsible to third persons "When his acts are wrongful in their nature.").  The law in California is clear that while a principal may be liable for the acts and even torts of its agent under certain circumstances, "A principal is responsible for no other wrongs committed by his agent than those mentioned in the last section . . . ."  California Civil Code, §2339.  In short, unless illegal acts are specifically authorized by a principal, a principal is not liable for illegal acts of its agents or for acts of its agent beyond the scope of the agent's ostensible authority.

    Indeed, the government presents no evidence that Yeshiva Ohr did anything wrong at all, other than to authorize Chabad of California to apply a grant for improvement of security at the Yeshiva Ohr premises.  Most important, the government cites no case wherein an otherwise innocent principal may be held liable for false claims submitted or other illegal acts of its agent, when such illegal acts were not authorized by the principal.

    In short, it is respectfully submitted that at trial, the plaintiffs will be unable to establish that Yeshiva Ohr knowingly participated in or knew of any of Chabad of California's alleged

1  wrongdoing.  Further, they will be unable to establish that Yeshiva Ohr acted in reckless

2  disregard of the facts.

3      **IV.     Yeshiva Ohr will Prevail Against Chabad of California on its**

4              **Cross-Claim for Indemnity and Other Relief**

5          Yeshiva Ohr has filed a Cross-Claim against Chabad of California seeking full

6  indemnity for any amounts of damages or penalties for which Yeshiva Ohr may be found liable.

7  Yeshiva Ohr also seeks from Chabad of California full reimbursement of all of its attorneys'

8  fees and costs expended in defending this action.

9          The Cross-Claim contains three separate causes of action against Chabad of California.

10 The first is for Declaratory Relief on the theory of Implied Indemnity of Principal by Agent.

11 Yeshiva Ohr justifiably relied upon the promises and representations of Chabad of California

12 and its representatives.  To the extent they acted as "agent" of Yeshiva Ohr, and with no

13 admission that they were in fact authorized agents of Yeshiva Ohr, if Yeshiva Ohr is found

14 liable due to the wrongful acts of its agent, such agent is obligated to indemnify Yeshiva Ohr to

15 the full extent of its damages.

16         The Second Cause of Action is for Implied Contractual Indemnity.  This theory is based

17 upon the fact that Chabad of California offered to Yeshiva Ohr that it was qualified to obtain

18 and manage the subject grant in compliance with all applicable and state rules and regulations.

19 To the extent Yeshiva Ohr agreed and allowed Chabad of California to proceed on its behalf, an

20 oral contract was made between the two parties with respect to obtaining and managing the

21 grant.  This contract carried with it an implied agreement to indemnify and to discharge

22 foreseeable damages resulting from negligent performance and/or intentional wrongdoing by

    Cross-Defendant.

23         The Third Cause of Action against Chabad of California is based upon the theory of

24 Comparative Indemnity.  Yeshiva Orh claims, under this theory, that Chabad of California was

25 entirely responsible for any damages that may be assessed against Yeshiva Ohr, through no act

26
                                        -18-              No. 2:10-cv-01056-MCE-EFB
27
28

of negligence or intentional wrongdoing by Yeshiva Ohr. Accordingly, Chabad of California is

obligatged to fully indemnify Yeshiva Ohr for any sums that Yeshiva Ohr may be required to

pay.  To date, Chabad of California has offered no evidence, theories or case law to rebut

Yeshiva Ohr's Cross-Claim.

### V.    Conclusion

At trial, the Plaintiffs will be unable to support any of their claims for relief against

Yeshiva Ohr.  It is undisputed that Yeshiva Ohr had no knowledge of any alleged wrongdoing.

Yeshiva Ohr will establish that it justifiably relied upon Chabad of California to perform all acts

necessary in applying for the grant and in managing grant funds, including payments to vendors.

At no time did Yeshiva Ohr authorize its agents to commit fraudulent or illegal acts and a

principal is not liable for the illegal acts of its agents.  It will also be established for the jury that

at the time the government filed the instant complaint, the sole vendor involved with Yeshiva

Ohr, Elite, had already been paid in full for its services.  At the time the government filed this

complaint, the only "unpaid" amount outstanding with respect to Yeshiva Ohr was the sum of

$750 of grant funds.  Yeshiva Ohr will establish at trial that it retained such amount solely

through inadvertence or oversight and that, had Cal EMA simply called Yeshiva Ohr and

explained why it was requesting a refund of $750, Yeshiva Ohr would voluntarily have done so.

In short, at trial Yeshiva Ohr will introduce compelling evidence that the government used a

huge amount of federal funds, and caused small religious school Yeshiva Ohr major financial

stress, in prosecuting a *de minimis* claim against a party it knew full well had done nothing

wrong.

Respectfully submitted,

Dated:  November 20, 2014          DONALD L. SALTZMAN, PLC

By: _____
     Donald L. Saltzman
     Attorneys for Defendant and Cross-Claimant,
     Yeshiva Ohr Elchonon Chabad

-19-                    No. 2:10-cv-01056-MCE-EFB

TRIAL BRIEF OF DEFENDANT AND CROSS-CLAIMANT
YESHIVA OHR ELCHONON CHABAD